ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 14249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012
Telephone (213) 894-3391

JOHN P. CRONAN
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Michael Lacey, et al.,<br><br>Defendants. | CR-18-422-PHX-SPL (BSB)<br><br>**UNITED STATES' MOTION TO RESOLVE ATTORNEY-CLIENT PRIVILEGE ISSUES** |

**INTRODUCTION AND SUMMARY OF ARGUMENT**

During the investigation in this case, the United States obtained search warrants for several email accounts belonging to the defendants and other Backpage personnel. Because it was suspected those accounts might contain some communications with Backpage's attorneys (*i.e.,* communications potentially covered by Backpage's corporate

attorney-client privilege), the United States utilized a "filter team" to conduct an initial review of the materials seized via the search warrants. During this process—which was expressly authorized by magistrate judges—the filter team identified certain communications that were suspected to be privileged and removed them from the subset of materials that was later turned over to the prosecution team.

Ordinarily, the next step in the process would be for the filter team to individually analyze the withheld emails and litigate whether some or all of them may be turned over to the prosecution team. This process can be very time-consuming and resource-intensive (not only to the parties, but also to the Court) and, in this case, could significantly slow down the discovery process. Additionally, the defense recently voiced objections to the continued use of filter teams in this case.

The Court should find, for three reasons, that no additional filter review is necessary here. **First**, Carl Ferrer has executed a written waiver of the corporate attorney-client privilege possessed by Backpage and related entities. This waiver obviates the need for the continued segregation of the withheld communications—Ferrer was authorized to execute the waiver (he is Backpage's 100% owner and CEO) and Ninth Circuit law makes clear that, once such a waiver has been executed, individual corporate employees (such as the defendants in this case) cannot contest the disclosure of their previously-privileged communications. **Second**, individual review is also unnecessary because Judge Campbell recently determined, during the course of now-unsealed litigation, that Backpage waived its corporate attorney-client privilege by voluntarily sharing privileged materials with third parties. **Third**, individual review is also unnecessary because a judge in Washington State previously ruled that Backpage waived its privilege by placing the content of privileged communications at issue while defending a lawsuit brought by a trafficking victim.

For these reasons, the United States seeks an order confirming that (1) Backpage's corporate attorney-client privilege has been waived and (2) the prosecution team may therefore gain access to the emails and other communications that were previously withheld by the filter team.

**FACTUAL AND PROCEDURAL HISTORY**

A.   <u>The Activities Of The Filter Team In This Case</u>

    1.   **The Warrant For Ferrer's Email Account**

In July 2016, the United States obtained a warrant compelling Google to produce the contents of an email account held by Carl Ferrer. Afterward, the United States obtained a court order authorizing the use of a filter team to review the account's contents. *See* Exhibit A. The order provided that "the Filter Team will review Backpage CEO Carl Ferrer's emails for potentially privileged and protected materials, and will keep all legitimately protected materials, as well as materials suspected to be protected, segregated from the Investigative Team unless the Court rules they can be disclosed." *Id.*

    2.   **The Warrant For Nine Additional Email Accounts**

In April 2017, the United States obtained a warrant to search nine email accounts held by Backpage personnel (including accounts held by defendants Lacey, Larkin, Padilla, and Vaught). *See* Exhibit B at 2.[1] The judge issuing this warrant also authorized the use of a filter team to review the accounts' contents. Specifically, Attachment B to the warrant provided that "the Filter Team will review the documents for privilege or protection only and will disseminate non-privileged and non-protected documents to the Investigative Team. The Investigative Team will determine which documents constitute evidence of unlawful activity. Because the Filter Team will be properly walled off from the Investigative Team, it may review emails to and from Elizabeth McDougall [Backpage's in-house counsel] or other Backpage attorneys to determine if they properly qualify for privilege or protections, in accordance with procedures set forth above. This will eliminate the risk that protected information from or to Ms. McDougall or other Backpage attorneys will reach the Investigative Team." *Id.* at 3.

---

[1]   The April 2017 warrant was directed to the California Department of Justice, which had previously (and independently) obtained the contents of the email accounts.

3. **The Filter Team's Activities To Date**

The attorney responsible for coordinating the filter-team review in this case is not a member of the prosecution team—she works within the Criminal Division of the Department of Justice in Washington, D.C.

