ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 14249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012
Telephone (213) 894-3391

JOHN P. CRONAN
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>    v.<br><br>Michael Lacey, et al.,<br><br>    Defendants. | CR-18-422-PHX-SPL (BSB)<br><br>**UNITED STATES' RESPONSE TO DEFENDANT LACEY'S MOTION FOR DISCLOSURE OF DOCUMENTS RELATED TO CARL FERRER'S WAIVER OF PRIVILEGE MATERIAL TO DISQUALIFICATION**<br><br>**[CR 202]** |

Preliminary Statement

Defendant Michael Lacey's Motion for Disclosure of Documents Related to Carl Ferrer's Waiver of Privilege Material to Disqualification should be denied for two essential reasons. First, the motion is based on a flawed theory of "materiality" – namely, the notion

that the incurable ethical conflict identified in the United States' Motion to Disqualify Counsel (CR 118) would somehow disappear if Lacey could show Carl Ferrer had waived his personal attorney-client privilege. Lacey's materiality theory is based on a too-cramped conception of Ethical Rule 1.9(a) of the Arizona Rules of Professional Conduct, Ariz. S. Ct. R. 42. ER 1.9(a) commands that "[a] lawyer who has formerly represented a client in a matter ***shall not*** thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." ER 1.9(a) (emphasis added). ER 1.9(a) is mandatory and applicable regardless of whether Ferrer disclosed *any* confidences to prior counsel. *See Foulke v. Knuck*, 784 P.2d 723, 728 (Ariz. Ct. App. 1989) (discussing "the mandatory nature of ER 1.9(a)"; "[t]he rule does not require that confidences and secrets be divulged in order for a conflict to exist or for disqualification to be proper"); *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980) ("[I]t matters not whether confidences were in fact imparted to the lawyer by the client. The substantial relationship between the two representations is itself sufficient to disqualify.").

Moreover, attorney-client privilege and client confidentiality are entirely distinct concepts. ER 1.6's "sweep is much broader than the attorney-client privilege," and waiver of attorney-client privilege does *not* vitiate an attorney's ethical duties under ERs 1.6 and 1.9 to safeguard confidences and secrets learned during a client representation. *See* Ariz. Ethics Op. 97-05.[1]  Further, ER 1.9(a) is based not only on the duty of confidentiality, but also on the duty of loyalty to former clients and the need to protect the integrity and fairness of legal proceedings that could be compromised when an attorney represents a client adverse to a former client in a substantially related matter.

Simply put, regardless of whether Ferrer waived the attorney-client privilege in any respect, his former law firms – Davis Wright Tremaine ("DWT") and Henze Cook Murphy ("HCM") – have ongoing and comprehensive duties to safeguard all information they

---

[1] The Arizona Ethics Opinions cited in this Response are available at http://www.azbar.org/Ethics/EthicsOpinions.

acquired about Ferrer when they represented him.  The "broad, prophylactic approach" of ER 1.9(a) requires DWT's and HCM's disqualification to avoid even the possibility that they might use such information adversely to Ferrer. *See* Ariz. Ethics Op. 91-05.  Accordingly, the discovery Lacey seeks is *not* "material" to the disqualification motion.

Second, Ferrer has not waived – but instead has expressly reserved – his personal attorney-client privilege. On April 5, 2018, Ferrer executed a two-page Waiver of Attorney Client Privilege.  In the last paragraph, he expressly made clear he was only waiving Backpage's corporate attorney-client privilege and not waiving his personal attorney-client privilege, either with his current attorneys (from the Clarence Dyer law firm) or any attorneys who previously represented him on an individual basis: "*I further state that this waiver does not apply to any aspect…of my personal attorney-client relationship with attorneys who have represented me in the past or who currently represent me*…." CR 174-2 at 5-6 (emphasis added).  Lacey cites a statement from a separate Proffer Agreement to assert Ferrer waived his personal attorney-client privilege.  As explained below (and in CR 192 at 7-8), the Proffer Agreement only applied to "communications with any attorney or law firm that represented Backpage.com, or any related entity."  Even if the language could be construed as encompassing Ferrer's personal attorney-client privilege, it simply indicated that, during Ferrer's proffer sessions with the government, he would discuss matters related to these firms *if asked to do so*.  This topic, however, was never broached during the proffer sessions; accordingly, nothing was waived.  If the Court has any doubts, the government is prepared to submit for the Court's *in camera*, *ex parte* review the 302 interview memoranda from Ferrer's proffer sessions.  These memoranda will show that nothing about Ferrer's personal legal representations was discussed.  Lacey's motion should be denied.

