1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                   **FOR THE DISTRICT OF ARIZONA**

8

9    United States of America,                    No. CR-18-00422-001-PHX-SPL

10              Plaintiff,                         **ORDER**

11   v.

12   Michael Lacey, et al.,

13              Defendants.

14

15          On April 25, 2018, the Government filed a motion (the "Motion") to disqualify the

16   law firm of Henze Cook Murphy ("HCM") from representing Defendant Michael Lacey

17   ("Lacey") and the law firm of Davis Wright Tremaine ("DWT") from representing Lacey

18   and Defendant James Larkin ("Larkin").  (Doc. 118)  The Motion was fully briefed on July

19   2, 2018, and the Court heard oral argument at a hearing on October 5, 2018.  As set forth

20   below, the Court finds that Carl Ferrer ("Ferrer") expressly waived his right to seek

21   disqualification of HCM and DWT in previous joint representation and joint defense

22   agreements; accordingly, the Motion is denied.

23   **I.      Procedural Background**

24          On March 28, 2018, a federal grand jury returned a ninety-three count indictment

25   against several Defendants, including Lacey and Larkin, alleging that the Defendants

26   engaged in various crimes related to the operation of the website Backpage.com, including

27   conspiracy, facilitating prostitution, and money laundering.  (Doc. 3)  The indictment also

28

includes forfeiture allegations.[1] *Id.* Lacey and Larkin were arrested on April 6, 2018. The docket reflects that attorneys from DWT entered appearances on behalf of Lacey and Larkin, and attorneys from HCM entered appearances on behalf of Lacey.

On April 5, 2018, Ferrer pleaded guilty to conspiracy to facilitate prostitution and money laundering. (CR 18-464-SPL, Doc. 7) The charges against Ferrer were based on his work at Backpage.com ("Backpage"). (Doc. 118 at 6) On April 13, 2018, Ferrer sent letters to DWT and HCM asking that the firms comply with their ethical duties to him, as a former client, and withdraw from representing Lacey and Larkin. (Doc. 118, Exs. A and B) On April 20, 2018, DWT sent Ferrer a letter stating that they would "withdraw from representation in all matters and cases as counsel for you, Backpage.com, LLC, and all related entities owned or controlled by you . . . ." (*Id*. at Ex. U) HCM states that it withdrew from its representation of Backpage.com and Ferrer on October 17, 2017. (Doc. 176 at 7) Neither DWT nor HCM withdrew from their representation of Lacey and Larkin in this matter.

The Government asserts that, before filing the Motion, it met with various defense counsel in an attempt to resolve its concerns regarding potential conflicts of interest. (Doc. 118 at 2; *see also* Doc. 176 at 8 (HCM states that it retained counsel to meet with the Government to discuss HCM performing a limited role representing Lacey)) The parties were not able to resolve these issues, and the Government filed the Motion. (Doc. 118)

### A.    Briefing on the Motion to Disqualify

On June 6, 2018, after receiving extensions of time to respond, Defendants filed responses to the Motion. (Docs. 130, 134, 147, 149, 154, 156, 160, 162, 163, 172, 174, 176, 177, 180) Lacey filed a response in opposition to the Government's Motion directed at HCM, through his separately retained trial counsel. (Doc. 174) HCM also filed a response in opposition to the Motion, through its separate counsel. (Doc. 176) On June 13, 2018, the Government filed a reply to Lacey's and HCM's responses. (Doc. 192)

///

---

[1] On July 25, 2018, the grand jury returned a 100-count superseding indictment against the Defendants. (Doc. 230)

1    On June 6, 2018, Lacey and Larkin, through separate counsel, also filed a joint

2    response to the Government's Motion directed at DWT.  (Doc. 180)  On June 13, 2018, the

3    Government filed a reply to Lacey's and Larkin's response to the Motion directed at DWT.

4    (Doc. 193)  On July 2, 2018, the Government filed a supplement to that reply.  (Doc. 207)

5    Defendant Andrew Padilla ("Padilla"), through separate counsel, also filed a response in

6    opposition to the Government's Motion directed at DWT (Doc. 177), and the Government

7    filed a reply to Padilla's response.  (Doc. 194)  In addition, several Defendants filed

8    joinders to the various responses to the Motion.[2]  On October 5, 2018, the Court heard

9    argument on the pleadings, and the arguments made by each party were taken under

10   advisement.

