Thomas H. Bienert, Jr. (CA State Bar No. 135311, admitted *pro hac vice*)
Whitney Z. Bernstein (CA State Bar No. 304917, admitted *pro hac vice*)
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone:     (949) 369-3700
Facsimile:      (949) 369-3701
Email:            tbienert@bienertkatzman.com
                     wbernstein@bienertkatzman.com
*Counsel for James Larkin*


Paul J. Cambria, Jr. (NY State Bar No. 1430909, admitted *pro hac vice*)
Erin McCampbell (NY State Bar No. 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone:     (716) 849-1333
Facsimile:      (716) 855-1580
Email:            pcambria@lglaw.com
                     emccampbell@lglaw.com
*Counsel for Michael Lacey*


Additional counsel listed on next two pages

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. 18-CR-00422-PHX-SMB |
| Plaintiff. | **DEFENDANTS' JOINT STATUS REPORT** |
| v. | Hon. Susan M. Brnovich<br>Date: June 24, 2019<br>Time: 11:00 a.m. |
| Michael Lacey, *et al.*, | |
| Defendants. | |

James C. Grant (Wash. Bar No. 14358; admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Ave, Suite 2200
Seattle, Washington 98101
Telephone:    (206) 757-8096
Facsimile:     (206) 757-7096
Email:          jimgrant@dwt.com
*Counsel for Michael Lacey and James Larkin*


Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE, P.A.
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone:    (602) 257-0135
Email:          bf@federlawpa.com
*Counsel for Scott Spear*


Gary S. Lincenberg (CA State Bar No. 123058, admitted *pro hac vice*)
Ariel A. Neuman (CA State Bar No. 241594, admitted *pro hac vice*)
Gopi K. Panchapakesan (CA State Bar No. 279586, admitted *pro hac vice*)
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone:    (310) 201-2100
Facsimile:     (310) 201-2110
Email:          glincenberg@birdmarella.com
                    aneuman@birdmarella.com
                    gpanchapakesan@birdmarella.com
*Counsel for John Brunst*


David Eisenberg (AZ Bar No. 017218)
DAVID EISENBERG PLC
3550 N. Central Ave., Ste. 1155
Phoenix, Arizona 85012
Telephone:    (602) 237-5076
Facsimile:     (602) 314-6273
Email:          david@deisenbergplc.com
*Counsel for Andrew Padilla*


Additional counsel listed on next page

Joy Malby Bertrand (AZ Bar No. 024181)
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone:   (602)374-5321
Facsimile:    (480)361-4694
Email:         joy.bertrand@gmail.com
*Counsel for Joye Vaught*

## I. INTRODUCTION

At the April 23, 2019 status conference, the Court directed the parties to submit status reports addressing any developments with respect to the outstanding discovery issues raised in Defendants' last status report. There has been little or no change in the government's discovery production since then.[1]

Although Defendants have been seeking access to the Backpage.com computer systems and their data since May 2018 (*see* Exhibit A, Michael Piccarreta's May 1, 2018 Letter to AUSAs Lanza and Rapp), the government's first significant production of that data did not occur until March 2019. The government appears to have produced millions of emails and other documents, plus database tables with some information relating to tens of millions of ad records and millions of images from those ads—not in the usable Relativity format in which the government has made its prior disclosures, but in raw or native formats that are not accessible to or useable by Defendants at present. The government also acknowledges in its status report that it has not yet produced Backpage's payment processing data and says it expects to produce the data to Defendants in mid-July. This outstanding evidence includes the data and systems that received and tracked online payments for Backpage.com and is pertinent to the government's numerous money laundering charges. The government proposes to produce this data (likely tens of millions of records) by providing images of disks from servers, with the data in raw or native formats, not in a Relativity format. In a raw or native format, the data will not be accessible to or useable by Defendants. Moreover, if the payment data is no longer correlated to the ads to which the payments relate, which Defendants expect, the data likely will be meaningless. In short, while the government repeatedly claims it provided 90% of pertinent records a year ago, in fact the government has just recently produced millions of emails and documents, just recently produced tens of millions of records relating to ads, and has yet to produce tens of millions of payment records—and most of that data

---

[1] At 5:00 p.m. Friday evening, the government filed its status report, which included several exhibits providing details about Backpage.com's computer systems that the government had never previously disclosed to Defendants. Because of the timing of the government's disclosure of this new information, Defendants are unable to meaningfully address this here, but will provide a supplemental status report addressing this new information in advance of the June 24, 2019 hearing.

is in a format that is not usable to Defendants (primarily because the government destroyed the computer systems needed to meaningfully access the data).

