Gary S. Lincenberg *(admitted pro hac vice)*
 glincenberg@birdmarella.com
Ariel A. Neuman *(admitted pro hac vice)*
 aneuman@birdmarella.com
Gopi K. Panchapakesan *(admitted pro hac vice)*
 gpanchapakesan@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant John Brunst

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CASE NO. 2:18-cr-00422-PHX-SMB |
| Plaintiff, | **DEFENDANT JOHN BRUNST'S REPLY IN SUPPORT OF MOTION TO DISMISS** |
| vs. | |
| Michael Lacey, *et al.*, | Date:    August 19, 2019<br>Time:    10:00 A.M.<br>Crtrm.: 506 |
| Defendants. | Assigned to Hon. Susan M. Brnovich |

3590267.5

## I.   **INTRODUCTION**

The superseding indictment ("indictment" or "SI") fails to allege the commission of any crime by the Defendants.  *See* Dkt. 561.  In an effort to stave off dismissal, the government's Response (Dkt. 649) makes a number of incorrect claims about the indictment's allegations.  The government's claims about its allegations against John Brunst—the former CFO of a media holding company that at one time owned Backpage—are particularly specious (Dkt. 649 at 40-41), and merit a separate reply.  For example, the Response states that Mr. Brunst "helped implement the process of identifying prostitutes advertising on rival websites who were then contacted and given free advertising on Backpage," but cites to indictment paragraphs that do not mention Mr. Brunst at all.

As the government knows, Mr. Brunst was a financial officer who played no role in any of this alleged activity.  The actual indictment allegations demonstrate that there is no basis for the misguided prosecution of Mr. Brunst.  Simply put, the allegations against Mr. Brunst are facially insufficient, even under the government's erroneous articulation of the relevant legal standard ("specific intent to promote prostitution" [Dkt. 649 at 41:10]).[1]  The charges against Mr. Brunst must be dismissed because the indictment's allegations against him do not meet even this standard.[2]

When examined, the indictment's allegations against Mr. Brunst reduce to his mere presence at a handful of meetings or purported receipt of certain

---

[1]   The government's articulated standard is not accurate, and for that reason Mr. Brunst has joined in the Motion to Dismiss (Dkt. 561) and joins, and incorporates by reference as though fully set forth herein, the other defendants' Reply in support of that Motion (Dkt. 697).

[2]   That the charges against Mr. Brunst track the language of the corresponding statutes cannot save them from dismissal, as discussed in the Motion and other defendants' Reply.

communications in which limited aspects of Backpage's operations were referenced. Neither supports the indictment's charges.[3]

## II.   ARGUMENT

### A.   The Indictment's Allegations Do Not Support the Travel Act Charges Against Mr. Brunst.

The indictment's allegations against Mr. Brunst bear little resemblance to the government's characterization of them in its Response, and do not support the Travel Act charges.

- Where the Response states, "Spear and Brunst specifically understood Backpage's aggregation efforts" (Dkt. 649 at 40:12), the cited indictment paragraph (SI ¶ 42) states only that Mr. Brunst *received* a document from Ferrer which stated:  "Create additional Dallas adult revenue models in LA and NY," and gave the following "detailed summary of how the aggregation process worked"[:]  "Set up free user posting (250 to 500 postings per market)."

- Where the Response states, "As company executives, [Spear and Brunst] *helped implement* the process of identifying prostitutes advertising on rival websites who were then contacted and given free advertising on Backpage" (Dkt. 649 at 40:13-15) (emphasis added), the cited indictment paragraphs include SI ¶ 42 (regarding Mr. Brunst's mere *receipt* of the document discussed above) and several paragraphs that *do not mention Mr. Brunst* (SI ¶¶ 35-36, 40-41, 44).  As the government knows, Mr. Brunst was a financial officer who played no role in any of this alleged activity.

---

[3]   Nowhere is Mr. Brunst alleged to have any knowledge of any of the advertisements referenced in the indictment, or as discussed herein, do the allegations suggest he knew of the alleged aggregation or moderation efforts on which the government attempts to build its case.

- Where the Response states Mr. Spear and Mr. Brunst "were *involved in strategizing* about efforts to expand Backpage's relationship with The Erotic Review and attempts to find similar business relationships" and "*endorsed*" such efforts (Dkt. 649 at 40:15-18) (emphasis added), the cited indictment paragraph (SI ¶ 49) states only that Mr. Brunst *received* a document from Carl Ferrer entitled "Backpage strategic plan" that referenced "TER" without explanation and without any allegation that Mr. Brunst understood or agreed to the contents of the document.

The Response's only description of allegations against Mr. Brunst that resembles an actual allegation in the indictment is that he received from Ferrer a "Google Analytics" report that indicated, among other things, that "The Erotic Review" was the leading "source of referrals to Backpage." Dkt. 649 at 40:18-20 (citing SI ¶¶ 57-58). That allegation, even if true, is meaningless: nowhere does the indictment allege that Mr. Brunst—an accountant—understood the import of the Google Analytics report, what "The Erotic Review" supposedly was, or what the alleged problems were with those referrals. Moreover, Mr. Brunst allegedly received this report in December 2012 (SI ¶ 57), years after any alleged formal relationship between Backpage and "The Erotic Review" had ended (*see* SI ¶ 55 [last discussion by others of "The Erotic Review" alleged to have taken place in June 2009]). In any event, the indictment does not allege that Mr. Brunst had any role in approving or executing Backpage's alleged relationship with "The Erotic Review," at any point in time. It is not and cannot be the case that probable cause of a crime is made out simply by alleging that an executive at a company—with no role in the aggregation or ad moderation process—was one of several people copied on an email.

