1
2
3
4
5
6
7
8

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

9

United States of America,

No. CR-18-00422-003-PHX-SMB

10

Plaintiff,

**ORDER**

11

v.

12

Scott Spear,

13

Defendant.

14

15      Pending before the Court is Defendant Scott Spear's Motion for Immediate

16  Discovery Regarding the Government's Abuse of Grand Jury and Trial Subpoenas to

17  Obtain Defense Lawyer Bank Accounts, and for Potential Sanctions.  (Doc. 531, "Mot.")

18  Defendant Padilla Joined the Motion.  (Doc. 544).  The Government filed a Response (Doc.

19  574, "Resp."), and Defendant filed a Reply (Doc. 616, "Reply").  Oral argument was held

20  on September 13, 2019. The Court enters the following Order:

21  **I.      BACKGROUND**

22      Defendants in this case are former officers, executives, and employees of

23  Backpage.com ("Backpage"), a company specializing in online classified advertisements

24  that allegedly built its business model by knowing facilitation of prostitution and human

25  trafficking through "adult" classified ads.  (Doc. 230.)  Scott Spear is a Defendant

26  ("Defendant") in this complex criminal case stemming from a 100-count superseding

27  indictment which includes counts of conspiracy to facilitate and facilitation of prostitution

28  and conspiracy to commit money laundering.  (*Id.*)  Salient here, the superseding

indictment includes forfeiture allegations for "any and all property, real or personal, involved in or traceable to any money laundering offenses."  (Doc. 3 at 57.)

This is far from the only case against Defendants, Backpage, and its affiliates.  Civil and criminal proceedings against Backpage and its former officers are ongoing in multiple jurisdictions.  (Resp. at 3.)  Prior to the unsealing of the superseding indictment, both Backpage and its former CEO Carl Ferrer pleaded guilty to numerous charges.  (Resp. at 2-3.)  As part of his plea deal, Carl Ferrer disclosed that prior to his indictment, Defendants in this case directed him to wire millions of dollars of Backpage proceeds to select attorneys and law firms for "future litigation" to protect those assets from potential government seizure.  (Doc. 230 at ⁋⁋ 140, 144.)  In total, Backpage transferred more than $16 million as retainer fees to law firms nationwide.  Parties to the plea agreement, to include Backpage and Ferrer, admitted guilt and consented to forfeiture of all corporate assets and other property owned or controlled by Backpage.  (Resp. at 2.)  Accordingly, in August 2018, the United States District Court for the Central District of California ("CDCA") issued seizure warrants for specific assets and grand jury subpoenas for attorney bank records involved in or traceable to money laundering in violation of 18 U.S.C §§ 1952, 1956, and 1957.  (CR18-00465, Doc. 22.)  Among these grand jury subpoenas, Defendant's attorney trust account bank records ("IOLTA") were sought.    (Resp. at 4.)  The Government obtained the bank records of Defendant's attorney, Bruce Feder, in March of 2019. (Resp. at 5, Decl. of AUSA John J. Kucera at ⁋ 2.)  After a review of the IOLTA records conducted by AUSA's not assigned to the case before this Court, the Government agreed with Defendants that the IOLTA materials were not relevant and returned them.[1]  (*Id.* at ⁋ 3.)

Defendant now requests an evidentiary hearing to further investigate the purpose of the subpoenas, who authorized them, and to ascertain the actual use and alleged misuse of the IOLTA records.  (Mot. at 1-2.)  He further asks the Court to impose sanctions.  (Mot.

---

[1] The parties disagree as to any impropriety in the return of IOLTA records. Specifically, Defendant maintains the IOLTA records from his account were improperly disseminated to all Defendants' counsel in this case. (Mot. at 1-2.)  Without admitting fault, the Government directed all possible recipients of IOLTA records to ignore and destroy them. (Resp. at 5, Decl. of AUSA John J. Kucera at ⁋ 5.)

at 2.)

