Gary S. Lincenberg (*admitted pro hac vice*)
    glincenberg@birdmarella.com
Ariel A. Neuman (*admitted pro hac vice*)
    aneuman@birdmarella.com
Gopi K. Panchapakesan (*admitted pro hac vice*)
    gpanchapakesan@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant John Brunst

Thomas H. Bienert, Jr. (*admitted pro hac vice*)
    tbienert@bmkattorneys.com
Whitney Z. Bernstein (*admitted pro hac vice*)
    wbernstein@bmkattorneys.com
BIENERT KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701

Attorneys for Defendant James Larkin

*[Additional counsel listed on next page]*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CASE NO. 2:18-cr-00422-PHX-SMB |
| Plaintiff, | **DEFENDANTS' JOINT MOTION TO DISMISS INDICTMENT FOR GRAND JURY ABUSE OR, IN THE ALTERNATIVE, FOR DISCLOSURE OF GRAND JURY TRANSCRIPTS** |
| vs. | |
| Michael Lacey, *et al.*, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | Assigned to Hon. Susan M. Brnovich, Courtroom 506 |

## PUBLICLY FILED VERSION

3611176.1

Paul J. Cambria, Jr. *(admitted pro hac vice)*
    pcambria@lglaw.com
Erin McCampbell *(admitted pro hac vice)*
    emccampbell@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580

Attorneys for Defendant Michael Lacey

Bruce Feder (AZ Bar No. 004832)
    bf@federlawpa.com
FEDER LAW OFFICE, P.A.
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135

Attorney for Defendant Scott Spear

David Eisenberg (AZ Bar No. 017218)
    david@deisenbergplc.com
DAVID EISENBERG PLC
3550 N. Central Ave., Suite 1155
Phoenix, Arizona 85012
Telephone: (602) 237-5076
Facsimile: (602) 314-6273

Attorney for Defendant Andrew Padilla

Joy Malby Bertrand (AZ Bar No. 024181)
    joy.bertrand@gmail.com
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone: (602)374-5321
Facsimile: (480)361-4694

Attorney for Defendant Joye Vaught

3611176.1

DEFENDANTS' JOINT MOTION TO DISMISS FOR GRAND JURY ABUSE

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 3

    A.    The Indictment's Allegations Reveal That the Government Grossly Abused the Grand Jury Process. ............................................................. 3

          1.    The Indictment Must Be Dismissed to the Extent Any Government Misconduct Substantially Influenced the Grand Jury and Prejudiced Defendants. ............................................. 3

          2.    The Indictment's Slanderous Allegations That Defendants Engaged in Child Sex Trafficking Are Wrong and Highly Prejudicial. ................................................................................ 4

          3.    The Indictment Grossly Misrepresents the Purported Evidence on Which Its Central Allegations Are Based. ..................... 7

          4.    The Indictment Repeatedly Misstates the Law Applicable to the Charges Against Defendants. ....................................... 11

               a.    The Government Ignores the First Amendment and Misstates the Requisite *Mens Rea*. .......................... 12

               b.    The Indictment's Travel Act Charge Is Incomplete. ............... 14

    B.    Alternatively, the Court Should Order the Disclosure of the Grand Jury Transcripts. ........................................................................ 15

          1.    Disclosure of Grand Jury Transcripts Is Appropriate Where Conduct Occurring Before the Grand Jury May Warrant Dismissal of the Indictment. ............................................... 15

          2.    Disclosure of the Grand Jury Transcripts Is Appropriate Here Given the Government's Abuse of the Grand Jury Process. ............ 16

III.    CONCLUSION ................................................................................................ 17

1

## TABLE OF AUTHORITIES

2

3
**Page(s)**

4

**Cases**

5

*Mishkin v. New York,*
    383 U.S. 502 (1966) ................................................................................ 13

6

*Smith v. California,*
    361 U.S. 147 (1959) ................................................................................ 13

7

8

*United States v. Belton,*
    2015 WL 1815273 (N.D. Cal. Apr. 21, 2015) ....................................... 16

9

10

*United States v. Bravo-Fernandez,*
    239 F. Supp. 3d 411 (D.P.R. 2017) ................................................ 15, 16

11

12

*United States v. Cerullo,*
    2007 WL 2683799 (S.D. Cal. Sept. 7, 2007) ......................................... 12

13

*United States v. Cwibeker,*
    2015 WL 459315 (E.D.N.Y. Feb. 2, 2015) ............................................. 4

14

15

*United States v. Donaway,*
    447 F.2d 940 (9th Cir. 1971) .................................................................. 14

16

17

*United States v. FedEx Corp.,*
    2016 U.S. Dist. LEXIS 6155 (N.D. Cal. Jan. 19, 2016) ........................ 16

18

19

*United States v. Fuentes,*
    2008 WL 2557949 (E.D. Cal. June 24, 2008) ........................................ 16

20

21

*United States v. Gibson Specialty Co.,*
    507 F.2d 446 (9th Cir. 1974) .................................................................. 13

22

23

*United States v. Ho,*
    2009 WL 2591345 (D. Haw. Aug. 20, 2009) ................................... 15, 16

24

25

*United States v. Hoey,*
    2014 WL 2998523 (S.D.N.Y. July 2, 2014) ........................................... 12

26

*United States v. Hogan,*
    712 F.2d 757 (2d Cir. 1983) ................................................................... 11

27

28

*United States v. Navarro,*
    608 F.3d 529 (9th Cir. 2010) .......................................................... 3, 4, 11

ii

DEFENDANTS' JOINT MOTION TO DISMISS FOR GRAND JURY ABUSE

*United States v. Peralta*,
    763 F. Supp. 14 (S.D.N.Y. 1991) .......................................................................... 7

