Gary S. Lincenberg *(admitted pro hac vice)*
    glincenberg@birdmarella.com
Ariel A. Neuman *(admitted pro hac vice)*
    aneuman@birdmarella.com
Gopi K. Panchapakesan *(admitted pro hac vice)*
    gpanchapakesan@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant John Brunst

Thomas H. Bienert, Jr. *(admitted pro hac vice)*
    tbienert@bmkattorneys.com
Whitney Z. Bernstein *(admitted pro hac vice)*
    wbernstein@bmkattorneys.com
BIENERT KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701

Attorneys for Defendant James Larkin

*[Additional counsel listed on next page]*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>Michael Lacey, *et al.*,<br><br>　　　　Defendants. | CASE NO. 2:18-cr-00422-004-PHX-SMB<br><br>**DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT BASED ON GRAND JURY ABUSE, OR, IN THE ALTERNATIVE, FOR DISCLOSURE OF GRAND JURY TRANSCRIPTS [780]**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Assigned to Hon. Susan M. Brnovich, Courtroom 506 |

3623287.2

DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO DISMISS
INDICTMENT BASED ON GRAND JURY ABUSE [780]

Paul J. Cambria, Jr. *(admitted pro hac vice)*
　　pcambria@lglaw.com
Erin McCampbell *(admitted pro hac vice)*
　　emccampbell@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580

Attorneys for Defendant Michael Lacey


Bruce Feder (AZ Bar No. 004832)
　　bf@federlawpa.com
FEDER LAW OFFICE, P.A.
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135

Attorney for Defendant Scott Spear


David Eisenberg (AZ Bar No. 017218)
　　david@deisenbergplc.com
DAVID EISENBERG PLC
3550 N. Central Ave., Suite 1155
Phoenix, Arizona 85012
Telephone: (602) 237-5076
Facsimile: (602) 314-6273

Attorney for Defendant Andrew Padilla


Joy Malby Bertrand (AZ Bar No. 024181)
　　joy.bertrand@gmail.com
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone: (602)374-5321
Facsimile: (480)361-4694

Attorney for Defendant Joye Vaught

3623287.2

DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO DISMISS
INDICTMENT BASED ON GRAND JURY ABUSE [780]

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT .......................................................................................................... 2

    A.    The Government's Presentation of Prejudicial and Unneeded Allegations of Child Sex Trafficking Served No Purpose Other Than Calculated Prejudice and Warrants Dismissal of the Indictment. ................... 2

    B.    The Government's Gross Misrepresentation of Key Evidence Also Requires Dismissal of the Indictment. ............................................................ 5

    C.    The Government's Assertion That It Was Not Obligated to Present Exculpatory Evidence Is Non-Responsive. ...................................................... 8

    D.    The Likely Inaccurate Legal Instructions to the Grand Jury Provide Further Reason to Dismiss the Indictment. ...................................................... 9

    E.    In the Alternative, Disclosure of the Grand Jury Transcripts Is Warranted Given the Government's Abuse of the Grand Jury Process. .......... 9

III. CONCLUSION ..................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Aguilar*,
   831 F. Supp. 2d 1180 (C.D. Cal. 2011) .......................................................................... 8

*United States v. Arcoren*,
   1999 WL 638244 (D.S.D. July 27, 1999) ...................................................................... 8

*United States v. Belton*,
   2015 WL 1815273 (N.D. Cal. Apr. 21, 2015) .............................................................. 10

*Douglas Oil Co. of California v. Petrol Stops Nw.*,
   441 U.S. 211 (1979) ....................................................................................................... 9

*United States v. Fuentes*,
   2008 WL 2557949 (E.D. Cal. June 24, 2008) .............................................................. 10

*United States v. Hogan*,
   712 F.2d 757 (2d Cir. 1983) .......................................................................................... 2

*United States v. Lame*,
   716 F.2d 515 (8th Cir. 1983) ......................................................................................... 8

*Lee v. Illinois*,
   476 U.S. 530 (1986) ....................................................................................................... 6

