**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | CR-18-0422-PHX-SMB |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | January 29, 2020 |
| Michael Lacey, | ) | 11:00 a.m. |
| James Larkin, | ) | |
| Scott Spear, | ) | |
| John Brunst, | ) | |
| Andrew Padilla, | ) | |
| Joye Vaught, | ) | |
| Defendants. | ) | |
| _____ | ) | |

**BEFORE:  THE HONORABLE SUSAN M. BRNOVICH, JUDGE**

**<u>REPORTER'S TRANSCRIPT OF PROCEEDINGS</u>**

**<u>ORAL ARGUMENT - MOTION TO DISMISS</u>**

Official Court Reporter:
Christine M. Coaly, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 37
Phoenix, Arizona 85003-2151
(602) 322-7248

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                          **A P P E A R A N C E S**

2     FOR THE GOVERNMENT

3             U.S. ATTORNEY'S OFFICE
              By:  **Mr. Kevin M. Rapp**
4                  **Mr. Andrew C. Stone**
                   **Ms. Margaret Wu Perlmeter**
5                  **Mr. Peter Kozinets**
              40 North Central Avenue, Suite 1200
6             Phoenix, Arizona 85004

7

       FOR THE DEFENDANT LACEY:
8
              LIPSITZ GREEN SCIME CAMBRIA
9             By:  **Mr. Paul John Cambria, Jr.**
              42 Delaware Avenue, Suite 120
10            Buffalo, New York 14202

11     FOR THE DEFENDANT LARKIN:

12            BIENERT MILLER & KATZMAN, PLC
              By:  **Mr. Thomas Henry Bienert, Jr.**
13            903 Calle Amanecer, Suite 350
              San Clemente, California 92673
14
       FOR THE DEFENDANT SPEAR:
15
              FEDER LAW OFFICE, PA
16            By:  **Mr. Bruce S. Feder**
              2930 East Camelback Road, Suite 160
17            Phoenix, Arizona 85016

18     FOR THE DEFENDANT BRUNST:

19            BIRD MARELLA BOXER WOLPERT NESSIM
              DROOKS LINCENBERG & RHOW, PC
20            By:  **Mr. Ariel Neuman**
              1875 Century Park E Suite 2300
21            Los Angeles, CA 90067

22     FOR THE DEFENDANTS PADILLA AND VAUGHT:

23            DAVID EISENBERG, PLC
              By:  **Mr. David S. Eisenberg**
24            3550 North Central Avenue, Suite 1155
              Phoenix, Arizona 85012

25

                          UNITED STATES DISTRICT COURT

1                    **P R O C E E D I N G S**

2          COURTROOM DEPUTY:  Criminal case 2018-422, United

3    States of America versus Michael Lacey and others, on for a

4    motion hearing.

5          Will the parties please announce.

6          MR. KOZINETS:  Yes.  Peter Kozinets for the United

7    States, along with Kevin Rapp, Andrew Stone, and Margaret

8    Perlmeter.

9          MR. NEUMAN:  Good morning, Your Honor.  Ariel Neuman

10   for Mr. Jed Brunst who is present in court.

11         MR. BIENERT:  Good morning, Your Honor.  Thomas

12   Bienert for Jim Larkin who is not present.  He's recuperating

13   from surgery.  We have a waiver on file.

14         THE COURT:  All right.

15         MR. CAMBRIA:  Good morning, Your Honor.  Paul Cambria

16   for Michael Lacey who is here.

17         MR. FEDER:  Bruce Feder for Scott Spear who is also

18   present.

19         MR. EISENBERG:  Sorry for the noise, Your Honor.  Good

20   morning.  David Eisenberg representing Andrew Padilla.  We

21   would waive his presence.

22         And I'm also standing in for Ms. Bertrand who

23   represents Joye Vaught, and we would waive her presence as

24   well, Your Honor.

25         THE COURT:  All right.  And we're set for oral

1    argument on the motion to dismiss filed by Mr. Brunst on the

2    Travel Act issues.

3           I issued the order two days ago just to sort of narrow

4    the issues that I was concerned with.

5           So, Mr. Neuman.

6           MR. NEUMAN:  You want me to go first, Your Honor?

7           THE COURT:  Yes.

8           MR. NEUMAN:  Okay.  May I have a moment to set up

9    here?

10          THE COURT:  Sure.

11          MR. NEUMAN:  I was expecting to go second since we

12   filed the reply.

13          Thank you.  Good morning, Your Honor.  So I appreciate

14   the Court's questions, and I intend to answer those, except the

15   ones I posed, obviously, because I don't think there are good

16   answers to those, but I do want to address them.

17          But, before I get to that, I want to remind the Court,

18   as I'm sure the Court is aware, that the questions in some way

19   presume that we're going to get to the question of whether a

20   business enterprise can somehow be inferred or there is notice

21   in the indictment of a business enterprise, which I would

22   submit to the Court is a secondary question.

23          The first question is whether the indictment actually

24   charges a cognizable offense under the federal code, and it

25   does not.  And why that is, is because it actually -- this is

1    not a case where unlawful activity stands undefined.  The

2    government chose to define it, and, as I'll explain to the

3    Court with various cases that we cited and other cases, they

4    have to live with that.

5              And this isn't -- there is no question of what the

6    government charged here.  I'll put up on the Elmo just a few

7    pages from the indictment.

8              If I can have the Elmo.

9              COURTROOM DEPUTY:  It's ready.

10             MR. NEUMAN:  Thank you.  This is paragraph --

11             How do I, sorry, zoom out?

12             COURTROOM DEPUTY:  Yes.

13             MR. NEUMAN:  Here it is.

14             It's paragraph 17.  The Backpage defendants are

15   charged in this superseding indictment with the crimes of

16   facilitating prostitution.  That's the crime that the grand

17   jury was asked to return a verdict on, not facilitating

18   business enterprises involved in prostitution offenses, or any

19   business enterprise.

20             Same thing if we look at the actual language of the

21   counts.  Count 1, Travel Act to Facilitate Prostitution, and

22   counts 2 through 51, Unlawful Activity, to wit: Prostitution

23   Offenses.

24             So that's what the grand jury was actually asked to

25   vote on.  We cannot now come in and substitute our own

1   judgment, whether it's the government now wanting to come in

2   and change the charge, whether it's the Court, understandably,

3   following the mandates of trying to see if there is a way that

4   the indictment should survive, trying to do so and analyze

5   things, but there is no question of what the crime actually

6   charged in this case is.  And that is not a cognizable offense.

7           The Welch case talks about there being a difference.

8   The Welch case is a Tenth Circuit case from 2003.  We cited it

9   in our papers.  I can give the Court the citation.  But there

10  is a difference, under the statute, there is a difference

11  between the -- the crimes that for which there must be a

12  business enterprise allegation and those for which there isn't.

