MICHAEL BAILEY
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012
Telephone (213) 894-3391

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>           Plaintiff,<br><br>    v.<br><br>Michael Lacey, et al.,<br><br>           Defendants. | No. CR-18-422-PHX-SMB<br><br>**UNITED STATES' MOTION TO PRECLUDE DEFENDANTS' NOTICED EXPERTS** |

The government moves to preclude Defendants' noticed experts from testifying at trial. Defendants' expert witness disclosure is deficient, both under Rule 16 and Rules of Evidence 702, 703, and 705. Defendants attempt to explain away this deficiency by blaming the government, but those excuses are unavailing. Even if Defendants could

- 1 -

rectify their deficient notice, many of the experts are irrelevant in light of various rulings by the Court. Finally, Defendants have filed a placeholder for several additional expert witnesses, but have not yet disclosed the requisite information under the applicable rules. For these reasons, Defendants' experts should be precluded.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Summary of Relevant Facts

On December 14, 2018, the government timely noticed its expert witnesses. (Doc. 422.) On March 14, 2019, Defendants filed their joint expert witness disclosure. (Doc. 500.) The notice provided the names of six proposed experts and then listed four additional subject matters of expert testimony without identifying any actual witnesses. (*Id.*) On April 22, 2019, Defendant Spear filed a supplemental expert witness disclosure, identifying Professor Eric Goldman, who would be expected to testify on certain aspects of content moderation. (Doc. 538.) On June 17, 2019, the government filed its notice of rebuttal expert witnesses. (Doc. 638.) In its rebuttal notice, the government identified four additional experts. (*Id.*) Trial is scheduled for August 17, 2020. (Doc. 893.)

### II. Law and Argument

Rule 16 governs expert disclosures. The government's obligations include disclosing to Defendants a written summary of any testimony it intends to use under Rules 702, 703, or 705. Fed. R. Crim. P. 16(a)(1)(G). The summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id.* Defendants have a parallel obligation under Rule 16(b)(1).

The purpose of this rule is to "minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross examination." Fed. R. Crim. P. 16, advisory committee notes (1993). A party who fails to comply with its discovery obligations may be precluded from introducing the undisclosed evidence. Fed. R. Crim. P. 16(d)(2)(C); *see also United States v. Scholl*, 166 F.3d 964, 972 (9th Cir. 1999) (testimony of defendant's expert was irrelevant and district court did not abuse its

discretion in excluding testimony as confusing, inconsistent and misleading to jury). The admission or exclusion of expert testimony is committed to the broad discretion of the trial court. *See Hamling* v. *United States*, 418 U.S. 87, 108 (1974).

Compliance with Rule 16 is necessary to enable a district court to make several determinations required by the Federal Rules of Evidence. *See* Fed. R. Evid. 702. Specifically, compliance with Rule 16 facilitates the district court's assessment of whether the expert testimony is helpful, whether the expert is qualified, and whether his or her testimony is relevant and reliable. The Supreme Court has noted that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it," which is why trial courts will exclude expert testimony when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993). Further, a defendant's failure to follow "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence" may prompt a court to curtail a defendant's right to present evidence. *Chambers* v. *Mississippi*, 410 U.S. 284, 295 (1973); *see also Taylor v. Illinois*, 484 U.S. 400, 412 (1988) ("The court's preclusion sanction was an entirely proper method of assuring compliance with its order.").

### A.  Defendants' Expert Witness Disclosures Are Deficient

Defendants' expert witness disclosures (Docs. 500, 538) are deficient under the applicable rules. Specifically, Defendants' disclosures have failed to provide a summary that describes the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications, as required under Rule 16(b)(1)(C). The government analyzes each of Defendants' noticed experts below.

#### i.  Bates Butler

Defendants intend to call Bates Butler—a former acting United States Attorney for the District of Arizona—to testify on "informant/cooperating witness testimony and sentencing." (Doc. 500 at 4.) Defendants' notice failed to provide a written summary of Mr. Butler's intended testimony. Likewise, no discovery or Rule 26.2 statements have

been disclosed. Without these disclosures, any analysis under Rule 702 is difficult. But, even if Defendants had complied with the applicable rules, Mr. Butler's testimony should still be excluded. Testimony from a former AUSA about cooperating witnesses is a subject that a juror does not need help in understanding, which renders the expert testimony unnecessary.

