1    MICHAEL BAILEY
     United States Attorney
2    District of Arizona

3    KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
     MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
4    PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
     ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
5    Assistant U.S. Attorneys
     40 N. Central Avenue, Suite 1800
6    Phoenix, Arizona 85004-4408
     Telephone (602) 514-7500
7
     JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
8    Special Assistant U.S. Attorney
     312 N. Spring Street, Suite 1200
9    Los Angeles, CA 90012
     Telephone (213) 894-3391
10
     BRIAN BENCZKOWSKI
11   Assistant Attorney General
     Criminal Division, U.S. Department of Justice
12
     REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
13   Senior Trial Attorney, U.S. Department of Justice
     Child Exploitation and Obscenity Section
14   950 Pennsylvania Ave N.W., Room 2116
     Washington, D.C. 20530
15   Telephone (202) 616-2807

16   Attorneys for Plaintiff

17              IN THE UNITED STATES DISTRICT COURT

18              FOR THE DISTRICT OF ARIZONA

19

| | |
|---|---|
| United States of America, | No. CR-18-00422-PHX-SMB |
| Plaintiff, | **UNITED STATES' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE EVIDENCE REGARDING BACKPAGE.COM'S ALLEGED REPUTATION AS A LEADING SOURCE OF ILLEGAL SEXUAL SERVICES ADVERTISEMENTS [*CR* 927]** |
| v. | |
| Michael Lacey, et al., | |
| Defendants. | |

**INTRODUCTION**

Defendants claim that because Backpage is not a Defendant in this case, the

government should be precluded from introducing any Rule 404(b) character evidence at

1   trial regarding Backpage's notoriety as the Internet's leading place to shop for illegal
2   prostitution services.  However, Backpage's notoriety is not Rule 404(b) character
3   evidence---rather, it is an integral part of the charged conduct.  Defendants ran Backpage
4   as a prostitution-advertising website and intended to profit from the website's "adult"
5   ads—which they knew were predominantly ads for prostitution, and from which they
6   derived the lion's share of their revenues.  That Backpage became notorious as the
7   Internet's leading source of prostitution ads was part of Defendants' business plan, and is
8   also proof of the success of that plan—they did such a great job aggregating prostitution
9   ads, enlisting affiliates to get them more prostitution ads, getting huge numbers of referrals
10  from known prostitution review sites like The Erotic Review, and assisting pimps and
11  prostitutes in advertising prostitution services, that "Backpage" became synonymous in the
12  eyes of the consuming public with "prostitution."  That's not character evidence; rather, it
13  is proof of the wildly-successful, extraordinarily-lucrative strategies that these Defendants
14  (BP's owners and operators) intentionally pursued.   Defendants' motion ignores the facts
15  and evidence in this case.  Defendants' motion should be denied.

16  **I.    Evidence Regarding Backpage's Notoriety as the Internet's Leading**
17  **Place to Shop for Prostitution is Relevant to the Charged Counts**

18  Evidence is relevant if it has any tendency to make a fact of consequence more or
19  less probable.  Fed. R. Evid. 401.  "The prosecution is not restricted to proving [the charged
20  offense] in a vacuum."  *United States v. Daly,* 974 F.2d 1215, 1217 (9th Cir. 1992).  "A
21  jury is entitled to know the circumstances and background of a criminal charge.  It cannot
22  be expected to make its decision in a void – without knowledge of the time, place, and
23  circumstances of the acts which form the basis of the charge."  *Id.* (quoting *United States*
24  *v. Moore*, 735 F.2d 289, 292 (8th Cir. 1984)); *see also United States v. Kilbride*, No. CR
25  05-870-PHX-DGC, 2007 WL 1589561, *6 (D. Ariz. June 1, 2007).

26  Counts 1-51 of the superseding indictment charge Defendants with conspiracy and
27  violations of the Travel Act.  (*CR* 793 at 2.)  To obtain a conviction under the Travel Act,
28  the government must show Defendants had specific intent to promote, manage, establish,

- 2 -

1      carry on or facilitate an unlawful activity. (*CR* 793 at 15.[1])   Despite this settled law,

2      Defendants assert that "even if Backpage had many ads relating to the unlawful conduct

3      [prostitution]. . .such evidence [evidence relating to Backpage's notoriety as the Internet's

4      leading place to shop for prostitution ads] does not address whether Defendants knew this

5      information or. . .whether they intended to facilitate the unlawful conduct of those who

6      used the site for unlawful purposes." (Mot. at 2.)   Not so.   The government must prove

7      Defendants' specific intent to promote or facilitate prostitution beyond a reasonable doubt

8      at trial and evidence related to notice provided by regulators, the national news media, anti-

9      trafficking organizations, among others, who informed Defendants that the vast majority

10     of Backpage's "adult" ads were for prostitution and that Backpage was the Internet's

11     leading place to shop for this illegal service is critical.[2]   Without hearing this evidence, a

12     jury will only receive part of the story about Backpage.   The evidence is clearly relevant.

