# EXHIBIT A

## STATE LAW NEED NOT BE VIOLATED FOR DEFENDANTS TO BE FOUND GUILTY UNDER THE TRAVEL ACT

The United States does not have to prove that the referenced states' laws were actually violated, only that defendants had intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any business enterprise involving prostitution offenses in violation of state law, and committed a subsequent overt act in furtherance of the unlawful activity.

### Supporting Authorities

18 U.S.C. § 1952(a)(3); *United States v. Winslow*, 962 F.2d 845, 852 (9th Cir. 1992) ("Section 1952(a)(3) requires the government to prove only that a defendant committed a subsequent overt act in furtherance of the unlawful activity. . . . Unlike the crime of attempt, the Travel Act does not require that the government establish that the accused took a substantial step in furtherance of the intended unlawful activity.") (internal quotations and citations omitted); *United States v. Polizzi*, 500 F.2d 856, 876-77 (9th Cir. 1974) (Government does not need to prove that defendants had specific intent to violate the underlying state law, only "specific intent to facilitate an activity which the accused knew to be unlawful under state law.").

### DEFENDANTS' OBJECTIONS

First, while Defendants agree the government need not prove that each defendant violated state law for the jury to convict on a given Travel Act count, "[a] proper instruction would make it clear to the jury that in order to convict, they must find that the defendant specifically intended to promote (et cetera) an activity that involves all of the elements of the relevant state offense." *United States v. Jones*, 909 F.2d 533, 539 (D.C. Cir. 1990); *see United States v. Hiatt*, 527 F.2d 1048, 1051 (9th Cir. 1975) ("It is correct that the existence of a state law violation is an element

of the violation of the Travel Act and that the court must make a determination of whether the underlying state law has been or could have been violated.").

Second, the proposed instruction improperly groups all of the Travel Act counts, failing to treat each Travel Act count individually.  As to each Travel Act count, the government must prove the existence of a business enterprise involving prostitution offenses, the specific intent of each defendant to facilitate the unlawful activities of that business enterprise, and a subsequent overt act in furtherance of that business enterprise.  As written, the instruction could lead the jury to mistakenly believe that it can mix and match the elements among all the Travel Act counts.  For example, this instruction could lead the jury to mistakenly believe that finding the existence of "any" business enterprise, whether or not it is related to a specific count, nevertheless allows it to convict as to that count.

Third, the proposed instruction improperly groups all defendants, rather than treating each defendant as an individual as to whom the government must separately prove its charges.

Fourth, the term "unlawful activity" should be defined with reference to the business enterprise requirement (as "unlawful activity" is defined in the Travel Act statute).  The simultaneous use of the term "unlawful activity" likely would signal to the jury that this term means something other than a business enterprise involving prostitution offenses in violation of state law.

Fifth, as drafted, the government's proposed instruction would imply to the jury that the instruction is self-contained, including all the elements of a Travel Act offense, when it completely omits the requirement of the use of a facility in interstate commerce.

## "BUSINESS ENTERPRISE" IN THE TRAVEL ACT DEFINED

"Business enterprise," as used in the Travel Act, 18 U.S.C. 1952(b), means a continuous course of criminal conduct, that is, engaging or planning to engage in two or more violations of law, rather than a sporadic, casual, individual or isolated violation. An advertisement that invites multiple commercial transactions (like a car wash ad that informs the public of prices charged for each wash, even if only for a limited time) refers to a continuous course of conduct.

### Supporting Authorities

18 U.S.C. § 1952(b)(i)(1); (*See* Doc. 946 at 10-14); *United States v. Kaiser*, 660 F.2d 724, 731 (9th Cir. 1981) ("The words 'business enterprise' refer to a continuous course of criminal conduct rather than sporadic or casual involvement in a proscribed activity."); *United States v. Donaway*, 447 F.2d 940, 94 (1971) (same); *United States v. Roselli*, 432 F.2d 879, 886 (9th Cir. 1970) ("Congress limited Section 1952 to any 'business enterprise' because the requirement of a continuous course of conduct for profit would ordinarily include the gambling operations of organized crime.").

