Exhibit O

|    |                              |   |                              |
|----|------------------------------|---|------------------------------|
| 1  |                              |   |                              |
| 2  |                              |   |                              |
| 3  |                              |   |                              |
| 4  |                              |   |                              |
| 5  |                              |   |                              |
| 6  | IN THE UNITED STATES DISTRICT COURT |||
| 7  | FOR THE DISTRICT OF ARIZONA  |||
| 8  |                              |   |                              |
| 9  | UNITED STATES OF AMERICA,    | ) | No. CR-10-035-TUC-CKJ (BPV)  |
| 10 | Plaintiff,                   | ) | **ORDER**                    |
| 11 | vs.                          | ) |                              |
| 12 |                              | ) |                              |
| 13 | AURORA LOPEZ-AVILA,          | ) |                              |
| 14 | Defendant.                   | ) |                              |
| 15 |                              | ) |                              |

This case was remanded to this Court from the Ninth Circuit Court of Appeals with directions to consider the exercise of its supervisory powers. Further, currently pending before the Court is Defendant Aurora Lopez-Avila's Motion to Dismiss [Doc. 103]. On April 9, 2012, the Court held a hearing on Defendant's motion. Minute Entry 4/9/2012 [Doc. 108]. The Court after hearing argument and the testimony of Assistant United States Attorney ("AUSA") Jerry Albert, took the matter under advisement. For the reasons delineated below, the Court will grant Defendant's motion.

. . .

. . .

. . .

## I. BACKGROUND[1]

This case began as a rather routine drug trafficking arrest on December 8, 2009. The Defendant, a thirty-seven (37) year old Mexican citizen was caught at the DeConcini port of entry with 10.3 kilograms of cocaine hidden in her car. After entering into a plea agreement with the Government, the Defendant filed a motion to withdraw her plea of guilty to assert a duress defense at trial. The Court, after hearing the Defendant's testimony and considering the arguments of counsel, found that the Defendant had stated a *prima facie* case of duress.[2] As such, the Court allowed the Defendant to withdraw her plea of guilty and set the case for trial.

Trial in this matter began on November 30, 2010, and ended in a mistrial upon Defendant's motion, after AUSA Albert improperly cross-examined the Defendant using a redacted version of a question asked during the plea colloquy. Subsequently, Defendant moved to dismiss on double jeopardy grounds, and then filed an interlocutory appeal. *See* Def.'s Mot. for Rule 29: Post-Release of Jury; Mot. for Ruling Double Jeopardy [Doc. 76]; Not. of Interlocutory Appeal [Doc. 84]. The Ninth Circuit Court of Appeals affirmed this Court regarding its finding that double jeopardy did not bar further prosecution of Defendant. *See Lopez-Avila I*.

The Government filed a motion seeking redaction of the AUSA's name from the appellate opinion, and the Court of Appeals responded by issuing its amended opinion, *United States v. Lopez-Avila*, No. 11-10013, slip op. at 9 (9th Cir. filed Feb. 14, 2012) ("*Lopez-Avila II*") emphasizing, "[t]he mistake in judgment does not lie with AUSA

---

[1] The complete factual recitation is thoroughly outlined in the Ninth Circuit Court of Appeals opinion in this matter. *See United States v. Lopez-Avila*, No. 11-10013, slip. op. (9th Cir. filed Jan. 12, 2012) ("*Lopez-Avila I*").

[2] As the record in this case indicates, it was not until Defendant met with a female, Hispanic probation officer preparing the presentence report that she felt confident enough to talk about the danger she allegedly suffered. Hr'g Tr. 4/12/10 49:23-50:2. She believed her counsel, because he was paid by the United States, was a Government agent and did not feel comfortable being forthright with him about her fears. *Id.* at 12:20-13:7.

- 2 -

Albert alone. We are also troubled by the government's continuing failure to acknowledge and take responsibility for Albert's error." The court went on to state:

> Prosecutors, as servants of the law, are subject to constraints and responsibilities that do not apply to other lawyers; they must serve truth and justice first. *United States v. Kojayan*, 8 F.3d 1315, 1323 (9th Cir. 1993). Their job is not just to win, but to win fairly, staying within the rules. *Berger*, 295 U.S. at 88. That did not happen here, and the district court swiftly and correctly declared a mistrial when Albert's misquotation was revealed.
>
> **When a prosecutor steps over the boundaries of proper conduct and into unethical territory, the government has a duty to own up to it and to give assurances that it will not happen again.**

*Lopez-Avila II*, slip op. at 9 (emphasis added).

