GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

DAN G. BOYLE (N.Y. Bar No. 5216825, daniel.boyle2@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1400
Los Angeles, CA 90012
Telephone (213) 894-2426

KENNETH POLITE
Assistant Attorney General
Criminal Division, U.S. Department of Justice

AUSTIN M. BERRY (Texas Bar No. 24062615, austin.berry2@usdoj.gov)
U.S. Department of Justice
Child Exploitation and Obscenity Section
1301 New York Avenue, NW, 11th Floor
Washington, D.C. 20005
Telephone (202) 412-4136
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | CR-18-422-PHX-DJH |
| Plaintiff, | **UNITED STATES' RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE TESTIMONY, STATEMENTS, OR ARGUMENTS THAT ESCORT SERVICES, DATING ADS, MASSAGE SERVICES AND ADULT ADVERTISING ARE UNLAWFUL OR PRESUMED TO INVOLVE PROSTITUTION** |
| v. | |
| Michael Lacey, et al., | |
| Defendants. | **(Doc. 1588)** |

Re-urging arguments this Court has rejected, Defendants seek to preclude evidence that Backpage's "escort" ads involved prostitution. (Doc. 1588.) Defendants' logic goes like this: because "[l]icensed escort services," "[d]ating services that comply with Arizona law regarding same," and "[l]icensed massage services" are regulated as lawful activities in Arizona, advertisements labeled as "escort," "massage," or "dating" necessarily offered lawful services. (Doc. 1588 at 4-5.) But merely labeling an ad as one for an ostensibly lawful service does not make it so. Rather, the trial evidence will show that Defendants intentionally worked for years to build Backpage into the internet's leading source of prostitution ads—and that, as used on Backpage, the label "escorts" functioned as a widely understood euphemism for prostitution. For many reasons, Defendants' motion to preclude evidence or argument on this critical topic should be denied.

**Defendants' "Presumption" Argument Lacks Merit**. This Court has repeatedly rejected Defendants' suggestion that the United States has merely "presumed" that Backpage's "escort" ads were for illegal services. (*Cf.* Doc. 1588 at 4-5.) In October 2019, the Court rejected Defendants' argument that the Superseding Indictment (SI, Doc. 230) "is based entirely on the assumption that the advertisements are for illegal activity. . . . Defendants ignore [the SI]," which "is replete with specific facts that support finding that the conspirators knew the ads were for prostitution." *United States v. Lacey*, 423 F. Supp. 3d 748, 757 (D. Ariz. 2019). The SI's 92-pages of detailed factual allegations, taken as true, "establish defendants had the specific intent to promote prostitution" and "conspired together to do so." *Id*. at 764.

The Court also found that the SI's allegations, if proven, show that the ads in Counts 2-51 "are for prostitution." *Id.* at 757-58. In support, the Court canvassed allegations that the ads included terms like "50 red roses special," "GFE" or "girlfriend experience" (which several Defendants discussed is a "code word" or "solid sex for money term[ ]"), "disclaimers" that "customers agreed they were not affiliated with law enforcement," pricing for short time periods (*e.g.*, "I do half hour sessions that vary in donation prices, 80 for head, 120 for hooking up without head"), and similar prostitution terms. *Id*. at 758-59.

- 1 -

In June 2021, Defendants again argued that the government had simply assumed that prostitution offenses "include[] legal escort services." (Doc. 1171 at 3-4.) The United States responded that "Defendants were aware that the overwhelming majority of ads in [Backpage's 'adult-escorts' section] were for prostitution" and "deliberately pursued a number of business strategies specifically designed to attract more prostitution advertising customers and increase its prostitution-related revenues." (Doc. 1176 at 15-16.) The United States summarized an array of supporting facts, including the guilty pleas and admissions of Backpage.com, LLC, Backpage's then-CEO, and Backpage's Sales and Marketing Director. (Doc. 1176 at 16-17.) The Court denied Defendants' motion. (Doc. 1179.)

