1

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | |
|---|---|
| United States of America, ) | |
| ) | No. 2:18-cr-00422-DJH |
| Plaintiff, ) | |
| ) | |
| vs. ) | Phoenix, Arizona |
| ) | September 12, 2023 |
| Michael Lacey, et al. ) | 9:01 a.m. |
| ) | |
| Defendants. ) | |
| _____ ) | |

**BEFORE:  THE HONORABLE DIANE J. HUMETEWA, JUDGE**

**REPORTER'S EXCERPTED TRANSCRIPT OF PROCEEDINGS**

**TRIAL - DAY 4 - AM SESSION**

Official Court Reporter:
Hilda Elizabeth Lopez, RMR, FCRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 30
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                   **A P P E A R A N C E S**

2

For the Government:
3       UNITED STATES ATTORNEY'S OFFICE
        By:  **Mr. Kevin M. Rapp, Esq.**
4            **Mr. Peter S. Kozinets, Esq.**
             **Mr. Andrew C. Stone, Esq.**
5            **Ms. Margaret Wu Perlmeter, Esq.**
        40 North Central Avenue, Suite 1200
6       Phoenix, Arizona 85004
        kevin.rapp@usdoj.gov
7       peter.kozinets@usdoj.gov
        andrew.stone@usdoj.gov
8       margaret.perlmeter@usdoj.gov

9   For the Government:
        UNITED STATES DEPARTMENT OF JUSTICE
10      By:  **Mr. Austin Berry, Esq.**
        1301 New York Avenue, NW, 11th Floor
11      Washington, DC 20005
        austin.berry2@usdoj.gov

12

For the Defendant Michael Lacey:
13      LIPSITZ GREEN SCIME CAMBRIA, L.L.P.
        By:  **Mr. Paul J. Cambria, Jr., Esq.**
14      42 Delaware Avenue, Suite 120
        Buffalo, NY 14202
15      pcambria@lglaw.com

16

For the Defendant Scott Spear:
17      FEDER LAW OFFICE, P.A.
        By:  **Mr. Bruce S. Feder, Esq.**
18      2930 East Camelback Road, Suite 160
        Phoenix, AZ 85016
19      bf@federlawpa.com
        - and -
20      KESSLER LAW OFFICE
        By:  **Mr. Eric Walter Kessler, Esq.**
21      6720 N. Scottsdale Road, Suite 210
        Scottsdale, AZ 85253
22      eric.kesslerlaw@gmail.com