As part of the review process, the filter team created a list of the attorneys and law firms whose communications may have been covered by Backpage's corporate attorney-client privilege during the time periods in question. This list included (1) Elizabeth McDougall, an attorney who has served as Backpage's general counsel since February 2012, (2) Steve Suskin, an attorney who served as Backpage's in-house counsel (via his work as counsel to Village Voice Media Holdings, which was, at the time, Backpage's parent company) from 2010-12, (3) Hemanshu Nigam, an attorney whose consulting company ("SSP Blue") served as outside counsel to Backpage between September 2010 and December 2011, (4) Don Bennett Moon, an attorney who previously served as a board member of Village Voice Media Holdings and who represented Backpage during certain interactions with regulators, (5) the law firm of Davis Wright Tremaine ("DWT"), which has served as Backpage's outside counsel in various matters since 2010, and (6) the law firm of Rusing Lopez & Lizardi, which has also served as Backpage's outside counsel.

Using this list, the filter team identified 1,832 emails from the Ferrer email warrant, and an additional 8,901 emails from the subsequent email warrant, that might be privileged. These emails have not been provided to the prosecution team (and were not disclosed to the defense as part of the first wave of discovery that was produced in May 2018).

The filter team has also started the process of individually reviewing the segregated emails (to determine whether they are, in fact, privileged). To date, approximately 6,500 of the segregated emails have been reviewed. However, the filter team temporarily stopped conducting this review in May 2018, after the prosecution team received a letter from the defense attorneys in this case raising concerns about the propriety of filter-team review. In response to that letter, the prosecution team proposed that the parties seek a ruling from the

Court concerning the privilege issues in this case (*i.e.,* this motion).[2]

B.     The Written Waiver Of Backpage's Corporate Attorney-Client Privilege

On April 5, 2018, Carl Ferrer executed a written waiver of the corporate attorney-client privilege possessed by Backpage.com, LLC and various other Backpage-related entities.  *See* Exhibit C.

The document begins by explaining that "I am authorized to waive each of the Companies' attorney-client privilege and am doing so because I believe executing such waiver is in each of the Companies' best interest." *Id.* at 1.  As for the scope of the waiver, the document provides:  "I hereby voluntarily waive all aspects of the attorney-client privilege, on behalf of the Companies, which otherwise may have applied to communications, documents and information that I or the Companies have provided to law enforcement or which law enforcement may already have in its possession from other sources, as follows:

> a.     All communications related to the "adult," "escort," "dating," and "services" sections of the Companies' websites, including but not limited to company policies, moderation practices, age verification practices, legality, content, and compliance with law enforcement.
>
> b.     All communications related to the Companies' financial activity, including but not limited to the sale of Backpage.com in 2015, all loans and financing agreements related to the sale of that company in 2015, monetization of the Companies' websites, payment processing, credit card processing, banking, and payment of loans.
>
> c.     All communications regarding the relationship between the Companies (including their current owner and employees) and their former owners and officers, including but not limited to, James Larkin, Michael Lacey, John ("Jed") Brunst and

---

[2]     To be clear, the filter-team did not limit its review to the materials gathered in response to the two email search warrants.  In addition to the 10,733 emails discussed above, the filter team has also segregated 54 documents that were previously produced by Backpage pursuant to a subpoena and thousands of additional documents that were produced pursuant to various subpoenas.

Scott Spear, as well as communications between the Companies (including their current owner and employees) and Don Bennett Moon."

*Id.*

The document also states that, "in addition to the foregoing waiver, I hereby voluntarily waive, on behalf of the Companies, all aspects of the attorney-client privilege which otherwise may have applied to the Companies' relationship with any attorney ("previous attorneys") who was retained to represent the Companies in connection with various matters related to the subjects listed above. This attorney-client privilege waiver is meant to apply to all communications between the Companies and any attorney representing them at any time; all acts undertaken by others acting on the Companies' attorneys' behalf taken in connection with representing the Companies related to the subjects listed above; and any and all documents generated through their representation of the Companies that belong to the Companies." *Id.* at 1-2.

C. <u>Judge Campbell's Ruling That Backpage Waived The Privilege</u>

1. **The Initial Litigation Over The 108 Subpoena**

In October 2016, during the pre-indictment stage of the investigation, the grand jury issued a subpoena ("the 108 subpoena") to Ferrer and Backpage for an array of internal documents. This subpoena was the catalyst for extensive litigation—litigation that has now been unsealed and may be publicly disclosed.[3]

In February 2017, following expedited briefing and a lengthy oral argument, Judge Campbell rejected Ferrer's and Backpage's First Amendment-based objections to the subpoena and ordered them to comply. *See* Exhibit D (transcript of February 22, 2017 hearing). In support of this ruling, Judge Campbell made factual findings that "this grand jury investigation . . . is a good faith investigation and not being undertaken for bad faith purposes" (*id.* at 65), that there was a reasonable basis to suspect "that Backpage has

---

[3] On May 17, 2018, Judge Campbell issued an order authorizing the United States to disclose, during the proceedings in this case, the materials enclosed as exhibits D-H to this pleading.