## Factual Background

Since 2010, Ferrer has been named as a defendant, in his personal capacity, in at least ten lawsuits in state and federal courts across the country.  CR 118 at 3-5.  DWT and HCM repeatedly represented Ferrer in those lawsuits. CR 118 at 3-5.  Lawyers from DWT

and HCM prepared Ferrer to testify orally and/or in writing; provided legal advice to Ferrer; and otherwise advocated for Ferrer and defended his interests in those cases. CR 118 at 3-5. These matters involved claims or investigations concerning Backpage.com ("Backpage") and Ferrer's involvement in facilitating prostitution; several of the civil lawsuits were filed by victims who had been trafficked via Backpage. CR 118 at 3-5.

On March 28, 2018, a grand jury in the District of Arizona issued a 61-page, 93-count indictment charging Lacey and six other defendants with facilitating prostitution, money laundering and conspiracy offenses arising from their years-long operation of Backpage, which had become notorious as the internet's leading source of prostitution advertisements. CR 1 at 1-2. Backpage was co-founded by Lacey, Jim Larkin and Ferrer in 2004. CR 1 at 2. Lacey and Larkin purported to sell Backpage to entities controlled by Ferrer in 2015, but they continued to retain significant control over the website and received tens of millions of dollars of Backpage-related distributions. CR 1 at 2, 7-8.

On April 5, 2018, Ferrer entered into a cooperation-based plea agreement with the government. CR 18-464-PHX-SPL, CR 7. In the factual basis of his plea agreement, Ferrer expressly implicated Lacey and Larkin in the knowing facilitation of prostitution crimes committed by Backpage's advertising customers, and in money laundering offenses concerning hundreds of millions of dollars in Backpage advertising-related revenue. CR 18-464-PHX-SPL, CR 7 at 12-14. It is anticipated that Ferrer will be a key prosecution witness against Lacey and Larkin at trial. CR 118 at 2, 5-6. Accordingly, Lacey and Larkin's interests are directly and materially adverse to Ferrer's in this prosecution.

Notwithstanding this stark adversity, the two law firms that formerly represented Ferrer in his personal capacity in the lawsuits referenced above – DWT and HCM – entered appearances for Lacey and Larkin in this case. CR 118 at 7.

Because the case law makes clear that prosecutors should bring conflict-of-interest issues to the Court's attention as soon as they become apparent, and have faulted prosecutors (and reversed convictions) for failing to do so or waiting until the eve of trial, the United States promptly met and conferred with defense counsel, and filed a motion to

disqualify the DWT and HCM firms on April 25, 2018. CR 118; *see* CR 202-2 at 3-4.

On May 1, 2018, counsel for Andrew Padilla, one of Lacey's co-defendants, wrote the government on behalf of all the defendants to seek production of 12 categories of documents that, in Padilla's counsel's view, "are necessary in order to properly prepare the response" to the motion to disqualify DWT and HCM. CR 202-1 at 1. The one-paragraph letter did not explain why the requested documents were "necessary" – or even relevant – to the motion. CR 202-1 at 1. Government counsel met with Padilla's counsel on May 4, 2018 and reiterated that defendants had provided no rationale for seeking the documents. CR 202-2 at 1. On May 14, 2018, the government again pointed this out in a letter to Padilla's counsel, and invited the defense to "articulate why [the requested documents] might be subject to discovery under the relevant rules of criminal discovery." CR 202-2 at 1. Defense counsel did not reply to the government's letter.

Instead, Lacey and Larkin filed two motions seeking extensions to respond to the disqualification motion, and obtained six weeks to respond. *See* CR 172 at 1. On June 6, 2018, Lacey, Larkin, Padilla and HCM filed responses to the disqualification motion. CRs 174, 176-77, 180. The government filed replies on June 13, 2018. CRs 192-94.