11   **II.      Motion to Disqualify**

12   The Government argues that each firm's prior representation of Ferrer presents an

13   incurable conflict of interest that should disqualify both firms from participation in this

14   case.  Relying on Ethical Rule 1.9(a) of the Arizona Rules of Professional Conduct (Duties

15   to Former Clients), the Government asserts that HCM and DWT have incurable conflicts

16   of interest because (1) they previously represented Ferrer in substantially related matters,

17   (2) Ferrer's interests as their former client are materially adverse to the interests of their

18   current clients, Lacey and Larkin, because Ferrer has pleaded guilty to criminal conduct

19   related to his work at Backpage and is cooperating with the Government in its pursuit of

20   criminal charges against other Backpage principals, including Lacey and Larkin,[3] and (3)

21   [2]   Defendant Joye Vaught ("Vaught") filed a joinder to Padilla's response to the
     Government's Motion directed at DWT (Doc. 178), and a joinder to Lacey's and Larkin's
22   response to the Motion directed at HCM.  (Doc. 186)  Defendant John "Jed" Brunst
     ("Brunst") filed a joinder to Lacey's and HCM's responses to the Motion directed at HCM,
23   and a joinder to Padilla's response to the Motion directed at DWT.  (Doc. 181)  Padilla
     filed a joinder to Lacey's and HCM's responses to the Motion directed at HCM, and a
24   joinder to Lacey's and Larkin's response to the Motion directed at DWT.  (Doc. 184)
     Lacey and Larkin filed separate joinders to Padilla's response to the Motion directed at
25   DWT.  (Docs. 188, 190)  Finally, Defendant Scott Spears ("Spears") filed a joinder in
     Lacey's and HCM's responses to the Motion directed at HCM, a joinder to Lacey's and
26   Larkin's response to the Motion directed at DWT, and a joinder in Padilla's response to
     the Motion directed at DWT.  (Doc. 191)
27

28   [3]   The Government appears to use "Backpage" to refer generally to the website
     Backpage.com.  (*See* Doc. 118 at 1–2, 6)  The Government asserts that Lacey, Larkin, and
     Ferrer are the founders of the website Backpage.com, and then refers to their "work at

1    Ferrer has not given informed consent, confirmed in writing, to allow HCM and DWT to

2    represent Lacey and Larkin. (Doc. 118 at 2, 8)  The Government also argues that HCM's

3    and DWT's continued representation of Lacey and Larkin in this matter would violate

4    Ethical Rule 1.7(a)(2) of the Arizona Rules of Professional Conduct (Conflicts of Interest:

5    Current Clients) because there is a significant risk that the firms' representation of Lacey

6    and Larkin would be materially limited by their responsibilities to their former client

7    Ferrer.  (*Id*. at 8–9)

8         **A.      Applicable Standards**

9         This Court applies the Arizona Rules of Professional Conduct to evaluate the

10   conduct of attorneys admitted or authorized to practice before it and, therefore, the Court

11   applies these rules to resolve the Government's motion to disqualify.[4]  *See* LRCiv 83.2(e);

12   *Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power Dist.*, 810 F.

13   Supp. 2d 929, 944 (D. Ariz. 2011) ("this Court applies the Arizona ethical rules when

14   evaluating motions to disqualify counsel.") (citations omitted); *Amparano v. ASARCO,*

15   *Inc*., 93 P.3d 1086, 1092 (Ariz. Ct. App. 2004) (courts have "looked to the ethical rules for

16   guidance on disqualification motions.").