With respect to the disclosure of *Jencks* Act materials, the government identified the cooperation agreement of one of its cooperating witnesses, but otherwise produced no *Jencks* Act materials, saying it has produced all *Jencks* Act materials except for those pertaining to cooperating witness Carl Ferrer, which it represents it will produce later this month. The upcoming disclosures relating to Ferrer are crucial to the defense investigation, identification of witnesses and evidence, and trial preparation.

Finally, more than a month after the government promised to identify its proposed exhibits by Bates number among the nearly eleven million pages of discovery produced thus far, just three days ago it sent Defendants a new exhibit list. This *incomplete* list identifies *some* of the exhibits by Bates numbers and fails to identify others, but also lists documents the government has *never produced* to Defendants. This list also uses different exhibit numbers than the previous exhibit list, so the lists no longer correlate.

In addition to the discovery inadequacies, two recent developments in this case necessitate a suspension of the current scheduling order. First, on May 2, 2019, this Court relieved prior counsel for Defendants Padilla and Vaught (*see* Doc. No. 559), appointing new counsel for those defendants on May 3, 2019 (*see* Doc. Nos. 565, 566). New counsel, appointed more than a year after this complex case began, needs additional time to get up to speed on the case, to familiarize themselves with the fifteen year history the government claims is pertinent to the charges, and to obtain the requisite infrastructure and databases to begin reviewing the nearly eleven million pages of discovery the government produced before March 2019, as well as the millions of emails and other documents the government produced in March 2019 and the millions of records it proposes to produce in July 2019. Consequently, a motion to continue the trial date is forthcoming. Additionally, on April 22, 2019, Defendants filed a motion to dismiss the Indictment. *See* Doc. Nos. 539, 561. On May 28, 2019, amicus briefs were filed in support of the motion to dismiss by the DKT Liberty Project, Cato Institute, and Reason Foundation and by the Arizona ACLU. *See* Doc. Nos. 624, 625. The motion to dismiss the indictment likely will not be fully briefed before end of June. The Court's ruling on

the motion likely will significantly inform the trajectory of the case and the parties' strategies (and thus discovery needs) going forward.

Finally, as the Court is aware, Defendants Larkin, Lacey, Brunst, and Spear challenged the government's sweeping seizures of their assets in the Central District of California. That challenge now is before the Ninth Circuit Court of Appeals, where the appeal is fully briefed and set for expedited oral argument on July 9, 2019. *See United States v. James Larkin et al.*, Case No. 18-56455. Much like this Court's ruling on the Motion to Dismiss, the Ninth Circuit's ruling will significantly impact the case, both because it may address fundamental First Amendment issues going to the heart of the government's charges and also because it will inform the ability of Larkin, Lacey, Brunst, and Spear to fund their defense, including discovery review, expert retention, and trial preparation. These defendants generally do not have the funds to review discovery, retain experts, and properly prepare for trial. On their shoestring budgets, they have been able to identify experts who are willing to testify in this case, but they have generally been unable to retain them, and cannot do so without additional funds. Further, most of them have incurred significant arrears with their counsel, as counsel conduct a limited review of the discovery to meet scheduling deadlines, but are unable to pay their current counsel, or to retain contract counsel, to conduct the in-depth review of the discovery necessary to locate all exculpatory material. The same is true with trial preparation.

Accordingly, Defendants propose suspending the current scheduling order until discovery is complete, or alternatively, and at a minimum, adjourning all outstanding dates by six months.