The Response's remaining assertions regarding the Travel Act violations, including its allegations regarding the moderation process—even though made

4

1   under the misleading heading of "Spear and Brunst"—do not even reference

2   Mr. Brunst.  Dkt. 649 at 40:20-26.

3          Taken together, these allegations do not meet the government's articulated

4   legal standard for the charged offenses:  "specific intent to promote prostitution."

5   (Dkt. 649 at 41:10.)  The government's guilt-by-association approach cannot form

6   the basis for liability against Mr. Brunst, either under its substantive Travel Act

7   counts or the related conspiracy count.  The Travel Act charges against Mr. Brunst

8   must therefore be dismissed.  *United States v. Herrera-Gonzalez*, 263 F.3d 1092,

9   1095 (9th Cir. 2001) ("It is not a crime to be acquainted with criminals or to be

10  physically present when they are committing crimes.  Imprudent, certainly, because

11  of the legal risk of being mistaken for a co-conspirator, but not criminal.  Even

12  living in the same house as the criminals, or living in a room where drugs are stored,

13  is by itself insufficient evidence of conspiracy.").

14         **B.     The Indictment's Allegations Do Not Support the Money**

15                **Laundering Charges Against Mr. Brunst.**

16         With respect to its money laundering charges (which were the only charges

17  against Mr. Brunst in the original indictment), the Response wrongly claims that the

18  indictment's allegations show that Mr. Brunst "played a direct role in Backpage's

19  efforts to "fool financial companies into accepting payments directed to Backpage."

20  Dkt. 649 at 40-41.  The cited underlying allegations show no such thing and do not

21  establish that Mr. Brunst either committed money laundering or conspired to do so.[4]

22  _____

23  [4]   Every money laundering charge in the indictment requires proof either that the

24  defendant knew the relevant proceeds were derived from criminal activity or that he
    intended to promote such activity.  *See* 18 U.S.C. §§ 1956(a)(1)(B)(i), (2)(B)(i) and

25  § 1957(a) (requiring knowledge); 18 U.S.C. § 1956(a)(2)(A) (requiring an intent to
    promote); § 1956(h) (conspiracy charge incorporating elements of underlying

26  money laundering offenses).  None of the indictment allegations referenced in the

27  government's Response support such elements, or the government's claim that
    Mr. Brunst "played a direct role in Backpage's efforts to fool financial companies."

28  Dkt. 649 at 40:27-28.

First, the Response again stretches the indictment's allegations.  Where the Response asserts that Mr. Brunst "strategized with Larkin and Ferrer" about "reconfiguring Backpage's website to fool credit card companies," the cited allegations (SI ¶¶ 178-180) state only that Ferrer *proposed* certain actions, not that Mr. Brunst agreed to them or participated in their implementation.

Second, the Response cites allegations which do not support the government's claim that Mr. Brunst "fooled" financial institutions.  For instance, the Response cites the indictment allegation that Chase Bank decided to cease doing business with Backpage for reputational reasons.  Dkt. 649 at 41.  But the indictment does not allege that Mr. Brunst took or endorsed any action in response to the termination, only that that Carl Ferrer—and no one else—responded by offering users "free ads if they complain."  SI ¶ 135.

Similarly, the Response cites the indictment allegation that Website Technologies processed Backpage funds.  Dkt. 649 at 41 (citing SI ¶ 187).  The Response fails to acknowledge that the indictment never alleges that financial institutions were unaware of Website Technologies' relationship to Backpage.  Likewise, while the Response cites the indictment allegation that Mr. Brunst was a signatory on an account held by Cereus Properties which received money from Website Technologies' accounts (Dkt. 649 at 41, citing SI ¶ 190), there again is no allegation that Cereus Properties' bank was unaware of the source of funds.

Ultimately, the allegations that purportedly support the money laundering charges against Mr. Brunst boil down to Mr. Brunst's alleged receipt of payment processing proposals from Ferrer.  The indictment does not allege—as it must to survive dismissal—that Mr. Brunst endorsed these proposals or took any steps to implement them.  The lack of such allegations against Mr. Brunst requires the dismissal of the money laundering charges, including the related conspiracy count, against him.

1    **III.    <u>CONCLUSION</u>**

2         For the foregoing reasons, and the reasons laid out in Defendants' Motion

3    (Dkt. 561) and Reply (Dkt. 697), the superseding indictment's charges against

4    Mr. Brunst should be dismissed.  The indictment as a whole is deficient under the

5    correct legal standard, as explained in that Motion and Reply, and the charges

6    against Mr. Brunst are deficient, even under the government's (erroneous) standard.

7

8    DATED:  July 17, 2019             Gary S. Lincenberg

9                                     Ariel A. Neuman
                                      Gopi K. Panchapakesan

10                                    Bird, Marella, Boxer, Wolpert, Nessim,
                                      Drooks, Lincenberg & Rhow, P.C.

11

12

13                                    By:  ___*/s/ Ariel A. Neuman*___

14                                           Ariel A. Neuman
                                      Attorneys for Defendant John Brunst

15

16

17

18

19

20

21

22

23

24

25

26

27

28