## II.  DISCUSSION

Defendant argues that the reasons behind issuance of the subpoenas in August 2018 are unclear.  (Mot. at 2.)  Without citation to support his allegations of impropriety, Defendant infers that the Government sought the IOLTA records to peak behind the curtain of attorney-client privilege and assess Defendant's ability to fund a defense, review expenditures from the account, and analyze opposing counsel's contact with experts and investigators.  (Mot. at 4.)  In response, the Government points to the record to identify the subpoenas and warrants issued, justify their issuance, and clarify the handling of Defendant's IOLTA records upon seizure.  The Court is satisfied with the Government's explanation and sees little reason to hold an evidentiary hearing.  Additionally, the Government correctly underscores that Defendant has no legitimate expectation of privacy to the IOLTA records and that the seizure of the records does not implicate attorney-client privilege.

Fundamentally, an evidentiary hearing to investigate a question with a known answer serves no identifiable purpose.  Despite Defendant's contrary representations, the justification for subpoenas of Defendant's IOLTA records is well-established by the record.  Namely, the CDCA issued the subpoenas to seize tainted assets based on the credible disclosures a key government witness.  This witness, former Backpage CEO Carl Ferrer, had personal knowledge of the illegal source of the assets and participated in attempts to shield them from government seizure by disguising them as retainer fees for imminent litigation.  Notably, Defendant joined other Defendants in this case, and challenged the initial seizure of attorneys' fees before the CDCA in November of 2018.  (Doc. 366.)  Seemingly, Defendant was aware of the circumstances justifying the issuance of the CDCA subpoenas *before* moving for the evidentiary hearing he now requests.  (*See id.*)  Regardless, he should certainly be aware now.  The Government's detailed Response to his Motion points to specific documents in the record describing who authorized the subpoenas, why they were sought, and how the IOLTA records were used. (*See generally*

Resp.)  This Court will not order an evidentiary hearing merely to indulge one defendant's unfounded allegations of pretextual impropriety.

Defendant's Motion cites a solitary case, *United States v. Danielson*, 325 F.3d 1054 (9th Cir. 2003), as support.  But *Danielson* is inapposite.  There, the Ninth Circuit found that the Government violated the defendant's Sixth Amendment Right to Counsel by taking deliberate actions to record and review privileged trial strategy information. *Danielson*, 325 F.3d at 1059.  Notably, the *Danielson* court distinguished *Weatherford v. Bursey*.  429 U.S. 558 (1977) (finding "no purposeful intrusion" on Sixth Amendment rights where there was "no communication of defense strategy to the prosecution").  The Ninth Circuit "construed Weatherford to mean that there is no Sixth Amendment violation unless there is prejudice."  *Danielson*, 325 F.3d at 1069 (finding that "improper interference by the government with the confidential relationship between a criminal defendant and his counsel violates the Sixth Amendment only if interference 'substantially prejudices' the defendant.") (quoting *Williams v. Woodford*, 306 F.3d 665, 683 (9th Cir. 2002)).  Here, unlike in *Danielson*, the Government sought records not protected by the attorney-client privilege—bank records and assets directly implicated in international laundering of tainted funds.  No trial strategy information was affirmatively sought or seized.  The subpoena of non-confidential bank records did not implicate attorney-client privilege.  Additionally, the Government mitigated possible negative consequences in handling the records by prudently screening the AUSA's in this case from examining the IOLTA records at issue.  *Cf. Danielson*, 325 F.3d at 1072 (finding that even where the government may have improperly interfered with the attorney-client relationship of a defendant, the government can avoid the burden of demonstrating non-use of that information "by insulating itself from privileged trial strategy information.").  Defendant does not show he is prejudiced by the Government's seizure of IOLTA records, much less that the seizure proves the Government seizure was meant to deprive Defendant of his right to counsel. (*See* Mot. at 4.)

Defendant does not raise a valid challenge to using grand jury subpoenas to acquire

IOLTA records from a bank.  As the Government points out, there is no Fourth Amendment interest in one's bank records.  *See United States v. Miller*, 425 U.S. 435 (1976).  Bank records simply do not qualify as Defendant's "private papers," or implicate the Fourth Amendment protections that would prohibit the government from obtaining the information at issue through lawful investigative activities.  *See id.* at 443 ("The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government.") (internal citations omitted).  As business records, the IOLTA materials at issue do not qualify as "confidential communications but negotiable instruments to be used in commercial transactions." *Id.* at 442.