*United States v. Plummer*,
    941 F.2d 799 (9th Cir. 1991) ............................................................................... 15

*United States v. Rogers*,
    389 F. Supp. 3d 774 (C.D. Cal. 2019) ................................................................ 14

*United States v. Stevens*,
    771 F. Supp. 2d 556 (D. Md. 2011) ................................................................... 12

*United States v. Vetere*,
    663 F. Supp. 381 (S.D.N.Y. 1987) ................................................................. 7, 11

*United States v. Walczak*,
    783 F.2d 852 (9th Cir. 1986) ............................................................................... 15

*United States v. Williams*,
    504 U.S. 36 (1992) ................................................................................................ 3

*United States v. X-Citement Video, Inc.*,
    513 U.S. 64 (1994) .............................................................................................. 13

**Statutes**

18 U.S.C.
    § 1952(a)(3) ......................................................................................................... 14
    § 2252 .................................................................................................................. 13

**Other Authorities**

Fed. R. Crim. P. 6(e)(3)(E)(ii) ...................................................................................... 15

U.S. Const. amend. I ............................................................................................. 2, 12, 13

# I.     INTRODUCTION

The superseding indictment ("Indictment") should be dismissed for gross abuse of the grand jury process.  The Indictment contains explosive and prejudicial allegations of child sex trafficking that have nothing to do with the charges in the case (alleged facilitation of prostitution), that unfairly and unduly tainted the grand jury proceedings, and that were directly contradicted by the government's key cooperating witness prior to the government asking the grand jury to vote on the Indictment.  The Indictment further contains false summaries of documentary evidence that was in the government's hands, but was apparently misrepresented to the grand jury.  Moreover, the Indictment's allegations reflect the government's erroneous analysis of the law applicable to the charges against Defendants, strongly suggesting that the government incorrectly or incompletely advised the grand jury on the law.  Each of these instances of government misconduct separately warrants dismissal of the Indictment.  Collectively, this misconduct inexorably leads to the conclusion that the government grossly abused the grand jury process, requiring dismissal of the Indictment.[1]

The government's factual misrepresentations and misstatements of law are far-reaching and affect every aspect of the Indictment.  *First*, the Indictment falsely, repeatedly, and irrelevantly alleges that Defendants engaged in child sex trafficking and knowingly published ads for sex with underage children, when, in fact, Carl Ferrer— Backpage's former CEO and the government's star cooperating witness—contradicted these allegations in statements made to the government prior to the issuance of the Indictment.  Not only that, but the government does not even charge Defendants with sex trafficking (let alone child sex trafficking), yet asked the grand jury to return an Indictment

---

[1]     This Motion refers to various memoranda of interview and other documents subject to the Protective Order.  See Dkts. 730, 731.  Therefore, this publicly filed version contains redactions.  An unredacted copy has been filed under seal.  Defendants reserve their rights to object to the existence and scope of the Protective Order.  See Dkt. 740 (Brunst's Motion to Compel Government Compliance).

replete with references to such acts.  These scurrilous allegations had no place in front of the grand jury, and there can be no doubt that they unfairly prejudiced Defendants.  They simply have nothing to do with the Indictment's charges and unfairly tarred Defendants in the eyes of the grand jury.  At a minimum, there is grave doubt that the grand jury would have returned an indictment absent the government's incendiary and false allegations.

*Second*, the Indictment's allegations regarding its central theories—that, *inter alia*, Defendants engaged in the aggregation of prostitution ads from other sites, created shell companies to facilitate money laundering activities, and continued to assert operational control over Backpage after its sale in April 2015—are predicated on blatantly inaccurate summaries of key documents and also are contradicted by witness statements given to the government prior to the issuance of the Indictment, including by Ferrer.  The allegations in the Indictment, when compared to the underlying documents, demonstrate a pattern of conduct by the government in which it misrepresented the evidence to the grand jurors in order to secure the Indictment.

*Third*, the Indictment evinces that the government misled the grand jury on the law applicable to the charges against Defendants.  As has been briefed by Defendants in their prior motions to dismiss, the government ignores the applicability of the First Amendment to Defendants' publishing activities and impermissibly seeks to prosecute them for a specific intent crime based on their purported general awareness that some users posted prostitution ads on Backpage.com.  *See* Dkt. 561.  Additionally, the Indictment fails to identify the "business enterprise" that forms the basis for its Travel Act charges, fails to allege that Defendants had the specific intent to facilitate that business enterprise's prostitution offenses, and fails to allege that Defendants knowingly and willfully committed an act or acts to facilitate that unlawful activity, but instead insufficiently alleges only that Defendants facilitated or promoted "prostitution."  *See* Dkt. 746.  Each of these failures demonstrates that the government erroneously and/or incompletely instructed the grand jury on the law applicable to the charges presented to them.

In sum, the government's presentation to the grand jury—as reflected by the

Indictment the prosecutors drafted and had the grand jury return—contained egregious misrepresentations of both the facts and the law, as well as inflammatory, false, and irrelevant allegations of child sex trafficking.  As a result, the grand jury process was unconstitutionally tainted.  The prejudice resulting from these misrepresentations is overwhelming and casts grave doubt over the integrity of the grand jury proceedings.  The Court should therefore dismiss the Indictment.