*United States v. Lunstedt*,
   997 F.2d 665 (9th Cir. 1993) ..................................................................................... 3, 4

*Martinez-Rodriguez v. Guevara*,
   597 F.3d 414 (1st Cir. 2010) ......................................................................................... 8

*United States v. Navarro*,
   608 F.3d 529 (9th Cir. 2010) ........................................................................................ 8

*United States v. Samango*,
   607 F.2d 877 (9th Cir. 1979) ........................................................................... 2, 4, 5, 8

*United States v. Vera*,
   893 F.3d 689 (9th Cir. 2018) ........................................................................................ 6

**Statutes**

18 U.S.C. § 1591 .................................................................................................................. 2

18 U.S.C. § 1622 .................................................................................................................. 6

**Other Authorities**

U.S. Const. amend. I ........................................................................................................... 9

U.S. Const. amend. IV ........................................................................................................ 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **INTRODUCTION**

The government's Response does not dispute the heart of Defendants' Motion to Dismiss: the government (1) presented to the grand jury purported "evidence" of uncharged crimes, including child sex trafficking, that likely overwhelmed the grand jury's rational consideration of the evidence related to the charged offenses, and (2) misled the grand jury by misrepresenting the content of numerous documents cited in the Indictment. Collectively, the government's misconduct leaves grave doubt as to whether Defendants were indicted based on probable cause, which means dismissal is appropriate.

The government's response to the Motion is to deflect. The government spends pages claiming that theological seminaries, anti-trafficking organizations, and civil litigants have lobbed accusations of child sex trafficking and other crimes not charged here against Backpage, as if that were evidence of anything relevant to this case (or evidence of anything at all). The government then, despite failing to confront virtually any of its misrepresentations of key evidence, boldly asserts that Defendants' "quibbles" with the blatantly false allegations "are not the stuff of grand jury 'abuse.'" Dkt. 812 ("Response") at 12. Yet even the cases the government cites demonstrate that false allegations of the sort found in the Indictment are precisely the definition of grand jury abuse. Indeed, this Court relied upon these *same exact misrepresentations*—which were at the core of the government's presentation to the grand jury—in denying Defendants' first motion to dismiss. Dkt. 793. There is no possible justification, and none offered by the government in its Response, for the government's wholly improper conduct in front of the grand jury. As such, dismissal of the Indictment is warranted.

Alternatively, Defendants are entitled to the grand jury transcripts. The government does not explain why the presumption of secrecy still applies in a case that has been charged, particularly where the government admits that the only witnesses to testify before the grand jury were law enforcement witnesses who will not testify at trial. Further, unlike in the cases relied upon by the government, Defendants are not merely speculating about

what transpired in front of the grand jury.  The misleading and highly prejudicial indictment that was presented to the grand jury alone warrants disclosure of the transcripts.

## II.   ARGUMENT

### A.   The Government's Presentation of Prejudicial and Unneeded Allegations of Child Sex Trafficking Served No Purpose Other Than Calculated Prejudice and Warrants Dismissal of the Indictment.

Just as in the Indictment, the government spends pages and pages of its Response recounting supposed "evidence" of Defendants' alleged facilitation of child sex trafficking—accusations lobbed by religious organizations, civil litigants, law enforcement, and others—without ever addressing the most critical fact: ***Defendants are not charged with engaging in or facilitating child sex trafficking***.  Those charges certainly were available if sufficient evidence existed.  *See*, *e.g*., 18 U.S.C. § 1591 (criminalizing knowingly advertising or profiting from the participation in a venture engaged in the advertisement of commercial sex acts by a minor).  But given that those crimes were not charged, such scurrilous allegations were not "needed to get an indictment," "served no other purpose than calculated prejudice," and were "totally irrelevant and extremely prejudicial."  *United States v. Samango*, 607 F.2d 877, 883 (9th Cir. 1979) (affirming dismissal of indictment for grand jury abuse); *see also United States v. Hogan*, 712 F.2d 757, 761 (2d Cir. 1983) (reversing convictions where, *inter alia*, prosecutor told grand jury about other crimes of which the defendant was suspected but which were not under investigation by the grand jury, and for which the defendant had never been charged, because of how it prejudiced the grand jury deliberations).