13  Extortion, bribery, and arson, no business enterprise

14  allegation necessary.  They could have charged it this way if

15  it was business -- if it was an extortion, bribery, or arson

16  case.  They cannot charge it this way if it's gambling,

17  narcotics, or controlled substances, or prostitution.  So this

18  is just not a crime under the statute as charged.

19          THE COURT:  Okay.  But let me ask you.  So I

20  understand that it is poorly worded, to say the least, and

21  could have been more clearly defined, but in the actual

22  charging section under counts 2 through 51 it says, Travel Act,

23  as you've pointed out, dash, Facilitate Prostitution, but then

24  in paragraph 201 it goes on to talk about carrying on an

25  unlawful activity, which is the language from the Travel Act,

1    that it's an unlawful activity, which is then further defined.

2    And then in the counts -- in the specific counts it talks

3    about, I guess, it's defining the overt acts necessary to

4    facilitate the unlawful activity.

5         And I guess my question was:  Does the unlawful

6    activity have to be further defined?

7         MR. NEUMAN:  The answer I would say is yes.  And I

8    want to get to that because that's one of the Court's

9    questions, I know, but here they did define it.  Right.  They

10   actually did define unlawful activity in paragraph 201, to wit:

11   Prostitution Offenses.  We can't ignore that language.

12        And I would point the Court, and it's in our reply

13   brief, page 3, we cited a number of cases -- or it's not

14   page 3, excuse me, it's further in, but it's the Manes case,

15   the Davis case, and the Pinson case.  And the Pinson case in

16   particular says, the government is bound by the phrasing it

17   uses in the indictment, even if it chooses more specific

18   language than necessary.

19        So here they chose this language.  Whether or not they

20   had to define unlawful activity -- and I submit they do and I

21   want to answer the Court's question on that point -- they did.

22   They did define it, twice, once in count one, and once again in

23   counts 2 through 51.

24        And we can't now say, well, somehow the grand jury

25   could ignore that.  Somehow the grand jury wasn't bound to

1    follow that or didn't think they had to follow that.  Because

2    if we somehow change it, we run into the problems identified in

3    a case, Stirone versus United States, which is 361 U.S. 212 at

4    216, it's a 1960 Supreme Court case, where the court said, a

5    court cannot permit a defendant to be tried on charges that are

6    not made in the indictment against him.  And I would submit

7    that's what would happen here if we suddenly start reading this

8    language out and start worrying about what business enterprise

9    was -- was or wasn't identified.

10          And the same thing, Your Honor, would be Russell

11   versus U.S., 369 U.S. 749 at 770.  It's a 1962 Supreme Court

12   case.  And the quote there is, to allow a subsequent guess as

13   to what was in the minds of the grand jury at the time they

14   returned the indictment would deprive the defendant of a basic

15   protection which the guarantee of the intervention of a grand

16   jury was designed to secure.

17          So we can't ignore the language.  We have to assume

18   that the grand jury looked at that language, took it seriously,

19   and returned the indictment based on the definition of unlawful

20   activity which is not in concert with the statute.  So that's,

21   I think -- I want to make sure we start there before we even

22   get to the Court's questions, because I think all of the

23   Court's questions, in a lot of ways, if we -- if we come to the

24   conclusion, which I submit is appropriate, that the government

25   is bound by the language in the indictment, then the government

UNITED STATES DISTRICT COURT

1    has charged a crime which isn't a crime, and everything else

2    sort of falls away.

3          The only reason we even get to the questions we posed

4    in the reply, which the Court wants answered, is because we

5    sort of take on this idea, okay, well, did they identify

6    business enterprises and so on, which I want to get to.

7          The other problem with the way they charged this and

8    what the grand jury was told to consider, is that it reads out

9    the intent aspect of the Travel Act, right.  The intent aspects

10   of the Travel Act, going back to the statute, says, that the

11   defendant has to intent -- with intent to promote, manage, et

12   cetera, facilitate, the unlawful activity.  Unlawful activity

13   being any business enterprise involving prostitution offenses.

14   Meaning that the defendant has to intend to promote or

15   facilitate the business enterprise.  There is a case, Barbeito,

16   that we cited, which says, basically, you should be able to

17   substitute in the specified unlawful activity into that

18   sentence in A 3.

19          So, what does that mean here?  Here the grand jury was

20   told they could indict my client on count 1 if they found he

21   conspired to facilitate prostitution.  That's what count 1

22   says.  For counts 2 through 51, if he intended to promote

23   prostitution.  Again, not a crime under the Travel Act.

24          So it gets away from the -- from the requirements of

25   the statute.  And we see that they don't actually allege

UNITED STATES DISTRICT COURT

1    anything about my client, intent or knowledge as to any of

2    these supposed business enterprises that we'll talk about.

3    They just sort of vaguely talk about an intent to promote or

4    facilitate prostitution.  And, again, not a crime.

5          So then we get -- if -- if we're going to ignore that,

6    if we're going to say, okay, somehow we're going to get past

7    the idea that we are bound by the language in the indictment,

8    the government is bound by it, and the grand jury somehow knew

9    to go around this --

10         THE COURT:  Well, we can't ignore the fact that you

11   have to read the entire indictment as a whole.

12         MR. NEUMAN:  Agreed.  And so we go back to paragraph

13   17, for instance, which tells the grand jury, what are the

14   defendants charged with.  Couldn't be clearer, Your Honor.

15   They're charged with the crime of facilitating prostitution,

16   not facilitating a business enterprise or ten business

17   enterprises or a million business enterprises.  We have to read

18   the indictment as a whole.  I agree a hundred percent, Your

19   Honor.  Can't ignore any of it.  And as much as the government

20   now wants to come in and say, well, we can go into pieces of

21   the -- of those 109 -- 199 paragraphs, or whatever it is, and

22   find business enterprises, maybe, maybe not, but that's not the

23   charge.

24         But let's say we do go into those, because that's

25   where we start getting into the questions that we posed.  So

1    let's step into the second realm of problems here.  Because I

2    do agree that we have to read the indictment as a whole.  And

3    as we pointed out in our reply at paragraph -- at page 3, the

4    indictment as a whole is not limited.  Count 1 is a boundless

5    14-year globe spanning -- nearly 50-state spanning conspiracy

6    involving tens of millions of alleged prostitute and pimp

7    enterprises.

8            Reading the indictment as a whole, and confirmed by

9    the government's reply -- response brief, this is an

10   indictment, a conspiracy charge that goes on untold number of

11   enterprises.  This isn't one where we can say, okay, actually,

12   if we go back in, we can see that there is, yeah, five business

13   enterprises, right.  There is these five, well, fair notice on

14   those five.