The Eighth Circuit found that this type of expert testimony inappropriate. *United States v. Davis*, 457 F.3d 817, 824 (8th Cir. 2006). In *Davis*, the defendant wanted to call a federal public defender to testify as an expert about "substantial assistance" and the "mechanics of the federal sentencing process." *Id.* The defendant in *Davis* intended to use the expert testimony "to impeach the credibility of the government's cooperating witnesses by calling into question [the witnesses'] motivation for testifying against [the defendant], and thereby raising doubt as to the reliability of their testimony." *Id.* In affirming the district court's ruling to exclude, the Eighth Circuit explained that:

> The jury did not need expert testimony explaining the details of sentencing procedures to understand that the government's witnesses might have an incentive to incriminate [the defendant]. Expert testimony is appropriate when it relates to issues that are beyond the ken of people of ordinary intelligence. Where the subject matter is within the knowledge or experience of laymen, expert testimony is superfluous.

*Id.* The same reasoning applies to Mr. Butler. The Court should preclude his testimony.

        ii.        <u>Roman L. Weil</u>

Mr. Weil's expected expert testimony pertains to the functions that a Chief Financial Officer (CFO) performs in a corporate setting. (Doc. 500 at 4-5.) How Mr. Weil's testimony would be relevant to the facts presented at trial is left unexplained. What a CFO typically does is not relevant, especially in light of the government's allegations against Backpage's former CFO—Defendant Brunst. The Superseding Indictment includes numerous allegations that Brunst fully participated in and knew about Backpage's business practices to increase the volume of prostitution ads. (Doc. 230 ¶¶ 49, 57, 135, 138, 155, 157, 178, 179). In addition, Brunst was fully engaged in efforts to facilitate Backpage's concealment money laundering following the June 2015 credit card block. (*Id.* at ¶¶ 180,

181, 183, 187, 190.) Of course, the government will have the burden to prove these allegations at trial, but the critical question for the jury will be whether Brunst engaged in the alleged conspiracies, violated the Travel Act, and committed money laundering offenses. His guilt or innocence will be determined by the evidence presented against him. Testimony about a typical CFO's duties have no bearing on the question before the jury.

To the extent that Mr. Weil's proposed testimony is some type of veiled attempt to comment on Brunst's state of mind or his intent, such expert testimony is inappropriate and should be precluded. *Hunton v. Am. Zurich Ins. Co.*, No. CV-16-00539-PHX-DLR, 2018 WL 1182550, at *2 (D. Ariz. Mar. 7, 2018) (citing *Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013)) ("Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind. . . . The jury is sufficiently capable of drawing its own inferences . . . and permitted expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful for the jury.").

Finally, Defendants have failed to provide a summary of testimony, any Rule 26.2 statements, or the information relied on by Mr. Weil to form the bases of his opinions. Mr. Weil should be precluded.

       iii.     <u>Alexandra Levy, Dr. Alexandra Lutnick, Dr. Kimberly Mehlman-Orozco</u>

Defendants have noticed these three experts for the same categories of testimony. (Doc. 500 at 5-6.) These categories include: (1) the effect of imposing liability on Backpage for advertisements placed by third parties; (2) the utility of online commercial advertisements to law enforcement in identifying and rescuing victims of sex trafficking; (3) sex trafficking and/or prostitution; (4) causation or lack thereof; (5) the practices of Backpage, Craigslist, Facebook, Google, and other Internet providers, and (6) rebuttal testimony. (*Id.*) At a minimum, three experts to testify about the exact same issues would be cumulative.

Defendants fail to articulate the relevance any of these witnesses' expected

testimony.  The first category of their testimony is the "effect of imposing liability on Backpage for advertisements placed by third parties," but that will not be the question before the jury.  Instead, the government intends to prove the allegations in the Superseding Indictment, which include an array of internal business practices conducted by Defendants to increase the volume of prostitution ads.  Backpage, for its part, has already pleaded guilty in the separate criminal case filed against Backpage and several related entities.

The expected testimony of these three witnesses on this topic also appears at odds with the Court's view of the allegations against Defendants.  For example, the Court—in denying Defendants' motion to dismiss based on the First Amendment—wrote, "The SI does not allege Defendants are criminally liable because they unknowingly and unintentionally operated a website used by third parties to post prostitution ads.  Rather, it alleges Defendants purposely sought out opportunities to increase prostitution advertising on Backpage."  (Doc. 793 at 14.)  The Court concluded, "[a]s alleged, Backpage's efforts to promote its website facilitated prostitution and were not protected business practices."  (*Id.* at 14-15.)  Given that fact, the testimony from these three witnesses on this topic does not appear relevant.