13          **II.      Evidence Regarding Backpage's Notoriety as the Internet's Leading**

14                **Place to Shop for Prostitution is Admissible under Fed. R. Evid. 803(3)**

15          Defendants' assertion that evidence regarding Backpage's notoriety as the Internet's

16     leading place to shop for prostitution is "inadmissible collective hearsay," and ha[s] no

17     place in a trial. . ." completely ignores Rule 803(3) state of mind exception to the rule

18     against hearsay. (Mot. at 2.)   As highlighted in the government's motion *in limine* to admit

19     evidence (*CR* 931 at 13, 16), many of the intra-Backpage emails and other correspondence

20     the government intends to introduce at trial are admissible to prove Defendants were

21     repeatedly notified of Backpage's brand reputation as the Internet's leading place to shop

22     for illegal services.   For example, on August 30, 2013, Ferrer forwarded an email he and

23     Hyer received notifying them that "Chase [Bank] was no longer accepting transactions

24

25          [1] This Court has already noted ("required intent under the Travel Act is specific
26     intent to facilitate an activity which the accused knew to be unlawful under state law.")
       (*Id.*)

27          [2] This Court has previously found that the SI is "replete with specific facts that
28     support finding that the coconspirators knew the ads [posted in the "adult" and "escort"
       sections of Backpage] were prostitution."  (*CR* 793 at 9.)

1    from Backpage due to their involvement in human trafficking." (SSI 135; *CR* 931, Exhibit

2    173).  The contents of this email are unimportant.  The fact that Defendants received this

3    email is what is being offered by the government to show that Defendants were placed on

4    notice of this event – which is relevant to the issue of whether Defendants intended to

5    facilitate unlawful activity – an essential element of the Travel Act that the government is

6    required to prove at trial.[3]    *United States v. Tamura*, 694 F.2d 591, 598 (9th Cir. 1982)

7    (statements offered to prove defendant's knowledge of bribery scheme constituted

8    admissible non-hearsay); *see United States v. Cantu*, 876 F.2d 1134 (5th Cir. 1989)

9    (statements not hearsay where they were "not offered as an assertion of a fact but, rather,

10   as the fact of an assertion"); *see also Anderson v. Sutton*, 2016 WL 1258585, at *4 (N.D.

11   Ohio Mar. 31, 2016), clarified on other grounds, 2016 WL 7492501 (N.D. Ohio Dec. 30,

12   2016) (prisoner's inmate grievance forms complaining about jail officer's actions deemed

13   admissible non-hearsay where offered to prove that the grievances placed county officials

14   on notice concerning officer's alleged lack of training).

15        Similarly, on December 28, 2010, a representative from a public relations firm

16   Defendants had hired to assist in handling complaints received about sex trafficking

17   activities on Backpage (*CR* 931 at 9) received an email from a reporter at CNN requesting

18   "an on-camera interview with Village Voice Media CEO Jim Larkin regarding minors

19   being sold for sex under the escort section of Backpage.com." (*CR* 931; exhibit 80.)  The

20   email was forwarded to Defendants Lacey, Larkin, and Spear later that day.  This email is

21   also admissible under Fed. R. Evid. 803(3), because it is offered for the fact that Defendants

22   received this notification – not the contents.  (*See also* December 2, 2011 letter, Defendant

23   Larkin and Village Voice Board of Directors (which included Defendant Lacey) received

24   from more than 50 "experts in the anti-human trafficking field," notifying Defendants "we

25   agree with the Attorneys General that your efforts fall short of what is needed to eliminate

26   the use of your website by others to exploit women and children," and noted, "the

27

28        [3]   *See CR* 931 Sections I(b)(v) and II(d) for additional examples of evidence
     admissible under 803(3).

1    reality…is that adults are still able to traffic women and girls on the website [Backpage].")