In alleging a continuous course of criminal conduct, "[n]either [allegations] of largescale operations nor long-term duration is required[.] . . . Instead, what must be [alleged] is evidence of a continuous enterprise." *United States v. Tavelman*, 650 F.2d 1133, 1140 (9th Cir. 1981). (*See also* Doc. 946 at 12-13 n.7 ("[E]ach ad identified [in the SI] carries an indicia of a commercial or business enterprise because each one invites multiple commercial transactions by soliciting the public to engage in prostitution.")).

### DEFENDANTS' OBJECTIONS

Defendants do not object to this portion of the proposed instruction: "'Business enterprise,' as used in the Travel Act, 18 U.S.C. 1952(b), means a continuous course of criminal conduct . . . rather than a sporadic, casual, individual or isolated violation." But the balance of

3

the proposed instruction (including the following language in the first sentence of the proposed instruction: "that is, engaging or planning to engage in two or more violations of law") is an attempt by the government to circumvent the Travel Act's "business enterprise" requirement. First, there is no support for the government's naked assertion that a "continuous course of criminal conduct" is satisfied where the underlying business enterprise has engaged or plans to engage "in two or more violations of law." Even an act resulting in two violations of law tends to indicate "sporadic" activity, not a business enterprise engaged in "continuous" criminal activity.

Second, the instruction would have the jury presume that the mere existence of an advertisement satisfies the business enterprise requirement. In advancing this plainly erroneous instruction, the government misguidedly relies on the Court's order denying Defendant Brunst's Motion to Dismiss based on the government's failure to allege necessary elements under the Travel Act. *See* Dkt. 946 at 12 n.7 ("[E]ach ad identified carries an indicia of a commercial or business enterprise because each one invites multiple commercial transactions by soliciting the public to engage in prostitution."). The government takes the Court's statement too far. The Court was merely addressing in a footnote "Defendants' concern that each ad is not in fact connected to a business enterprise" *at the pleading stage*, noting that Defendants' concern was "premature." Dkt. 946 at 12-13. In other words, the Court observed that, at the pleading stage, an advertisement is a sufficient indicia of a potential business enterprise, thereby fairly putting Defendants on notice of the charges against them, *not* that an advertisement by itself *proves at trial beyond a reasonable doubt* the existence of a corresponding business enterprise.

Taking the government's example, an ad for a car wash does not prove the existence of a car wash, nor does it prove that a car wash has engaged in a continuous course of washing cars.

4

The government's inapt comparison of a criminal enterprise to a car wash invites the jury to ignore the government's burden to prove not just a business enterprise, but a *criminal* business enterprise engaged in a continuous course of *illegal* conduct.

The government has conceded that the "business enterprise" here is not Backpage itself or the advertisements that are the subject of Counts 2-51.  *See* Dkt. 649 at 32 n.17 (in opposing Defendants' motion to dismiss, the government claimed that "Defendants' actions facilitated or promoted ***the ongoing prostitution enterprises of Backpage's customers***.") (emphasis added). At trial, therefore, the government must prove, for each Travel Act count, the existence of a particular business enterprise or enterprises tied to that count.  *See United States v. Rogers*, 389 F. Supp. 3d 774, 786 (C.D. Cal. 2019) (the Travel Act "targets activities taken in connection with organizations involving . . . prostitution"); *see United States v. Nader*, 542 F.3d 713, 716 (9th Cir. 2008) (affirming Travel Act conviction where defendants operated massage studios, holding "[i]t is undisputed that the businesses involved prostitution."); *United States v. Baker*, 611 F.2d 961, 962 (4th Cir. 1979) (affirming Travel Act conviction where defendant operated a truck stop and "arranged to have it operated as a house of prostitution."); *see also United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions ***where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution***.") (emphasis added).  The government's proposed instruction therefore misconstrues both the law and this Court's prior orders.