The court of appeals remanded the matter to this Court with a clear directive, stating:

> **[W]e do not need a record greater or different than we have here to determine that Albert should not have misrepresented the transcript's question.** Accordingly, we are in a position to do three things to ensure that this matter is handled properly following this disposition: we remand the case to allow the district court to consider dismissal with prejudice of the indictment as an exercise of its supervisory powers and to prevent other misconduct in the future; we instruct the district court to consider disciplinary options also pursuant to its supervisory powers; and we note that the Office of Professional Responsibility within the Department of Justice has the responsibility of investigating allegations of misconduct by federal prosecutors. Whether the circumstances attendant to Albert's misrepresentation attenuate or aggravate the misconduct is a matter as to which the trial judge or officials in the Office of Professional Responsibility are in a better position to determine.

*Id.*, slip. op. at 10 (emphasis added).

## II. STANDARD OF REVIEW

"Dismissal under the court's supervisory powers for prosecutorial misconduct requires (1) flagrant misbehavior and (2) substantial prejudice." *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993) (citations omitted). "A district court may not use its supervisory authority to dismiss an indictment for prosecutorial misconduct 'not prejudicial to the defendant.'" *United States v. Ross*, 372 F.3d 1097, 1110 (9th Cir. 2004) (citations omitted). A district court's dismissal of an indictment based upon its supervisory powers is reviewed for an abuse of discretion. *United States v. Struckman*,

- 3 -

1  611 F.3d 560, 575 (9th Cir. 2010); *United States v. Barrera-Moreno*, 951 F.2d 1089,
2  1091 (9th Cir. 1991). "Factual findings upon which the decision [is] based are reviewed
3  for clear error." *Ross*, 372 F.3d at 1109 (citations omitted).

## III. ANALYSIS

"A district court may exercise its supervisory power 'to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct.'" *United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008) (citations omitted); *Barrera-Moreno*, 951 F.2d at 1091 (citations omitted). "Dismissal under the court's supervisory powers for prosecutorial misconduct requires (1) flagrant misbehavior and (2) substantial prejudice." *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993) (citations omitted). The court of appeals has "never suggested, however, that 'flagrant misbehavior' does not embrace reckless disregard for the prosecution's constitutional obligations." *Chapman*, 524 F.3d at 1085. Although "the drastic step of dismissing an indictment is a disfavored remedy," the Court finds that it is appropriate in this case for the reasons stated herein. *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988) (citations omitted).

The Ninth Circuit Court of Appeals cites to *United States v. Kojayan*, 8 F.3d 1315 (9th Cir. 1993) and *Chapman*, 524 F.3d 1073 in remanding the case to this Court. These cases focus not only on the individual AUSA's behavior, but on the office as a whole. *Kojayan*, 8 F.3d at 1324 ("What we find most troubling about this case is not the AUSA's initial transgression, but that he seemed to be totally unaware he'd done anything at all wrong, and that there was no one in the United States Attorney's office to set him straight. Nor does the government's considered response, filed after we pointed out the problem, inspire our confidence that this kind of thing won't happen again."); *Chapman*, 524 F.3d at 1088 ("We are similarly troubled, both by the AUSA's actions at trial and by the government's lack of contrition on appeal."). This broader concern regarding the

- 4 -

office as a whole is demonstrated in the Court of Appeal's amended opinion in this case. The Government, in its response to the Motion to Dismiss and at oral argument, focused solely on AUSA Albert's personal culpability and the sufficiency of the sanctions to him personally, *e.g.*, self reporting to the Office of Professional Responsibility ("OPR") and the Arizona State Bar complaint that has been filed against him. The *Kojayan* court stated succinctly, "[i]n a situation like this, the judiciary – especially the court before which the primary misbehavior took place – may exercise its supervisory power to make it clear that the misconduct was serious, that the government's unwillingness to own up to it was more serious still and that steps must be taken to avoid a recurrence of this chain of events. *Kojayan*, 8 F.3d at 1325.