And after the United States' opening statement in the first trial, Defendants moved for a mistrial on September 6, 2021, arguing—in terms nearly identical to those here—that the United States had "conflat[ed] escorts and prostitutes" by "substitut[ing] the word 'prostitute' or 'prostitution' in place of the word 'escort,' which is a legal activity." (Doc. 1272, Mot. at 6.) In response, the United States argued it relied on no such "presumptions"; instead, "the evidence at trial will demonstrate that the 50 ads associated with the substantive Travel Act counts, along with the other Backpage ads discussed in the superseding indictment, were not advertisements for sale of an 'escort,' rather they were prostitution solicitations." (Doc. 1275, Resp. at 16.)

The Court agreed: "The argument that the government has conflated or confused escorts versus prostitutes, one is legal and one is not, the government didn't confuse them, they simply said that it is their belief that the evidence will show that the escort ads are really for prostitution. . . . [I]t's their statement of what they believe the evidence will show, which is not an issue for a mistrial." (Doc. 1342 at 9:5-11.) These rulings—which are law of the case—show the United States is not relying on a mere "presumption" that Backpage's escort ads were for prostitution.

**Jurors May Properly Consider Both the Text and Context of the Ads, and Not Merely the Ads' Labels**. The United States does not quarrel with the general proposition that Arizona law defines certain lawful escort, dating, and massage services. (*See* Doc.

1588 at 4-5.) But it does not follow that "[s]ince each of the above services are legal in Arizona, any testimony or suggestion . . . that any of these services are really just fronts for prostitution . . . is legally and factually incorrect." (Doc. 1588 at 5.) In support, Defendants cite *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996), for the general proposition that the First Amendment "protects truthful commercial speech . . . about lawful products." (Doc. 1588 at 5.) But "commercial speech related to illegal activity" is not protected by the First Amendment. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Commn. of New York*, 447 U.S. 557, 563 (1980). And Defendants cite no authority holding that an ad must explicitly propose an illegal transaction to fall outside the First Amendment.

Rather, the law is clear that jurors may consider both text and context in assessing these ads and Defendants' intent to facilitate prostitution. The jury may properly consider the ads' use of coded prostitution terms (*e.g.*, "GFE," "quickie, "incall/outcall," "independent," "no pimps"), cross-references to reviews on prostitution websites, prices tied to 15-, 30-, or 60-minute increments, explicit photos, disclaimers that customers must agree they are not affiliated with law enforcement, and similar evidence. *See Lacey*, 423 F. Supp. 3d at 757-58 (discussing similar indicia of prostitution ads); *Pittsburgh Press Co. v. Human Relations Comm'n*, 413 U.S. 376, 388 (1973) (employment ads were unlawful, and excluded from First Amendment protection, based on their text and context); *United States v. White*, 610 F.3d 956, 960 (7th Cir. 2010) ("that a request for criminal action is coded or implicit does not change its character as [unprotected] solicitation"); (Doc. 1216-3 at 185-87; Doc. 1242 at 4-6).

In sum, the evidence referenced above is relevant to establishing the offenses charged in the SI, and its probative value is not substantially outweighed by any risk of undue prejudice. *See United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001) (all relevant evidence "might be said to be prejudicial if it tends to prove the prosecution's case," but that alone doesn't support preclusion). Defendants' motion (Doc. 1588) should be denied.

Respectfully submitted this 15th day of June, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

KENNETH POLITE
Assistant Attorney General
Criminal Division, U.S. Department of Justice

 *s/Peter S. Kozinets*
KEVIN M. RAPP
MARGARET PERLMETER
PETER KOZINETS
ANDREW STONE
DANIEL BOYLE
Assistant U.S. Attorneys

AUSTIN M. BERRY
Trial Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Daniel Parke*
Daniel Parke
U.S. Attorney's Office