23

24

25

```
 1   For the Defendant John Brunst:
          BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
 2        LINCENBERG & RHOW, P.C.
          By:  Mr. Gopi K. Panchapakesan, Esq.
 3        1875 Century Park E, Suite 2300
          Los Angeles, CA 90067
 4        gpanchapakesan@birdmarella.com
          glincenberg@birdmarella.com
 5

 6   For the Defendant Andrew Padilla:
          DAVID EISENBERG, P.L.C.
 7        By:  Mr. David S. Eisenberg, Esq.
          3550 North Central Avenue, Suite 1155
 8        Phoenix, AZ 85012
          david@deisenbergplc.com
 9

10   For the Defendant Joye Vaught:
          JOY BERTRAND, ESQ., L.L.C.
11        By:  Ms. Joy M. Bertrand, Esq.
          P.O. Box 2734
12        Scottsdale, AZ 85252
          joy@joybertrandlaw.com
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                        **P R O C E E D I N G S**

2

3       **\*\*\*\*\* EXCERPT TRANSCRIPT**

4              COURTROOM DEPUTY:  Court is now in session.

5          (Proceedings commence at 9:01 a.m.)                    09:01:10

6              THE COURT:  All right.  Please be seated.  All right.

7       The record will reflect the presence of government's counsel,

8       the presence of defense counsel and clients are all present.

9              Counsel, I have to give you an update in terms of our

10      jurors.  Currently we're missing four, and we've been advised   09:01:44

11      that one juror in particular missed her transportation, her

12      bus, and her bus will not now arrive until roughly 10:15,

13      10:30, and so obviously we're going to have to have a delayed

14      start unless you wish to take some other measure.

15             And so is the government counsel okay with that        09:02:15

16      delayed start?

17             MR. STONE:  Yes, Your Honor.

18             THE COURT:  And of course, that assumes that we have

19      all of the remaining jurors arriving.

20             Mr. Cambria, are you okay with that delayed start?     09:02:28

21             MR. CAMBRIA:  I am, Your Honor.

22             THE COURT:  Ms. Bertrand?

23             MS. BERTRAND:  Yes, thank you.

24             THE COURT:  Mr. Panchapakesan?

25             MR. PANCHAPAKESAN:  Yes, Your Honor.                   09:02:36

1          THE COURT:  Mr. Feder?

2          MR. FEDER:  Yes.  Yes.

3          THE COURT:  Mr. Eisenberg?

4          MR. EISENBERG:  Yes, Your Honor.

5          THE COURT:  All right.  And so before we do that,          09:02:44

6    though, I do want to provide you with a couple of notes that I

7    made.  This is regarding the exhibits.

8          In considering the e-mails from the unindicted

9    co-conspirators, I know that there was an individual by the

10   name of Jess, and there was another, I'm going to reserve my          09:03:09

11   ruling on whether the e-mail sender, if it is indeed one of

12   these unindicted co-conspirators, had knowledge of the

13   conspiracy at the time the e-mail was sent, and so you will

14   have to lay that appropriate foundation to put forward that

15   those unindicted co-conspirators have knowledge, and that goes          09:03:38

16   for the other staff who are on some of those e-mail chains.

17   And this is in particular with regard to e-mails that are sent

18   directly from them and to them.  And so before you move to

19   introduce that exhibit, make sure that that foundation is laid.

20         I also looked again a little more closely at the          09:04:15

21   invoices to the TER, and I am going to overrule the cumulative

22   objection.  And my reason for doing that is in looking at it

23   more closely, the number of invoices that were paid, the

24   duration of which they were paid is relevant to the knowledge

25   of the co-conspirators.  And at the end of the day the amount          09:04:45

1   which was spent in those invoices to TER is relevant.

2         Now, I offer you this:  The cumulative objection, I

3   think Ms. Bertrand put forward waste to trial time and

4   resources, well, I would offer that if that is the case and

5   part of the objection, then perhaps you could meet and confer          09:05:17

6   and maybe decide to stipulate to some of those invoices coming

7   in, otherwise I think the government is within its right to

8   introduce all of those invoices.  So that's how we will proceed

9   with that.

10        I looked at the government's request for the curative          09:05:42

11  instruction regarding the opening arguments, and let me be very

12  clear again, in my order in the motions in limine, I

13  specifically stated that no defendant is entitled to use the

14  advice of counsel defense.  There has been no showing of a

15  privilege waived; there has been no showing of the four factors          09:06:12

16  in which to lay that claim.

17        And so I will say this:  Though Mr. Cambria came

18  fairly close in violating that order, I'm not going to permit

19  anyone else to reference it.  Nobody is going to talk about,

20  you know, having a legal department or hiring lawyers and          09:06:35

21  things of that nature because that infers that you relied on

22  those counsel, and the advice of counsel has been waived.  And

23  so if someone makes a statement along the lines of, I think

24  Mr. Cambria said:  Carl hired a bunch of lawyers to advise

25  them, and that he had a whole cast of attorneys advising him.          09:07:03

1    That's on the line.  And so if there's an objection, I will

2    tell the jury to disregard that specific statement, and so

3    that's how we will proceed in that fashion.

4           MR. FEDER:  Judge, clarification, please.  I don't --

5    I know the Court doesn't know this case that well, but in 2012,     09:07:25

6    a lawyer named Elizabeth McDougall was hired by Backpage to

7    take over the moderation of the website.  Mr. Spear was no

8    longer a part of that, and I intend in my opening statement to

9    say that.  It's not advice of counsel; it is a lawyer taking

10   over the moderation aspect of the website.     09:07:51

11          THE COURT:  Are you going to introduce that into

12   evidence in your case in chief?

13          MR. FEDER:  Yes.  I mean, you know, Mr. Ferrer will

14   testify to that presumably.  He worked with her exclusively.

15   My understanding is from 2012 to 2018.     09:08:10

16          THE COURT:  But the difference here is that you cannot

17   say that she gave advice unless you disclose what the content

18   of the question was.

19          MR. FEDER:  This is almost like -- it's almost, I

20   mean, I would analogize it to an alibi.  One other person is     09:08:26