- 6 -

knowingly been involved with the posting of illegal advertisements" (*id.* at 63), and that the subpoena was properly tailored "to determine whether or not Backpage and its personnel knew that advertisements posted on its website were for illegal activity . . . which is a key question in whether or not crimes have been committed" (*id.* at 66). Notably, Judge Campbell also confirmed that 18 U.S.C. § 1952—which is the statute underlying many of the charges in the current indictment—"criminalize[s] the knowing publication of an advertisement for illegal prostitution or other illegal activity" and noted that Backpage's then-counsel (from the DWT firm) had conceded this point during oral argument. *Id.* at 65. *See also* Exhibit D at 37 (DWT concession); Exhibit E (minute entry).

In June 2017, following expedited briefing, the Ninth Circuit issued a unanimous unpublished decision affirming Judge Campbell's decision. *See* Exhibit F.

2. **The Litigation Over Backpage's Waiver Of The Privilege**

In September 2017, Backpage purported to comply with the subpoena, producing over 500,000 documents, but also withheld over 7,000 documents based on invocations of the attorney-client privilege. In December 2017, after reviewing Backpage's privilege log, the United States filed a motion to compel Backpage to produce many of the withheld documents on the grounds that Backpage had voluntarily shared them with third-party public relations firms and investment banks—acts of dissemination that destroyed the privilege. *See* Exhibit G (transcript of February 9, 2018 hearing).

On April 2, 2018, following a hearing and several rounds of briefing, Judge Campbell issued a 14-page order concluding that Backpage had, in fact, waived its corporate attorney-client privilege by sharing hundreds of privileged documents with third-party public relations firms and investment banks. *See* Exhibit H (order).

3. **The Documents Produced In Response To Judge Campbell's Order**

On or around April 16, 2018, Backpage produced to the United States the documents that were the subject of Judge Campbell's April 2 waiver finding (*i.e.,* the once-privileged documents that Backpage had shared with public relations firms and investment banks).

One of the documents included in this production was an April 2011 email that

- 7 -

several Backpage principals (including Ferrer, Larkin, and Spear) had received from SSP Blue (the firm operated by attorney Hemanshu Nigam).  *See* Exhibit I.  The subject matter of the legal advice contained in this email was how to moderate and review ads submitted by customers.  Among other things, the email advised the recipients (in Action Item 12 of the enclosed spreadsheet) that Backpage should prevent customers from publishing ads using the phrase "New In Town" because this phrase "***is often used by pimps who shuttle children to locations where they do not know anyone and cannot get help***." *Id.* (emphasis added).  The Court will note that the indictment alleges the defendants ignored this advice and continued allowing ads using the phrase "New In Town" to be published.  *See, e.g.,* Counts 12-15 of the indictment.

Another document included in this production was a January 2012 email whose recipients included several Backpage principals (including Lacey, Larkin, and Ferrer) and a Backpage attorney.  *See* Exhibit J.  The subject matter of the email concerned whether/how to acknowledge the prevalence of prostitution ads on the Backpage website.  Among other things, the email advised that, if the recipients were ever confronted with such questions, they shouldn't issue a denial but, instead, should attempt to change the subject and accuse the questioner of being a "prude."  *Id.*

D.      The Washington Judge's Ruling That Backpage Waived The Privilege

      1.      **Background Concerning The *J.S.* Case**

In July 2012, three minor girls who had been "bought and sold for sexual services online on Backpage.com" filed a civil lawsuit against Backpage in Washington state court. *See J.S. v. Village Voice Media Holdings, Inc.*, 359 P.3d 714, 715-16 (Wash. 2015). Backpage moved to dismiss, arguing it was immune from civil liability under the Communications Decency Act ("CDA"), 47 U.S.C. § 230, because it merely provided a forum for the illicit ads created by the girls' pimps.  *Id.*  The girls, in turn, argued the CDA should be deemed inapplicable because Backpage does "more than just provide a forum for illegal content" and affirmatively shapes the content of its users' ads through "posting rules [that are] 'designed to help pimps develop advertisements that can evade the

unwanted attention of law enforcement, while still conveying the illegal message.'" *Id.*

In September 2015, the Washington Supreme Court ruled 6-1 in the girls' favor and denied Backpage's motion to dismiss. The court explained: "This case turns on whether Backpage merely hosted the advertisements that featured J.S., in which case Backpage is protected by CDA immunity, or whether Backpage also helped develop the content of those advertisements, in which case Backpage is not protected." *Id.* at 717). The court concluded the girls should be permitted to conduct discovery "to ascertain whether in fact Backpage designed its posting rules to induce sex trafficking." *Id.* at 718.