On June 28, 2018, two weeks *after* the disqualification motion had been fully briefed, Lacey filed the instant motion. CR 202. Lacey now claims that the disqualification motion cannot be decided until he obtains the discovery described in his motion. In effect, his motion operates as an impermissible sur-reply regarding disqualification – and serves to further prolong the parties' litigation regarding DWT's and HCM's stark conflict.

Argument

**I.    LACEY'S ASSERTION THAT THE REQUESTED DISCOVERY IS "MATERIAL" TO THE DISQUALIFICATION MOTION LACKS MERIT.**

Lacey asserts that the defense is entitled, under Fed. R. Crim. P. 16, to "an order compelling the government to produce all documents pertaining to Carl Ferrer's waiver of the attorney-client and work-product privileges as material to resolution of the Government's Motion to Disqualify." CR 202 at 1. He claims "[t]he record on

disqualification is incomplete because defendants and this Court lack material information to determine whether disqualification is necessary; namely, the extent to which Mr. Ferrer has waived privilege." CR 202 at 1-2. As Lacey knows, the government has long contended that Ferrer waived Backpage's *corporate* attorney-client privilege. *See, e.g.*, CR 192 at 7-8. Accordingly, Lacey's motion appears to be premised on the theory that if Ferrer also waived his *personal* attorney-client privilege, then ER 1.9(a) would no longer apply and require DWT's and HCM's disqualification. *See* CR 202 at 6. For several reasons, Lacey's theory is fundamentally incorrect and his motion should be denied.

First, Lacey ignores the text and structure of ER 1.9. ER 1.9(a) applies – and requires disqualification – when a lawyer who has formerly represented a client in a matter thereafter "represent[s] another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." ER 1.9(a). ER 1.9(a) does not expressly reference confidential information. On its face, it requires disqualification regardless of whether the lawyer actually received or possesses any confidential information about his or her former client, and regardless of whether subsequent events have rendered any such information non-confidential. *Foulke*, 784 P.2d at 728 ("[t]he rule does not require that confidences and secrets be divulged in order for a conflict to exist or for disqualification to be proper"). While separate parts of ER 1.9 – specifically, ER 1.9(b) and 1.9(c) – address conflicts arising from the acquisition of confidential and other information in a former representation, mandatory disqualification under ER 1.9(a) does not depend on whether the lawyer actually possesses confidences of the former client. *Foulke*, 784 P.2d at 727 (noting that ER 1.9(a) establishes an "absolute prohibition" against representation falling within its terms); *Trone*, 621 F.2d at 999.

Second, Lacey's theory that waiver of privilege vitiates ER 1.9(a) fundamentally misapprehends the critical distinction between the evidentiary attorney-client privilege codified in A.R.S. §§ 12-2234 and 13-4062(2), and the "much broader" protections of ER 1.6. Ariz. Ethics Op. 97-05. "They are entirely separate legal concepts." *Id.* "ER 1.6 is much broader than the attorney-client privilege. It protects all information relating to the

representation against even non-compulsory disclosure." *Samaritan Found. v. Goodfarb*, 862 P.2d 870, 879 (Ariz. S. Ct. 1993). ER 1.6 extends "'not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.'" Ariz. Ethics Op. 97-05 (quoting ER 1.6, Comment). *See also* Ariz. Ethics Op. 00-11 (ER 1.6 applies to "all information relating to representation, regardless of the fact that the information can be discovered elsewhere"). The rule "imposes confidentiality on information relating to the representation even if it is acquired before or after the relationship existed" and "does not require the client to indicate information is to be confidential." Ariz. Ethics Op. 97-05.

Third, Lacey's theory ignores other duties and interests that ER 1.9(a) embodies, including an attorney's duty of loyalty to former clients and the strong public interest in maintaining the integrity and fairness of legal proceedings. As recognized in *T. C. Theatre Corp. v. Warner Bros. Pictures* – "the seminal case in the area of former client representation," *Foulke*, 784 P.2d at 728 n.2 – "[a] lawyer's *duty of absolute loyalty* to his client's interests does not end with his retainer. He is enjoined for all time, except as he may be released by law, from disclosing matters revealed to him by reason of the confidential relationship. Related to this principle is the rule that where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation, the latter will be prohibited." *T. C. Theatre*, 113 F. Supp. 265, 268 (S.D.N.Y. 1953) (emphasis added). *See also Trone*, 621 F.2d at 998-99 ("Confidentiality, however, is not the only aspect of the professional tie preserved by the disqualification rule", and a lawyer's professional commitment to his or her clients "is endangered, if the possibility exists that the lawyer will change sides later in a substantially related matter....From this standpoint it matters not whether confidences were in fact imparted to the lawyer by the client. The substantial relationship between the two representations is itself sufficient to disqualify.").