17        The preamble to the Arizona ethical rules explains that the rules are designed to

18   provide guidance to lawyers and a structure for regulating conduct, but cautions that "the

19   purpose of the [r]ules can be subverted when they are invoked by opposing parties as

20   procedural weapons."  Ariz. R. Sup. Ct 42, preamble at ¶ 20.  In addition, the Arizona

21   Supreme Court has stated that "[o]nly in extreme circumstances should a party to a lawsuit

22   be allowed to interfere with the attorney-client relationship of his opponent." *Alexander v.*

23   *Superior Court,* 685 P.2d 1309, 1313 (Ariz. 1984).  "The burden is on the moving party to

24

25   Backpage," and "Backpage-related lawsuits." (*Id*. at 2, 3)  The Government also sets forth
     the factual basis from Ferrer's plea agreement in *United States v. Ferrer*, CR 18-464-SPL,
26   in which Ferrer stated, in part, that in 2004 he co-founded "the website
     www.Backpage.com ('Backpage'), along with M.L [Michael Lacey] and J.L. [James
27   Larkin.]"  (Doc. 118 at 6)

28   [4] The Arizona Rules of Professional Conduct, also referred to as the Arizona ethical rules,
     are set forth in Rule 42 of the Rules of the Supreme Court and are cited by rule number and
     the abbreviation "ER."  *See* Ariz. R. Sup. Ct. 42.

1   show sufficient reason why an attorney should be disqualified from representing his [or

2   her] client." *Id.*

### 1.      Ethical Rule 1.9(a)—Duties to Former Clients

Ethical Rule 1.9(a) states that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."  ER 1.9(a). For a conflict to exist pursuant to this provision, the moving party must show: (1) the existence of an attorney-client relationship; (2) that the former representation was "the same or substantially related" to the current litigation; and (3) that the current client's interests are "materially adverse" to the former client's interests.  *Roosevelt*, 810 F. Supp. 2d at 944 (citing *Foulke v. Knuck*, 784 P.2d 723, 726–27 (Ariz. Ct. App. 1989)).

### 2.      Ethical Rule 1.7(a)—Concurrent Conflicts of Interest

Ethical Rule 1.7(a)(2) states that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if . . . there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."  ER 1.7(a)(2).  "Notwithstanding the existence of a concurrent conflict of interest . . . a lawyer may represent a client if each affected client gives informed consent, confirmed in writing."  ER 1.7(b).  However, even with consent, concurrent conflicts are allowed only if "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client," "the representation is not prohibited by law," and "the representation does not involve the assertion of a claim by one client against another client represented by the same lawyer in the same litigation or other proceeding before a tribunal."  ER 1.7(b)(1)-(3). Thus, representation may be undertaken, despite the existence of a conflict, only if the conflict is "consentable."  *Id.*; Cmt 2 (2003 Amendments).

///

- 5 -

**B.** **The Joint Representation Agreement and Joint Defense Agreement**

In response to the Motion, Lacey and Larkin argue that Ferrer previously waived any right to seek disqualification of counsel or assert a conflict of interest against DWT pursuant to certain confidential joint representation and joint defense agreements. (Doc. 180 at 12–13)  Specifically, the Defendants argue that Ferrer was party to a Common Interest and Litigation Management Agreement (the "JRA"), or joint representation agreement, and a joint defense agreement (the "JDA") in which Ferrer waived his right to seek disqualification of counsel in the event that he withdrew from either of the confidential agreements. (Doc. 180 at 13–14)  The JRA was executed by Ferrer on behalf of several corporate entities including Backpage, and the JDA was executed by Ferrer and HCM attorneys on behalf of Ferrer, among other parties.  Both the JRA and JDA were provided to the Court for *in camera* review.

The Ninth Circuit has long recognized that the joint defense privilege is "an extension of the attorney-client privilege," and joint defense agreements allow parties with cohesive interests to share information without waiving confidentiality. *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012).  The "joint defense privilege" is designed to facilitate communication among joint parties regarding matters that are important to protect their interests in litigation.  The concept of a joint defense is not technically a privilege in and of itself, but instead constitutes an exception to the rule on waiver where communications are disclosed to third parties. *Continental Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir. 1964).  A joint defense agreement can be written or oral, but joint defense agreements cannot extend greater protections than the legal privileges on which they rest. *Stepney*, 246 F. Supp. 2d 1069, 1079–80 (N.D. Cal. 2003).