## II. STATUS OF DISCOVERY AND JENCKS

### A. The government has not produced *any* additional server discovery.

The Court requested an update as to the status of the review of the servers. Doc. No. 545. Nothing has changed since the parties were last before the Court. At that time, Defendants explained that that government seized at least 106 servers, currently had possession of 46 servers, provided imaged copies of five servers, and was still awaiting approximately 60 additional servers from Amsterdam. Defendants explained that no meaningful "inspection" had occurred of the servers in the government's possession and that the government was refusing to even copy the servers in its possession. Beyond forensic images of that data, Defendants need and requested "access to the

3
DEFENDANTS' JOINT STATUS REPORT

servers in the functioning condition that they were in when the government seized them." *See* Transcript at 28:5-28:7.

To effectively mount a defense to the charges, Defendants need access to the Backpage.com computer systems with the same functionality and in the same condition and configuration they were in at the time of the government's seizures, so Defendants can search the data for exculpatory information. Defendants explained this request in more detail in a May 23, 2019 letter to the government. *See* Exhibit B. As of the time of this filing, the government has not responded.

At a minimum, Defendants need to determine the type of data that resides on each server and whether that data is pertinent to the defense. It is impossible to identify data that might be relevant to the defense without knowing what data is on the servers.[2] Until yesterday, despite repeated requests, the government had not even provided Defendants with an overview of the information that is contained on the servers in its possession. It also now refuses to provide imaged copies of the servers in its possession, despite previous representations that it would do so. *See* Exhibit C, AUSA Rapp's December 10, 2018 Letter, at 2 ("Once all servers are imaged, investigators *will be able to provide hash verified image copies of all imaged drives*. Due to the capacity of the Backpage servers this will be a time intensive undertaking and the *imaged copies will be distributed* over hundreds of hard disk drives." (emphasis added).)

The government only produced imaged copies of five servers on March 8, 2019. The government's decision to produce imaged copies of these servers was guided by information it received from a cooperating witness whom the Defendants have not been able to question. *See* Transcript at 32:9-32:17. Imaged copies of these five servers were delivered in 56 separate hard drives containing 69 terabytes of data. The data is not viewable on a standard computer, and Defendants must retain a forensic expert with adequate infrastructure to even *view* the data. In its December 10, 2018 letter, the government recognized this problem: "These raw database files cannot

---

[2] For example, the information the government provided just yesterday in the exhibits to its status report states that one server contains "email and subpoena data preservation requests." (Doc. 646, Ex. D, p. 7.) Defendants don't believe the government has produced the data from this server, but both email and evidence of Backpage.com's cooperation with law enforcement investigations plainly are relevant to the defense. In light of Backpage.com's extensive cooperation with law enforcement, Defendants expect this data will be voluminous.

simply be reviewed or loaded into a viewer to reconstruct the data. We are currently working on a solution to review these database files and correlate the images posed [sic] to the image server to the posts from the database files." Exhibit C.  Despite acknowledging that Defendants cannot review this evidence, the government has not provided Defendants with access to the data in the same functionality, condition, and configuration it was in at the time of the government's seizures, nor has the government provided any "solution" for correlating the millions of pieces of disparate data contained across any of the imaged hard drives.

Barring technical issues and assuming that these five servers were imaged correctly with no errors, Defendants understand that it would take a forensic expert approximately 1,380-2,760 hours (8-16 months of full time work) and untold costs to forensically analyze the data contained on the 56 hard drives alone.  Further, these hard drives alone are essentially useless without additional information such as how the hard drives were configured in each server, how each server was configured and connected to the other servers, and recreation of the relational codes that made the website and database functional.  None of this would be required to access the data if the government had not destroyed Backpage.com's computer systems.