Beyond that, bank records of an attorney's client trust account are neither confidential nor generally protected by the attorney-client privilege.  *See, e.g.*, *Reiserer v. United States*, 479 F.3d 1160, 1165 (9th Cir. 2007) ("The attorney-client privilege ordinarily protects neither a client's identity nor information regarding the fee arrangements reached with that client.") (quoting *United States v. Horn (In re Horn)*, 976 F.2d 1314, 1317 (9th Cir. 1992)); *In re Grand Jury Proceedings (Goodman)*, 33 F.3d 1060, 1063 (9th Cir.), cert. denied, 513 U.S. 867 (1994) ("Information regarding the fee arrangement is ordinarily not part of the subject matter of the professional consulting and therefore is not privileged communication though it may evidence wrongdoing by the client.") (quoting *In re Osterhoudt*, 722 F.2d 591, 592 (9th Cir. 1983) (per curium)).  Likewise, the subpoenas themselves do not implicate the attorney-client privilege.  *See Harris v. United States*, 413 F.2d 316, 319-20 (9th Cir. 1969) ("[T]he client, by writing the check which the attorney will later cash or deposit at the bank, has set the check afloat on a sea of strangers . . . .[T]he check is not a confidential communication, as is the communication between attorney and client.").  Here, the bank records are not confidential communications between the attorney and client.  Defendant does not explain how IOLTA records otherwise contain or reveal privileged communication.[2]

---

[2] The seizure of IOLTA records do no fall within the narrow exception outlined by *Baird v. Koerner*, 279 F.2d 623 (9th Cir. 1960).  *Baird* establishes that the identity of the client is privileged information if revelation of that identity would constitute an acknowledgment of guilt of the offense that led the client to seek legal assistance. *Id.* at 633; *see also In re*

1    Lastly, Defendant objects to the disclosure of IOLTA records to the other defense
2    counsel in the case.  Defendant suggests this disclosure creates an ethical dilemma to
3    comply with the Arizona Rules of Professional Conduct.  State created privilege or other
4    ethical duties are not a basis to challenge the grand jury subpoenas.  Neither state law
5    privileges nor rules of professional conduct translate into valid federal evidentiary privilege
6    under the Federal Rules of Evidence.  *See U.S. v. Blackman*, 72 F.3d 1418 (9th Cir. 1995);
7    *In Re Grand Jury Appearance of Alvin S. Michaelson*, 511 F.2d 882, 892-93 (9th Cir.), cert.
8    denied, 421 U.S. 978 (1975).  Moreover, it appears that any disclosure was inadvertent.
9    (Resp. at 5-6.) When made aware of the disclosure, the Government requested that
10   mistaken recipients immediately destroy the IOLTA materials.  (*Id.*)  Even if the disclosure
11   occurred as Defendant alleges, the Government has taken steps to mitigate any impropriety
12   in the disclosure of IOLTA records.[3]  Given that disclosure was accidental and promptly
13   rectified, the Court finds sanctions inappropriate.

**III.    CONCLUSION**

Accordingly,

**IT IS ORDERED** DENYING Defendant's Motion for Immediate Discovery
Regarding the Government's Abuse of Grand Jury and Trial Subpoenas to Obtain Defense
Lawyer Bank Accounts, and for Potential Sanctions (Doc. 531).

Dated this 10th day of October, 2019.

Honorable Susan M. Brnovich
United States District Judge

---

*Horn*, 976 F.2d at 1317.  Here, the IOLTA records clearly do not do so.  Further, the IOTLA
records do not present a substantive disclosure of confidential communications between
client and attorney required to qualify for the *Baird* exception. *See id.*
[3] Again, the IOLTA records do not implicate the attorney-client privilege nor does
Defendant argue their accidental disclosure is prejudicial to his defense.