Alternatively, Defendants request that the Court order the disclosure of the grand jury transcripts so that the Defendants and the Court can examine the government's actions before the grand jury firsthand.  The policy justifications for maintaining the secrecy of such material no longer exist given that the case has been charged, discovery produced, and preliminary witness lists shared.[2]

## II.    ARGUMENT

### A.    The Indictment's Allegations Reveal That the Government Grossly Abused the Grand Jury Process.

#### 1.    The Indictment Must Be Dismissed to the Extent Any Government Misconduct Substantially Influenced the Grand Jury and Prejudiced Defendants.

The purpose of grand jury review is to provide a buffer between overreaching government prosecutors and the citizenry.  *United States v. Williams*, 504 U.S. 36, 47 (1992).[3]  A district court may dismiss an indictment for errors made by the government in grand jury proceedings that "prejudice" the defendant.  *United States v. Navarro*, 608 F.3d 529, 538-39 (9th Cir. 2010).  "[F]or errors brought to the district court's attention 'prior to the conclusion of the trial,' dismissal of the indictment 'is appropriate only if it is

---

[2]    Moreover, in light of the facts presented in this Motion, there is every reason to believe that the transcripts contain Jencks, *Giglio*, or impeachment material, including regarding its key cooperating witness, Carl Ferrer.

[3]    Unless otherwise noted, internal citations and quotation marks have been omitted.

established that the violation substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from the substantial influence of such violations.'" *Id.* at 539 (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988).  Under this standard, "an indictment may be dismissed where the Government's instruction on the applicable law was false or misleading."  *United States v. Cwibeker*, 2015 WL 459315, at *5 (E.D.N.Y. Feb. 2, 2015).

Here, as explained below, the Indictment reveals three separate ways in which the government abused the grand jury process, each of which requires dismissal of the Indictment.  First, the Indictment recklessly, explosively, and irrelevantly accuses Defendants of engaging in child sex trafficking.  Second, the Indictment materially misrepresents key documentary evidence in support of its central claims against Defendants.  Third, the Indictment makes clear that the government incorrectly and/or incompletely instructed the grand jury regarding the applicable law.  The totality of these misrepresentations of fact and law leaves no doubt that the government abused the grand jury process in a manner that "substantially influenced the grand jury's decision to indict," and at the very least leaves "grave doubt that the decision to indict was free from the substantial influence of such violations."  *Navarro*, 608 F.3d at 539.

## 2. The Indictment's Slanderous Allegations That Defendants Engaged in Child Sex Trafficking Are Wrong and Highly Prejudicial.

The Indictment outrageously, without one iota of evidentiary support, and despite the government's knowledge at the time of presentment that such allegations were false, repeatedly accuses Defendants of engaging in child sex trafficking.  The Indictment lobs these scurrilous and highly prejudicial allegations over *20 times*, contending baselessly that Defendants knowingly allowed ads involving child sex trafficking to be published on Backpage.com and feigned cooperation with law enforcement by underreporting ads involving underage individuals.  *See, e.g.*, Dkt. 230 (Indictment) at ¶ 14 ("Backpage . . . contributed to the proliferation of ads featuring prostitution of children."); ¶ 140 ("In

**4**

practice, Backpage's stated interest in doing something meaningful to stop child sex trafficking ads on its site is apparently overridden by the enormous revenue it generates from its escort ads, including ads selling children for sex."), ¶¶ 13, 74, 86, 95, 100, 104, 111, 115, 121, 123, 131, 133, 134, 135, 136, 140, 144, 146, 151.

Critically, these allegations were expressly disavowed by Ferrer—Backpage's former CEO and the government's key cooperating witness—in statements he made directly to the government preceding the filing of the Indictment. They also are contradicted by the very organization to which Backpage referred all potential child sex trafficking advertisements. Indeed, **the government does not charge Defendants with any sex trafficking offense (let alone child sex trafficking)**, suggesting that the only reason the government presented these falsehoods to the grand jury was to inflame the jurors and secure the return of an indictment on unrelated charges.

For example, the Indictment falsely contends that:

> Many of the ads published on Backpage depicted children who were victims of sex trafficking. Once again, although Backpage sought to create the perception that it was diligently attempting to prevent the publication of such ads, the reality is that Backpage allowed such ads to be published while declining—for financial reasons—to take necessary steps to address the problem.

Indictment at ¶ 13 (also alleging that "[F]or several years, Backpage's official policy, when presented with an ad featuring the prostitution of a child, was to delete the particular words in the ad denoting the child's age and then publish a revised version of the ad.").

Ferrer directly contradicted this assertion in an April 5, 2018 interview with the government—an interview at which the lead prosecutors were present—stating that his ███████████████████████████████████████ and that ████████████ ████████████████████████████ Exh. 1 (Revised version of April 5, 2018 Memorandum of Interview ["MOI"] of Carl Ferrer) at ¶ 70) (emphasis added).

The Indictment is riddled with these contradictions. Another astonishing example is the Indictment's allegation that Backpage "artificially limit[ed]" its referrals of ads to the National Center for Missing and Exploited Children ("NCMEC"). Indictment at ¶ 14.

1  That is not what Ferrer told the government.  In fact, he told the government the opposite

2  in no uncertain terms, explaining that:

3  • ████████████████████████████████████████████

4  ████████████████████████████████████████████

5  • ████████████████████████████████████████████

6  ████████████████████████████████████████████

7  • ████████████████████████████████████████████

8  ████████████████████████████████████████████

9  Significantly, Ferrer told the government that Backpage was once ████████

10  ██████████████████████ *Id.* at ¶ 12 ████████████████████

11  ████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████

13  ██████████████████████████████ (emphasis added).