The impropriety of the government's conduct is especially evident here, where a) the government does not (and cannot) dispute that its star cooperator gave statements contradicting these allegations to the government[1]; and b) all indications are that the grand

---

[1]   *See* Response at 11, not disputing Defendants' characterization of Carl Ferrer's statements on this topic, while taking issue with certain other evidence cited in the Motion.  As discussed below, the problem is not the failure of the government to present this

jury was not even investigating the potential of charging Defendants with child sex trafficking. Rather, the government states that "only two law enforcement witnesses provided testimony" to the grand jury. Response at 15. The use of such summary witnesses suggests that the grand jury was presented with a fully-drafted indictment for consideration—which did *not* include child sex trafficking—rather than being a "traditional" investigatory grand jury that was considering a variety of charges, only some of which were ultimately filed.[2] Indeed, the government could have presented its case to the grand jury without raising the explosive allegations of child sex trafficking; it does not contend that it had a legitimate need to present those allegations to properly present its Travel Act and money laundering charges.

Rather, the government tries to justify its conduct by claiming the prejudicial allegations were "intertwined evidence" that cannot be segregated "from the evidence to be presented at trial." *See, e.g.*, Response at 4-5. This argument fails for several reasons.

First, the case from which the government draws this standard and makes this misguided point *has nothing to do with grand jury abuse*. It merely stands for the unremarkable proposition that courts must avoid deciding factual issues that are "intertwined" with issues to be decided at trial on a motion to dismiss. *United States v. Lunstedt*, 997 F.2d 665, 667 (9th Cir. 1993) (court appropriately did not grant motion to dismiss which would have required factual finding as to an element of the offense, *i.e.*, whether a certain notice was posted at a particular location).

Second, Defendants' Motion does not require the Court to determine any factual issues that will be within the petit jury's province. The question of whether the government's presentation to the grand jury was replete with "totally irrelevant and

---

exculpatory evidence, but its decision to present irrelevant and highly prejudicial allegations in the face of such contradictory evidence.

[2] Of course, only if the grand jury transcripts are released can we know for sure. But this does not appear to be the traditional grand jury investigation which must run down every available clue and all witnesses to complete a full investigation of every crime that could potentially be charged.

extremely prejudicial" allegations not "needed to get an indictment" and "serv[ing] no other purpose than calculated prejudice," *Samango*, 607 F.2d 877 at 883, is a question for the Court to resolve now. Further, the issue is "'entirely segregable' from the evidence to be presented at trial." *Lunstedt*, 997 F.2d at 667. Given that there are no child sex trafficking charges in this case, the petit jury should never be asked to even consider these allegations. The *only* purpose for putting those allegations in front of the grand jury, the Court, and ultimately (if permitted) the petit jury is "calculated prejudice" to Defendants. Likewise, the Court can determine now that the government misled the grand jury by seriously mischaracterizing documents referenced in the Indictment without invading the province of the petit jury.

Third, the government fails to explain how allegations that Defendants knew Backpage.com was "repeatedly notified" that some ads posted by users related to sex with minors (Response at 1-3, 6-9) are "intertwined" with allegations of "facilitating prostitution" (as charged in Counts 1-51) or money laundering (as charged in Counts 52-100). Other websites, like, for example, Facebook.com,[3] Snapchat.com,[4] and Instagram.com[5] have also been so notified. Just like the allegations repeated in the Response by the government about Backpage.com, and despite those companies' efforts to eliminate child sex trafficking from their websites, "there is still rampant grooming for

---

[3]   *See* https://chronicleofsocialchange.org/child-welfare-2/protectchildrenbydefault-campaign-pressures-facebook-to-change-default-settings-to-protect-children/36369; https://www.engadget.com/2018/10/03/facebook-lawsuit-enabling-human-trafficking/ (the government references this suit in the Response at 8 and Exh. C with respect to Backpage, but does not mention that Facebook.com was also "notified" that its website was used in connection with the trafficking of the same alleged victims).