15           No, they've told us, and they've told the grand jury,

16   because we're pulling out from the indictment, paragraph 11,

17   paragraph 42, paragraph 58, tens of millions of pimps and

18   prostitutes.  Every pimp and prostitute, everybody who ever

19   posted an adult ad, they say in their reply, essentially, and

20   probably qualifies as a business enterprise, because all those

21   adult ads, remember, are prostitution ads in the government's

22   indictment.

23           So this is, essentially, untethered from any ability

24   to defend, but moreover, untethered from any finding by the

25   grand jury.  We can't say which, if any, of those business

1    enterprises the grand jury agreed upon.  There is nothing in

2    this indictment that tells us the grand jury agreed that

3    Mr. Brunst conspired to facilitate the business enterprise of,

4    who?  Doesn't tell us.

5            THE COURT:  Well, it's limited by the specific counts

6    that underlie the conspiracy.

7            MR. NEUMAN:  Is it?

8            THE COURT:  Right?

9            MR. NEUMAN:  No.  Because, remember, the government is

10   also relying on Pinkerton liability.  So let's go to the

11   specific counts, Your Honor.

12           If we look at the specific counts, counts -- I just

13   want to get the numbers right -- I believe it's counts 20 -- 27

14   through 51 do not identify who, what enterprise, what alleged

15   enterprise, what pimp, what prostitute, what victim published

16   that ad or was involved in that ad.  There is nothing in

17   paragraphs -- in the counts 27 through 51 to tell us who the

18   enterprise is.

19           Then you go to counts 2 through 26.  There they

20   identify an alleged victim, sometimes they identify this PR.

21   That's it.  Right.  So we have to say either -- either PR or a

22   victim -- one of the victims, one of the alleged victims.  Now,

23   remember, again, those are only example victims, they say.

24   Those are sample victims.  They very clearly in the indictment

25   make clear those aren't all the victims, but let's look at

1   those.

2           So the government has relied on Pinkerton liability.

3   What does that mean?  That means that if there was a finding by

4   the grand jury that there was a conspiracy to facilitate

5   prostitution, then anybody who publish -- any coconspirator who

6   published an ad furthering prostitution offenses that defined

7   unlawful activity, you can now indict Mr. Brunst for that too.

8   That's the problem.

9           Moreover, if they didn't say to the grand jury, which

10  there is no indication in this indictment that they did, you

11  have to agree that there was a conspiracy to facilitate the

12  business enterprise of PR before you can then turn to Pinkerton

13  liability for the ads published by or on behalf of PR for

14  Pinkerton liability purposes, if they didn't do that, and there

15  is zero indication that the grand jury made that kind of

16  finding, then they didn't do Pinker -- then they run into those

17  Pinkerton problems.

18          That's exactly what we were posing in our question

19  number -- I don't know, I didn't number them -- but the

20  Pinkerton question problem.  That is the Pinkerton question

21  problem.  One, the conspiracy as defined doesn't allow for

22  Pinkerton liability based on a specific business enterprise.

23          Number two, if we want to somehow dig further and

24  really try to save these counts, you need to have a finding as

25  to a particular business enterprise before you can say

1    Pinkerton liability applies to ads published by someone else, a

2    coconspirator, to facilitate or promote that business

3    enterprise.  And there is no such finding.  It just -- it

4    doesn't happen.  It's not here.

5          So we can't go to the individual counts and say those

6    somehow show that the grand jury made a finding as to a

7    particular business enterprise.  If the government hadn't

8    relied on Pinkerton liability and hadn't defined unlawful

9    activity incorrectly, maybe.  If they had defined it correctly,

10   then, no, we'd probably be in a pretty different spot.  But

11   they didn't.  They relied on Pinkerton liability.  They've told

12   us that they could rely on Pinkerton liability.  And so the

13   individual counts only highlight the problems with this

14   indictment rather than solving anything for them.

15         Does that answer the Court's question on the

16   individual counts?

17         And just, you know, going back to -- the Court asked

18   this question, and it's the Court's last question, but it ties

19   in with something that we said and the government argued

20   against.  The government has no case that says it's allowed to

21   charge this unbounded count 1 conspiracy.  It's never been

22   done.  There is no case out there involving one of the offenses

23   under A -- sorry, (b)(i)(1), the ones that require a business

24   enterprise, there is no case out there and there is no

25   indictment that we have found that charges this sort of

1   unbounded millions, thousands, hundreds, whatever you want to

2   say, of business enterprises.  So they come back with cases

3   that say, well, it doesn't have to be organized crime.  Okay.

4   So what?  We agree.

5           They also cite cases that have nothing to do with the

6   business enterprise.  They cite two bribery cases, Perrin and

7   Welch.  Perrin has nothing to say about this, because it's a

8   bribery case.  Welch, also a bribery case, has nothing to say

9   except it notes that Congress specifically used the language of

10  business enterprise for certain offenses and specifically

11  decided not to use it for other offenses, bribe -- bribery,

12  arson, and extortion.  And that means something and we can't

13  just ignore that.

14          Their cases, Tavelman, which they cite over and over

15  again, wasn't a case where the business enterprise element was

16  even discussed and there was no question about it raised.  And

17  Davis, there was a single business enterprise alleged.  It was

18  a drug case.  There really wasn't any question.  So there is no

19  case where this has been done before.

20          I would submit to the Court as to whether you can

21  charge more than one -- the last question that the Court asked,

22  does the text of 18 U.S.C. 1952 or the Ninth Circuit precedent

23  indicate that a Travel Act charge is necessarily cabined to a

24  single business enterprise?  I would say there is no case that

25  answers that question, from what I've seen.  The statutory

1   language is in the singular, as I'm sure the Court noted.  The

2   Court is in the if -- by even getting to that question, again,

3   we're reading out what the government actually included in the

4   indictment.

5        Under the rule of constitutional doubt, the Court

6   should interpret it as requiring a single business enterprise

7   and should construe it that way because of all the due process

8   problems that result from construing it another way.  But even

9   if not, even if you could somehow say there was a Travel Act

10  violation conspiracy to facilitate or promote five different

11  business enterprises, you have to have a finding by the grand

12  jury that's clear from the indictment as to those five business

13  enterprises.  They have to be bounded.  There would have to be

14  some indication that the grand jury actually agreed on the

15  business enterprises that were alleged.

16       So the question in light, it -- in light of the

17  indictment, it almost doesn't matter what could be in another

18  case, because in this case there is no finding by the grand

19  jury as to any business enterprise.  They weren't asked to make

20  that finding based on what we see here.  The government hasn't

21  said they were asked to make that finding.

22       So then going into our questions, and it's -- I'm

23  answering my own questions, I guess, but -- without the benefit

24  of what the government's going say -- but starting with --

25            THE COURT:  Okay.  Well, I'm going to stop you before

1    you start answering your own questions because --

2              MR. NEUMAN:  Yeah.

3              THE COURT:  -- otherwise we're going to run out of

4    time.