The Court's Order also articulates why Backpage is materially different from the other internet platforms listed in the expert disclosure.  Indeed, "the facts alleged in the SI are qualitatively different than the protected activities" of these other companies.  (Doc. 793 at 13.)  Craigslist, for example, shuttered their adult category over ten years ago and there was never any evidence that they engaged in the internal business practices detailed in the Superseding Indictment.[1]   Likewise, Facebook and Google never engaged in the same insidious business practices as Backpage and, indeed, implemented true content moderation to rid their site of pornography, expunged posts that were designed to facilitate sexual encounters, and banned racist and inflammatory content.[2]

---

[1] https://www.theregister.co.uk/2009/05/13/craigslist_closing_erotic_services_section/

[2] For example, Facebook as the following policy regarding sexual content: "As noted in Section 8 of our Community Standards (Sexual Exploitation of Adults), people use Facebook to discuss and draw attention to sexual violence and exploitation. We recognize

- 6 -

In examining each of these witnesses individually, it appears that Dr. Lutnick takes the position that shutting down websites that are used to advertise sexual services is harmful to victims of sex trafficking.  (*See* Lutnick Declaration dated June 27, 2018, attached as Ex. A.)[3]  Dr. Lutnick has stated: "[S]hutting down websites that people use to advertise sexual services is extremely harmful to people experiencing trafficking in the sex industry.  It will also be detrimental to people engaging in sex work, whether by choice or circumstance."  (*Id.* at ¶ 11.)  Defendants have not explained the relevance of testimony that editorializes whether the government's actions in shutting down Backpage are a net positive or negative to society as a whole.  Again, this larger question will not be presented to the jury, which will be focused on whether these six Defendants are guilty of the crimes alleged in the Superseding Indictment.

Defendants have disclosed one article written by proposed expert witness Professor Alexandra Levy.[4]  In that article, Professor Levy takes the position that the recent passage of the federal law known as FOSTA is unfavorable to sex workers.  Again, whether or not that federal legislation is beneficial or detrimental will not be a contested issue at trial. Testimony on that issue is not relevant.

Finally, Defendants' noticed expert witness Dr. Kimberly Mehlman-Orozco, has written a number of articles on disparate topics.  (Doc. 500-5 at 4-6.)  None of her articles or studies, however, have been disclosed, so the government is left to guess as to whether her testimony is based on sufficient facts or data and is the product of reliable principles and methods.  Fed. R. Evid. 702.

---

the importance of and want to allow for this discussion. We draw the line, however, when content facilitates, encourages or coordinates sexual encounters between adults. We also restrict sexually explicit language that may lead to solicitation because some audiences within our global community may be sensitive to this type of content and it may impede the ability for people to connect with their friends and the broader community." *See* https://www.facebook.com/communitystandards/introduction/

[3] The government located Dr. Lutnick's declaration attached as Exhibit A; it was not provided by Defendants.

[4] Technology & Marketing Law Blog 10-8-18 *Constitutional Challenge to FOSTA Dismissed for Lack of Standing* by Alex F. Levy (DEFENSE 000022-000025).

For these reasons, the testimony from these three experts should be precluded.

iv. <u>William Norman</u>

Defendants describe Mr. Norman's expert testimony in one sentence: "The Defendants anticipate presenting expert testimony on the lawful formation of and lawful uses of offshore trusts." (Doc. 500 at 6.) Without any additional information, the government cannot evaluate Mr. Norman's anticipated testimony. The topic of "lawful uses of offshore trusts," however, does not appear relevant. The government has alleged that Defendant Lacey wired $16.5 million in Backpage-derived cash from a bank account in the United States to an overseas bank account in Hungary. (Doc. 230 ¶ 16, Count 100.) Before wiring that money, he wrote an email seeking assistance in "put[ting] some assets in place[s] where . . . government parties . . . can not access my accounts." (*Id.*) Similar to Mr. Weil's proposed testimony about the normal functions of a CFO, the lawful uses of offshore accounts won't be an issue the jury will need resolve.

v. <u>Eric Goldman</u>

On April 22, 2019, Defendant Spear filed a supplemental expert witness disclosure that disclosed one additional expert—Professor Eric Goldman. (Doc. 538.) The notice suggests that Defendant Spear intends to call Mr. Goldman to testify about six topics that all relate to how websites engage in content moderation. (*Id.* at 3-6.) The details provided by Defendant Spear about Mr. Goldman's testimony raise concerns.