2    (*CR* 931; exhibit 131)

3    Defendants also received notifications from Google (*i.e.*, google alerts[4]) that show

4    their knowledge of then-current events regarding Backpage's notoriety as a hub for

5    prostitution and the sex trafficking of women and children.  (*CR* 931; exhibits 231-259);

6    *MacDonald v. Ford Motor Co.*, 142 F. Supp. 3d 884, 898 (N.D. Cal. 2015) (documents not

7    hearsay where offered to prove "that Ford had knowledge of the events, not that the events

8    were true");  *Sears v. Southern Pac. Co.*, 313 F.2d 498 (9th Cir. 1963) (holding it a

9    reversible error to exclude as hearsay a letter sent to defendant railroad before the accident

10   complaining of a hazardous condition that needed correction as the letter showed the

11   defendant's prior knowledge of the condition that caused plaintiff's injuries).

12   In sum, email and letter correspondence Defendants received regarding Backpage's

13   notoriety as the Internet's leading place to shop for prostitution ads are admissible non-

14   hearsay to prove that Defendants had knowledge (*i.e.*, placed on notice) of these

15   allegations.

16   **III.   Evidence Regarding Backpage's Notoriety as the Internet's Leading**

17   **Place to Shop for Prostitution is Directly Related to the Charged Counts**

18   Defendants' argument that evidence regarding Backpage's notoriety as the

19   Internet's leading place to shop for illegal services (*i.e*, prostitution) should be excluded as

20   "impermissible character evidence" under Fed. R. Evid. 404 also misses the mark because

21   Rule 404 does not apply here. (Mot. at 3.)  Rule 404 is inapplicable where the evidence the

22   government seeks to introduce is directly related to, or inextricably intertwined with, the

23   crime charged in the indictment. *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011)

24

25   [4] A Google Alert is a notification service offered by Google that sends emails to
26   users when it finds new results – such as webpages, newspaper articles, or blogs – that
     match the users search terms.

27

28

1    (citing *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003)). Before the Court

2    reaches the Rule 404(b) analysis, it must consider whether the evidence is "intrinsic" rather

3    than "extrinsic."   Evidence should not be treated as "other crimes" evidence when "the

4    evidence concerning the ['other'] act and the evidence concerning the ['other'] act and the

5    evidence concerning the crime charged are inextricably intertwined."   *United States v.*

6    *Aleman,* 592 F.2d 881, 885 (5th Cir.1979).   *See also* 22 C. Wright & K. Graham, Federal

7    Practice and Procedure § 5239 at 441 (1978).

8         Additionally, it is well-established that the government in a conspiracy case may

9    submit proof on the full scope of the conspiracy.   *Rizk,* 660 F.3d at 1131;   *see also United*

10   *States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) ("An act that is alleged to have been done

11   in furtherance of the alleged conspiracy…is not an 'other act' within the meaning of Rule

12   404(b); rather, it is part of the very act charged.").   Likewise, in order to be direct evidence

13   or inextricably intertwined with a conspiracy count, the un-charged conduct must fall

14   within the temporal scope of the conspiracy.   *See Rizk*, 660 F.3d at 1132 (evidence was

15   "inextricably intertwined" with the conspiracy because each occurred within the "temporal

16   scope of the conspiracy and comprised the conspiracy.").

17        Here, evidence regarding Backpage's notoriety as the Internet's leading place to

18   shop for prostitution is directly related to the overt acts the government alleges Defendants

19   committed in furtherance of the conspiracy. (SI¶¶ 1-194.)   Moreoover, the jury would not

20   receive the complete story about Backpage without understanding this evidence. (*See, e.g.,*

21   *CR* 931; Exhibit 187 – July 19, 2015 "Thank You Letter" from the Sex Workers Outreach

22   Project to Defendants Lacey and Larkin lauding Backpage's contribution to the prostitution

23   industry  "BP has made quite a difference for many of us…" and thanking Backpage for

24   continuing to permit sex workers "to advertise in the 'Adult' area."; *CR* 931; Exhibit 196

25   – December 9, 2015 email to Backpage from a reporter stating that "[o]f the 359 sex

26   trafficking incidents Toronto Police have been involved in since 2013, every single girl

27   that was rescued was advertised on Backpage." *CR* 931; Exhibit 254 – April 16, 2012