5

## "USES ANY FACILITY IN INTERSTATE COMMERCE" DEFINED

The phrase "uses any facility in interstate commerce" as used in the Travel Act, 18 U.S.C. § 1952(a), means employing or utilizing any method of communication or transportation between one state and another, and includes, for example, the use of telephones, mails, and the Internet.

In order to meet its burden of proof on this issue, it is not necessary for the United States to prove that the defendant(s) used an interstate facility. This section also applies to a person who causes another person to use an interstate facility. Therefore, if the United States has proven beyond a reasonable doubt that the defendant(s) caused another person to use an interstate facility, *e.g.*, the Internet, then you may find that the United States has proven this element.

### Supporting Authorities

*United States v. Sutcliffe*, 505 F.3d 944, 952-53 (9th Cir. 2007) ("The Internet is an international network of interconnected computers, similar to—and often using—our national network of telephone lines. We have previously agreed that it cannot be questioned that the nation's vast network of telephone lines constitutes interstate commerce.") (internal citations and quotations omitted); *United States v. Roselli*, 432 F.2d 879, 890-91 (9th Cir. 1970) ("If the wire employed is an interstate wire the requirements for federal jurisdiction are satisfied. It is wholly irrelevant to any purpose of the statute that the perpetrator of the fraud knows about the use of interstate communication."); *United States v. Villano*, 529 F.2d 1046, 1054-55 (10th Cir. 1976) (upholding Travel Act convictions based on "repeated use of the interstate communications facilities by defendants' agents").

## **DEFENDANTS' OBJECTIONS**

Defendants object to the entire second paragraph of the proposed jury instruction as an unsupported and erroneous statement of law. The government cannot be permitted to shirk its burden of proof by proposing incorrect jury instructions. None of the cased cited by the government (nor the text of the Travel Act itself)[1] supports the government's view that a defendant can be found guilty under the Travel Act if he or she does not actually use "the mail or any facility in interstate commerce." Further, there is no charge that one of the defendants aided and abetted another defendant's alleged misconduct under 18 U.S.C. § 2.[2] *See United States v. Abadie*, 879 F.2d 1260, 1266 (5th Cir. 1989) ("Conceding that the record contains no evidence that Palazzolo traveled interstate, the government contends that he aided and abetted Abadie's interstate travel.") (citing 18 U.S.C. § 2). To the extent the government seeks to import its conspiracy charge into this instruction, that issue is more appropriately dealt with in a separate conspiracy instruction where it is clear that the instruction applies only to the conspiracy count and not the fifty individual Travel Act counts.

If the Court allows any part of the second paragraph of the proposed instruction, the terms "the defendant(s)" should be modified to "each defendant," so the instruction does not improperly group all defendants.

---

[1]   18 U.S.C. § 1952(a) provides: "Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to . . . ." The Ninth Circuit model instruction mirrors this language.

[2]   That statute provides: "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." The indictment does not charge Defendants under this statute.

7

## "FACILITATE" DEFINED

In the context of the Travel Act, the term "facilitate" means "to make easy or less difficult."

### Supporting Authorities

(*See* Doc. 793 at 21 ("'Facilitate' is given its 'ordinary meaning: to make easy or less difficult.'") (citing *United States v. Gibson Specialty Co.*, 507 F.2d 446, 450 (9th Cir. 1974)); *see also United States v. Foreman*, 926 F.2d 792, 796 (9th Cir. 1990) ("'Facilitate' is defined as 'to make easier or less difficult.'"); *United States v. Adler*, 879 F.2d 491, 495 (9th Cir. 1988) ("'Facilitation' is established by showing that use of a communications facility . . . made easier or less difficult . . . the narcotics offense.").