  *A. AUSA Albert's Conduct*

During the April 9, 2012 hearing, AUSA Albert testified regarding his lengthy career as a prosecutor, what happened before the Court during trial, and what has happened since. AUSA Albert took full responsibility for his actions and apologized accordingly. As this Court recognized at the hearing, AUSA Albert has historically conducted himself in a professional manner, and is an experienced advocate. Hr'g Tr. 4/9/2012 at 44:21-45:3.

In this case, AUSA Albert made a tactical decision to edit the plea colloquy to impeach the Defendant on cross-examination. AUSA Albert approached sidebar, while cross-examining the Defendant, and represented to the Court that the truncated question was the entire question, rather than the truth that it was an edited version. It had previously been stipulated to by counsel that nothing about the Defendant's guilty plea would be brought out at trial. AUSA Albert failed to provide the Court with a copy of the transcript at the time of the sidebar or tell the Court that the question he proposed to ask was a redacted version of the actual question asked of the Defendant at the prior proceeding. Based on AUSA Albert's misstatement, the Court allowed him to proceed with his cross-examination. AUSA Albert proceeded to question the Defendant, and got her to admit that she had lied under oath to the magistrate judge. Defense counsel asked

- 5 -

1 for and received a copy of the transcript from AUSA Albert, determined what had
2 transpired, and sought a mistrial. AUSA Albert initially denied that he had done anything
3 wrong.

4       AUSA Albert's direct misrepresentation to the Court is sufficient to deem his
5 conduct in reckless disregard of his constitutional obligations. This is particularly true
6 given AUSA Albert's extensive trial experience and misrepresentation to the Court
7 regarding a fundamental issue. Indeed, AUSA Albert testified that it was his practice to
8 **always** direct the Court's attention to a potential redaction before using it at trial.
9 Moreover, AUSA Albert's transgression occurred at a critical point in the trial.
10 Defendant was testifying regarding the duress she allegedly was under to commit the
11 crime. This was her primary defense and AUSA Albert's actions improperly painted her
12 as a liar before the jury. The Ninth Circuit does not require a pattern of behavior or
13 multiple incidents of misconduct for a district court to determine that an AUSA's
14 behavior was in reckless disregard of his constitutional obligations. *See Chapman*, 524
15 F.3d at 1085. The Court, therefore, finds that AUSA Albert's conduct at trial was
16 flagrant. *See Kearns*, 5 F.3d at 1253.

17       *B. United States Attorney's Office*

18       On appeal and subsequently before this Court, the U.S. Attorney's office has
19 continued to minimize AUSA Albert's error. By labeling AUSA Albert's conduct as a
20 "mistake," the office minimizes the nature of the incident. AUSA Albert intentionally
21 failed to tell the Court that he was presenting a redacted version of a prior question and
22 answer – something he had never previously done in his long career as a prosecutor.
23 Indeed, AUSA Albert cannot explain why it happened in this case. The office has failed
24 to recognize that "the prosecution's misconduct is an affront to the integrity of our system
25 of justice." *Kohring*, 637 F.3d at 914 (Fletcher, J. B., *concurring in part* and *dissenting in*
26 *part*). For example, the Government's argument that AUSA Albert "was aware that it is
27 not uncommon for Magistrate Judges in Tucson to inquire of defendants at a change of
28 plea proceeding whether they were coerced into committing the crime" is completely