21   taking over the job from another, and that's what I'm going to

22   say in my opening, and I assume that there is no problem with

23   that, but I am at the risk of having the government try to

24   object and the Court going:  Well, this is not advice; this is

25   somebody physically business-wise took over the job.     09:08:48

1          THE COURT:  And what was the job?

2          MR. FEDER:  The job was the moderation process of

3    Backpage for the next six years.

4          THE COURT:  Who wishes to respond?

5          MR. BERRY:  Your Honor, Austin Berry.  I'm happy to          09:09:08

6    respond.  The issue with Liz McDougall is that if they are

7    bringing up the fact that she holds a law degree or that she's

8    licensed by the bar, then that carries the imprimatur of legal

9    counsel and advice.  And the reality was that Liz McDougal was,

10   in the pejorative term of the defendants, which the evidence          09:09:31

11   will show, they refer to her as the pie catcher, meaning that

12   she was the public relations person that they put on CNN, they

13   had her go to the New York City Council to sit in those

14   hearings and answer those questions, and she was not saying:  I

15   as a lawyer have done this.  Or even if she did, they haven't          09:09:53

16   put forward, as you said, what they should.  So she was really

17   just the public relations person.

18         And the fact that she's lawyer is really of no import

19   here, and it is used here to smuggle in this theory of, well,

20   ladies and gentlemen of the jury, Liz McDougall took over in          09:10:11

21   this role and she's a lawyer, wink, wink.  So whether they say

22   it expressly or not, or push up against the line as Your Honor

23   said Mr. Cambria did here, that is what they are trying to

24   accomplish.

25         So I think that they should not be allowed to put that          09:10:27

1    in front of the jury as if that was some sort of explanation

2    for their behavior because that's precisely what the advice of

3    counsel defense is meant to guard against.

4         THE COURT:  Well, I think if Mr. Feder describes her

5    as being a lawyer hired to perform this job as a lawyer, then I          09:10:46

6    do have a problem with that.  If you suggest that she was hired

7    and, oh, by the way, she has a law degree, it's a little bit

8    closer call.

9         But Mr. Berry, you can clean that up with Mr. Ferrer

10   on redirect and he can basically say:  Well, she wasn't hired          09:11:06

11   in her capacity as a lawyer, was she?  She was no more than a

12   public relations person, and I think that's the way that it

13   should go.

14        But there's a fine line, Mr. Feder, and that's what

15   I'm telling you is that if you have a statement that she was          09:11:23

16   hired in her capacity as a lawyer to perform this job as a

17   lawyer would, then I will expect an objection and I will

18   clarify for the jury that they are to disregard that statement.

19        MR. FEDER:  She is an expert on Section 230 as a

20   lawyer.          09:11:47

21        THE COURT:  That has nothing to do with this case.

22        MR. FEDER:  But she's a lawyer that's an expert on the

23   moderation practices.  And I think that is not only relevant,

24   but to preclude us from using that is tantamount to saying that

25   she's just some stranger that doesn't have any knowledge,          09:12:02

expert knowledge, on that subject matter that she was taking

orders.

          THE COURT:  Well, Mr. Feder, read my order on the

Motion in Limine.  No 230 information comes in.  This is not a

230 case.                                                    09:12:17

          MR. FEDER:  We should talk about that too then, Judge.

          THE COURT:  No.  It's already been decided.

          MR. FEDER:  You're right.  It has been decided, and

let me read you exactly what the order says.  This is

Document 1081, page 20, lines 27 to 28.  This is in regards to 09:12:33

the expert that the defense disclosed years ago.  The

government filed a Motion in Limine against Eric Goldman, who

is a professor at Santa Clara University.  Here's what the

court said:  Testimony Section 230 was meant to incentivize

Internet providers to engage in moderation practices will be   09:12:58

allowed.

          I intend in my opening, unless the Court is going to

preclude even that, saying that we have expert testimony, lay

testimony, that Section 230, a statute, was enacted to

incentivize Internet providers to engage in moderation         09:13:17

practices, and it is in response to Mr. Stone's claim that the

moderation at Backpage was designed to hide prostitution ad

terms.

          So they opened up the door, number one.  This is the

order of the Court.  Number two, is the Court now going to      09:13:38

1    preclude that at this stage of the game where I am about to

2    give opening statement?

3            THE COURT:  I think my order speaks for itself.

4            MR. FEDER:  It does.  I just read it to you.

5            THE COURT:  Mr. Berry.                                09:13:52

6            MR. BERRY:  Your Honor, your order at 1643, Document

7    1643, page 10, clearly says that you're granting the

8    government's motion in limine.  "Defendants may not argue that

9    Section 230 of the CDA immunizes defendants from Counts 2

10   through 51" of violating the Travel Act.                      09:14:13

11           I don't understand why they are bringing this up now

12   when your order was crystal clear on this point; that if it

13   doesn't deal with the same charges, then we should not be

14   talking about it in this case.  And the danger that happens if

15   they are allowed to bring this type of thing in is we end up in 09:14:32

16   a mini-litigation about what it all means, and how all of these

17   CDA cases were all basically litigated with the lack of

18   information that this jury is going to see.

19           So the fact that they prevailed on any other CDA

20   litigation is of no moment here because those courts were not   09:14:53

21   privy to the information that these defendants were hiding from

22   each and every one of those courts that this jury is going to

23   see.  And so we think your court -- your order on this issue

24   should stand, and that there should be no mention of the CDA

25   whatsoever.                                                    09:15:11

1          THE REPORTER:  Mr. Feder, I can't hear you.

2          MR. FEDER:  That's apples and oranges.  That order,

3    1643, page 10, lines 5 through 8, I believe says:  "To date, no