2. **The *J.S.* Waiver Ruling**

Following remand from the Washington Supreme Court, the girls' attorney propounded an array of discovery requests to Backpage seeking information about its moderation practices. In response, Backpage identified its in-house counsel, Elizabeth McDougall, as its 30(b) witness, allowed her to be deposed concerning Backpage's moderation practices, and submitted a declaration from her in an attempt to obtain summary judgment. The plaintiffs, in turn, filed a motion asserting that Backpage had waived its corporate attorney-client privilege on an array of topics by attempting to rely on Ms. McDougall in this fashion.

In an order issued in August 2017, the trial court agreed with the plaintiffs and held Backpage had waived the privilege. *See* Exhibit K. Specifically, the court explained that, because Backpage had "put the assertions and representations of Ms. McDougall at issue in this litigation," it would be unfair to deny the plaintiffs access to other material that might bear on the validity of her claims. *Id.* at 1-3. Thus, the court concluded Backpage had "waived the attorney-client privilege and work-product protection with respect to . . . [all of] the topics identified in Plaintiffs' 30(b)(6) deposition notice." *Id.* This notice, in turn, broadly encompasses a variety of topics, including (1) Backpage's moderation practices, (2) Backpage's policies and procedures for reviewing, screening, moderating, and/or editing ads submitted by customers, and (3) Backpage's knowledge and awareness that sex trafficking was occurring on the website. *See* Exhibit K, Appendix B.

**ARGUMENT**

A.  <u>Further Segregation Is Unnecessary In Light Of The Written Waiver</u>

There is no reason to continue withholding, from the prosecution team, the emails that had been segregated by the filter team. Based on Mr. Ferrer's execution of a written waiver of Backpage's corporate attorney-client privilege, those emails are no longer privileged.

As an initial matter, Mr. Ferrer—as Backpage's CEO and 100% owner since 2015—had the authority to waive the corporation's privilege. *See generally Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985) ("[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. New managers . . . may waive the attorney-client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties.").

Furthermore, the Ninth Circuit makes clear that, once a corporate privilege waiver has been executed, individual corporate employees (such as the defendants in this case) cannot contest the disclosure of their previously-privileged communications. In *United States v. Graf*, 610 F.3d 1148 (9th Cir. 2010), the Ninth Circuit addressed this issue in detail, noting that "[o]ne of these special problems" that arises in the context of the corporate attorney-client privilege "is that corporate officers, directors, and employees who communicate with corporate counsel on behalf of the corporation may later attempt to claim a personal attorney-client privilege regarding those communications after the corporation has waived its own privilege." *Id.* at 1156. The *Graf* court held that a corporation is ordinarily "*free to obtain information from its officers, employees, and consultants about company matters and then control the attorney-client privilege, waiving it when necessary to serve corporate interests*," and that an employee may prevent such a disclosure only under limited circumstances. *Id.* at 1160-61 (emphasis added).

Specifically, once the corporate privilege has been waived, an individual employee may prevent disclosure only by establishing the following five factors:

> *First*, they must show they approached counsel for the purpose of seeking legal advice. *Second*, they must demonstrate that when they approached counsel they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. *Third*, they must demonstrate that the counsel saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. *Fourth*, they must prove that their conversations with counsel were confidential. And *fifth*, they must show that the substance of their conversations with counsel did not concern matters within the company or the general affairs of the company.

*Id.* at 1160 (citation omitted) (emphasis in original).

Here, the United States has not seen any evidence suggesting these five factors could be satisfied with respect to any of the withheld emails. Thus, unless a particular defendant produces evidence that he or she, while working at Backpage, had discussions with corporate counsel about purely personal matters unrelated to the general affairs of Backpage and made clear he or she was seeking legal advice in an individual capacity, the Court should hold that Mr. Ferrer's privilege waiver is valid and authorize the filter team to produce the withheld materials to the prosecution team.