Fourth, for all of these reasons, "[d]isqualification does not depend upon proof of the abuse of confidential information. Because of the sensitivity of client confidence and

the profession's institutional need to avoid even the appearance of a breach of confidence, disqualification is required when lawyers change sides in factually related cases." *Trone*, 621 F.2d at 1001. Accordingly, courts have ordered disqualification under ER 1.9 even where the former client's communications with counsel have lost their confidentiality. *See, e.g., United States v. Fawell*, 2002 WL 1284388, at *6 (N.D. Ill. 2002) ("[T]he court does not agree that the [loss of confidentiality] eliminates the conflict resulting from Altheimer's prior representation…That suggestion assumes that the purpose of Rule 1.9(a) is limited to protecting the former client's secrets. Other courts and commentators do not view the purpose so narrowly; they conclude instead that the prohibition against representation of another person in a same or substantially related matter relates both to the lawyer's duty of confidentiality and his or her duty of loyalty to that former client."). *See also Touchcom, Inc. v. Bereskin & Parr*, 299 Fed. App'x 953, 955 (Fed. Cir. 2008) (granting disqualification motion and emphasizing that Rule 1.9 "was designed not only to protect client confidences, but to establish broader standards of attorney loyalty"); *Sec. Investor Protection Corp. v. R.D. Kushnir & Co.*, 246 B.R. 582, 589 (N.D. Ill. Bkr. Ct. 2000) ("Rule 1.9 is not limited to situations where a former client would be harmed by the divulgence of confidential information….[T]he loyalty principle is an independent and sufficient basis for precluding a lawyer from accepting an adverse subsequent representation."); *Selby v. Revlon Consumer Prods. Corp.*, 6 F. Supp. 2d 577, 582 (N.D. Tex. 1997) ("[T]he ethical obligations embodied in ABA Rule 1.9 go far beyond the preservation of client confidences. The rule also concerns the duty of loyalty to a former client.").

In *Alexander v. Super. Ct*., 685 P.2d 1309, 1314-17 (Ariz. S. Ct. 1984), the court ruled that disqualification was not warranted where the attorney had received only *one* item of ostensibly confidential information, which his former one-time client later disclosed in a publicly-filed affidavit. *Id*. at 1314-17. Unlike the attorney in *Alexander*, multiple attorneys from DWT and HCM represented their former client – Ferrer – in various lawsuits against Ferrer in his personal capacity across the country. See CR 118 at 3-5. These law firms have acquired significant amounts of information relating to their

representations of Ferrer over the years. Even if Ferrer has somehow waived his personal attorney-client privilege, that waiver would not absolve DTW and HCM of their ethical duties under ERs 1.6 and 1.9.

Subsequent Arizona cases confirm that ER 1.9(a) requires disqualification where the current and former representations are substantially related, regardless of whether the former client provided confidential information to the attorney. In *Foulke*, decided after *Alexander*, the Arizona Court of Appeals rejected the contention disqualification wasn't necessary because "no confidences or secrets were divulged, except perhaps those which are now a matter of public record and no longer privileged, and therefore no 'true conflict exists.'" 784 P.2d at 728. The court held this contention "fails to recognize the mandatory nature of ER 1.9(a). The rule does not require that confidences and secrets be divulged in order for a conflict to exist or for disqualification to be proper." *Id*. Rather, "[r]egardless of what was communicated during the representation of the former client, the rule prohibits subsequent representation of an individual whose interests are substantially adverse to those of the former client." *Id*. *Foulke* quoted *T.C. Theatre Corp.* as stating:

> [T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent.