Courts generally encourage parties to enter into written joint defense agreements that, under the advice of separate counsel, allow each defendant the opportunity to fully understand his rights prior to entering into the agreement. *United States v. Almeida*, 341 F.3d 1318, 1327 (11th Cir. 2003); *Stepney*, 246 F. Supp. 2d at 1084–86.  It is well settled that waivers of rights in joint defense agreements are valid to cure conflicts with the ethical

1    rules. *Stepney*, 246 F. Supp. 2d at 1085 (recognizing that waiver provisions are appropriate

2    to avoid conflicts).  Additionally, ER 1.10(c) provides that a disqualification prescribed by

3    ER 1.9 may be waived by the impacted client under the conditions stated in ER 1.7. ER

4    1.10(c).  Ethical Rule 1.7 states that the affected client must give "informed consent,

5    confirmed in writing" to waive a conflict of interest. ER 1.7(b).  Informed consent "denotes

6    the agreement by a person to a proposed course of conduct after the lawyer has

7    communicated adequate information and explanation about the material risks of and

8    reasonably available alternatives to the proposed course of conduct." ER 1.0(e); *See also*

9    *Roosevelt*, 810 F. Supp. 2d at 957 (citing ER 1.7 stating informed consent requires that

10   each affected client be aware of the relevant circumstances and of the material and

11   reasonably foreseeable ways that the conflict could have adverse effects on the interests of

12   that client).

13        The Court finds that the express terms of the JRA and JDA[5] are fatal to the

14   Government's argument for disqualification because the content of these agreements

15   demonstrates that Ferrer waived his right to pursue disqualification against HCM, DWT,

16   and other parties identified in these agreements.    Both the JRA and the JDA anticipated

17   circumstances in which a party to either agreement chose to withdraw.  Without directly

18   quoting the language of the JRA, it is clear to the Court that the plain language of the

19   agreement prevents Ferrer from seeking disqualification of counsel based on any conflict

20   arising out of the JRA.  Similarly, by joining the JDA, the plain language of the agreement

21   demonstrates that Ferrer waived his right to assert that any attorney party to the JDA is

22   barred from continuing his or her representation under the agreement.  Per the terms of the

23   JDA, Ferrer waived his right to seek disqualification as to both HCM and DWT, which

24   were both parties under the terms of the JDA.[6]  Ferrer executed the JRA and JDA in his

25

26   [5] Importantly, the Government does not dispute the existence or validity of either
27   agreement. (Doc. 193 at 7)

     [6] The Court recognizes that neither Lacey (Doc. 174) nor HCM (Doc. 176) raised the issue
28   of the JDA in their responses to the Motion in defense of HCM. However, the clear terms
     of the JDA demonstrate that HCM was party to the JDA along with DWT.

1    individual capacity and on behalf of Backpage when appropriate.  It is undisputed that

2    Ferrer signed the JDA under advice of counsel. (Doc. 193 at 8)  Therefore, the Court finds

3    that these agreements are valid and enforceable, and that Ferrer's signatures demonstrate

4    his intent to abide by the terms of these agreements.

5         The Government argues that the JRA and JDA are not controlling because the

6    agreements were not signed by DWT. (Doc. 193 at 7)  The Court finds that this argument

7    is unavailing and irrelevant because Ferrer signed the agreements, and, per the terms of

8    each agreement, Ferrer waived his right to seek to disqualify HCM and DWT or assert any

9    future conflicts of interest.  The Government has only provided the Court with precedent

10   in which no joint defense agreements were present, save for a brief summary of the *Henke*

11   case, making each case relied on in the Motion substantively distinguishable from the facts

12   at issue.  To cure this defect, the Government relies on *U.S. v. Ross*, a case inapplicable to

13   circumstances involving a joint defense agreement, for the proposition that it is within the

14   Court's discretion to refuse to accept a conflict waiver where the interests of justice require.

15   *United States v. Ross*, 33 F.3d 1507, 1524 (11th Cir. 1994) (stating that trial courts may

16   refuse waivers of conflicts of interest to ensure adequacy of representation, to protect

17   integrity of court, and to preserve trial judge's interest to be free from future attacks over

18   adequacy of waiver and fairness of trial).  However, the Court declines to exercise its

19   discretion to disregard Ferrer's waiver at this time.