Moreover, despite the December 3, 2018 deadline for discovery, the government has yet to provide payment processing data from the Backpage.com servers, and other records, related to the dozens of money laundering counts against Defendants.  The government claims Defendants were laundering money, misleading the public, misleading banks, and misusing merchant accounts, but has produced almost no evidence relating to these charges, and none from the online payment processing databases. Defendants have repeatedly requested this information.  The government has represented that it believes the data from the online payment processing databases is contained among the approximately 60 servers that have been forthcoming for months from Amsterdam.  On April 23, 2019, the government indicated that "we'll get that to them hopefully within the next six weeks." Transcript at 34:5-34:6.  The government has not responded to any requests as to the status of the Amsterdam servers (though the government's status report filed yesterday evening provides another proposed timeline as to their arrival), and Defendants have been and presently remain entirely without access to the payment processing data in the same functionality, condition, and

configuration it was in at the time of the government's seizure. Consequently, Defendants cannot begin to adequately prepare their defense to the 48 counts of money laundering charges.

### B. The government has not provided all Bates numbers of its trial exhibits.

At the last hearing, Defendants demonstrated to the Court that most of the government's lengthy trial exhibit list did not include an identifying Bates number that corresponded to the discovery the government had produced. *See* Transcript at 35:25-39:25. On April 23, 2019, the Court directed the government to provide the Bates number of each of its trial exhibits, and the government agreed. *See* Doc. No. 545; Transcript at 43:12-43:14, 42:22-42:23, 46:6-46:8. Defendants reiterated this request in correspondence with the government subsequent to the last hearing.

On the afternoon of May 29—three days before this report was due—the government sent defense counsel a letter purportedly updating their exhibit list. That list presents at least three issues: (1) the list is incomplete, (2) the list cites to Bates prefixes that the government has not produced, and (3) the list reordered and relabeled the government's exhibits, rendering all work done to date to find and identify previously identified exhibits moot. In its ten discovery productions from May 2018 through April 2019, the government has sent nearly eleven million pages of documents, all of which are Bates-stamped with the prefix "DOJ-BP." *See* Exhibit D (collecting the government's discovery production cover letters). Yet its updated, 76-page exhibit list includes 150 exhibits that are identified either with multiple other Bates prefixes that the government has never produced to Defendants or with no Bates page(s) at all.

Defendants' request was and remains for the government to send complete identifying Bates numbers for all trial exhibits of documents it has produced.

### C. No additional Jencks materials have been disclosed.

The Court also requested an update as to the status of the government's *Jencks* Act production. Doc. No. 545. Since the last status conference, the government provided a draft of Daniel Hyer's cooperation addendum and later his signed cooperation addendum. The government neither produced nor identified any additional *Jencks* Act materials and represented that it has produced all *Jencks* Act material in its possession, except for Carl Ferrer's materials which it will produce by the extended deadline of June 25, 2019.

Defendants' ability to prepare their defense is crippled by the government's withholding of its main cooperator's *Jencks* Act materials. The scheduling order to which Defendants agreed contemplated that *Jencks* Act materials would be provided by February 2019. Defendants believe Ferrer is the government's key alleged percipient witness, and Defendants therefore will not be able to make significant decisions as to necessary investigations, witnesses to call, or evidence to rebut Ferrer's claims until Defendants have received and reviewed Ferrer's *Jencks* Act material, which they expect will be voluminous.

### III. REQUEST FOR DEADLINES

The current state of discovery renders undersigned counsel unable to adequately represent Defendants, unable to identify exhibits and witnesses by current deadlines, and unable to identify and bring all motions by current deadlines. Thus, Defendants propose suspending the current scheduling order until the government has complied with its discovery obligations. As the Court noted at the April 23, 2019 hearing, "until the government gets [the Amsterdam] servers in their possession, [it] seems premature to talk about … what is realistic" in terms of the scheduling order. *See* Transcript at 31:12-31:17. Alternatively, in the meantime, Defendants propose extending the outstanding deadlines in the scheduling order by at least six months.

Given the incomplete discovery Defendants have received to date and the lack of clarity from the government, it appears that the government's case is predicated on four main categories of evidence: (1) claims that the Backpage.com website was mostly, if not entirely, ads for prostitution; (2) individual ads as alleged in the Superseding Indictment; (3) a limited number of purported factual witnesses who presumably will say that Defendants were present when certain things were said or done; and (4) a scattershot of inadmissible hearsay conclusions, including news reports, a Senate report, and police investigations of murders and other crimes completely unrelated to the act of publishing.