14  Further, internal NCMEC emails reflect the fact that Backpage was vigilant in

15  cooperating with law enforcement and reporting ads potentially involving children to

16  NCMEC and directly contradict the Indictment's allegations, including those noted above.

17  Those emails recount meetings between NCMEC and Backpage and state the following:

18  • A July 11, 2011 email outlines Backpage's policy regarding the reporting of
   ads to NCMEC's CyberTipline:  "If . . . Backpage receives a report from the

19  public or one of their users about an ad involving a minor and the moderator
   feels it is valid, then they ghost the ad and remove it from the list of ads

20  available in that area.  They then report it to the CyberTipline and archive all
   of the data waiting for a subpoena from law enforcement."  Exh. 17 (July 11,

21  2011 email from J. Shehan to E. Allen) at 2.

22  • A September 9, 2011 email notes that Backpage had reported over 200 ads
   per month to NCMEC's CyberTipline in recent months.  Exh. 18

23  (September 9, 2011 email from S. Urie to E. Allen) at 1.

24  • That same email notes that Ferrer felt that, in his experience, law
   enforcement either "love the reports they are receiving from Backpage" or

25  "feel they are getting too many reports."  *Id.*  There also were instances in
   which Backpage unknowingly removed law enforcement "sting" ads for

26  child trafficking because the ads violated the company's terms of service.  *Id.*
   at 2.

27  • An October 13, 2011 email notes that Backpage's website contained a "User

28  Safety" section that provided users guidance on reporting ads to NCMEC.

3611176.1

6

DEFENDANTS' JOINT MOTION TO DISMISS FOR GRAND JURY ABUSE

1

2

Ferrer also sought input from NCMEC to improve the section.  Exh. 19 (October 13, 2011 e-mail from S. Urie to E. Allen) at 1-2.

3   In short, the evidence is overwhelming that the Indictment falsely accuses

4   Defendants of engaging in child sex trafficking and grossly distorts Backpage's proactive

5   and voluntary efforts to cooperate with law enforcement and NCMEC.

6   In *United States v. Vetere*, 663 F. Supp. 381, 383 (S.D.N.Y. 1987), the court

7   dismissed the indictment where the prosecutor's presentation to the grand jury involved

8   "non-relevant, highly prejudicial, and erroneous information about the defendant's

9   criminal record, and possibly erroneous and misleading instructions on the law."  *United*

10  *States v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991) (citing *Vetere*).  Here too, the

11  government presented to the grand jury irrelevant, highly prejudicial, and false evidence

12  regarding Defendants' purported involvement in child sex trafficking, particularly

13  egregious conduct considering that **the Indictment *does not charge* Defendants with any**

14  **sex trafficking offense.**

15  So why include these untrue allegations before the grand jury and in the

16  Indictment?  These are not minor details that the government got wrong; these are

17  explosive allegations that had no place in the Indictment or in the presentation to the grand

18  jury.  These are the types of allegations that can overwhelm reason, overwhelm logic, and

19  lead to decisions out of anger and disgust, regardless of what else is presented.  The

20  government's conduct amounts to "prosecutorial impairment of the grand jury's

21  independent role" and warrants dismissal of the Indictment.  *Vetere*, 663 F. Supp. at 386

22  (quoting *United States v. Hogan*, 712 F.2d 757, 761 (2d Cir. 1983)).  Indeed, these are the

23  types of allegations that would "substantially influence" a grand jury's decision to indict,

24  and at the very least leave a "grave doubt" that the decision was free of such influence.

25  ### 3. The Indictment Grossly Misrepresents the Purported Evidence on

26  ### Which Its Central Allegations Are Based.

27  The Indictment also distorts and twists the evidence on which the government's

28  central theories are based—that, *inter alia*, Defendants engaged in the aggregation of

1   prostitution ads from other sites, created shell companies to facilitate money laundering,

2   and continued to assert operational control over Backpage after its sale in April 2015.  As

3   demonstrated by the below table, the Indictment's allegations, when compared to the

4   documents that purportedly support those allegations, as well as the statements of the

5   witnesses who created those documents, show that the government engaged in a pattern of

6   misrepresenting the evidence to the grand jury in an effort to return an unsupportable

7   indictment.

| Indictment Allegation | Contradiction in Referenced Document and/or Witness Statement |
|---|---|
| Paragraph 114 of the Indictment alleges, *inter alia*, that a presentation discussed by Defendants "noted that the 'ads on the backpage.com site' generally fall into three categories, one of which is 'Pimps and Men Looking for Kids.'" | The Indictment alleges that the presentation characterized *user* ads on Backpage as including "Pimps and Men Looking for Kids" ads.  But, as the government well knows and the presentation makes clear, the "ads" being discussed were proposed public service ads to be placed on the Backpage website and in newspapers to *dissuade* child sex traffickers from using the Backpage website.  A government interview of the individual who prepared the presentation—Rob Leggat—confirms that the reference in the presentation was part of a proposed "Child Protection Taskforce," and anyone who clicked on a link for a "Pimps and Men Looking for Kids"-type ad would not see an ad, but would receive a *warning from Backpage* stating, among other things, "Sex with a minor is a major crime. You could do jail time . . . ,"  Exh. 4 (January 16, 2018 Interview of Rob Leggat) at 2-3; Exh. 5 (October 13, 2011 presentation) at 18-29. |
| Paragraph 112 of the Indictment alleges that "certain" defendants "assisted in the creation of a Powerpoint presentation, entitled 'Management Presentation,' that was intended to describe Backpage's business model to potential buyers.  This presentation acknowledged that the non-adult sections of the Backpage website were simply intended to . . . make Backpage's adult section more 'defensible'" to law enforcement. | In fact, the PowerPoint slide at issue provides a "Non-adult Category Overview" and instead says that "[m]aintaining a vibrant general purpose classifieds site strengthens Backpage's *defensible market position* in the Adult category"—not that the non-adult ads made the adult section more defensible to law enforcement.  Exh. 6 (September 2011 presentation) at 17 (emphasis added). |