[4]   *See* https://endsexualexploitation.org/articles/how-snapchat-was-used-to-groom-and-sell-a-17-year-old-sex-trafficking-victim/; https://www.thedailybeast.com/dad-saves-daughter-from-snapchat-sex-traffickers

[5]   *See* https://www.telegraph.co.uk/technology/2019/11/30/sex-trafficked-social-media-children-sold-snapchat-instagram/; https://endsexualexploitation.org/articles/how-instagram-can-stop-sexual-grooming-abuse-and-trafficking-on-its-app/

sexual abuse, sex trafficking, and child pornography happening on Instagram"[6] and the other sites. Those websites know this and yet do not shut down, just like Backpage did not shut down. Yet none of them have been charged with violations of the Travel Act or money laundering crimes. That is because such "notice" is not evidence that the websites (or their owners) committed crimes which require a showing of *specific intent*. That child sex trafficking happens is terrible and horrifying, but receiving and acknowledging such notice—as the government goes on at length to note that Backpage.com did—is a fact of operating an internet site hosting content posted by third parties, not evidence of a crime by the website or its owners, and certainly not evidence of any of the crimes charged here.

Here, instead, in the course of its other allegations that Defendants broke different laws, the government gratuitously, prejudicially, and repeatedly told the grand jury (just as it tries to tell this Court) that Defendants engaged in child sex trafficking.[7] Unless the government had charged such crimes, presenting these explosive allegations to the grand jury despite them being contradicted by a key witness, not being "needed to get an indictment," and "serv[ing] no other purpose than calculated prejudice" warrants dismissal of the indictment for grand jury abuse. *Samango*, 607 F.2d 877 at 883.

### B. The Government's Gross Misrepresentation of Key Evidence Also Requires Dismissal of the Indictment.

Defendants laid out numerous, detailed examples of the government misleading the grand jury by misrepresenting key evidence in the Indictment, and thus in its presentation of evidence to the grand jury. Motion at 8-11. The government's Response addresses virtually none of them and, where it does, effectively concedes the misrepresentations while contending they do not matter. Response at 9-12. That is, the government does not

---

[6]   *See* https://endsexualexploitation.org/articles/how-instagram-can-stop-sexual-grooming-abuse-and-trafficking-on-its-app/

[7]   It is clear from the Response and the Indictment that the government's strategy in front of the grand jury was to lob accusations of bad acts—including murder and rape—for which Defendants are not charged and for which they could not possibly be criminally liable. Response at 3, 9, 12; Indictment at ¶¶ 150, 164, 167, 173, 175.

respond to—and thus does not dispute—the Motion's documentation of the misrepresentations noted in paragraphs 29-32, 112,114, 149, 183, and 187-192 of the Indictment.  In other words, *the government effectively concedes at least 14 critical misrepresentations of evidence* in the indictment.  And it does not claim that those 14 misrepresentations were the result of innocent mistake, rather than a calculated effort to mislead.[8]  It only purports to respond to two.

With respect to the first, the government's response to the misrepresentations regarding the so-called "Dallas Plan" and Mr. Brunst's and other's knowledge of the alleged details of the plan—set forth in in the Motion at 9, discussing SI ¶ 36—is not to dispute the misrepresentations identified in the Motion.  *See* Response at 12.  Rather, the government cites a plea agreement, obtained after the original indictment was returned, that does not even mention the "Dallas Plan" and does not mention Mr. Brunst's (or any other remaining Defendant's) knowledge or intent with regard to the "Dallas Plan."[9]  In effect, the government's response is to ignore its misrepresentations.

And with respect to the second, the government does not dispute that it dramatically misquoted an email from Mr. Padilla in paragraph 81 of the Indictment.  As reflected in the Indictment presented to the grand jury, the government told the grand jury the email was an admission that Backpage stripped sex for money language from ads and then allowed those ads to run—when the email unequivocally stated that "sex act for money ads are deleted" in their entirety.  Motion, Exh. 8.  The government similarly misled the grand jury

---

[8]   This potentially means that a violation of 18 U.S.C. § 1622 (subornation of perjury) occurred before this grand jury.