5              MR. NEUMAN:  Do you want me to go to your questions?

6    Let me get to your questions.

7              THE COURT:  Okay.

8              MR. NEUMAN:  I do think just the one main question,

9    Your Honor, is in terms of what the grand jury found, because

10   -- and how we prepare our defense for these scores of business

11   enterprises.  Which ones are we supposed to focus on?  Which

12   one did the grand jury agree on?

13             So going to the Court's questions.  Essentially, the

14   first question is, is the business enterprise an element or is

15   it definitional.  That's sort of summarizing here the Court's

16   first two questions.  Is it mod -- is the business enterprise

17   modifier an essential element of the crimes charged, and is it

18   definitional in nature rather than an essential act?  I would

19   say that it's actually not even a modifier.  It is an essential

20   element.  The Welch case that I mentioned talks about that.

21   The Barbeito case I mentioned talks about that.  But there is

22   also cases that specifically say it, so let me point the Court

23   to those specific cases.

24             I'm going to butcher the name, but the first one is

25   United States versus Iennaco, I-E-N-N-A-C-O, 893 F.2d 394.

This is at 398.  D.C. Circuit case from 1990.  The existence of
a business enterprise, a continuous course of illegal conduct,
is a necessary element of a Travel Act offense involving, in
that case, narcotics.  So some of these -- not all of these
have to do with prostitution, but I'll put up the statute.  The
Court will see they all have to do with the -- with one of the
illegal acts that occurs under (b)(i), unlawful activity -- or
(b)(i)(1), excuse me, so narcotics, gambling, or prostitution.
There is this liquor thing but none of them talk about that.

United States versus Rinke.  That's from the Tenth
Circuit in 1985, 778 F.2d 581 at 586.  It is clear from the
statutory language that the unlawful activity the Travel Act is
intended to prohibit when the underlying offense involves
narcotics or controlled substances is a business enterprise.
And goes on to say that the count 2 of that indictment in that
case sets out the business enterprise element of a Travel Act
offense.

United -- this is now from the Fourth Circuit, 1986,
United States versus -- I'll just spell it --
P-O-L-O-W-I-C-H-A-K, 783 F.2d 410 at 415.  Travel in interstate
commerce with the specific intent to promote a business
enterprise involving marijuana constitutes an essential element
of a violation of Section 1952(a)(3).

Ninth Circuit, United States versus Vaccaro, 1987
case, 816 F.2d 443 at 454.  The Travel Act statute is violated

1    when interstate travel is employed to further an unlawful
2    business enterprise.

3           There is a number of cases, Your Honor, I could cite,
4    that list out the essential elements of a Travel Act offense.
5    And all of them include the business enterprise in their
6    listing of the elements.  And I'll just cite them without
7    reading them all.  A few -- or I'll give you two.  United
8    States versus Kardaman (phonetic), that's from the Southern
9    District of Illinois, April 3rd, 1987, the Westlaw citation is
10   1987 Westlaw 9323.

11          And this is from the Southern District of West
12   Virginia, United States versus Hankins, H-A-N-K-I-N-S, 2010
13   Westlaw 11530945.  And that, again, talks about the essential
14   elements.  That one is one involving gambling.

15          So I think there is enough cases that show that the
16   business enterprise is an actual element, it's not just
17   definitional.  And even if it were, in this case we have a
18   definition that's been assigned, as I've talked about, we can't
19   just ignore it.  And the Barbeito case, together with the
20   Supreme Court case of Bridges Versus Phoenix Bond and Indemnity
21   Company, 553 U.S. 639 at 652, that's a 2008 Supreme Court case
22   that's cited in Barbeito, that the inclusion of a definition
23   for a word in a statute is an unmistakable sign that Congress
24   intended that word to have a specialized meaning.

25          Here unlawful activity is a defined word.  The meaning

1    of unlawful activity is not found in the common meaning of

2    those words but in the terms definition.  And so, as a

3    practical matter, the government can't substitute its own

4    definition, which is exactly what it's done here.  Even if it

5    was definitional.

6         The Court's second question -- unless the Court has a

7    question for me on the first.

8         THE COURT:  No.

9         MR. NEUMAN:  Okay.  The Court's second question:  Is

10   the omission of business enterprise language -- if the omission

11   of business enterprise language is not by itself fatal, does

12   the charging instrument fulfill its constitutional function by

13   placing defendants on sufficient notice?

14        So, again, I think the notice problem is the second

15   problem to not charging the crime, but putting that aside, this

16   was where we get into all of the due process problems that

17   we've identified, you know, where we have an unbounded

18   conspiracy over 14 years around the globe with tens of millions

19   of alleged business enterprise, the answer is no.  There is no

20   case that's ever allowed this.

21        THE COURT:  Okay.  I need to stop you unless you have

22   30 seconds or less of something else to add.

23        MR. NEUMAN:  Your Honor, I do.  So on the -- two

24   points.  First of all, on your prior order, the order obviously

25   wasn't analyzing this, but even the Court came to the

1   conclusion based on what is in the indictment, just like the

2   grand jury did, that it was about facilitating prostitution.

3        Secondly, the citations that the Court has at --

4   citing to paragraphs 9 and 10, those paragraphs both point --

5   or 9 and 11, excuse me -- those paragraphs both point to

6   paragraph 10, which talks about, again, facilitating

7   prostitution.

8        Last thing I'll say, Your Honor, before I sit down, is

9   on the Court's last question about the proper weight the Court

10  should accord to the multiple references to the statute.  The

11  cases that the Court is citing there, Avery and Dashney, those

12  are cases that are post -- post-verdict challenges to the

13  sufficiency of the indictment.  Avery specifically says that

14  there is a very different standard for a post-verdict challenge

15  than there is to a pre-verdict challenge.  It's a much more

16  liberal construction for a post-verdict challenge.

17       And I would submit in that case it was 924(c), which

18  is a very simple statute, 1952 is not.  There is a lot of

19  sub-parts that is would need to be fleshed out for there to be

20  proper notice under 1952.

21       And Poole, the Ninth Circuit case, essentially, all

22  the elements were there just not in the precise order, which is

23  not our situation.  It wasn't a case where they left out an

24  element, or, actually, in our case, substituted something

25  different.  So I don't think that the references to 1952, which

1    is a very complicated statute with a lot of different parts,

2    where we're in a pre-verdict challenge, does anything to save

3    this indictment.

4              THE COURT:  Okay.  Thank you.

5              MR. KOZINETS:  Good morning, Your Honor.  Mr. Brunst's

6    motion to dismiss should be denied for a couple of basic

7    reasons.  First, the business enterprise language that we're

8    discussing is clearly definitional.