Mr. Goldman appears to make an argument that is contrary to a ruling made by this Court. Mr. Goldman's intended testimony will include an argument that Section 230 does not permit "federal criminal liability" when "an Internet service moderates content." (*Id.* at 5.) The Court, however, has ruled that Section 230 does not apply here, and "even if the CDA applied to generally preclude charges under the Travel Act, Defendants do not establish the CDA applies to their conduct as alleged by the Superseding Indictment." (Doc. 840 at 9.) Indeed, the "Superseding Indictment alleges conduct far beyond the simple maintenance of neutral policies prohibiting certain conduct." (*Id.* at 10.)

### B. Defendants' Excuses for Failing to Comply with Expert Notice Requirements Should be Rejected.

Defendants blame the government for why they failed to comply with Rule 16. Specifically, Defendants argue that they couldn't provide a complete expert disclosure because (a) the government's expert disclosure does not comply with Rule 16; (b) the government's discovery was incomplete; and (c) Defendants' ability to retain experts was hampered by the government's seizures. (Doc. 500 at 3.) These arguments are unavailing.

Defendants provide nothing but a conclusory allegation about the government's purported Rule 16 deficiency. Beyond simply stating, "the government's expert disclosure does not comply with Rule 16," Defendants are silent as to the nature of that deficiency. This conclusory argument finds no support. But, even if it were true, it is unclear how a Rule 16 deficiency by the government would affect Defendants' ability to comply with the same rule.

Defendants also blame the government's purported lack of discovery for why their Rule 16 notice falls short. Defendants allude to a large amount of data that the government had not yet disclosed. (Doc. 500 at 3.) This isn't accurate. The Court heard "fourteen hours of testimony" on the issue of the government's disclosure of the Backpage website, and found that the government's disclosure of electronic data fully complied with Rule 16. (Doc. 839.) The Court also previously rejected a similar argument by Defendants. (Doc. 614.)[5] This argument cannot withstand scrutiny.

Finally, Defendants argue that the government's pretrial seizures "severely impaired" their ability to retain experts. (Doc. 500 at 3.) These seizures, of course, did not impact Defendants' ability to retain Tami Loehrs or a subsequent computer forensics expert. Nor has it impeded several of the Defendants from engaging multiple law firms to

---

[5] The Court held: "Defendants argue that they should not have to comply with the scheduling order because full disclosure has not been completed by the Government. However, as outlined in previous filings, the government has substantially complied with the requirements of the scheduling order. They are continuing to disclose new materials as required under Rule 16 but that does not preclude Defense from meeting their obligations. Defense will have continuing obligation to disclose, as well, but the initial disclosure should not be endlessly delayed." (*Id.* at 1.)

represent them in this matter. Either way, trial is on the horizon and Defendants' expert notices remain deficient.

In that same vein, Defendants' initial expert witness disclosure listed four additional subject matters of expert testimony without identifying any actual witnesses. Defendants' failure to supplement this disclosure and provide information that complies with Rule 16 at this stage in the litigation indicates they have determined not to utilize expert witnesses for these subjects. Any attempt to disclose further experts at this juncture should not be countenanced.

### III. Conclusion

Defendants' expert witness disclosures are inadequate. Further, even if Defendants complied with Rule 16, the anticipated testimony of these experts do not appear relevant to the questions before the jury, and in some instances, counter to rulings made by the Court. For these reasons, the Court should preclude these experts from testifying at trial.

Respectfully submitted this 17th day of April, 2020.

MICHAEL BAILEY
United States Attorney
District of Arizona

*s/ Kevin M. Rapp*

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW C. STONE
Assistant U.S. Attorneys

JOHN J. KUCERA
Special Assistant U.S. Attorney

BRIAN BENCZKOWSKI
Assistant Attorney General
U.S. Department of Justice
Criminal Division, U.S. Department of Justice

REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice, Criminal Division
Child Exploitation and Obscenity Section

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/Zachry Stoebe*
U.S. Attorney's Office