28   Google Alert to Defendant Spear entitled "How to end Sex Trafficking on Backpage."; *CR*

1    931; Exhibit 256 –April 28, 2012 Google Alert to Defendant Larkin entitled "Musicians

2    Call on Backpage to Shut Down Sex Ads.").

3         Similarly, the superseding indictment contains allegations of 17 adult and minor

4    victims who were sex trafficked on Backpage.   (SI¶¶ 160-173.)   So, although "the

5    government does not charge Defendants with any sex trafficking offenses" (Mot. at 4),

6    evidence that Defendants had knowledge of the allegations that ads trafficking women and

7    children for sex were rampant on Backpage, and that they were constantly urged to shut-

8    down the website because of the prevalence of this illegal service, is not only intrinsically

9    intertwined with the charge of conspiracy to facilitate and promote prostitution, but also

10   the substantive counts of facilitation of prostitution. (SI Counts 2, 4-5, 12-17, and 19-24.)

11   Relatedly, it is anticipated that victims identified in the superseding indictment will testify

12   that Backpage was a well-known place to shop for prostitution services, and, because of

13   this, ads trafficking them for sex were frequently posted on Backpage.  Certainly the jury

14   is entitled to hear from these victims concerning the time, place, and circumstances by

15   which their ads were posted on Backpage.  This evidence, too, is necessary for the

16   government to offer a coherent and comprehensible story regarding the commission of

17   these crimes.  *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004) (The Ninth

18   Circuit has "recognized two categories of evidence that may be considered inextricably

19   intertwined with a charged offense," including "when it is necessary to do so in order to

20   permit the prosecutor to offer a coherent and comprehensible story regarding the

21   commission of the crime.").

22        **IV.    Lay Witness Testimony Regarding Backpage's Notoriety as the**

23             **Internet's Leading Place to Shop for Prostitution is Admissible under**

24             **Fed. R. Evid. 701.**

25        Under Federal Rule of Evidence 701, lay witnesses may testify "in the form of an

26   opinion" if it is (a) rationally based on the perception of the witness (b) helpful to a clear

27   understanding of the witness's testimony or the determination of a fact in issue and (c) not

28   based on scientific, technical, or other specialized knowledge."  Fed. R. Evid. 701.  "Rule

1    701(a) contains a personal knowledge requirement." *United States v. Lopez*, 762 F.3d 852,

2    864 (9th Cir. 2014).  Rule 701's requirement that the opinion be "rationally based on the

3    perception of the witness" demands more than that the witness have perceived something

4    firsthand; rather, it requires that the witness's perception provide a truly rational basis for

5    his or her opinion.  *Asplundh Mfg. Div. of Asplundh Tree Expert Co. v. Benton Harbor*

6    *Engineering*, 57 F.3d 1190, 1201 (3d Cir. 1995).

7            Similarly, the second requirement—that the opinion be "helpful to a clear

8    understanding of the witness's testimony or determination of a fact in issue"—demands

9    more than that the opinion have a bearing on the issues in the case; in order to be "helpful,"

10   an opinion must be reasonably reliable.  *Id.*  In other words, Rule 701 requires that a lay

11   opinion witness have a reasonable basis grounded either in *experience or specialized*

12   *knowledge* for arriving at the opinion that he or she expresses.  *Id.*; *see United States v.*

13   *Paiva*, 892 F.2d 148, 157 (1st Cir. 1989) ("Individual experience and knowledge of a lay

14   witness may establish his or her competence, without qualification as an expert, to express

15   an opinion on a particular subject outside the realm of common knowledge."); *see also*

16   *Teen–Ed, Inc. v. Kimball Intern., Inc.* 620 F.2d at 403–04 (3d Cir. 1980); *Farner v. Paccar,*

17   *Inc.,* 562 F.2d 518, 529 (8th Cir. 1977); *United States v. Walker,* 495 F. Supp. 230, 232–

18   33 (W.D. Penn.1980); *Soden v. Freightliner Corp.,* 714 F.2d 498, 511 (5th Cir. 1983).

19   Such lay opinion testimony is admissible not because of experience, training, or specialized

20   knowledge within the realm of an expert, but because of the "particularized knowledge that

21   the witness has by virtue of his or her position in the business." *See Lightning Lube, Inc.*

22   *v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993); *Hynix Semiconductor, Inc.*, v. *Rambus, Inc.*,

23   2008 WL 504098, at *4 (N.D. Cal. 2008); *see also United States v. Munoz-Franco*, 487

24   F.3d 25, 35 (1st Cir. 2007) (allowing a bank employee to testify about banking practices

25   due to his knowledge and participation in the day-to-day affairs of [the] business.").