### DEFENDANTS' OBJECTIONS

Defendants have no objection to this instruction.

## "SPECIFIC INTENT" DEFINED

"Specific intent" under the Travel Act (Counts 2-51) means the defendants knew that they were facilitating an unlawful activity under state law.

### Supporting Authorities

(Doc. 793 at 15 ("Required intent under the Travel is 'specific intent to facilitate an activity which the accused knew to be unlawful under state law.'") (citing *United States v. Polizzi*, 500 F.2d 856, 876-877 (9th Cir. 1974) (instructions on specific intent need to "reasonably inform[] the jury that they had to find that [defendants] knew that what they were facilitating was an unlawful activity under state law")).) (*See also* Doc. 793 at 18 ("The Government's proposed *mens rea* standard, specific intent to promote or facilitate prostitution, is consistent with *Gibson, Tavelman*, and *Polizzi*—the Ninth Circuit cases discussing intent requirements of the Travel Act.").)

### DEFENDANTS' OBJECTIONS

This instruction reflects a misguided attempt on the government's part to convert what is undisputedly a specific intent crime into a general intent crime. Even the cases cited by the government acknowledge that, under the Travel Act, a defendant must *specifically intend* to facilitate the alleged unlawful activity (here, business enterprises involved in prostitution offenses in violation of state laws). Under the government's proposed jury instruction, a defendant could be found guilty under a given Travel Act count if he or she merely knew the corresponding advertisement concerned a business enterprise involving prostitution in violation of state law. But that plainly is not the law. *See United States v. Welch*, 327 F.3d 1081, 1095 (10th Cir. 2003) (holding that the Travel Act "require[s] the Government prove Defendants acted with a higher level of culpability than mere knowledge. The Travel Act requires a specific 'intent to ... promote[.]' In other words, the Travel Act requires a defendant act **not only with**

9

***knowledge of what he is doing, but also with the objective of promoting some unlawful activity***.") (emphasis added) (citing *United States v. James,* 210 F.3d 1342, 1345 (11th Cir.2000) (Travel Act violation is a specific intent crime); *United States v. Hall,* 536 F.2d 313, 329-30 (10th Cir.1976) (approving a specific intent instruction on a Travel Act charge)) (cited by this Court at Dkt. 946, p. 14).[3]

By contrast, "[a] person acts knowingly or with a 'general intent' if he is aware that the result is practically certain to follow from his conduct, whatever his desire may be as to that result." *Welch*, 327 F.3d at 1096. This important distinction is borne out in *United States v. Gibson Specialty Co.*, 507 F.2d 446 (9th Cir. 1974) (cited by this Court at Dkt. 946, p. 14), in which the Ninth Circuit rejected the exact concept the government proposes in this instruction. In *Gibson*, two manufacturers of punchboards and pulltabs were charged under the Travel Act for intentionally facilitating gambling businesses by selling those products to distributors. *Id.* at 448. In reaching its decision, the Ninth Circuit "assumed both that the defendants knew the text of the pertinent Montana statutes and that the construction placed on those statutes by the prosecution [was] correct," namely that "under any circumstances, possession of a punchboard or

---

[3]   Even in *Polizzi*, cited by the government, the Ninth Circuit affirmed a Travel Act jury instruction that provided: "It is not necessary that the Government prove that the defendants knew that they were violating Nevada law. ***The specific intent which the Government must show is the intent to facilitate*** the carrying on of a business enterprise involving gambling in violation of Nevada law." *United States v. Polizzi*, 500 F.2d 856, 877 n.29 (9th Cir. 1974) (emphasis added). The question there was whether the government had to prove the defendant himself intended to violate *state law* (the Ninth Circuit held it did not)—the case does not stand for the proposition that the government seeks to advance here. *Id.* ("[P]roof would be required at the least 'that the defendant ***intended with bad purpose***' to facilitate the violation of state law.") (citations omitted).