- 6 -

1  disingenuous.  *See* Govt's Resp. [Doc. 104] at 5-6.  AUSA Albert was present at the
2  change of plea proceeding and was fully aware that this did not occur in the instant case.
3  The duress issue was not even raised until *after* the change of plea hearing.
4        The question now is not whether AUSA Albert will ever engage in the same
5  conduct again, but rather what is the U.S. Attorney's office doing to ensure that *none* of
6  their attorneys will do so.  Unfortunately, Government counsel did not address the office
7  response at the hearing on the motion to dismiss until pressed by the Court.  Although
8  Government counsel then averred that the attorneys within the U.S. Attorney's Office
9  take their reputations, and that of the office, seriously, he did not speak to any actions that
10 the office has taken to ensure that their attorneys are learning from this experience.  In
11 fact, the statements reflected that counsel personally took the incident seriously, but did
12 not reflect a clear departmental concern.  Indeed, "training to impart awareness of
13 constitutional rights is an essential function of an office . . . whose administration of
14 justice the public [relies on]."  *Kojayan*, 8 F.3d at 1324 (alterations in original) (quoting
15 *United States v. Foster*, 985 F.2d 466, 469 (9th Cir. 1993)).  The Government zealously
16 advocates in support of their colleague on the one hand, while simultaneously attempting
17 to assure this Court that it is a serious matter of concern for the office.  This equivocation
18 is ineffective and provides the Court with little guidance.  At this juncture, in light of the
19 Ninth Circuit Court of Appeal's clear directive, this case is not simply about the mistake
20 of one AUSA, but rather the prosecuting office as a whole.
21       C.  *Substantial Prejudice*
22       Defense counsel avers that the prejudice to his client lies in the additional time she
23 has spent in custody since her last trial, the toll it has taken on her health, the fact that she
24 has tipped her trial strategy to Government counsel, and that time results in faded
25 memories of witnesses.  The Government avers that such prejudice could be easily cured
26 and a mistrial is a sufficient sanction.  However, a new trial in this case would advantage
27 the government.  *See Chapman*, 524 F.3d at 1087.  "Where the defendant asks the district
28 court to use its supervisory powers to dismiss an indictment for outrageous government

1 conduct, the proper prejudice inquiry is whether the government conduct 'had at least
2 some impact on the verdict and thus redounded to [the defendant's] prejudice.'" *United*
3 *States v. Ross*, 372 F.3d 1097, 1110 (9th Cir. 2004) (alterations in original) (citations
4 omitted). "When an initial prosecution ends in mistrial, a subsequent retrial will increase
5 the emotional and financial burden imposed on the defendant, and may give the state an
6 unfair opportunity to tailor its case based on what it learned the first time around." *Id.* at
7 1081 (discussing whether double jeopardy precluded retrial). The Court's confidence as
8 to the fairness of a retrial in this case is shaken.

9       Unlike *Chapman*, this was not a case where the Government's case was going
10 badly. The case proceeded to trial and was uneventful through the Government's case in
11 chief. Defendant began to present her case, and took the stand, testifying during direct
12 examination regarding her duress defense. Defendant has now laid out the details of her
13 defense and at a second trial this fact greatly benefits the Government. Further, the
14 second time around, the Defendant is less likely to be able to recount her version of the
15 events after the passage of time. In addition, at a crucial juncture in Defendant's case,
16 Government counsel got her to admit on cross-examination that she had lied to a
17 magistrate judge about her duress defense. *But for* the Government's misconduct,
18 Defendant would not have to withstand a second trial. It is indisputable that "the
19 government conduct 'had at lease some impact on the verdict and thus redounded to [the
20 defendant's] prejudice.'" *Ross*, 372 F.3d at 1110 (alterations in original) (citations
21 omitted). As such, the Court finds that Defendant would be substantially prejudiced by a
22 retrial in this matter.

23

24 **IV. CONCLUSION**

25       Dismissal is appropriate where the Government's misconduct was flagrant, there is
26 substantial prejudice to the Defendant and no lesser sanction is available. *See Chapman*,
27 524 F.3d at 1087. All three of these are true in this case.

28

- 8 -

1        The Court finds that dismissal is appropriate in order to highlight the seriousness
2 of this matter and to hopefully prevent any recurrence. Furthermore, in light of AUSA
3 Albert's self-reporting to OPR and the pending state bar complaint against him, the Court
4 declines to take any further action regarding AUSA Albert. The record before the Court
5 demonstrates that AUSA Albert, personally, has been sufficiently punished for his
6 actions.

7        Accordingly, IT IS HEREBY ORDERED that the indictment is DISMISSED
8 WITH PREJUDICE.

9        DATED this 27th day of April, 2012.

*[signature]*
Cindy K. Jorgenson
United States District Judge

- 9 -