4    party has provided this Court with case precedent holding that

5    the CDA immunizes criminal activity like that alleged here."          09:15:32

6    That's not what I'm asking.  I am saying Mr. Stone said in his

7    opening several times, once in regard to Mr. Padilla and

8    Ms. Vaught, and another time in general that the -- and put up

9    a slide on the overhead that the defendants attempted to use

10   moderation as if it was them and them alone, used moderation to          09:15:53

11   hide prostitution terms.  And that opens the door, number one.

12   Number two, this -- they are misreading your order and it

13   doesn't overturn Judge Brnovich's order that the CDA can come

14   in as long as we don't argue it immunizes them from criminal

15   prosecution, which I do not intend.          09:16:18

16          THE COURT:  Well, if you bring it in in terms of

17   companies were doing this under the law, and she was hired to

18   do this, but you cannot cross the line that she was giving

19   advice of counsel.

20          MR. FEDER:  I don't intend to do that.          09:16:34

21          THE COURT:  She was hired in her capacity as a lawyer.

22   She was hired in her capacity as a moderator.

23          MR. FEDER:  I don't know how many other times I could

24   say it, Judge, but I mean, we got the orders.  This court --

25   this court said we should try to be very careful and use them          09:16:50

1    in a -- in the proper way, which is what my intent is, which is

2    why I'm bringing this up.

3          THE COURT:  But you're not going to get into the

4    specifics of what the CDA is because this case has nothing to

5    do with that.                                    09:17:07

6          MR. FEDER:  No intention other than what I just said,

7    which is what the language from the order in Document 1081.  I

8    am going to quote that, although it's not going to be a quote.

9          THE COURT:  You're going to quote from an order in

10   your opening.  Very creative, Mr. Feder.              09:17:23

11         MR. FEDER:  Just going to use the language since it

12   was what we're allowed to do.

13         MR. BERRY:  Your Honor, one more thing on this point.

14   What I want to circle back to about Liz McDougall is that

15   Mr. Feder mentioned something about her being an expert on    09:17:41

16   moderation.  I don't believe that she's been noticed to us as

17   any kind of expert, so I would think that that would be beyond

18   the bounds of what he could say about that.

19         So in other words, what he's saying is:  I'm not going

20   to say that we relied on her expert legal advice 'cause I can't  09:17:57

21   do that under advice of counsel because Your Honor has said I

22   can't do that.  But what I am going to do is I am going to say:

23   Well, she was an expert on this other thing, except he hasn't

24   noticed her as an expert, to my knowledge.  If I am mistaken

25   about that, then they can correct me, but my understanding is  09:18:14

1    she's not been noticed as an expert.

2              THE COURT:  Have you noticed her as an expert?

3              MR. FEDER:  We are not noticing her as an expert.

4    Mr. Ferrer, I believe, unless the government is going to assert

5    that Ferrer is not going to claim that she wasn't very          09:18:25

6    experienced in, shall we say in CDA 230, we are not bringing

7    her in as an expert.  She was a lawyer that handled in her

8    practice, prior to coming to Backpage, Section 230 and other

9    issues with Internet companies, and that's fair game.

10             THE COURT:  Let me ask you -- let me ask you a         09:18:43

11   clarifying question, so are you bringing her in in your case in

12   chief?

13             MR. FEDER:  She is noticed.  She is listed on our

14   witness list.  I don't know what we are going to do.

15             THE COURT:  But she is not noticed as an expert?       09:18:55

16             MR. FEDER:  She is not.

17             THE COURT:  And so you can't refer to her as one.

18             MR. FEDER:  I'm sorry?

19             THE COURT:  You cannot refer to her as one in your

20   opening.                                                        09:19:04

21             MR. FEDER:  Note my objection, please, for the record.

22             THE COURT:  They are on the record, Mr. Feder.

23             Mr. Eisenberg.

24             MR. EISENBERG:  Yes, Your Honor, there is more to this

25   issue than has been presented to you.  For example, I notice    09:19:18

1  from our session on Friday, when we went through the

2  government's exhibits, there are at least two or three of them

3  that refer or are addressed to lawyers.  For example, there's

4  one from the State Attorneys General, this is Exhibit 73,

5  addressed to Samuel Fifer of the law firm called Sonnenschein          09:19:43

6  Nath & Rosenthal.  I won't go through it, but that is one of

7  the ones that the government intends to use.

8           I would proffer to Your Honor that there were times,

9  excuse me, when Mr. Fifer worked for Backpage.  I am going to

10 get into something else in a moment in terms of what the scope          09:20:07

11 of his duties were.

12          I also note, just to complete this, that Exhibit 95 is

13 from Mr. Spear to Mr. Ferrer with a cc to Mr. Steve Suskin, who

14 I believe is also someone from the outside who played a role in

15 this case to some extent.  And then Exhibit 99 is from          09:20:30

16 Mr. Spear to Mr. Suskin, who I believe is also a lawyer, and

17 then there is a cc to --

18          THE COURT:  Well, I'm looking at 99.  It says e-mail

19 from Allen, is that Allen Suskin to Harold and Karitya

20 Anderson?          09:20:54

21          MR. EISENBERG:  Your Honor, I am sorry, I am referring

22 to the number they used in their list of exhibits.  So I think

23 number 99 is Exhibit 938, and exhibit, what did I say, 76 -- 73

24 is their Exhibit -- I shouldn't use the word "exhibit," 902 is

25 the number there.          09:21:28

1          So there are references that the government is making

2     to lawyers, and it seems as though they want to have their cake

3     and eat it to.  If it's not a good reference as far as defense

4     goes, and I would debate that, then they want it to come in.

5          Now, I do want to expand this to some extent, Your          09:21:44

6     Honor, there are instances all through this case, at least in

7     the historical facts of the case, where, for example, my client

8     heard from Mr. Ferrer with respect to what he was told, Mr.