B.    Further Segregation Is Unnecessary In Light Of Judge Campbell's Ruling

Judge Campbell's order of April 2, 2018, provides an independent basis for concluding that Backpage's corporate attorney-client privilege has been waived and that the segregated emails may therefore be produced to the prosecution team.

It is black-letter law that "voluntarily disclosing privileged documents to third parties will generally destroy the [attorney-client] privilege." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012). *See generally Chevron Corp. v. Penzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (agreeing that "Pennzoil had waived the attorney-client privilege by disclosing to an outside auditor documents which discussed" legal advice it had received, because "voluntary disclosure of a privileged attorney communication to a third party constitutes waiver of privilege"); *United States v. Ruehle*, 583 F.3d 600, 612

(9th Cir. 2009) ("[A]ny voluntary disclosure of information to a third party waives the attorney-client privilege, regardless of whether such disclosure later turns out to be harmful."); *Southern Union Co. v. Southwest Gas Corp.*, 205 F.R.D. 542, 548 (D. Ariz. 2002) ("[I]f the documents containing confidential communications are disclosed to third parties, the privileged status of the communications within the documents is lost.").

Here, Judge Campbell already has determined that Backpage waived its corporate attorney-client privilege by voluntarily sharing hundreds of privileged communications with third-party public relations firms and investment banks. Moreover, although the only remedy the United States sought during the previous proceeding (before Judge Campbell) was the disclosure of those particular emails, the law in the Ninth Circuit is that "voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). *See also Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) ("Disclosing a privileged communication . . . results in waiver as to all other communications on the same subject.").

The privileged emails that Backpage disclosed to third-party public relations firms and investment banks addressed an array of different "subjects," including how to moderate and review ads submitted by customers and whether/how to acknowledge the prevalence of prostitution ads on the Backpage website. These are the same "subjects" addressed in the communications that have been segregated by the filter team. Accordingly, those communications have lost their privileged status and may be shared with the prosecution team.

C.  Further Segregation Is Unnecessary In Light Of The *J.S.* Ruling

Finally, the ruling issued in the J.S. case in August 2017 provides yet another independent basis for concluding that Backpage's corporate attorney-client privilege has been waived and that the segregated emails may therefore be produced to the prosecution team.

The Ninth Circuit has recognized that "[e]ven when a party does not explicitly

disclose the content of an attorney-client communication, he may waive the privilege implicitly. A person cannot always claim that he relied on counsel, while protecting what was said between them from disclosure." *United States v. Ortland*, 109 F.3d 539, 543 (9th Cir. 1997). *See also Chevron Corp.*, 974 F.2d at 1162 ("Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived."); 2 Rice, Attorney-Client Privilege § 9:24 at 89 ("When the client makes the communications with counsel a substantive issue in the litigation, courts have consistently held that the attorney-client privilege protecting those communications is waived. Courts often refer to this type of waiver as an 'at issue' waiver or an implied waiver."). This is exactly what occurred in the *J.S.* case, and the "subject matters" that the *J.S.* court determined to be encompassed by its waiver ruling (*i.e.,* Backpage's moderation practices, Backpage's policies and procedures for reviewing, screening, moderating, and/or editing ads submitted by customers, and Backpage's knowledge and awareness that sex trafficking was occurring on the website) are the same subjects addressed in the communications that have been segregated by the filter team.

## CONCLUSION

The Court should issue an order confirming that (1) Backpage's corporate attorney-client privilege has been waived, at least with respect to Elizabeth McDougall, Steve Suskin, Hemanshu Nigam, the consulting firm SSP Blue, Don Bennett Moon, the law firm of Davis Wright Tremaine, and the law firm of Rusing Lopez & Lizardi, and (2) the prosecution team may therefore gain access to the emails and other communications that were previously withheld by the filter team.

Respectfully submitted this 14th day of June, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*/s Kevin Rapp*
KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW C. STONE

Assistant U.S. Attorneys

JOHN J. KUCERA
Special Assistant U.S. Attorney

JOHN P. CRONAN
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice, Criminal Division
Child Exploitation and Obscenity Section

**Certificate of Service**

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Anne Chapman, Erin McCampbell, James Grant, Lee Stein, Paul Cambria, Robert Corn-Revere, Ronald London, Janey Henze Cook, John Littrell, Kenneth Miller, Thomas Bienart, Jr., Bruce Feder, Michael Kimerer, Rhonda Neff, KC Maxwell, David Wakukawa, Michael Piccarreta, Stephen Weiss.

*s/ Sally Hawley*
U.S. Attorney's Office