*Id.* (quoting *T.C. Theater*, 113 F. Supp. 265, 268-69 (S.D.N.Y. 1953).

*Foulke* emphasized the "shall not" of ER 1.9(a) "incorporates the *T.C. Theatre* presumption of receipt of confidential information; the attorney is not given the option of showing that there is no danger of misuse of confidential information because he never received any." *Id*. This principle has been repeated in numerous Arizona federal and state decisions. *See, e.g.*, *In re Ockrassa*, 799 P.2d 1350, 1352 (Ariz. S. Ct. 1990) (noting "[t]he majority of courts that have considered the issue have held that the presumption that a lawyer received such confidences may not be rebutted"); *Meschkow & Gresham, P.L.C. v. Fran. Capital Corp.*, 2010 WL 11515666, at *2 (D. Ariz. June 4, 2010) (disqualifying law

- 9 -

firm and rejecting screening); *Denny's, Inc. v. Kennedy Restaurants, L.L.C.*, 2009 WL 10673455, at *5 (D. Ariz. June 16, 2009) (granting disqualification under ER 1.9(a)).

Fifth, the only authority Lacey cites in support of his materiality theory consists of a single footnote that misapprehends Arizona law regarding disqualification. Lacey writes:

> Arizona E.R. 1.9 is solely "for the protection of clients." Ariz. Ethics Op. 91-05. In particular, the Arizona State Bar has opined that "[t]he duty of confidentiality is the only duty owed by an attorney to a former client." Ariz. Ethics Op. 92-03 (emphasis added). Consequently, disqualification is unnecessary when "confidential information ... is not in jeopardy." *Id*.

CR 202 at 4 n.1. Ironically, the cited Ethics Opinions demonstrate precisely why DWT and HCM are subject to mandatory disqualification regardless of whether they received or possess confidential information regarding Ferrer.

The first opinion, Ariz. Ethics Op. 91-05, emphasizes the automatic nature of disqualification in situations like this. It considered whether a lawyer whose partner formerly represented a bookkeeper in IRS proceedings involving unpaid payroll taxes owed by her employer's businesses could represent the employer in a financial fraud prosecution in which the bookkeeper would serve as a prosecution witness. The lawyer avowed that he never received any information regarding the firm's prior representation of the bookkeeper. While noting, as Lacey does, that ER 1.9(a) was adopted "for the protection of clients," the Opinion continued: "[The rule] seeks to assure clients that their lawyers will not use confidential information against them in a subsequent proceeding. **To accomplish this important objective, the rule takes a broad, prophylactic approach**." *Id*. (emphasis added). Rather than merely prohibiting the lawyer from using confidential information against his or her former client, "**the rule prohibits the lawyer from even entering into a relationship where such misuse is possible**. The former client is thus protected not only from the misuse of his confidences, but also from the possibility of such misuse." *Id*. (emphasis added). The Opinion concluded:

> (1) lawyer A may not ethically continue to represent D over the objection of W, a witness in the prosecution against D and a former client of A's law firm; (2) lawyer A may not, with ethical propriety, conduct the cross examination of W, question her motives and competency to testify, and comment on her testimony and demeanor in final summation to the jury; and (3) in response

> to the question whether there are any restrictions on examination of W other than A's obvious obligation not to disclose privileged information, we respond that there are indeed additional restrictions. ***There is a complete prohibition. A may not represent D in the current criminal proceeding***.

*Id*. (emphasis added). The Opinion also concluded the involvement of a lawyer from another law firm as co-counsel for the employer would *not* obviate lawyer A's conflict. *Id.*

Lacey also misreads Ariz. Ethics Op. 92-03, which underscores the client-protective focus of ER 1.9. The Opinion makes clear that under ER 1.9, "if the two representations are substantially related, it is presumed that confidentiality will be impinged." *Id*. The Opinion emphasizes the mandatory nature of disqualification in cases where – as here – the new matter is "substantially related" to the former representation: "Because B is a former client of the inquiring attorney, he must disqualify himself from a representation which is adverse to B [if] the subject matter of the new representation is substantially related to that of the former representation…" *Id.*

Lacey's citations to cases holding disclosures of attorney-client privileged documents to the government waives the privilege "as to the world at large" miss the mark. CR 202 at 8-9. Even if Ferrer waived his personal attorney-client privilege by disclosing information to the government (which he did not, as discussed in Part II below), ER 1.9(a) would still apply and require disqualification for the reasons discussed above.