20        The Court finds that Ferrer waived his right to seek disqualification of HCM and

21   DWT or to assert any conflict of interest in this case.  Pursuant to the terms of the JRA and

22   the JDA, the Court finds that Ferrer has provided DWT and HCM with the written informed

23   consent necessary for each firm to continue its participation as counsel.  The Court is

24   confident that allowing HCM and DWT to continue their participation in this case will not

25   run afoul of the interests of justice, and Ferrer's executed JRA and JDA provide the written

26   informed consent necessary to satisfy ER 1.9(a) and ER 1.7(b).

27   ///

28   ///

1   **C.      Government's Arguments in Support of Disqualification**

2         The Court recognizes that it may be difficult for the Government to understand what

3   it cannot see in how the terms of the JRA and the JDA distinguish this decision from the

4   precedent and ethical opinions identified by the Government in the Motion.  First, Arizona

5   Ethics Opinion 91-5 focuses on how ER 1.9 should be used as a shield to protect a former

6   client, but the opinion is silent on any situation in which said former client had expressly

7   waived his right to challenge any continued or future adverse representation by counsel.

8   Similarly, the *Ross*, *Moscony*, *Williams*, and *Alfonzo-Reyes* cases relied on by the

9   Government are silent on the issue of waivers appearing in joint representation or joint

10  defense agreements acting as blanket waivers of future conflicts.  Instead, each of the cases

11  cited by the Government reiterates the Court's power to disregard a defendant's knowing

12  and intelligent conflict waiver. *United States v. Ross*, 33 F.3d 1507, 1524 (11th Cir. 1994);

13  *United States v. Moscony*, 927 F.2d 742, 750 (3d Cir. 1991) (recognizing that the

14  presumption in favor of a defendant's counsel of choice can be overcome, and a trial court

15  may disqualify counsel and reject the defendant's waiver of conflict-free representation);

16  *United States v. Williams*, 81 F.3d 1321, 1325 (4th Cir. 1996) (upholding a district court's

17  decision to disqualify a defendant's choice of counsel due to conflict of interest); *United

18  States v. Alfonzo-Reyes*, 592 F.3d 280, 294 (1st Cir. 2010) (stating that no conflict waiver

19  actually occurred).  The Court finds these cases unpersuasive.

20        The Court does not find that allowing HCM and DWT to continue to participate in

21  this case as auxillary counsel threatens the integrity of the trial process.  The only case that

22  the Government relies on that even mentions a joint defense agreement is the *Henke* case.

23  *United States v. Henke*, 222 F.3d 633 (9th Cir. 2000).  In *Henke*, a client withdrew from a

24  joint defense agreement, and his counsel moved to withdraw from the case. *Id*. at 637.  The

25  Court denied counsel's motion to withdraw, and counsel chose not to cross-examine its

26  former client at trial. *Id*.  The *Henke* decision addressed conflicts that require withdrawal

27  of trial counsel. It did not address the issue of waiver under a joint defense agreement.

28  Further, it has been made clear that neither HCM nor DWT will participate as trial counsel

1  in this matter, and both firms have stated that neither firm will participate in cross-

2  examining Ferrer. (Doc. 176 at 11; Doc. 180 at 28)  Thus, the Court finds that the *Henke*

3  case is also unpersuasive for ordering disqualification.

4  **D.     Conclusion**

5       At this time, the Court declines to decide whether the terms of Ferrer's proffer

6  agreement waived his personal attorney-client privilege.  The Court also finds that the

7  arguments advanced by Padilla are moot per the terms of this Order.  Moving forward, the

8  Court will rely on the representations of HCM, DWT, and their respective counsel that the

9  firms will continue to preserve the confidences of Ferrer as a former client, create ethical

10 walls where necessary, refrain from engaging in trial preparation or participating as trial

11 counsel, and only participate in the limited capacity set forth in the pleadings, without an

12 order from the Court.  Accordingly,

13      **IT IS ORDERED**:

14      That Government's Motion to Disqualify Counsel (Doc. 118) is denied.

15      Dated this 12th day of October, 2018.

16

17

18      Honorable Steven P. Logan
        United States District Judge

19

20

21

22

23

24

25

26

27

28