As to the first category of the government's evidence, claims that the entirety of the Backpage.com website was for prostitution, Defendants accordingly must be able to access the entirety of the website and utilize experts and others to rebut and defend against these claims. Defendants currently do not have access to the website in any format, let alone in the format and

with the same functionality, condition, and configuration as when the government seized it. Regarding the government's reliance on specific cherry-picked advertisements, Defendants need to be able to search the Backpage.com database, with the same functionality it had when the government seized it, to be able to meaningfully investigate each ad, its history, any changes or modifications made to the ad, whether the ad was reported to law enforcement, whether the ad was free or paid, and other potentially exculpatory information. Defendants do not have meaningful access to this type of information now either. As to the government's third category of evidence, its percipient factual witnesses, it is known that Carl Ferrer is the government's key witness. The government has not produced any of Ferrer's statements, interviews, testimony, or *Jencks* Act materials. Once Defendants receive and review this forthcoming voluminous information, Defendants will need to conduct substantial additional investigation into people and things mentioned by Ferrer. Defendants have no ability to do this at present. And finally, regarding the government's reliance on hearsay conclusions of third parties, which comprise the bulk of the government's exhibit and witness lists, Defendants anticipate motion practice challenging admissibility and the government's predicating its case on non-admissible evidence.

As discussed above, it is logical to suspend the briefing schedule until the Court rules on the pending motion to dismiss (Doc. No. 561). That ruling may terminate the case or at least refine the issues, which would then be addressed via further motion practice and litigation, including, but not limited to, motions for grand jury instructions and transcripts. Even if the pending motion to dismiss is not granted, the ruling on the motion may inform the discovery necessary to review for trial.

Moreover, should the case continue past the motion to dismiss, Defendants need time to adequately review discovery produced to date, receive and then review voluminous outstanding discovery, and prepare a trial defense. The failure to receive the additional outstanding discovery and the inability to the access the few databases produced to date with the same functionality and in the same condition and configuration as when they were seized stymies Defendants' ability to prepare. *See, e.g.*, Exhibit B. For counsel for the Defendants to meet their obligations under the Sixth Amendment, it is fundamental that Defendants have access to, and the ability to meaningfully analyze, the data, including ad histories and financial transactions, on which the government's case

is predicated. At present, Defendants are not able to do that. Additionally, Defendants still await a response from the government to their May 23, 2019 letter. *Id.* The government's response to this letter may necessitate forthcoming motions to compel discovery. Defendants intend to file a motion and/or supplement this report in advance of the June 24, 2019 status conference regarding discovery.

Further, additional time also is needed to permit new counsel to obtain the resources and infrastructure needed to review the many millions of documents the government has produced and continues to produce, such as possible assistance from the National Litigation Support Team's Coordinating Discovery Attorney program. New counsel will file a separate motion to continue which will further elaborate on these issues and the need for additional time.

Additionally, the appeal of defendants Larkin, Lacey, Brunst, and Spear is pending before the Ninth Circuit, with expedited oral argument set for July 9, 2019. Because this appeal addresses issues of the First Amendment as it relates to the government's pretrial seizures of publishing assets and current prosecution of publishers, it makes sense to await the Ninth Circuit's ruling. The government's sweeping seizures in the Central District of California have been the subject of substantial litigation. The Ninth Circuit's ruling regarding these seizures will inform the future of the case, as Defendants will obtain the resources needed to the defend the case or will be forced to pursue additional litigation and seek alternate remedies. The Ninth Circuit's decision likely also will clarify the First Amendment interests at issue in this case, impacting many aspects of this case.[3]

As it stands, undersigned counsel are unable to adequately do all that is needed to defend this case by the dates set in the current scheduling order at Doc. No. 131. It would be a denial of due process to force Defendants to go to trial before they are adequately prepared. Accordingly, in light