| Indictment Allegation | Contradiction in Referenced Document and/or Witness Statement |
|---|---|
| The Indictment also alleges that the same PowerPoint slide states that the non-adult ad categories were intended to "allow plausible deniability" for the company in connection with its adult section. *Id.* | The Indictment twists the wording of the presentation, which states that the non-adult category "[c]reates mainstream environment for *site participants* and allows 'plausible deniability' for exposure." Exh. 6 (September 2011 presentation) at 17 (emphasis added). The actual language of the presentation strongly suggests that the referenced "plausible deniability" is for individuals who access adult ads posted on Backpage, not the potential legal exposure facing the company (*i.e.*, a person browsing a pornography website could not plausibly claim to be looking for a sofa, an apartment, or a job, unlike a person browsing www.backpage.com). |
| Paragraph 36 of the Indictment describes the "Dallas Plan" as an effort to "identify prostitutes advertising on other websites" and offer them free advertisements on Backpage.com, citing a particular attachment to an email. | In fact, the document referenced in Paragraph 36 says *nothing* about prostitutes, but discusses searching for "erotic services" advertisers and offering "free test adult ads." Exh. 7. According to |

---

4    According to the Indictment and underlying documents, the only thing Mr. Brunst allegedly knew about the Dallas Plan was that it involved "set[ting] up free user posting[s]." Indictment at ¶ 42. But the government recently characterized this to the Court as Mr. Brunst "helping implement the process of identifying prostitutes advertising on rival websites who were then contacted and given free advertising on Backpage." Dkt. 649 at 40:13-15. This also raises serious concerns about what the grand jury was told.

| Indictment Allegation | Contradiction in Referenced Document and/or Witness Statement |
|---|---|
| Paragraph 81 of the Indictment alleges that an email sent from Ferrer to certain defendants acknowledges that the "'[i]llegal content removed' through Backpage's moderation process was 'usually money for sex act'" and that "after the 'sex act pics are removed,' the 'ad text may stay.'" | In fact, the email clearly states: "Sex act for money ads are deleted" in their entirety. Exh. 8 (October 25, 2010 email from C. Ferrer re Update).<br><br>An email from Defendant Padilla to Backpage's moderators outlines the company's moderation policy, stating that "if an ad makes a clear reference to sex for money or an image displays a sex act, *don't hesitate deleting it*. These are *not the types of ads we want on our site at all*." Exh. 16 (October 16, 2010 email from Padilla to moderators, copying Ferrer and Hyer) (emphasis added). |
| Paragraph 183 of the Indictment alleges that "some banks closed accounts that were held by Backpage (or Backpage-related entities) out of concern the accounts were being used for illegal purposes," and cites as an example an April 2, 2014 letter from US Bank to Mr. Brunst. | The cited letter gives no reason at all for the closure of the US Bank account. Exh. 9 (April 2, 2014 letter from US Bank to J. Brunst). Further, the government has not produced any memoranda of interview of the author of the letter or anyone else from US Bank that would support the allegation in the Indictment that this letter was an example of bank accounts being closed out of concern they were being used for illegal purposes. It appears to be entirely made up. |
| Paragraph 149 of the Indictment alleges that all of the Defendants "repeatedly acknowledged that the term 'GFE' (girlfriend experience) is a coded term for prostitution." | There is nothing in the discovery that supports this allegation, including the cited emails. |
| Paragraphs 187-192 of the Indictment allege that an entity called "Website Technologies, LLC" was set up by Mr. Brunst as part of "money laundering activities," and that efforts were made by Mr. Brunst and others to "make it appear" that it was a separate entity from Backpage all in service of conducting money laundering transactions involving "Backpage-related funds." | In fact, Ferrer told the government that |

| Indictment Allegation | Contradiction in Referenced Document and/or Witness Statement |
|---|---|
| Paragraphs 29-32 of the Indictment describe the sale of Backpage by Defendants to Ferrer, and claims that Messrs. Lacey, Larkin, Spear, and Brunst "retained significant operational control over Backpage following these transactions" and that Ferrer "met regularly with" Larkin following the April 2015 transaction "to discuss and direct the operation of Backpage's business." | (blacked out) Carl Ferrer) at ¶¶ 78-79. There is nothing anywhere in the discovery to suggest that Mr. Brunst (or any other Defendant) had any operational control over Backpage post-sale. |

Given the pervasive nature of the government's factual misrepresentations to the grand jury—misconduct that reaches every aspect of this case—one can only draw the conclusion that these violations "substantially influenced the grand jury's decision to indict" and that Defendants were indicted without probable cause. *Navarro*, 608 F.3d at 539. They at least leave a "grave doubt" the decision was free of undue influence. The Indictment therefore must be dismissed.

Even if the government presented this false evidence through its agents—as opposed to those with firsthand knowledge of the actual documents that underlie the government's allegations—that too would be a separate basis for dismissal, *regardless of whether* the government intended to mislead the grand jury. *See United States v. Hogan*, 712 F.2d 757, 762 (2d Cir. 1983) (reversing conviction, holding that "[w]hile the factual misstatements in the agents' testimony may have been inadvertent, as the government now argues, the fact remains that the appellants were prejudiced by the misstatements of important facts and the grand jury's independent role was impaired . . . . Regardless of the government's intent, we believe that the grand jury was probably misled by this presentation").