[9]   The plea agreement is anyway not reliable evidence.  The Supreme Court has admonished that accomplices' confessions and arrest statements are "presumptively unreliable," "presumptively suspect," and "less credible than ordinary hearsay." *Lee v. Illinois*, 476 U.S. 530, 541 (1986) (internal quotation marks, citation omitted); *see also United States v. Vera*, 893 F.3d 689, 692-93 (9th Cir. 2018) (citing the Supreme Court's "time-honored teaching" that "a codefendants' confession inculpating the accused is inherently unreliable," the Court recognized that a "defendant signing a plea agreement may adopt facts that the government wants to hear in exchange for some benefit").

1  as to paragraph 79 of the Indictment, claiming that Mr. Padilla wrote an email saying: "I'd
2  like to still avoid Deleting ads when possible," that "we're still allowing phrases with
3  nuance," and that "[i]n the case of lesser violations, editing should be sufficient," SI ¶ 79,
4  when the email actually said:

> I'd still like to avoid Deleting ads when possible, but *if an ad makes a clear reference to sex for money or an image displays a sex act, don't hesitate deleting it. Those are not the types of ads we want on our site at all.*

Motion at 10; Exh. 16 (emphasis added).

The government doubles down in its Response, claiming that Defendants miss the point because "Backpage's 'moderation' practices sanitized [] ads" making "a clear reference to sex for money" (Response at 9-10), but both emails say just the opposite—and the government hid that fact from the grand jury by grossly mischaracterizing both emails. The government also points to other emails written by Mr. Padilla, none of which say what is alleged in paragraphs 79 or 81 of the Indictment.

Despite not addressing most of the identified misrepresentations, the government dismisses them as "quibbles . . . [which] are not the stuff of grand jury 'abuse.'" Response at 12. The contention is wrong. Many of the misrepresentations go squarely to the question of intent—a core issue before the grand jury—and the government plainly misled the grand jury about what these documents said. The import of these misrepresentations also is demonstrated by the Court's October 24, 2019 Order ("Order") (Dkt. 793), which was issued six days after the instant Motion and denied dismissal of the Indictment, largely based on the very misrepresentations identified in the Motion. For instance, the Court cited the false "Dallas Plan" allegations, including SI ¶ 36 (Order at 4, 14); SI ¶ 112's inaccurate description of a key PowerPoint (Order at 12); SI ¶ 81's inaccurate quotation of a critical email (Order at 5); SI ¶ 149's baseless allegations about certain Defendants' knowledge of the term "GFE" (Order at 10); SI ¶¶ 187-192's inaccurate description of Mr. Brunst's motivations for setting up the Website Technologies, LLC entity (Order at 7); and SI ¶¶ 29-32's false allegations regarding Defendants' purported continued control over

Backpage, which were contradicted by Ferrer's statements to the contrary.

The Court's own reliance on these allegations—all of which are demonstrably false—shows that they likely "substantially influenced the grand jury's decision to indict" and that Defendants were indicted without probable cause. *United States v. Navarro*, 608 F.3d 529, 539 (9th Cir. 2010); *see also United States v. Aguilar*, 831 F. Supp. 2d 1180, 1205 (C.D. Cal. 2011) (misleading testimony by a law enforcement agent before the grand jury can be "evidence of potential grand jury bias" and may "warrant[] dismissal even before trial"). Together with the scurrilous allegations regarding child sex trafficking (and murder and rape), there "is grave doubt that the decision to indict was free from the substantial influence of the [the government's] violation." *Navarro*, 608 F.3d at 539 (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988).) "The cumulative effect of the above errors and indiscretions . . . operated to the defendants' prejudice by producing a biased grand jury." *Samango*, 607 F.2d at 884.