9              Secondly, the superseding indictment abundantly sets

10   forth multiple allegations of business enterprises that were

11   facilitated by the operation of Backpage and these defendants.

12             And, three, the remaining arguments that we've heard

13   today just can't withstand scrutiny.

14             I'd like to start with whether this is just a

15   definitional part of the statute.  But, first, a couple of,

16   kind of, basic overarching principles.  As we know, we're here

17   today on a motion to dismiss the indictment, which itself sets

18   up a very low bar.  Under the Buckley case, for instance, all

19   the indictment needs to do is to present a minimally adequate

20   description of the charges at issue.  We know under Rule 7 all

21   you need is a clean, concise, definite statement of the

22   essential facts constituting the charges at issue.

23             And under the Poole case that Your Honor cited,

24   perfection is not the standard and an indictment need not set

25   forth the precise language of the charging statute.  That's one

1    overarching principle.

2           The second one is what is this concept of business

3    enterprise?  How significant is it really?  We know that there

4    is an incredibly low bar to even finding what a business

5    enterprise is at trial.  Multiple cases have construed that

6    phrase as requiring nothing more than a showing that there has

7    been some sort of criminal activity that occurred more than

8    once.  So not just a one-off act of prostitution, a one-off

9    drug deal, but some sort of -- something more than that.

10   That's all that business enterprise means.  It's a stand-in for

11   the notion of indicia of some criminal activity that occurs

12   more than once.  That's endorsed by the Tavelman case which

13   pointed to just one significant prior cocaine transaction as

14   providing indicia of this sort of ongoing activity.

15          The Kaiser case talks about repeat sales of heroin.

16   The Barbeito case, which Mr. Brunst has emphasized repeatedly,

17   talks about how business enterprise can be established in that

18   case merely by the defendant's possession of a scale, a triple-

19   beam balance scale that's commonly used in drug distribution

20   cases.  Possession of the scale alone was enough to establish a

21   business enterprise at trial.

22          That case, by the way, and all of these cases, address

23   the sufficiency of the evidence at trial.  None of them, at

24   least none of the cases that are cited in Mr. Brunst's moving

25   papers, talk about what needs to be pled in the indictment with

1    respect to business enterprise.

2           And --

3           THE COURT:  But the conduct cannot be disjointed

4    participants that have no common business, right?

5           MR. KOZINETS:  So the conduct, with respect to the --

6    so the businesses have to have engaged in really more than one

7    act of prostitution or commercial activity evincing more than

8    one act.  That's it.  And you can have -- so I think what

9    you're -- you know, I think --

10          THE COURT:  Well, here.

11          MR. KOZINETS:  Okay.  Go ahead.

12          THE COURT:  Let me clarify.  So assuming I get past

13   their arguments that you, the government, has mis-defined the

14   elements of the offense and I look at the facts.  So with

15   respect to PR, there is 1, 2, 3, 4, 5, 6, 7, 8, 10 counts, so

16   that would show a course of conduct by PR.

17          MR. KOZINETS:  Correct.

18          THE COURT:  Victim 5, there is only one count related

19   to Victim 5, but paragraph 164 describes multiple acts

20   involving Victim 5.

21          MR. KOZINETS:  That's right.

22          THE COURT:  So that gets past that.  Same with, let's

23   see, Victim 13 there is only one count, but, again, paragraph

24   172 defines multiple acts, or describes.

25          Victim -- or count 16, sorry, Victim 16, count 24,

1  same thing.  And then the rest of the counts making up counts 2

2  through 26 all sort of fall in that category.  But counts 27 to

3  51 all seem to be disjointed.  As the defense pointed out,

4  there is no identifying factors in those, other than the fact

5  that they use the term GFE, which is a term known to describe

6  prostitution.

7       So I guess my question is, although counts 2 through

8  26 seem to describe potential business enterprises, how do 27

9  through 51?

10       MR. KOZINETS:  Sure.  So each individual ad in that

11 latter half of the counts that we're talking about now, each ad

12 was, as alleged in the superseding indictment, a prostitution

13 ad.  So each prostitution ad, in and of itself, reflects

14 indicia of some sort of illegal activity that's happening more

15 than once.

16       When you look at an ad for a car wash in the

17 newspaper, the car wash isn't saying, we're going to wash one

18 car and one car only and then we're done.  Don't bother showing

19 up later.  The ad is an invitation to deal.  It's an offer.

20 It's a solicitation.  Here are my prices.  Here are my

21 services -- albeit reflected in coded language, such as

22 girlfriend experience -- call me.  Let's do business.  So each

23 ad is inherently a business transaction, gives you sufficient

24 indicia of a business enterprise and meets that very low

25 threshold under the statute and the case law interpreting that.

1          THE COURT:  And you would compare that to the case

2    with the scale?

3          MR. KOZINETS:  The case with the scale, but really you

4    can just look at, you know, what is an ad?  An ad is an

5    advertisement for a business.  What is prostitution?

6    Prostitution, as alleged in the context of this indictment, is

7    always referred to as a business.  It's the sale of sex for

8    money.  It can only be conducted by way of commercial

9    transaction.  That's what it is.

10          And, in fact, in paragraph 11 we have Mr. Lacey

11    writing, kind of touting Backpage as providing for the very

12    first time, giving the oldest profession in the world

13    transparency recordkeeping safeguards.  It's a profession, a

14    business, inherently, a business activity, which I think brings

15    us to part of what the Court asked about in the order, was

16    whether this is a definitional part of the statute.

17          And even though Mr. Brunst has -- has cited various

18    cases, as far as I know, he's not cited a single case that

19    requires dismissing an indictment for failing to include the

20    words business enterprise in the indictment itself.  But, on

21    the other hand, there are scores of cases that describe the

22    essential elements of a Travel Act claim as consisting of the

23    three baseline elements that are set forth in subsection A to

24    the Travel Act, some interstate -- use of facilitating

25    interstate commerce with intent to promote or facilitate

1   unlawful activity, and a subsequent overt act in furtherance of

2   that unlawful activity.

3          The Tavelman case spells that out, the Childress case,

4   the Davis case, even the Wander and Welch cases all spell that

5   out.  And we're talking right now, once again, about the

6   sufficiency of the indictment, not just the sufficiency of the

7   evidence at trial.  There are cases that say, sure, at trial

8   there has to be more than just those three baseline core

9   elements.

10          The Childress case, in particular, is interesting.

11   It's a D.C. Circuit case from 1995.  And the indictment that is

12   approved there actually contains pretty much the same

13   formulation that paragraph 201 has in our superseding

14   indictment.

15          There the unlawful activity involved possession with

16   intent to distribute cocaine and cocaine base.  And the

17   indictment says, facilitate -- an intent to facilitate or

18   promote unlawful activity, to wit, colon, distribution and

19   possession with intent to distribute cocaine and cocaine base.