26           Here, certain government lay witness opinion testimonies regarding Backpage's

27   notoriety as the Internet's leading place to shop for prostitutes is undoubtedly admissible

28   under Fed. R. Evid. 701.  For example, in or around 2013, the California Department of

1    Justice (CalDOJ) initiated an investigation into Backpage.  As part of its investigation,

2    CalDOJ Special Agent Brian Fitchner conducted an undercover operation on Backpage to

3    learn more about the user experience.  This undercover operation involved reviewing the

4    Sacramento, California, section of Backpage and comparing posting an ad in Backpage's

5    fee-based "adult" section versus Backpage's free non-adult section.  The United States

6    intends to call Special Agent Fitchner to testify regarding the undercover operation and his

7    subsequent conversation with a Backpage representative where he communicated to the

8    representative "many of the ads I observed on www.Backpage.com appeared to be blatant

9    prostitution ads."  Agent Fitchner's lay opinion testimony regarding Backpage's notoriety

10   as the Internet's leading place to shop for prostitution (to include his opinion that many of

11   the ads posted on Backpage appeared to be blatant prostitution) should be admissible under

12   Rule 701.  (*See CR* 931 at 22-23.)

13          To start, Agent Fitchner's opinion is rationally based on knowledge he acquired

14   through his investigation into Backpage.  *See United States v. Rollins*, 544 F.3d 820, 832-

15   33 (7th Cir. 2008) (holding that a law enforcement agent's testimony was admissible under

16   701(c), even though the agent had "years of experience as a law enforcement officer,"

17   because his understanding of the [ ] conversations came only as a result of the particular

18   things he perceived from monitoring intercepted calls" and his testimony was based on his

19   "perceptions derived from [that] particular case").  Moreover, Agent Fitchner's opinion is

20   without doubt helpful to a clear understanding of his testimony and to determine a critical

21   fact at issue – whether Defendants had knowledge that the ads in the "adult" and "escort"

22   sections of Backpage were offering prostitution services.  Hence, Defendants' assertion

23   that "such testimony…would be improper opinion testimony…based on speculation,

24   collective hearsay, and rumors" is wrong.  (Mot at 4.)

25          Similarly, lay opinion testimony from certain individuals at anti-trafficking

26   organizations regarding Backpage's notoriety as the Internet's leading place to shop for

27   prostitution, is also admissible under Rule 701.  The government anticipates that these

28   individuals will testify that they spent years urging Defendants (publicly and privately) to

1    shutter the "adult" section of Backpage because of the women and children who were being

2    trafficked for sex on the website.  Consequently, their opinions are based on personal

3    experience and first-hand investigations of Backpage.

4         Likewise, lay opinion testimony from Defendants' coconspirators Carl Ferrer and

5    Dan Hyer regarding Backpage's notoriety as the Internet's leading place to shop for

6    prostitution is admissible under Rule 701.  This testimony is admissible not because of

7    Ferrer's and Hyer's experience, training, or specialized knowledge as an expert—but

8    because of the knowledge they acquired about Backpage through their participation in the

9    day-to-day affairs of the website for nearly 14 years.  *See United States v. Offil*, 666 F.3d

10   168, 178 (4th Cir. 2011) (Lay opinions of coconspirator lawyer about a "conspiracy's

11   fraudulent nature and illegality" admissible because they were based on the lawyer's

12   personal experience in the conspiracy.).

13        **V.    Evidence Regarding Backpage's Notoriety as the Internet's Leading**

14              **Place to Shop for Prostitution Is Not Unfairly Prejudicial**

15        Defendants' contention that evidence concerning Backpage's notoriety as the

16   Internet's leading source of prostitution ads should be precluded because it would be

17   "highly prejudicial as it would cause the jury to assume that it and its operators were bad

18   actors…" is deficient.  (Mot. at 6.)  Rule 403 requires that the probative value of the

19   evidence be compared to the articulated reasons for exclusion, and permits exclusion only

20   if one or more of those reasons substantially outweigh the probative value.  *United States*

21   *v. Anderson*, 741 F.3d 938, 950 (9th Cir. 2013) (citations and internal quotation marks

22   omitted).  Rule 403, however, is "'an extraordinary remedy to be used sparingly because it

23   permits the trial court to exclude otherwise relevant evidence.'" *United States v. Patterson*,

24   819 F. 2d 1495, 1505 (9th Cir. 1987) (quoting *United States v. Meester*, 762 F.2d  867, 875

25   (11th Cir. 1985).