pulltab in Montana constituted a violation of Rev. Codes of Mont. § 94-2404." *Id.* at 450 & n.7. Even with those assumptions, the Ninth Circuit held that it could not "find that the defendants by selling to Montanans intended, within the meaning of the travel act, to facilitate a violation of state law." *Id.* at 450. Rather, in affirming the dismissal of the indictment, the Court held that "the prosecutor must show that the manufacturer ***in some significant manner associated himself with the purchaser's criminal venture for the purpose of its advancement***." *Id.* at 449 (emphasis added). The Court held that "the requisite specific intent has not been shown," as "the defendants ***have no financial interest in or control over*** the Montana distributorships to which the punchboards and pulltabs were sold." *Id*. at 450 (emphasis added). Critically, the Court observed that, in contrast to a "general intent" crime, "[t]he presumption that one intends the natural and probable consequences of his actions ***is insufficient in this context to establish intent to facilitate criminal activity***. It is as likely as not that a vendor similar to the defendants in this proceeding is totally indifferent to the actions of his purchaser." *Id*. at 450 n.8 (emphasis added).

## PROOF OF KNOWLEDGE OR INTENT

The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of directly scrutinizing the workings of the human mind. In determining the issue of what a person knew or what a person intended at a particular time, you may consider any statements made or acts done or omitted by that person and all other facts and circumstances received in evidence which may aid in your determination of that person's knowledge or intent.

You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial.

### Supporting Authorities

1A O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, § 17:07 (6th ed. 2008).

### DEFENDANTS' OBJECTIONS

The government again intentionally conflates "general intent" with "specific intent" in an effort to reduce its burden of proof at trial.  The second paragraph of the proposed instruction – which seeks to impute to a given defendant the "natural and probable consequences" of his or her actions – plainly conflicts with what courts (including this Court) consistently hold the government must prove in connection with a Travel Act charge. *See United States v. Welch*, 327 F.3d 1081, 1095 (10th Cir. 2003) (holding that the Travel Act "require[s] the Government prove Defendants acted with a higher level of culpability than mere knowledge.  The Travel Act requires a specific 'intent to ... promote[.]'  In other words, the Travel Act requires a defendant act ***not only with knowledge of what he is doing, but also with the objective of promoting some unlawful activity***.") (emphasis added) (citing *United States v. James,* 210 F.3d 1342, 1345 (11th

Cir.2000) (Travel Act violation is a specific intent crime); *United States v. Hall,* 536 F.2d 313, 329–30 (10th Cir.1976) (approving a specific intent instruction on a Travel Act charge)) (cited by this Court at Dkt. 946, p. 14).

By contrast, "[a] person acts knowingly or with a 'general intent' if he is aware that the result is practically certain to follow from his conduct, whatever his desire may be as to that result." *United States v. Welch*, 327 F.3d 1081, 1096 (10th Cir. 2003); *see also United States v. Gibson Specialty Co.*, 507 F.2d 446, 450 (9th Cir. 1974) ("The presumption that one intends the natural and probable consequences of his actions ***is insufficient in this context to establish intent to facilitate criminal activity***.") (emphasis added) (cited by the Court at Dkt. 946, p. 14). That is why Defendants' proposed "specific intent" instruction (Dkt. 1216 at 152), quoted from *United States v. Seymour*, 576 F.2d 1345, 1347 (9th Cir. 1978), recognizes the important distinction between "specific intent" and "general intent." The government grasps at straws in objecting to Defendants' proposed "specific intent" instruction, illogically asserting that the Ninth Circuit's explication of "specific intent" in *Seymour* is somehow inapplicable here because *Seymour* was not a Travel Act case. Dkt. 1216 at 152-53. But as the above cases make clear, "specific intent" in the context of the Travel Act means the same thing as it does in connection with other federal crimes. Rather, it is the government's proposed "specific intent" instruction that ignores black letter law.