9     Ferrer, by others who were involved in making the moderation

10    decisions, what words are good, what words are not, what photos    09:22:07

11    are good, what photos are not, and some of those people are the

12    people we are talking about here.

13         I don't intend -- to go along with Your Honor's

14    ruling, I will -- I note Mr. Feder's objection, and I am with

15    it, however, I won't refer to them in my opening as lawyers,     09:22:28

16    but I think I have every right to refer to them as people who

17    participated in the moderation process.  It wasn't just my

18    client.  In fact, he had very little to do with actually

19    conceiving of what would be involved with moderation, the

20    words, the photos, et cetera.                                    09:22:50

21         So now that's not advice of counsel.  That's just

22    simply people are there in, I'll call it a policymaking

23    position, who are aiding Mr. Ferrer and others in passing on

24    information concerning how moderation is going to work.  It

25    goes straight to my client's knowledge and intent because he's    09:23:13

being told what it is that people above him are suggesting.
No, I'm sorry, should be put into practice with respect to
these terms and photos.

MR. CAMBRIA:  Your Honor, may I speak?

THE COURT:  Yes.

MR. CAMBRIA:  Good morning.

THE COURT:  Good morning.

MR. CAMBRIA:  I guess the problem I'm having is that
we should be able to bring out the facts.  Knowledge, intent
and good faith are relevant here.  Every time that there is
some event e-mail or something else that the government claims
puts our clients on notice of guilty knowledge, if you will,
the Court says that that's fine.  Here we have a situation
where the government would like the jury to believe that this
is just a money-making machine; there's no care as far as the
law; it's all about money.

If clients are sitting there and Mr. Ferrer is
referring to and consulting with lawyer after lawyer about
which words should be stripped out, what is the appropriate
procedure to run a website where third-party speech is found?
These are things that he's doing, and there are a number of
e-mails here and so on with lawyers copied on them.  I think
that it's fair to be able to show that there were a bunch of
individuals who were attorneys and that they were in fact
advising Mr. Ferrer as to how to run the website, and that that

1   is a relevant fact.  It goes towards good faith and knowledge

2   and intent on the part of all the other people who would be

3   aware of that.

4        If you let the government put in everything that you

5   say, well, they are aware of this, that and the other and it's          09:25:16

6   all negative, well, they should be able to put in the part

7   that's not negative.  If you're sitting there and working there

8   and you see a number of attorneys advising the person running

9   it what to do, it seems to me that is legitimate.  That's a

10  fact.  It's not an opinion or anything else.  It's a fact that          09:25:35

11  happened in this case, and the jurors should be able to

12  evaluate that when they determine knowledge and intent and good

13  faith on the part of our clients.

14        I don't understand -- we're not saying that these

15  particular lawyers gave our clients specific advice about a            09:25:53

16  specific thing.  What we're saying is the atmosphere there was

17  such that our clients saw all these attorneys that were being

18  used, and they were directing how certain things would happen,

19  especially with regard to moderation.  That is a relevant fact.

20        THE COURT:  Well, you're re-litigating something that            09:26:16

21  I've already written on.

22        MR. CAMBRIA:  Well --

23        THE COURT:  The law in the circuit is you do not get

24  to raise the advice of counsel unless you show a specific

25  waiver as to a particular issue and what that advice was               09:26:29

1   particularly sought.  No one on the defense side has done that.

2   There has been no waiver of the privilege that I know.  If

3   you're willing to do that at this late date, that's fine, but

4   at this juncture, that has not been done, and under the circuit

5   precedent I'm not going to permit it.                    09:26:49

6           MR. CAMBRIA:  But Your Honor, that's not what is

7   happening.  I -- I'm not saying --

8           THE COURT:  Nothing has happened yet, Mr. Cambria.  We

9   haven't even finished opening arguments.

10          MR. CAMBRIA:  I'm not saying that.  This isn't a        09:26:59

11  situation of somebody getting specific advice from one of these

12  lawyers that Carl Ferrer hired.  This is simply people

13  observing the fact that this is being run professionally, and

14  that is a fact that is relevant.  It goes to good faith.  That

15  isn't a situation of a specific lawyer Carl hired gave advice    09:27:20

16  to X.  That isn't that at all.  He is running a professional

17  operation with individuals who supposedly know how to do so,

18  and that's a relevant fact.  That's what I'm saying.

19          As far as waiving, why can't we put a witness on the

20  stand and go through direct and establish the foundation for    09:27:44

21  advice of counsel?  There is two different things going on

22  here.

23          THE COURT:  Well, if you're -- if you target it to a

24  specific question, that's the law, Mr. Cambria.

25          MR. CAMBRIA:  I am not disputing that fact, except      09:27:57

1    that you say a specific question or a general, a general

2    procedure also because sometimes you can't anticipate every

3    single question, but you can anticipate a procedure.

4         THE COURT:  And who is the lawyer that's going to be

5    giving the advice, that's the identity question that I don't            09:28:13

6    know, that saw a handful of e-mails from some unknown lawyer in

7    some law firm somewhere in New York or someplace?  That's the

8    only thing I have seen.

9         MR. CAMBRIA:  New York --

10        THE COURT:  There has not been any other information              09:28:29

11   related to advice of counsel that I have seen in which any

12   defendant has sought a specific clarifying question to a

13   lawyer, and it's -- and if you haven't provided notice at this

14   point, I'm not going to allow it.

15        MR. CAMBRIA:  Two -- two --                                       09:28:48

16        THE COURT:  You can finish making your record,

17   Mr. Cambria.  I am not going to change my ruling.

18        MR. CAMBRIA:  -- two different things.  One, I am not

19   talking about advice of counsel.  I am talking about