The conflict posed by DWT's continued representation of Lacey is so palpable that the Washington state court in *R.O. and K.M. v. Medalist Holdings, Inc., et al*., No. 17-2-04897-1 (Wash. Super. Ct.), a Backpage-related civil case, recently disqualified DWT from representing Lacey and Larkin based on DWT's prior representation of Ferrer. In a written order issued June 28, 2018, and after reviewing *in camera* "supporting materials" submitted by DWT, the court "conclude[d] that continued representation of the Medalist Defendants [including Lacey and Larkin] by [DWT] is impermissible pursuant to the Rules of Professional Conduct," and disqualified DWT "from continuing to represent any parties in this litigation, including the Medalist Defendants." Exhibit 1 at 12-13. The court found that "Defense counsel has jointly represented all defendants in numerous lawsuits across the country that are also substantially related to the facts and claims in this litigation and

the federal criminal proceedings.  These past and current representations are relevantly interconnected such that defense counsel is familiar with both the Backpage.com Defendants' [including Ferrer's] and Medalist Defendants' pattern of conduct as it relates to the claims in this litigation." Exhibit 1 at 13.  The court held "that there is a high possibility that [DWT] will encounter an impermissible conflict of interest jeopardizing the effective administration of justice if they continue to represent the Medalist Defendants [including Lacey and Larkin] in this litigation." Exhibit 1 at 13-14.

The court also noted that DWT continues to possess "two terabytes of data" pertaining to Backpage, despite its withdrawal from representing Ferrer and Backpage in the *R.O.* litigation, and ordered DWT to preserve that data. Exhibit 1 at 6-7.  Two terabytes is roughly the equivalent of 100 million pages.[2]

The bottom line is that disqualification is required regardless of whether DWT and HCM ever possessed confidential information about Ferrer.  Lacey's motion fails for this reason alone.

## II. ALTERNATIVELY, FERRER DID NOT WAIVE HIS *PERSONAL* ATTORNEY-CLIENT PRIVILEGE.

Second, Lacey's motion also should be denied because Ferrer has not waived his personal attorney-client privilege.  On April 5, 2018, Ferrer executed a two-page document entitled "Waiver of Attorney Client Privilege."  In the last paragraph, he made clear that he was only waiving Backpage's corporate attorney-client privilege and was not waiving his personal attorney-client privilege, either with his current attorneys (from the Clarence Dyer law firm) or with any attorneys who previously represented him on an individual basis: "*I further state that this waiver does not apply to any aspect…of my personal attorney-client relationship with attorneys who have represented me in the past or who currently represent me….*" CR 174-2 at 5-6 (emphasis added).

Lacey identifies a separate document—a "proffer agreement" that Ferrer executed

---

[2] *See Criminal E-Discovery: A Pocket Guide for Judges*, at 14 n.35 (Federal Judicial Center 2015), https://www.fjc.gov/sites/default/files/2016/Criminal%20e-Discovery.pdf.

1  on April 5, 2018—as the basis for his claim that Ferrer has waived his personal attorney-
2  client privilege. Lacey points to the proffer agreement's second paragraph, which states:

> Mr. Ferrer voluntarily waives all claims of attorney-client privilege, whether in his personal or official capacity as the Chief Executive Officer of Backpage.com, LLC ***as to communications with any attorney or law firm that represented Backpage.com, or any related entity***, where such communications concerned or related to Backpage.com or any related entity.

CR 174-2 at ¶ 2 (emphasis added). It was the parties' intention that this language would simply track the approach set forth in the formal "Waiver of Attorney Client Privilege" document—that is, it would only waive Backpage's corporate attorney-client privilege but not Ferrer's personal privilege. *See* CR 193-9 at 7,¶ 45 (Ferrer Declaration). This is why the waiver only applied to "communications with any attorney or law firm that represented Backpage.com, or any related entity." It was not meant to apply to attorneys and law firms that represented Ferrer in a personal capacity (such as DWT or HCM). The prefatory language at the beginning of the paragraph, discussing Ferrer's "personal or official capacity," was simply meant to demonstrate that Ferrer had a basis for effectuating the corporate privilege waiver.