---

[3] The DKT Liberty Project, Cato Institute, and Reason Foundation also filed an amicus brief in support of the Defendants' appeal. The concluding paragraph of the amicus brief states: "Backpage.com has been repeatedly subjected to prosecutorial attempts to impose criminal liability for what courts have repeatedly recognized is constitutionally protected expression. The government, however, has not stopped with prosecuting Backpage.com. Instead, it appears that the government intends to bankrupt anyone who has ever had anything to do with Backpage.com. The government's unconstitutional seizure of assets and proceeds from Backpage.com and weekly newspapers, then, is simply one more attempt to erode the First Amendment's carefully erected bulwarks around free expression. This Court should not countenance this attempt." *United States v. James Larkin et al.*, Case No. 18-56455, Doc. 29, p. 17-18 (citations omitted).

of the above, and in consideration of the entire record of this case, Defendants respectfully request that the Court suspend the current scheduling order until the government has completed discovery. Alternatively, in the meantime, Defendants request that the Court move all outstanding dates in the scheduling order back by at least six months.

Dated:  June 1, 2019                                  Respectfully submitted,

BIENERT | KATZMAN PC
*s/ Whitney Z. Bernstein*
Whitney Z. Bernstein
Thomas H. Bienert, Jr.
Attorneys for James Larkin

LIPSITZ GREEN SCIME CAMBRIA LLP
*s/ Paul J. Cambria, Jr.*
Paul J. Cambria, Jr.
Erin McCampbell
Attorneys for Michael Lacey

DAVIS WRIGHT TREMAINE LLP
*s/ James C. Grant*
James C. Grant
Attorneys for James Larkin and Michael Lacey

BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG AND RHOW
*s/ Gary S. Lincenberg*
Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
Attorneys for John Brunst

FEDER LAW OFFICE, P.A.
*s/ Bruce Feder*
Bruce Feder
Attorneys for Scott Spear

DAVID EISENBERG PLC
*s/ David Eisenberg*
David Eisenberg
Attorneys for Andrew Padilla

JOY BERTRAND ESQ LLC
*s/ Joy Bertrand*
Joy Bertrand
Attorneys for Joye Vaught

**CERTIFICATE OF SERVICE**

I certify that on this 1st day of June 2019, I electronically transmitted a PDF version of this document to the Clerk of the Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants listed below.

/s/ *Whitney Z. Bernstein*
Whitney Z. Bernstein

Anne Michelle Chapman, anne@mscclaw.com
Erin E. McCampbell, emccampbell@lglaw.com
Anthony R. Bisconti, tbisconti@bienertkatzman.com
Ariel A. Neuman, aan@birdmarella.com
Bruce S. Feder, bf@federlawpa.com
James C. Grant, jimgrant@dwt.com
Lee David Stein, lee@mscclaw.com
Paul J. Cambria, pcambria@lglaw.com
Robert Corn-Revere, bobcornever@dwt.com
Ronald Gary London, ronnielondon@dwt.com
Janey Henze Cook, janey@henzecookmurphy.com
John Lewis Littrell, jlittrell@bmkattorneys.com
Seetha Ramachandran, Seetha.Ramachandran@srz.com
Thomas H. Bienert, Jr. tbienert@bienertkatzman.com
Whitney Z. Bernstein, wbernstein@bienertkatzman.com
Gary S. Lincenberg, glincenberg@birdmarella.com
Gopi K. Panchapakesan, gpanchapakesan@birdmarella.com
Michael D. Kimerer, mdk@kimerer.com
Rhonda Elaine Neff, rneff@kimerer.com
David S. Eisenberg, david@deisenbergplc.com
Joy Malby Bertrand, joyous@mailbag.com
John Jacob Kucera, john.kucera@usdoj.gov
Kevin M. Rapp, Kevin.Rapp@usdoj.com
Margaret Wu Perlmeter, Margaret.perlmeter@usdoj.gov
Reginald E. Jones, reginald.jones4@usdoj.gov
Peter Shawn Kozinets, Peter.Kozinets@usdoj.gov
Andrew C. Stone, andrew.stone@usdoj.gov