### 4.   The Indictment Repeatedly Misstates the Law Applicable to the Charges Against Defendants.

The Indictment's repeated misstatements of the law, as well as representations the government has since made to the Court and Defendants reiterating its erroneous view of

the law, all but ensure that the grand jury was similarly mis-instructed.  Dismissal of an indictment on this basis is appropriate.  For example, in *United States v. Cerullo*, 2007 WL 2683799, at *3 (S.D. Cal. Sept. 7, 2007), a tax fraud case, the court dismissed the indictment where the prosecutor repeatedly failed to properly instruct the grand jury on how to distinguish a gift from earnings.  In *United States v. Stevens*, 771 F. Supp. 2d 556, 568 (D. Md. 2011), the district court dismissed the indictment due to "grave doubts as to whether the decision to indict was free from substantial influence of the improper advice of [the prosecutor's] instruction."  *See also United States v. Hoey*, 2014 WL 2998523, at *3 (S.D.N.Y. July 2, 2014) ("courts have found error where the government incompletely or erroneously provides legal instruction to the grand jury").

Here, the Indictment reveals that the government either incorrectly or incompletely instructed the grand jury regarding:  (1) the applicability of the First Amendment to Defendants' publishing activities and the requisite *mens rea* applicable to its charges, and (2) the Travel Act's requirement that a defendant act with the specific intent to facilitate or promote the unlawful prostitution offenses of a "business enterprise."  The government's misstatements of the law to the grand jury further require dismissal of the Indictment.

### a.     The Government Ignores the First Amendment and Misstates the Requisite *Mens Rea*.

As is explained at length in Defendants' Motion to Dismiss (Dkt. 561), the Indictment erroneously contends that the First Amendment has no application to Defendants' publishing activities because the underlying ads allegedly were for prostitution.  Indeed, the Indictment that the grand jury returned explicitly misstates the law on this issue, improperly reasoning that because "[p]rostitution is illegal in 49 states and in most of Nevada" that "[a]dvertisements for prostitution services in those locations are, therefore, not protected by the First Amendment."  Indictment at ¶ 33.  But it is the *publishing* of those ads, posted by third parties, for which Defendants have been indicted. The Indictment therefore falsely equates the publishing of ads that might relate to prostitution with the criminal act of prostitution itself.  That clearly is not the law, as there

are certain well-established constitutional protections and presumptions that apply to the publishing of third-party content, even if that content relates to allegedly illegal activities. *See* Dkt. 561 at 13-14.

It is a basic proposition of First Amendment law that the government cannot criminally punish publishers or distributors of speech without sufficient proof of *scienter*, *i.e.*, that a defendant knew the *specific* speech that is the basis for criminal charges was illegal. *See* Dkt. 561 at 28; *Smith v. California*, 361 U.S. 147, 153-54 (1959); *see also Mishkin v. New York*, 383 U.S. 502, 511 (1966) ("The Constitution requires proof of scienter to avoid the hazard of self-censorship of constitutionally protected material . . . ."); *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994) (interpreting 18 U.S.C. § 2252 to require proof that defendant knew that one or more specific performers in video were under 18, because a statute "bereft of [such] a scienter requirement . . . would raise serious constitutional doubts").

Further, the Travel Act is a specific intent crime. Therefore, one who provides a service or product ultimately used for criminal purposes is liable only if the prosecution shows the defendant "associated himself with the purchaser's criminal venture for the purpose of its advancement." *United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974). As a result, "[t]he presumption that one intends the natural and probable consequences of his actions is insufficient in this context to establish intent to facilitate criminal activity." *Id.* at 450, n.8; *see also* Dkt. 561 at 38-39.

In other words, the government is required to prove that Defendants knowingly and willfully published a given ad, with the specific intent to facilitate the unlawful prostitution activities of a business enterprise associated with that ad (*i.e.*, knowing that the ad in question was for prostitution and with the intent to facilitate that prostitution). The Indictment turns this basic legal proposition on its head—instead alleging that Defendants generally were aware that prostitution ads existed on the Backpage site—which strongly suggests that the grand jury was misled regarding the essential nature of the charges against Defendants. If there was any doubt that the government misadvised the grand jury

on these issues, the statements it has made to the Court and Defendants following the issuance of the Indictment only bolster the concerns that the government's presentation to the grand jury and the grand jury's decision were constitutionally infirm. *See* Exh. 11 (October 5, 2018 Hearing Tr.) at 102:9-14 ("[W]hat's at issue in this case [is] [d]id they know that the vast majority of these advertisements that went up on this Web site were for prostitution?"); Exh. 12 (January 10, 2019 letter from R. Jones to M. Piccarreta) at 3 ("Here, because of the aggregation, affiliation, and reciprocal link ventures and other conduct summarized above, Backpage knew that *every ad had the potential* for facilitating prostitution services, including child sex trafficking") (emphasis added).