### C. The Government's Assertion That It Was Not Obligated to Present Exculpatory Evidence Is Non-Responsive.

The government suggests the Court can disregard Defendants' allegations of grand jury abuse because it was not obligated to present exculpatory evidence to the grand jury. Response at 5, fn. 2. Not so. Even though the government had no obligation to present exculpatory evidence to the grand jury, it nonetheless had an affirmative obligation not to mislead or unduly bias the grand jury. *See Martinez-Rodriguez v. Guevara*, 597 F.3d 414, 420 (1st Cir. 2010) ("[T]here is a clearly established Fourth Amendment right not to be indicted and arrested on the basis of false or misleading statements given before a grand jury"); *United States v. Lame*, 716 F.2d 515, 518 (8th Cir. 1983) ("In guiding the progress of the grand jury, the United States Attorney may not engage in fundamentally unfair tactics or deliberately mislead the jury."); *United States v. Arcoren*, No. CR. 89-30049, 1999 WL 638244, at *9 (D.S.D. July 27, 1999) (*Williams* notwithstanding, "[A] prosecutor may not deliberately mislead a grand jury or instill false impressions to it in an effort to obtain an indictment.") (citations omitted).

The government repeatedly misled the grand jury and "instill[ed] false impressions" by mischaracterizing the content of documents described in the Indictment, and unduly prejudiced the grand jury through its presentation of outrageous and irrelevant allegations of child sex trafficking. Its license to hide exculpatory evidence has nothing to do with these problems.

### D. The Likely Inaccurate Legal Instructions to the Grand Jury Provide Further Reason to Dismiss the Indictment.

Contrary to the government's contention, the Court has not yet addressed the arguments set forth in Mr. Brunst's Motion to Dismiss for failure to plead necessary elements of the Travel Act offenses (Dkt. 746). And the Order denying the motion to dismiss premised on First Amendment violations was, as noted above, based on the government's misrepresentations. Both of those motions demonstrate that the government repeatedly misstated the law applicable to the charges against Defendants in this matter, and provide further reason to dismiss the Indictment as set forth in the Motion.

### E. In the Alternative, Disclosure of the Grand Jury Transcripts Is Warranted Given the Government's Abuse of the Grand Jury Process.

The government does not contend that any specific aspects of this case or the grand jury require that the transcripts remain sealed.[10] The government does not dispute the argument forth in the Motion that none of the factors that normally justify grand jury secrecy continue to apply in this case.[11] *See* Motion at 16-17; *Douglas Oil Co. of*

---

[10] Although the government claims it explained its refusal to disclose the grand jury transcripts (Response at 13, n. 9), the referenced government Exhibit F is from four months prior to Defendants' most recent request, and therefore does not does not address the misrepresentations and legal instructions issues raised by the defense in its September 5, 2019 renewed request (Motion, Exhibit 15). The government's response was that "the government is not inclined to file such a motion" to disclose the grand jury transcripts. *Id.*

[11] This is particularly so given the government's admission that all the testimony before the grand jury came from "two law enforcement witnesses" who "have not been noticed as [trial] witnesses." Response at 15.

*California v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979) ("It is equally clear that as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification."). Rather, it simply cites a number of inapposite cases (many of which are out-of-circuit) and argues that Defendants have not met their burden for unsealing. But this is not a case where the defense has made "bare allegations, or unsubstantiated or speculative claims of impropriety," as the government suggests. Response at 5 (citing *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980), which concerned a request for grand jury transcripts "based only on the speed with which the indictment was returned".) Nor, as discussed above, has the Court addressed and rejected the arguments raised in the Motion. Response at 15.

The Motion sets forth voluminous, specific bases to conclude that the government abused the grand jury process. And it is not true that Defendants "have failed to articulate a basis for disclosure." Response at 15. It is simply that the government has ignored or conceded the vast majority of those bases, including in failing to respond to most of the cases cited by Defendants on this very point. *See* Motion at 15-17. And on the one point where the government has substantively responded—regarding the child sex trafficking allegations—its response, as demonstrated above, cites inapposite cases and is no answer at all.[12]

### III.   CONCLUSION

The disclosure of the grand jury transcripts is only requested as a possible interim alternative to the remedy that is actually appropriate here: dismissal. The government's abuse of the grand jury process, including its lengthy presentation of prejudicial, unneeded

---

[12]  At a minimum, Defendants are entitled to the grand jury instructions. *See United States v. Belton*, 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015); *see also United States v. Fuentes*, 2008 WL 2557949, at *4 (E.D. Cal. June 24, 2008). Unlike in the cases relied upon by the government, Defendants are not speculating about what transpired before the grand jury; the Indictment and the government's transparent evidentiary misrepresentations are enough to warrant disclosure.

allegations regarding the uncharged crimes of sex trafficking, and its numerous misrepresentations of the evidence and the law, require dismissal of the Indictment. Defendants respectfully request that the Court grant the Motion in its entirety.