20   Doesn't say business enterprises, it just has that sort of same

21   to wit: language that we've used here and that has been used in

22   other Travel Act indictments.

23          And then, as the Court pointed to the Shafi case in

24   its order on Monday, Shafi in turn cites the Pugh case from

25   Eastern District of New York.  Both of those cases analyzed a

1    very similar issue, tried to distinguish between an essential

2    element and a definition in the giving material support to

3    foreign terrorism statute.  And both cases said the primary

4    place to look is the language and structure of the statute

5    itself.

6           And the statute at issue there, 18 U.S.C. 2339(b), and

7    the Travel Act statute here, have a similar structure.  They

8    both contain in subsection A and of the core elements of the

9    unlawful conduct and then -- and the punishment for that

10   conduct.  And then in subsequent sections there are other terms

11   that define the reach of the statute and define certain terms

12   and provide other conditions as to how the statute can be

13   applied.

14          Here, too, in the Travel Act you've got -- you've got

15   subsection A which sets forth the elements, and then subsection

16   B which says, as used in this section, unlawful activity, in

17   quotes, means -- and then it gives a definition.  That -- if

18   that's not definitional, I don't -- I don't know what is.  As

19   in Pugh and the Shafi cases, the word being defined appears in

20   quotes and it's followed by a definition.

21          The, um -- and even -- even if it is considered not

22   merely definitional but an element, it's our position that it's

23   not missing from the superseding indictment for two reasons.

24   First, it's fairly and necessarily implied, and, secondly, it

25   appears throughout the indictment because we have multiple

1    business enterprises that are in fact described in the

2    indictment.

3           The Supreme Court cases that have been cited by the

4    parties, Resendiz-Ponce and Hamling, are very instructive on

5    this question.  Resendiz-Ponce, the U.S. Supreme Court's most

6    recent pronouncement on sufficiency of the pleading issues that

7    have been cited by the parties, dealt with an attempted illegal

8    reentry case.  The Ninth Circuit said the indictment was not

9    sufficient, because in this attempt case the indictment didn't

10   give the defendant notice of the overt act that the government

11   intended to prove at trial and the substantial step that the

12   defendant allegedly took in furtherance of the attempt,

13   therefore, indictment is missing essential terms, has to be

14   dismissed.

15          The U.S. Supreme Court reversed.  The U.S. Supreme

16   Court held instead that by using the term indictment itself,

17   that necessarily implied a substantial step, because the

18   definition of attempt includes a substantial step towards

19   completing the crime.  Under Rule 7, which encourages

20   simplicity in pleading and puts aside dismissing indictments

21   for -- for, you know, highly technical issues, this was enough.

22   And it was enough to put the defendant on notice to be able to

23   prepare his case and plead double jeopardy down the road.

24          Here -- and Hamling is to the same effect.  That was a

25   case involving distribution of obscene materials by the mail.

1    The indictment used the word obscenity but didn't define what

2    was meant or why the materials were obscene.  The Supreme Court

3    said, look, this is a term of art.  It's a fixed legal term.

4    It has a well-known definition.  It doesn't have to be

5    specifically articulated in the indictment.

6             Here, too, the Travel Act has been on the books since

7    1961.  The definition of unlawful activity has been unchanged.

8    It too is a fixed legal concept that is well-known simply by

9    consulting the statute itself.

10            Did the prostitution prong of that definition apply

11   here?  There is no question that it did.  Prostitution is a

12   word that appears on virtually every page of this 92-page

13   superseding indictment.  It's -- it's not like the government

14   was hiding the ball.  The relevant prong of Section 1952 that

15   was being alleged here is the one involving the prostitution

16   offenses.

17            So, implicitly, this business enterprise modifier,

18   which is part of the definition of the prostitution prong of

19   the Travel Act, is necessarily implied under the Resendiz-Ponce

20   case and the Hamling cases.  But even if it's not, even if

21   that's not enough, the indictment itself contains abundant

22   factual allegations which are all incorporated by reference in

23   the counts of the indictment describing multiple prostitution

24   activities.

25            Your Honor mentioned PR, we have described in our --

1  in our response brief Licks a Lot, in paragraph 91 of the

2  superseding indictment, the 17 victims, we've talked about the

3  GFE ads.  There is Dollar Bill.  Who is Dollar Bill?  Dollar

4  Bill was an affiliate, what they called an affiliate, or a

5  super affiliate, or sometimes referred to as a super pimp.

6  What this company did, what these defendants did when they were

7  managing the company, is that they adopted, among other things,

8  a business practice of going out into the marketplace and

9  courting those prostitution advertisers who were able to

10 abrogate large groups of prostitutes to place ads, courting

11 them and bringing them into the Backpage fold, offering them

12 incentives, whether they were commissions or fees or whatnot,

13 and growing -- they're deliberately growing their business in

14 that way.  So these super pimps or super affiliates are also

15 among the business enterprises that were facilitated.

16      Your Honor mentioned looking at the superseding

17 indictment as a whole.  The O'Donnell (phonetic) case from the

18 Ninth Circuit 2010 spells this out.  An indictment should be

19 read in its entirety.  Here, look at all the examples of

20 business enterprises that are throughout the superseding

21 indictment.  It should be construed according to common sense.

22 It's common sense that prostitution can only be carried out as

23 a business venture.  It's inherently a sex-for-money profession

24 and interpreted to include facts which are necessarily implied.

25      The -- the fact that each of these prostitutes or

1    pimps or traffickers who placed ads or were advertised on

2    Backpage was a business enterprise is -- is something that

3    really can be necessarily implied just by the nature of the

4    prostitution business and what advertising is.  The bottom line

5    is that the failure to include these magic words "business

6    enterprise," doesn't require dismissal of the indictment

7    because the -- the, kind of, underlying concept of continuous

8    criminal activity is abundantly alleged throughout this 92-page

9    indictment.

10          So -- so where does that bring us next?  The next

11   question is whether the defendants were put on sufficient

12   notice of the crimes being charged.  And, once again,

13   Mr. Brunst is making this argument, that, hey, because business

14   enterprise itself doesn't appear in these charges, there has

15   been no crime.  They don't know what crime they've been charged

16   with.  Again, there is a very low bar that applies to assessing

17   the adequacy of an indictment at the motion to dismiss stage.

18   It's hard to imagine a more detailed indictment than the one

19   that we have here which alleges, kind of chapter and verse,

20   what these defendants did, how their company operated, and how

21   they deliberately and intentionally facilitated prostitution,

22   prostitution businesses, throughout the existence of Backpage.