26        "[T]he danger of [unfair] prejudice must not merely outweigh the probative value

27   of the evidence, but substantially outweigh it."  *Id.* (emphasis in original).  "[A]pplication

28   of Rule 403 must be cautious and sparing" because the Rule's "major function is limited

1  to excluding matter of scant or cumulative probative force, dragged in by the heels for the

2  sake of its prejudicial effect." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir.

3  2000) (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983)). "The court

4  is not required to scrub the trial clean of all evidence that may have an emotional impact."

5  *United States v. Ganoe*, 538 F.3d 1117, 1124 (9th Cir. 2008); *United States v. Morales-*

6  *Aldahondo*, 524 F.3d 115, 120 (1st Cir. 2008); *see also United States v. Evans*, 802 F.3d

7  942, 946 (8th Cir. 2015) (recognizing that "[i]mages and videos depicting child

8  pornography are by their very nature disturbing, and viewing such depictions is highly

9  likely to generate an emotional response, but that alone cannot be the reason to exclude the

10  evidence").

11         Evidence regarding Backpage's notoriety as the Internet's leading place to shop for

12  illegal prostitution services is highly probative of a critical fact at issue in this case –

13  whether Defendants were placed on notice (*i.e.*, knew) that the vast majority of the ads

14  posted in the "adult" section of Backpage were for prostitution. Furthermore, Defendants

15  will have the opportunity to cross-examine the government's witnesses at trial. This

16  interrogation, along with cautionary jury instructions as needed, will appropriately mitigate

17  the risk of unfair prejudice. *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995)

18  (limiting instruction minimized prejudice, and juries are presumed to follow limiting

19  instructions).

20         Defendants' reliance on *United States v. Preston,* 873 F.3d 829, 841 (9th Cir. 2017),

21  is unavailing. (Mot. at 6.) *Preston* involved "other act" evidence under Rule 404(b) that

22  was dissimilar to the crime charged and that occurred some five years after the events

23  charged in the indictment. *Id.* at 840. Here, the government is not seeking to introduce

24  evidence regarding Backpage's notoriety as the Internet's leading place to shop for

25  prostitution under Rule 404(b). This evidence is directly related to, or inextricably

26  intertwined with the charged conduct. (*See* Section III, *supra*.)

27         Additionally, unlike in *Preston* where the court ruled that dissimilar evidence that

28  occurred five years after the events charged in the indictment should have been excluded

1    under Rule 403, here, Defendants are charged with conspiracy to facilitate or promote

2    prostitution through their ownership and operation of Backpage during the entirety of the

3    website's existence (2004-2018).   Accordingly, events concerning Backpage's notoriety

4    as the Internet's leading place to shop for prostitution undoubtedly occurred within the time

5    period of the charged crime.

6          **VI.    Conclusion**

7          For the foregoing reasons, Defendants' request to preclude evidence regarding

8    Backpage's notoriety as the Internet's leading place to shop for prostitution should be

9    denied.

10          Respectfully submitted this 8th day of May, 2020.

11                                    BRIAN BENCZKOWSKI
                                     Assistant Attorney General
12                                    Criminal Division, U.S. Department of Justice

13                                    *s/Reginald E. Jones*
                                     REGINALD E. JONES
14                                    Senior Trial Attorney
                                     U.S. Department of Justice, Criminal Division
15                                    Child Exploitation and Obscenity Section

16                                    MICHAEL BAILEY
                                     United States Attorney
17                                    District of Arizona

18                                    KEVIN M. RAPP
                                     MARGARET PERLMETER
19                                    PETER S. KOZINETS
                                     ANDREW C. STONE
20                                    Assistant U.S. Attorneys

21                                    JOHN J. KUCERA
                                     Special Assistant U.S. Attorney
22

23                          **CERTIFICATE OF SERVICE**

24          I hereby certify that on this same date, I electronically transmitted the attached
     document to the Clerk's Office using the CM/ECF System for filing and transmittal of a
25    Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance
     as counsel of record.
26

     *s/ Marjorie Dieckman*
27    U.S. Attorney's Office

28