20   establishment of the facts, and that there was a professional,        09:28:59

21   appeared to be, organization created by Ferrer that these

22   individuals should be able to rely on.  Just like they say a

23   bad look can be demonstrated by certain things that they want

24   to put in; a good look can also be demonstrated.  That's

25   different.  That's not advice of counsel.  That is presence of        09:29:20

1    a professional organization, and they are the ones who are

2    saying:  Do this, do that.

3            THE COURT:  I don't think I precluded you from doing

4    that on cross-examination.

5            MR. CAMBRIA:  Well, I just --                          09:29:33

6            THE COURT:  I don't -- I don't understand the

7    terminology that you're using, "professional organization."

8            MR. CAMBRIA:  All I'm saying is I should be able to

9    say to Mr. Ferrer:  Okay.  You hired X, and X gave you advice

10   on the website.  What was the advice?  And it is:  Don't put   09:29:49

11   this in, don't put that in, you can take that out, take that

12   out, whatever it was.  That to me is a fact that's relevant to

13   the good faith, intent, knowledge on the part of our clients.

14           THE COURT:  Did you disclose that information to the

15   government?                                                    09:30:08

16           MR. CAMBRIA:  The government knows all about it.  It's

17   their witnesses.

18           THE COURT:  Did they disclose that information to you

19   on which Mr. Ferrer is going to say he relied?

20           MR. BERRY:  So I think the short answer, I think, is   09:30:20

21   no in the sense of it's not disclosed to us in an advice of

22   counsel theory, right.  And so what I think Mr. Cambria is

23   trying to do here is dance around this idea.  He is using this

24   terminology, "professional organization," because he wants to

25   say this is a professional organization; this is a corporation  09:30:41

1    and they did things that normal professional corporations like

2    Facebook and Google can do, and they have these people give

3    them advice.  That's just a fact, Your Honor.  And oh, by the

4    way, it's also a fact that that's a lawyer, at which point they

5    will then turn in closing argument and wink at the jury and          09:30:57

6    say:  They have these people giving them advice and they were

7    lawyers.  Get it?  That's the whole point of advice of counsel,

8    which Your Honor has very strongly and correctly, we believe,

9    ruled on, and they are trying to dance through that and trying

10   to avoid your ruling without complying with what what the Ninth      09:31:13

11   Circuit requires on this issue, and so we would ask that Your

12   Honor stand by that ruling and make clear that this

13   professional organization, if it comes in as subterfuge for

14   advice of counsel, should also be excluded.

15        MR. CAMBRIA:  First of all, I'm not relying on advice          09:31:29

16   of counsel.  What I'm doing is saying that this was a

17   professional organization and there are certain assumptions

18   that people can reasonably make when there is a professional

19   organization.  That's the first part.

20        The second part is I can establish the advice of             09:31:46

21   counsel foundation in my direct exam of the expert, of the

22   counsel.  There is nothing that indicates, you know, that

23   there's a specific time when I would have to do that as opposed

24   to when they were on the stand in direct, but this isn't that.

25   This is just establishing the factual makeup of the Carl Ferrer     09:32:06

1    enterprise.

2          THE COURT:  Before you do that, you're going to have

3    to get an express waiver of the privilege from the particular

4    counsel.

5          MR. CAMBRIA:  There is no privilege.                    09:32:23

6          THE COURT:  And the particular counsel whose name that

7    was, and the particular advice sought, and the particular

8    information given by that counsel, Mr. Cambria.  That's how

9    advice of counsel works.

10         MR. CAMBRIA:  But -- but --                             09:32:35

11         THE COURT:  You don't get it both ways.  My order

12   stands.

13         MR. CAMBRIA:  But I am not --

14         THE COURT:  So let me ask my courtroom deputy, what is

15   the status of the jury?                                       09:32:43

16         All right.  We're still waiting for the one who is

17   delayed by the bus.  So with that, we will stand in recess

18   until that juror joins us.

19         MR. CAMBRIA:  I'd like to finish my record when you

20   can.                                                          09:32:58

21         THE COURT:  I'll give you five minutes, Mr. Cambria.

22   You've spoken ad nauseam here on the same topic over and over.

23         MR. PANCHAPAKESAN:  Your Honor, I'd like to be heard

24   at some point.

25         THE COURT:  Please don't interrupt.  We have a court    09:33:15

UNITED STATES DISTRICT COURT

1    reporter who is trying very hard to take this down.

2            Mr. Cambria, please finish.

3            MR. CAMBRIA:  Thank you so much.  I am not saying that

4    individuals are relying on some lawyer that Carl hired for

5    advice.  I'm not saying that.  All I'm saying is that I should    09:33:28

6    be able to establish that they were aware of the fact that

7    there were a number of professionals hired to advise Carl on

8    running the website.  I'm not saying that they gave my client

9    or one of the others specific advice.  There's a difference.

10   This is just a factual, this is the scenario, this is the    09:33:50

11   picture, and that's all I'm saying.

12           THE COURT:  Mr. Panchapakesan.

13           MR. PANCHAPAKESAN:  Yes.  Apologies, Your Honor.  I

14   think what the Court should be aware of is that Mr. Ferrer,

15   during dozens of interviews with the government --    09:34:14

16           THE COURT:  Bless you.

17           MR. PANCHAPAKESAN:  -- was asked about attorney

18   advice.  Now, we previously moved to dismiss for what we

19   thought were privileged invasions.  That was denied.  But if

20   the Court would look at Docket 942, for example, where the    09:34:27

21   defense lays out excerpts from these memorandum of interview,

22   Mr. Ferrer is asked by the government about, for example, on

23   the April 5th interview, Attorney Don Moon advised that

24   anonymous speech on the Internet should be protected under the

25   First Amendment.  April 17th, 2018 interview, Attorney Moon    09:34:49