Even if the language in the proffer agreement encompassed Ferrer's personal attorney-client privilege, the waiver was not irrevocable or permanent—it was simply a conditional agreement that, during Ferrer's proffer sessions with the government, he would agree to discuss matters related to these firms *if asked to do so*. This topic, however, was never broached during Ferrer's proffer sessions. Accordingly, nothing has been waived.

Lacey asserts that the defense should not be "required to accept the government's description of the scope of the waiver that has been effected," CR 202 at 11, and he seeks "disclosure of any documents summarizing statements Mr. Ferrer made to the government or third parties…during proffer sessions with the government." CR 202 at 10. This argument is unavailing. Lacey has already entered into a stipulated scheduling order providing that interview reports need not be produced by the government until February 2019. *See* CR 131 at 2-3. (It should be noted that the government's agreement to provide the interview reports by February 2019 was a significant concession—under Rule 16(a)(2)

and the Jencks Act, witness statements ordinarily aren't discoverable until trial.) Requiring the premature disclosure of the reports from Ferrer's interviews (which Ferrer has not yet reviewed or adopted) would not only violate this stipulation, but it would be unfairly prejudicial to the government. Among other things, the government is conducting further investigation and intends to seek a superseding indictment and/or a separate indictment of one or more other individuals relating to Backpage. In addition, state prosecutorial agencies in California and Texas are conducting ongoing investigations of various individuals relating to Backpage.

Nevertheless, to the extent the Court determines that review of the Ferrer 302s may assist in resolving the instant motion, the government is willing to provide the non-finalized Ferrer 302s in its possession to the Court on an *ex parte* basis for *in camera* review. Such review will show that Ferrer never discussed, during his interviews with the government, legal advice that he sought or received from DWT and HCM during the lawsuits in which they represented him in his personal capacity. In other words, the Court's review will confirm that there has been no waiver of Ferrer's *personal* attorney-client privilege.

Lacey also requests the sealed "Cooperation Addendum" to Ferrer's plea agreement. CR 202 at 10. The government is taking steps to unseal this document for production to the defense.

Finally, to the extent not otherwise addressed above, Lacey's document requests and the government's responses are as follows:

1. <u>All "FD-302 Forms" and other documents evidencing communications from Ferrer or his representatives to the government "concerning legal representation of Backpage and its related entities." CR 202 at 12</u>.

As noted, Lacey previously agreed that the 302s from Ferrer's interviews need not be produced until February 2019. Moreover, Lacey's current motion does not even attempt to explain why Ferrer's communications with the government "concerning legal representation of Backpage" could have anything to do with the government's disqualification motion. The government concedes Ferrer "has executed a broad waiver of

the *corporate* attorney-client privilege possessed by Backpage.com, LLC and various other Backpage-related entities." CR 192-5 at 2. The instant motion, however, concerns whether Ferrer waived his *personal* attorney-client privilege, and does not provide a Rule 16 basis for this request. *Cf. United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (describing Rule 16 requirements; "neither a general description…nor conclusory allegations" suffice).

2. <u>"All documents including engagement letters, common interest or joint defense agreements or related communications among counsel, parties or others related to joint representation or defense of Backpage and its related entities that Mr. Ferrer, his counsel, or any other representative of Mr. Ferrer provided to, disclosed or referenced in communications with the government." CR 202 at 12.</u>

The government never received any engagement letters, common interest or joint defense agreements. CR 202-2 at 2 (the government "has not received a copy of the actual JDA or any other common interest agreement"). The government has produced its Proffer/Interview Agreement with Ferrer, which states Ferrer "shall not" discuss JDA-protected material. CR 202-2 at 2; CR 202-3 at 1, ¶ 2. The instant motion does not articulate, under Rule 16 or any other rule of criminal discovery, why the requested documents are relevant and discoverable.