### b.     The Indictment's Travel Act Charge Is Incomplete.

The Travel Act requires that the government identify the specific "business enterprise" at issue and that Defendants knowingly and willfully sought to promote or facilitate the unlawful aims of that enterprise.  18 U.S.C. § 1952(a)(3).  As is discussed in Mr. Brunst's pending motion to dismiss (Dkt. 746), the Indictment fails to do either of these things, alleging only that Defendants facilitated certain unspecified prostitution offenses throughout the country.  Indictment at ¶ 201.  The Indictment's allegations demonstrate that the government improperly instructed the grand jury that Defendants' involvement in a website that published alleged prostitution ads was sufficient to establish probable cause that they violated the Travel Act, when in fact the Travel Act was never intended to address facilitation or promotion of criminal activity *in general*, or sporadic criminal activity by disconnected individuals, such as what the government has alleged here and presented to the grand jury.  *See United States v. Donaway*, 447 F.2d 940, 944 (9th Cir. 1971) ("The words 'business enterprise' as used in § 1952 refer to a continuous course of criminal conduct rather than sporadic casual involvement in a proscribed activity."); *United States v. Rogers*, 389 F. Supp. 3d 774, 786 (C.D. Cal. 2019) ("The Travel Act targets activities taken in connection with organizations involving . . . prostitution.").  This critical error in the government's presentation to the grand jury also

1   requires dismissal of the Indictment.[5]

2      **B.**     **Alternatively, the Court Should Order the Disclosure of the Grand Jury**

3           **Transcripts.**

4          **1.**     **Disclosure of Grand Jury Transcripts Is Appropriate Where**

5               **Conduct Occurring Before the Grand Jury May Warrant**

6               **Dismissal of the Indictment.**

7      Pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), a "court may

8   authorize disclosure—at a time, in a manner, and subject to any other conditions that it

9   directs—of a grand jury matter . . .  at the request of a defendant who shows that a ground

10   may exist to dismiss the indictment because of a matter that occurred before the grand

11   jury." Generally, "[m]aterial within Rule 6(e)'s scope . . . may be disclosed when

12   'a particularized need exists which outweighs the policy of grand jury secrecy.'" *United*

13   *States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) (quoting *Pittsburgh Plate Glass Co.*

14   *v. United States*, 360 U.S. 395, 400 (1959)).  Disclosure under Rule 6(e) is within the

15   "sound discretion of the trial court." *Id*.  The interests protected by the secrecy of grand

16   jury proceedings include:  "encouraging witnesses to come forth voluntarily and to testify

17   fully and frankly, reducing the possibility that those under investigation will flee or attempt

18   to influence grand jurors' votes, and protecting accused, but exonerated individuals from

19   public ridicule." *United States v. Plummer*, 941 F.2d 799, 806 n.4 (9th Cir. 1991) (citing

20   *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219 (1979)).

21      Disclosure is appropriate where the government, "on-the-record," has expressed an

22   incorrect understanding of the law, which could have resulted in "possible misleading of

23   the grand jury." *United States v. Ho*, 2009 WL 2591345, at *4 (D. Haw. Aug. 20, 2009).

24   The Indictment itself also can "suggest[ ] the government misunderstood the law." *United*

25   *States v. Bravo-Fernandez*, 239 F. Supp. 3d 411, 416 n.8 (D.P.R. 2017) (citing *United*

26

27   [5]   The government's misstatements of law regarding the Travel Act charges are also fatal to the money laundering and conspiracy charges, as the predicate for those charges is

28   a violation of, or agreement to violate, the Travel Act.

*States v. FedEx Corp.*, No. C14–00380, 2016 U.S. Dist. LEXIS 6155, at *3 (N.D. Cal. Jan. 19, 2016)).

## 2. Disclosure of the Grand Jury Transcripts Is Appropriate Here Given the Government's Abuse of the Grand Jury Process.

The government's abuse of the grand jury process outlined above warrants disclosure of the underlying transcripts.  First, the government's repeated "on-the-record" misrepresentations of law, standing alone, afford the Court discretion to order disclosure of the transcripts.  *See Ho*, 2009 WL at *4; *Bravo-Fernandez*, 239 F. Supp. 3d at 416 n.8; *FedEx*, 2016 U.S. Dist. LEXIS 6155 at *3.

Second, the government's pervasive factual misrepresentations also justify the disclosure of the transcripts.  Defendants admittedly do not know who testified in front of the grand jury or what they said, but if the government presented witnesses to the grand jury that it intends to call at trial, including Ferrer, then these transcripts may constitute Jencks, *Giglio*, or impeachment material.[6]

Further, disclosure is appropriate where the interests protected by the secrecy of the grand jury proceedings no longer apply, *e.g.*, where witnesses have testified, where those under investigation are charged, and where the witnesses have been identified to the defendants.  Such disclosure routinely occurs if the grand jury transcripts contain Jencks, *Giglio*, or *Brady* material.  Indeed, none of the rationales that justify the policy of grand

---

[6]   At a minimum, Defendants are entitled to the legal instructions provided to the grand jury and any colloquy between the grand jurors and the prosecutors regarding the applicable law.  Defendants need not make a showing of particularized need in order to gain access to this material.  Courts in this Circuit have repeatedly concluded that defendants are "entitled to disclosure of . . . [t]he legal instructions given to the grand jury regarding the charges on which they are deliberating . . . even without a showing of particularized need." *United States v. Belton*, 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015); *see also United States v. Fuentes*, 2008 WL 2557949, at *4 (E.D. Cal. June 24, 2008) ("The government opposes this request on the grounds that the defendants have not made a showing of particularized need.  The argument is unpersuasive.  The defendants are entitled to the transcript of the instructions and charges to the grand jury.").

1   jury secrecy apply here.  First, as the grand jury proceedings have long since concluded,

2   there is no risk that disclosure of the transcripts will discourage witnesses from testifying.