DATED: December 23, 2019           Gary S. Lincenberg
                                   Ariel A. Neuman
                                   Gopi K. Panchapakesan
                                   Bird, Marella, Boxer, Wolpert, Nessim,
                                   Drooks, Lincenberg & Rhow, P.C.


                                   By:    /s/ Ariel A. Neuman
                                              Ariel A. Neuman
                                   Attorneys for Defendant John Brunst

*Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (May 2018) § II (C) (3), Ariel A. Neuman herby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized its filing.*

DATED: December 23, 2019           Thomas H. Bienert, Jr.
                                   Whitney Z. Bernstein
                                   BIENERT KATZMAN PC


                                   By:    /s/ Thomas H. Bienert, Jr.
                                              Thomas H. Bienert, Jr.
                                   Attorneys for Defendant James Larkin


DATED: December 23, 2019           Paul J. Cambria, Jr.
                                   Erin McCampbell
                                   LIPSITZ GREEN SCIME CAMBRIA LLP


                                   By:    /s/ Paul J. Cambria, Jr.
                                              Paul J. Cambria, Jr.
                                   Attorneys for Defendant Michael Lacey

| | | |
|---|---|---|
| DATED: December 23, 2019 | | FEDER LAW OFFICE, P.A. |
| | By: | */s/ Bruce Feder* |
| | | Bruce Feder |
| | | Attorney for Defendant Scott Spear |
| | | |
| DATED: December 23, 2019 | | DAVID EISENBERG PLC |
| | By: | */s/ David Eisenberg* |
| | | David Eisenberg |
| | | Attorney for Defendant Andrew Padilla |
| | | |
| DATED: December 23, 2019 | | JOY BERTRAND ESQ LLC |
| | By: | */s/ Joy Malby Bertrand* |
| | | Joy Malby Bertrand |
| | | Attorney for Defendant Joye Vaught |

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2019, I served the attached document by email on the following, who are registered participants of the CM/ECF System:

| | |
|---|---|
| Andrew C. Stone | andrew.stone@usdoj.gov |
| Anthony Ray Bisconti | tbisconti@bmkattorneys.com |
| Bruce S. Feder | bf@federlawpa.com |
| David S. Eisenberg | david@deisenbergplc.com |
| Erin E. McCampbell | emccampbell@lglaw.com |
| James C. Grant | jimgrant@dwt.com |
| John Jacob Kucera | john.kucera@usdoj.gov |
| John Lewis Littrell | jlittrell@bmkattorneys.com |
| Joy Malby Bertrand | joyous@mailbag.com |
| Kevin M. Rapp | kevin.rapp@usdoj.gov |
| Margaret Wu Perlmeter | margaret.perlmeter@usdoj.gov |
| Michael D. Kimerer | mdk@kimerer.com |
| Paul John Cambria, Jr. | pcambria@lglaw.com |
| Peter Shawn Kozinets | peter.kozinets@usdoj.gov |
| Reginald E. Jones | reginald.jones4@usdoj.gov |
| Rhonda Elaine Neff | rneff@kimerer.com |
| Robert Corn-Revere | bobcornrevere@dwt.com |
| Ronald Gary London | ronnielondon@dwt.com |
| Seetha Ramachandran | sramachandran@proskauer.com |
| Thomas Henry Bienert, Jr. | tbienert@bienertkatzman.com |
| Whitney Z. Bernstein | wbernstein@bienertkatzman.com |

                                                */s/ Ariel A. Neuman*
                                                Ariel A. Neuman