23          They pursued these business practices that are

24   discussed in the indictment, aggregation being one of the first

25   ones discussed in the superseding indictment.  A deliberate

1 business strategy to create free ads for prostitutes who had

2 been identified by Backpage employees, offer them a free trial

3 subscription, or free trial period of advertising, and try to

4 enlist them as future paying customers.  If that's not

5 facilitating and promoting prostitution enterprises of others,

6 you know, I don't know what is.

7 　　　　　We talked about the affiliate program with Dollar

8 Bill, and there are others not -- that we will present at trial

9 who fall into that same class of affiliates as Dollar Bill.

10 The complaint -- the superseding indictment talks about the

11 reciprocal relationship that Backpage had with the Erotic

12 Review.  This Web site that published reviews of prostitutes.

13 A Web site that is referenced in some of those GFE ads that we

14 were just discussing, again, providing further indicia of

15 ongoing prostitution activity.  If a prostitute is reviewed on

16 a Web site and then is featured in another advertisement

17 inviting future business, that's clear indicia of continuous

18 ongoing business enterprise activity.

19 　　　　　With respect to the conspiracy count, we've heard --

20 Mr. Brunst has argued that it's -- look, it's just, it's too

21 broad.  The conspiracy is too broad.  Well, there is a broad

22 conspiracy charge here because of defendants' behavior, because

23 defendants operated this business and engaged in these

24 activities over a long period of time.  But the period of time

25 is definite.  It's defined in the superseding indictment as

1       starting on or about 2004, ending in April 2018.

2               We know that to charge a conspiracy count, you don't

3       have to charge an underlying substantive -- all the elements of

4       an underlying substantive crime.  As the U.S. Supreme Court has

5       recognized in the Salinas case and in other cases, conspiracy

6       is a crime unto itself.  Agreeing to commit a crime is its own

7       evil and it's separately dealt with under the criminal laws.

8       And beginning with the U.S. Supreme Court's case in Wong Tai,

9       which is cited in the Tavelman case, continuing through the

10      Ninth Circuit's decision in Pheaster, P-H-E-A-S-T-E-R, also

11      cited in Tavelman, and in Tavelman itself, courts have

12      recognized that when you're pleading a conspiracy count, not a

13      lot is required.  You don't need to get into all of the

14      technical pleading requirements that might apply to a

15      substantive count.  You just need -- and it's the basics -- a

16      time frame, an agreement -- an intentional agreement to commit

17      crime, that specified crime, and an overt act.

18              We have a lot of overt acts.  There are multiple overt

19      acts.  We only have to prove one, but the first 194 allegations

20      in the superseding indictment list countless overt acts.  We

21      submit those and many more will be established by the evidence

22      at trial.

23              There has been some argument about the notion that the

24      grand jury has to make some sort of special finding that would

25      allow the use of a -- of a Pinkerton instruction.  There is no

1    requirement of some sort of special finding.  The grand jury

2    just needs to return a true bill with respect to the facts that

3    are presented to it.  And that's exactly what it has done here.

4    The grand jury reviewed all of these facts about all of these

5    business enterprises, about how Backpage operated, about what

6    these defendants' roles were, and returned the superseding

7    indictment.

8         With respect to -- with respect to kind of this --

9    going back to this question can a -- can an indictment charge a

10   conspiracy to promote or facilitate more than one business

11   enterprise?  The answer is absolutely yes.  There is no

12   language in Section 1952 that says you can only charge one

13   business enterprise.  The definition of unlawful activity is

14   any business enterprise involving prostitution offenses.  Any

15   doesn't mean one and only one, it means it could be one, it

16   could be two, it could be any number of prostitution ventures

17   that are being facilitated by the defense.

18        And it's typical in a conspiracy count, and in

19   substantive -- even though it's not this case, but a

20   substantive count too could be -- well, just referring back to

21   conspiracy only.  If this were, for instance, a mail or a wire

22   fraud case where a defendant was charged with mailing a

23   brochure to thousands of people that says, if you send me $50,

24   I will send you a book about how to make money, and thousands

25   of people respond to that fraudulent scheme and don't get

1    anything in return, a conspiracy count, or even a substantive

2    count, could charge conduct that involves this large scale

3    operation.  This Web site operated on a very large scale.  It

4    interacted with a lot of customers, that was just the nature of

5    the business.

6         We've had -- in this internet age, we now are dealing

7    with Web sites that are getting involved in illegal activity.

8    The Ulbricht case was another example where you had a Web site

9    dedicated to engaging in narcotics -- or advertising narcotics

10   transactions and facilitating narcotics transactions.  Again,

11   that was a case where the Southern District of New York looked

12   at a motion to dismiss that indictment and looked at the

13   conspiracy charge, and said, yes, this is a broad case, but it

14   is plausible that this defendant engaged in a conspiracy to

15   facilitate all of these different narcotics traffickers, and so

16   we have a similar -- similar situation here.

17        So I guess the bottom line is that there is a very low

18   bar that applies to this kind of motion.  There is a very low

19   bar to even establishing what a business enterprise is at

20   trial.  We know from Supreme Court case law, from the structure

21   and language of the statute, from several circuit court

22   decisions, that the essential elements of a Travel Act claim

23   don't go down to the level of including definitions, and we

24   know that this is a definitional term.

25        So, for all of those reasons, we respectfully request

1    that this motion be denied, but if Your Honor has any other

2    questions or would like me to address any other points, I'm

3    happy to.  I could briefly talk about double jeopardy if that

4    would assist the Court.

5           THE COURT:  No.  But I do have a question.  Because of

6    the generic use of the phrase "promoting prostitution"

7    throughout the indictment, I am thinking that their motion

8    raises a particularized need for disclosure of the instructions

9    to the grand jury.

10          Do you have any position on that?  I know I denied

11   that motion --

12          MR. KOZINETS:  Right.

13          THE COURT:  -- but after review of this motion, it

14   seems that there is a particularized need for just the

15   disclosure of the instructions.

16          MR. KOZINETS:  So -- so on that, I actually would

17   defer to -- to Mr. Rapp who -- who kind of handled the -- the

18   briefing relating to the grand jury issue.

19          THE COURT:  That's fine.

20          MR. RAPP:  Well, it is presumed that the grand jury

21   was read the statute and they understood the statute.

22          To the extent that the Court wants to review in camera

23   the instructions -- I mean, as the Court knows, we never

24   transcribe those instructions.  We transcribe the -- the

25   testimony.  But if the Court in camera would like to look at

1    the instructions to satisfy the Court that they were read

2    the -- the statute, then we'd be happy to do that.  But they

3    still have not -- it is presumed that they were read the

4    statute, because the statute is referenced in the indictment.