```
1    frequently advised the First Amendment and mens rea
2    requirements provided legal protection against federal criminal
3    prosecution.  And in that memo, same memo, Attorney Sam Fifer
4    of SNR Dentons prepared a legal memo advising that it was legal
5    to remove content from classified ads.  There's dozens of        09:35:09
6    examples of this where the government has asked Mr. Ferrer
7    about the very type of quote-unquote advice that we'd like to
8    cross-examine Mr. Ferrer on.  It comes directly from his
9    memorandum of interview, and the government opposed the motion
10   at Docket 1000.  And their primary argument, which is on page,   09:35:28
11   I think three of their opposition is:  These statements cannot
12   be privileged because they have not remained confidential.
13        The government goes on to say:  Even if defendants
14   hadn't publicly asserted these same theories in scores of cases
15   throughout the country over the last decade, defendants reveal   09:35:48
16   these theories in this case in the earliest filings.  The
17   government's response is basically, even if we had gotten to
18   advice, this quote-unquote advice, the essence of it has become
19   public.
20        And so in a sense we are just asking as to Mr. Ferrer,      09:36:04
21   cross-examine him on the very subjects that the government has
22   already interviewed him on whether or not it's called advice,
23   and I'd ask the Court to look back at those pleadings to sort
24   of get a sense for numerous instances in which --
25        THE COURT:  But the matter has been litigated.  It's        09:36:25
```

1    been litigated and ruled upon.  Is that my understanding?

2            MR. PANCHAPAKESAN:  It has.  The privilege invasion

3    has.  My only point is that the government shouldn't be able to

4    ask Ferrer about these things, whether we call it advice or

5    not, and the defense be precluded from cross-examining him on          09:36:40

6    those same subjects.

7            MR. BERRY:  They are not precluded from doing that if

8    they follow this Court's order on the advice of counsel defense

9    and do all of those steps, which includes reviewing what they

10   said, what they asked, what was told in each of those four          09:36:55

11   factors that Your Honor has laid out.

12           The simple fact that this has already been litigated

13   and asking Your Honor to go look at those pleadings, as Your

14   Honor pointed out, it's been ruled on.  We shouldn't be

15   re-litigating that issue right now, and they have not complied     09:37:11

16   with your order on the advice of counsel defense, and,

17   therefore, they should not be allowed to deal with it.

18           THE COURT:  All right.  You've made your record.  I'm

19   not going to change my decision, and so we'll stand in recess.

20   We'll get an update in about quarter after the hour as to the     09:37:25

21   status of our juror.  Give her at least some time to get

22   settled in before we come in.

23           COURTROOM DEPUTY:  All rise.

24           (Recess was taken at 9:37 a.m.)

25           (Proceedings reconvened at 10:26 a.m.)          10:26:48

THE COURT:  Please be seated.  Now, it appears our juror has arrived.  Let's give her a couple minutes to cool down.

In the meantime, I did have a chance to look at the prior order at 1081.  This was issued back in 2020 regarding the Section 230.  I think consistent with this Court's order, the order here clarifies testimony related to the policy behind Section 230 or how it should work will be precluded.  That was the precise language.  But it goes on to say:  Testimony that Section 230 was meant to incentivize Internet providers to engage in moderation practices will be allowed.  And so the Court will permit that testimony to that extent.

Now, there is a fine line to be drawn, though, because this Court previously has clarified that because this is a criminal proceeding, Section 230 doesn't necessarily apply and so be mindful of that that this is a civil rule and law meant to shield companies from civil liability, not criminal liability, and so just keep aware of that.

I tried to think about Mr. Cambria's position a little bit more, and let me see if I can articulate it in a way that Mr. Cambria can agree with.  What I understand you to be saying, Mr. Cambria, is that you should be entitled to ask Mr. Ferrer whether or not his company was essentially run in a professional manner, or he had, for example, an HR department or whatever it may be, and that people relied on one another in