3. <u>"All notes or reports or transcripts of Mr. Ferrer's discussions with any third party, including all government agents." CR 202 at 12.</u>

For the reasons discussed above, Lacey is not entitled to the draft 302s from Ferrer's interviews with the government. Moreover, the government is not required to disclose rough "notes"; nor is it required to produce materials subject to its own attorney-client privilege or work product protections. *See, e.g.*, 18 U.S.C. § 3500; Fed. R. Crim. P. 16(a)(2) and 26.2(f); *United States v. Griffin,* 659 F.2d 932, 937 (9th Cir. 1981) (Jencks Act applies to formal written narratives or reports that contain "a complete recital" of facts, rather than fragmentary notes); *United States v. Bobadilla-Lopez*, 954 F.2d 519, 522 (9th Cir. 1992) (same); *United States v. Spencer,* 618 F.2d 605, 606 (9th Cir. 1980) (notes that


1  are "not complete" are not covered by Jencks Act).  Finally, the government does not
2  possess "transcripts" of Ferrer's discussions with third parties, apart from deposition
3  transcripts in civil cases equally available to the defense.

4        4. <u>"All documents evidencing communications with the government about
5  letters or other communications sent to counsel, courts or any other parties about
6  representation or putative conflicts of counsel, including all correspondence Mr. Ferrer, his
7  counsel, or any other representative of Mr. Ferrer has sent the government any exchanges
8  of drafts or other communications about such correspondence."</u>  CR 202 at 12-13.

9  Lacey has not even attempted to explain why these materials could have any
10 relevance to the disqualification and privilege-waiver issues pending before the Court.

11        5. <u>"All documents evidencing the date when Mr. Ferrer, his counsel, or any
12 representative of [his] first had communications with the government related to a possible
13 cooperation or with the intention of exploring possible cooperation."</u>  CR 202 at 13.

14 Again, Lacey does not explain how this information is material to whether Ferrer
15 waived his personal attorney-client privilege.  Production is not required by Rule 16.

**III. THE REQUESTED DOCUMENTS ARE NOT "RELEVANT AND MATERIAL" TO THE MOTION TO RESOLVE PRIVILEGE ISSUES.**

18 Without authority or other explanation, Lacey also asserts the requested documents
19 are "relevant and material" to resolution of the United States' Motion to Resolve Attorney-
20 Client Privilege Issues (CR 195).  CR 202 at 6.  That motion asks the Court to confirm that
21 Backpage's corporate attorney-client privilege has been waived for three independent
22 reasons, including Ferrer's execution of a written waiver of the corporate attorney-client
23 privilege possessed by Backpage and related entities.  CR 195 at 2.

24 Lacey contends in the instant motion that "Ferrer lacked the authority to unilaterally
25 waive privilege on behalf of Backpage…."  CR 202 at 8 n.4.  However, he does not explain
26 how Ferrer's communications with the government – which, essentially, is what he seeks
27 in this motion – are relevant to determining Ferrer's authority to waive Backpage's
28 corporate attorney-client privilege.  Lacey presumably already has access to the documents

he intends to rely upon in challenging Ferrer's authority as Backpage's Chief Executive Officer and 100% owner to waive the corporate attorney-client privilege, including documents concerning Lacey and Larkin's sale of Backpage to entities owned by Ferrer in 2015. Simply put, Ferrer's communications with the government are irrelevant and immaterial to determining whether Ferrer was authorized as Backpage's CEO to waive Backpage's corporate attorney-client privilege.

## Conclusion

For the foregoing reasons, Lacey's Motion for Disclosure of Documents Related to Carl Ferrer's Waiver of Privilege Material to Disqualification should be denied.

Respectfully submitted this 12th day of July, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*/s Peter S. Kozinets*
KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW C. STONE
Assistant U.S. Attorneys

JOHN J. KUCERA
Special Assistant U.S. Attorney

JOHN P. CRONAN
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice, Criminal Division
Child Exploitation and Obscenity Section

**Certificate of Service**

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Anne Chapman, Erin McCampbell, James Grant, Lee Stein, Paul Cambria, Robert Corn-Revere, Ronald London, Janey Henze Cook, John Littrell, Kenneth Miller, Thomas Bienart, Jr., Bruce Feder, Michael Kimerer, Rhonda Neff, KC Maxwell, David Wakukawa, Michael Piccarreta, Stephen Weiss.

*s/Melody Karmgard*
U.S. Attorney's Office