3   Second, there is no risk that Defendants, who already have been indicted, will flee or

4   otherwise improperly seek to influence any of the grand jurors.  In short, there is no

5   conceivable harm that can result from the disclosure of the transcripts.[7]  Indeed, although

6   the government recently refused to disclose the relevant transcripts without offering

7   a reason,[8] ████████████████████████████████████████

8   ████████████████████████████ ████████████████████

9   ███████████████████████████████████████████████

10  ████████████████ Exh. 13 ██████████████████████

11  ██████████████████████████████████████████████████

12  ███ at 6-7; *see also* Exh. 14 ████████████████████

13  ████████████ at 1.

14  **III.    CONCLUSION**

15          For the foregoing reasons, Defendants respectfully request that the Court dismiss

16  the Indictment for grand jury abuse.  Alternatively, the Court should disclose the grand

17  jury transcripts to the defense so that the parties and the Court can examine the transcripts

18  firsthand and determine what occurred before the grand jury.

19

20

21  _____

22  [7]   To the extent the government is concerned about public disclosure of the transcripts, Defendants will stipulate to a protective order.

23

24  [8]   After refusing early in the case to disclose the grand jury transcripts in response to a request from counsel for Mr. Padilla, counsel for Mr. Brunst followed up on

25  September 5, 2019, to renew the request.  *See* Exh. 15 (Email from A. Neuman to K. Rapp).  In addition to summarizing the bases for the disclosure of the transcripts

26  identified in this motion, counsel stated that, "[n]ow that the case has been charged, Jencks Act material and preliminary witness and exhibit lists have been disclosed, and the case is

27  set for trial, the need for grand jury secrecy has passed."  *Id.*  The government rejected the request.  *Id.*

28

1    DATED:  October 18, 2019      Gary S. Lincenberg
2                                Ariel A. Neuman
                                 Gopi K. Panchapakesan
3                                  BIRD, MARELLA, BOXER, WOLPERT,
                                 NESSIM, DROOKS, LINCENBERG &
4                                  RHOW, P.C.

5

6                                 By:      */s/ Ariel A. Neuman*
7                                          Ariel A. Neuman
                                Attorneys for Defendant John Brunst

8

9 *Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures*
10 *Manual (May 2018) § II (C) (3), Ariel A. Neuman herby attests that all other signatories*
*listed, and on whose behalf this filing is submitted, concur in the filing's content and have*
11 *authorized its filing.*

12    DATED:  October 18, 2019      Thomas H. Bienert, Jr.
13                                  Whitney Z. Bernstein
                                 BIENERT KATZMAN PC
14

15                                 By:      */s/ Thomas H. Bienert, Jr.*
16                                        Thomas H. Bienert, Jr.
                                Attorneys for Defendant James Larkin

17

18    DATED:  October 18, 2019      Paul J. Cambria, Jr.
19                                  Erin McCampbell
                                 LIPSITZ GREEN SCIME CAMBRIA LLP
20

21                                 By:      */s/ Paul J. Cambria, Jr.*
22                                        Paul J. Cambria, Jr.
                                Attorneys for Defendant Michael Lacey

23

24    DATED:  October 18, 2019      FEDER LAW OFFICE, P.A.

25

26                                 By:      */s/ Bruce Feder*
                                       Bruce Feder
27                                 Attorney for Defendant Scott Spear

28

3611176.1

DEFENDANTS' JOINT MOTION TO DISMISS FOR GRAND JURY ABUSE

1    DATED:  October 18, 2019              DAVID EISENBERG PLC

2
                                          By:   _____
3                                                  */s/ David Eisenberg*
                                                  David Eisenberg
4                                         Attorney for Defendant Andrew Padilla

5
     DATED:  October 18, 2019              JOY BERTRAND ESQ LLC
6

7                                         By:   _____
                                                   */s/ Joy Malby Bertrand*
8                                                 Joy Malby Bertrand
                                          Attorney for Defendant Joye Vaught
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2    I hereby certify that on October 18, 2019, I served the attached document by email on the following, who are registered participants of the CM/ECF System:

3

| | |
|---|---|
| Andrew C. Stone | andrew.stone@usdoj.gov |
| Anthony Ray Bisconti | tbisconti@bmkattorneys.com |
| Bruce S. Feder | bf@federlawpa.com |
| David S. Eisenberg | david@deisenbergplc.com |
| Erin E. McCampbell | emccampbell@lglaw.com |
| James C. Grant | jimgrant@dwt.com |
| John Jacob Kucera | john.kucera@usdoj.gov |
| John Lewis Littrell | jlittrell@bmkattorneys.com |
| Joy Malby Bertrand | joyous@mailbag.com |
| Kevin M. Rapp | kevin.rapp@usdoj.gov |
| Margaret Wu Perlmeter | margaret.perlmeter@usdoj.gov |
| Michael D. Kimerer | mdk@kimerer.com |
| Paul John Cambria, Jr. | pcambria@lglaw.com |
| Peter Shawn Kozinets | peter.kozinets@usdoj.gov |
| Reginald E. Jones | reginald.jones4@usdoj.gov |
| Rhonda Elaine Neff | rneff@kimerer.com |
| Robert Corn-Revere | bobcornrevere@dwt.com |
| Ronald Gary London | ronnielondon@dwt.com |
| Seetha Ramachandran | sramachandran@proskauer.com |
| Thomas Henry Bienert, Jr. | tbienert@bienertkatzman.com |
| Whitney Z. Bernstein | wbernstein@bienertkatzman.com |

*/s/ Gopi K. Panchapakesan*

Gopi K. Panchapakesan

3611176.1

20