5            As the Court knows from looking at other indictments,

6    to put it mildly, this is a very comprehensive indictment that

7    cites all of the relevant statutes.  And, as the Court knows,

8    many indictments don't even have the elements, they just cite

9    the statute and that's sufficient in many districts.  So we

10   don't think there is a particularized need by virtue of the

11   fact that the statute has been identified in the indictment and

12   it is presumed that it was read, because there is a regularity

13   that occasions a grand jury presentation, but if the Court

14   wants to -- and I've seen this once in probably 25 years where

15   a Court wanted to look, in camera, at the instructions to

16   satisfy themselves -- and they were -- we'd be willing to do

17   that.  But they still have not established a particularized

18   need given the extent of the indictment.

19           THE COURT:  Okay.

20           MR. NEUMAN:  Can I be heard, Your Honor?

21           THE COURT:  Yeah.

22           MR. NEUMAN:  I'm not going to respond, obviously, to

23   everything, just two points quickly in response.

24           First of all, when -- first of all, the government

25   didn't make any effort to answer the questions we posed, so

1    I'll just note that.  No effort at all, because I don't think

2    they can.

3          Secondly, they went through the multiple business

4    enterprises described, and listed four, PR, Licks a Lot, the

5    victims, I guess victims is a number, and then Dollar Bill, it

6    highlights the problem with this Pinkerton issue, Your Honor.

7    Because if the grand jury agreed on Dollar Bill, for instance,

8    as the business enterprise which the defendants conspired to

9    facilitate, if that's the one, we don't know, let's just take

10   that one, none of the ads in counts 2 through 51 were published

11   by Dollar Bill.  So what do we do with those ads if they were

12   instructed on Pinkerton, because we know they were.  So this is

13   the exact problem with this indictment.  So I don't want to

14   belabor the point, but they could have agreed on -- to the

15   extent they knew about, and agreed on any, yeah, we just don't

16   know which one and we don't know how it affected anything else.

17         On this idea of the mail fraud conspiracy that -- that

18   counsel used and using that, that's -- in that case there would

19   be one scheme.  The scheme would be the multiple victims of the

20   scheme with multiple mailings.  Here what is the charged

21   scheme?  The scheme is facilitating prostitution not -- if

22   we're going to take this analogy, it's not a perfect analogy,

23   but that is the scheme.  It's just -- it's a very different

24   case and they don't seem to have an answer.  They just admit,

25   yeah, it's a broad conspiracy.  Why?  Well, because their

1    activity is broad, but that doesn't answer the question.

2    Because the statute requires unlawful activity via business

3    enterprise.  That's what the conspiracy is.

4         You can't just say, well, conspire to violate the

5    Travel Act.  That wouldn't be enough.  You can't say conspire

6    to facilitate unlawful activity, because that doesn't tell you

7    anything when you have some underlying crimes that require a

8    business enterprise and some that don't.  That's why it's an

9    element, because if it's arson, you don't need a business

10   enterprise, if it's prostitution, you do.  That's what makes it

11   an element.  There is a difference.  Unlawful activity doesn't

12   stand by itself.  It's not just defined, it's actually expanded

13   out as an element.

14        On this last question that the Court raised about the

15   instructions, I don't know -- obviously, I don't practice in

16   this district.  I have never heard that instructions are not

17   transcribed.  The Central District of California, where I come

18   from, everything is transcribed that happens before the grand

19   jury.  So maybe I misunderstood Mr. Rapp, but I'd be surprised

20   if there is anything that happened that wasn't transcribed.  If

21   there is, then we have a much bigger problem and I want to hear

22   more about that.

23        And to the extent the Court thinks that will help,

24   obviously, we would ask for the instructions to be disclosed.

25   I, quite frankly, think that the motion on its own stands.  I

1    don't think counsel has answered the questions that the Court

2    raised, or that we raised.  And, you know, if the Court needs

3    the instructions, I think the Court should get the

4    instructions, and we should get the instructions, but I just

5    don't think they have an answer to what we've raised.

6            MR. CAMBRIA:  Your Honor, excuse me, could I point out

7    that Rule 6(e) requires that all proceedings before the grand

8    jury be recorded except deliberations.

9            THE COURT:  You can point that out.

10           MR. RAPP:  I'm happy to clarify, if you want a

11   clarification.

12           THE COURT:  Well, what's to clarify?  You said it

13   wasn't transcribed.

14           MR. RAPP:  It's recorded.  There is a court reporter

15   there.  Of course it's transcribed.  It's -- it's -- we don't

16   -- we don't ever get a tran -- we don't get -- ever request a

17   transcript of it because it's never asked for.

18           THE COURT:  Okay.  All right.  I'll take it under

19   advisement.  If I am going to order the transcript, I'll do it

20   within the next day or two and I'll set a deadline for that.

21           And I do know that there is a motion to continue

22   that's been filed, which I'm not going to address today.  I'm

23   going to wait for the government's response.

24           MR. BIENERT:  Absolutely.  And I was just going to

25   ask, because we filed it late last night, I wouldn't expect

1    Your Honor or the government to really have seen it.  My only

2    thought is I assume there is a good chance you just rule on the

3    papers, but to the degree that you might want to hear from us

4    before you rule, I was just wondering, since we're all here

5    today, as sort of a backup placeholder, do you want to tell us

6    a day, try to pick a day where -- if we have to show up, so we

7    don't go through Your Honor saying, come in on this day, and

8    then all of us are, like, we can't be there, or --

9         THE COURT:  I don't think I'm going to need everybody

10   here.  Although, I guess if I'm going to -- if I am going to

11   grant it, I will need everybody here so that we can actually

12   get a date that works for everybody.

13        MR. BIENERT:  So, again, I follow Your Honor's lead.

14   I'm just thinking it's hard to herd us cats, and since we're

15   all here, if we wanted a backup date, and if you do a ruling

16   that makes it obviated, then that's that, but if we need to be

17   somewhere, we at least have a date.

18        THE COURT:  Well, so if I deny it, I'm not going to

19   need to hear from you.  If I grant it, maybe I'll figure out a

20   way where you all don't have to come in here for a scheduling

21   issue.

22        MR. BIENERT:  Fair enough, Your Honor.

23        THE COURT:  All right.  We're at recess.

24        (Proceedings concluded at 12:06 p.m.)

25             *         *         *

1                   C E R T I F I C A T E

2

3          I, CHRISTINE M. COALY, do hereby certify that I am

4   duly appointed and qualified to act as Official Court Reporter

5   for the United States District Court for the District of

6   Arizona.

7          I FURTHER CERTIFY that the foregoing pages constitute

8   a full, true, and accurate transcript of all of that portion of

9   the proceedings contained herein, had in the above-entitled

10  cause on the date specified therein, and that said transcript

11  was prepared under my direction and control.

12         DATED at Phoenix, Arizona, this 7th day of February,

13  2020.

14

15

16                    /s/ Christine M. Coaly_____
17                    Christine M. Coaly, RMR, CRR

18

19

20

21

22

23

24

25