```
 1    terms of what the operation entailed.  That is different than
 2    asking the legal department, for example, particular questions
 3    about what ad can run, what can't be included, and so on.  So
 4    if you stay away from that, I'll permit some leeway there.
 5              With that, we have our jurors at the ready.  We're      10:29:58
 6    going to plug on until about 12:30, and you all indicated that
 7    you have a preferred order of openings of who is going first.
 8              Mr. Feder, who is going second?
 9              MR. EISENBERG:  I am, Your Honor.
10              THE COURT:  And then Ms. Bertrand.                       10:30:18
11              MS. BERTRAND:  Yes.
12              THE COURT:  Please be at the podium at the ready,
13    Mr. Feder.  Please bring in the jury.  All rise for the jury.
14                        (Jury is present)
15                             ***** END OF EXCERPT
16
17
18
19
20
21
22
23
24
25
```

1

2

3                              **C E R T I F I C A T E**

4

5          I, HILDA E. LOPEZ, do hereby certify that I am duly

6  appointed and qualified to act as Official Court Reporter for

7  the United States District Court for the District of Arizona.

8          I FURTHER CERTIFY that the foregoing pages constitute

9  a full, true, and accurate transcript of all of that portion of

10  the proceedings contained herein, had in the above-entitled

11  cause on the date specified therein, and that said transcript

12  was prepared under my direction and control.

13          DATED at Phoenix, Arizona, this 13th day of

14  September, 2023.

15

16

17                              s/Hilda E. Lopez_____

18                              HILDA E. LOPEZ, RMR, FCRR

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT