GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

DAN G. BOYLE (N.Y. Bar No. 5216825, daniel.boyle2@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1400
Los Angeles, CA 90012
Telephone (213) 894-2426

NICOLE M. ARGENTIERI
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

AUSTIN M. BERRY (Texas Bar No. 24062615, austin.berry2@usdoj.gov)
U.S. Department of Justice
Child Exploitation and Obscenity Section
1301 New York Avenue, NW, 11th Floor
Washington, D.C. 20005
Telephone (202) 412-4136
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | CR-18-422-PHX-DJH |
| Plaintiff, | |
| v. | **UNITED STATES' MOTION FOR PROTECTIVE ORDER CONTAINING SENSITIVE VICTIM INFORMATION** |
| Michael Lacey, et al, | |
| Defendants. | |

Pursuant to 18 U.S.C. § 3509(d) (the Child Victims' and Child Witnesses' Rights Act) and § 3771(a) (the Crime Victims' Rights Act), the United States respectfully requests that this Court enter the proposed Protective Order submitted with this Motion.[1]

## BACKGROUND

Defendants have been indicted on one count of conspiracy to violate the Travel Act, and 50 substantive counts of violating the Travel Act, as well as multiple money laundering counts. (Doc. 230.) During trial, the United States has introduced into evidence more than 50 advertisements, related to the 50 substantive Travel Act counts, which contain sexualized photos of victims, some of whom were minors at the time of their exploitation. Additionally, the United States introduced Backpage ads of other victims who were part of the conspiracy count, but not Counts 2-51. All of these exhibits were displayed in open court where the public and press had unfettered access to attend the trial and observe and report on the exhibits.

Now, after these sensitive materials have already been on public display, David M. Morgan, who has been present almost every day of the trial, has requested access to "admitted (and non-admitted?) exhibits during and/or after trial." *See* Exhibit 1 (Oct. 24, 2023 E-mail from Mr. Morgan to Clerk of the Court); *see also* Exhibit 2 (Oct. 25, 2023 E-mail exchange between Mr. Morgan and Clerk of the Court). Mr. Morgan operates a website, dedicated to the trial in this matter, which offers access to "100s of case-related

---

[1] The United States inquired of defense counsel regarding opposition to this motion. Defendants Padilla and Vaught have expressly stated their opposition to such a motion. The remaining defendants have not notified the United States of their respective positions.

2

court documents" for members who pay a $29 fee. *See* Exhibit 3. After the United States orally moved to seal the exhibits, undersigned counsel learned that Mr. Morgan had already obtained at least one exhibit that was admitted in this trial.[2]

Consequently, the United States specifically requests that the Court issue the Proposed Protective Order, which prohibits public dissemination by the parties and their counsel of any document that contains identifying information[3] and potentially identifying information[4] of any victim in this matter. The Court should grant the United States' requests for two reasons. First, the Court has discretionary and supervisory power over its own records and files and should deny access to the requested Exhibits. Second, federal law provides good cause to issue a protective order regarding these sensitive materials to protect the victims' right to privacy and dignity and prevent further trauma and repeated harm to the victims.

---

[2] *See* Exhibit 4 (Oct. 27, 2023 E-mail from Mr. Morgan to subscribers disclosing Govt Exh. 171, which was discussed in closing by Mr. Cambria, and was the subject of an objection by the United States).

[3] The United States proposes that "identifying information" include victims' names, social security numbers, addresses, and telephone numbers. *See generally*, 18 U.S.C. § 3509(d)(3)(A); Fed. R. Crim. P. 49.1(a) (social security numbers, taxpayer identification numbers, birth dates, names of minors, financial account numbers, and home addresses); Rule Fed. R. Crim. P. 49.1(e) (for good cause, the court may by order in a case require redaction of additional information).

[4] "Potentially identifying information" includes information found in the advertisements which would tend to publicly identify the victim, including photographs of the victim found on Backpage advertisements. *See generally*, 18 U.S.C. § 3509(d)(3)(A); Fed. R. Crim. P. 49.1(e).

## DISCUSSION

### A. THE COURT HAS AUTHORITY TO GRANT THE UNITED STATES' MOTION FOR A PROTECTIVE ORDER

**1. The Court has supervisory power over its own records and files and should seal the Exhibits at issue.**

Courts have supervisory power over their own custodial records and files, and it is well within a Court's power to issue a protective order. *See Nixon v. Warner Commc'n Inc.*, 435 U.S. 589, 590 (1978). With facts similar to those before the court, the Supreme Court in *Nixon* held that (1) the common law right of access to judicial records did not require the release of the exhibits sought, and (2) denying the media a physical copy of an exhibit entered into evidence and displayed in Court did not implicate either the First Amendment's guarantee of freedom of the press or the Sixth Amendment guarantee of a public trial. *Id*. at 608.

In *Nixon*, the press sought audio tapes admitted into evidence at trial to copy the tapes for "broadcasting and sale to the public." *Id*. at 591. During the trial, hours of the taped audio recordings were played for the jury and the public in the courtroom and entered into evidence. *Id*. at 594. In addition, transcripts of the recordings were widely printed in the press. *Id*. Several weeks after the trial, certain broadcasters sought permission to "copy, broadcast, and sell to the public the portions of the tapes played at trial." *Id*. The Supreme Court stated that while courts recognize a general right to inspect and copy public records and documents including judicial records, these rights are not absolute. *Id*. at 597-98, 599 ("It is uncontested, however, that the right to inspect and copy judicial records is

not absolute. Every court has supervisory power over its own records and access has been denied where court files might have become a vehicle for improper purposes").[5] Ultimately, because "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case," the Court concluded that the common law right of access did not warrant release of the tapes.[6] *Id*. at 599.

Next, rejecting the applicability of the respondents' constitutional arguments, the Court stated that, with respect to the First Amendment guarantee of freedom of the press, "there were no restrictions upon press access to, or publication of any information in the public domain. Indeed the press . . . was permitted to listen to tapes and report on what was heard." *Id*. at 609. Moreover, as it concerned the press in particular, the Court added that "[t]he First Amendment generally grants the press no right to information about a trial superior to that of the general public" – who in this case "never had *physical* access to the materials at issue." *Id*. (emphasis in the original). Finally, rebuffing the respondents' Sixth Amendment guarantee of a public trial, among other points, the Court concluded that not only does the Sixth Amendment "confer[] no special benefit on the press," but that it does not "require that the trial – or any part of it – be broadcast live or on tape to the public. The

---

[5] In providing examples of "improper purposes," the Court noted the use of records to "'gratify private spite or promote public scandal.'" *Id*. at 603.

[6] As part of its balancing, the Court considered an aspect unique to *Nixon* – that the Presidential Recordings Act provided that portions of the recordings that had "historical value [would be] preserved and made available for use in judicial proceedings and, eventually, made accessible to the public." *Id*. at 603.

requirement of a public trial is satisfied by the opportunity of members of the public and the press to attend trial and report what they have observed." *Id*. at 610.

Here, like in *Nixon,* the Constitution is not implicated – simply put, there have been no restrictions to the press or public's access to the trial; the exhibits at issue were displayed in open court, and the public and press had unfettered access to observe the trial and the exhibits and had every opportunity to report those observations. And like in *Nixon*, because the public never had physical access to the relevant exhibits, the press is not entitled to any rights "superior to that of the general public." *Id*. at 609.

Even if the Court were to apply a constitutional analysis to Mr. Morgan's request – which according to *Nixon* is inapt – his request should still be denied. For example, in *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596 at 604-606 (1982), the Court balanced the constitutional right to informational privacy against the First Amendment right of the public's access to criminal trials. In striking this balance, the Court found that the denial of an open courtroom to protect the disclosure of sensitive information must be necessitated by a compelling governmental interest that is narrowly tailored to serve that interest. *Id*. at 606-07. In addition to a victim's right to informational privacy, the Court determined that "safeguarding the physical and psychological well-being of a minor" is a compelling interest. *Id.* This Circuit has also recognized that safeguarding a minor sexual abuse victim's psychological well-being is indeed a compelling interest. *See United States v. Yazzie*, 743 F.3d 1278, 1287 (9th Cir. 2014), *citing Globe Newspaper*, 457 U.S. at 607-08. Moreover, there are no reasonable

alternatives to a protective order that would adequately protect these interests and the harm that would result from continued public dissemination of these Exhibits. *See United States v. Doe,* 870 F.3d 991, 1001 (9th Cir. 2017). Here, protecting only those court Exhibits containing private and sensitive victim information, which were previously published in a public trial following open testimony from the victims, is narrowly tailored and serves compelling and recognized interests – the victims' right to informational privacy and their right to be free from the unnecessary psychological harm caused by the further and indefinite public disclosure of these exhibits. *See Yazzie* 743 F.3d at 1283, 1287, 1291. In addition, issuing the protective order furthers the United States' compelling interest in protecting minor and other victims from repeated re-traumatization that would be caused by further dissemination of the victim ads on the Internet.

Simply put, and as affirmed by *Nixon*, the Court possesses the power in its discretion to deny access to trial exhibits. And, as discussed below, there is good cause for this Court to issue the Proposed Protective order regarding the sensitive Exhibits to protect the victims' rights and deny Mr. Morgan's (and anyone else's similar) request.[7]

**2.      Courts may enter a protective order for good cause shown**

The Court may enter a protective order at any time, for good cause, pursuant to Rule

---

[7] To the extent Mr. Morgan (or any other member of the media) would like to report on what he or she observed about those exhibits, they are free to do so. There is no need for Mr. Morgan (or anyone else for that matter) to possess a copy of those exhibits for publication, which, based on the sexualized nature of the content and personally identifying information contained therein, could reasonably be expected to be used for "improper purposes" and unquestionably run afoul of the victims' right to privacy and dignity.

Fed. R. Crim. P. 16(d) and its general supervisory authority. *See* Fed. R. Crim. P. 16(d) ("At any time, the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."); *see also Alderman v. United States*, 394 U.S. 165, 185 (1969) ("[T]he trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect."); *Bittaker v. Woodford*, 331 F.3d 715, 726 (9th Cir. 2003) ("The power of courts… to delimit how parties may use information obtained through the court's power of compulsion is of long standing and well accepted."). Rule 16(d)'s provision for protective orders was specifically designed to protect against dissemination of a witness', victim's, or third party's personal information. As stated in the Advisory Committee notes to the 1974 amendments to Rule 16, "[a]lthough the rule does not attempt to indicate when a protective order should be entered, it is obvious that one would be appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed." Indeed, courts should seek to ensure that disclosure of discovery materials to a defendant "involve[s] a minimum hazard to others." *Alderman*, 394 U.S. at 185.

As discussed below, the Crime Victims' Rights Act ("CVRA"), which established the right of victims "to be treated with fairness and with respect for the victim's dignity and privacy," is more than sufficient to provide good cause for issuing the Proposed Protective Order. *See* 18 U.S.C. § 3771(a)(8). In addition to the CVRA, because a subset of the Exhibits contains images of minors, they are further subject to the Child Victim's

and Child Witnesses' Rights Act—which provides additional good cause to grant the United States' motion. *See* 18 U.S.C. § 3509. Restricting the unnecessary additional publication of traumatic and triggering sensitive photographs that document the sex trafficking of victims significantly outweighs any public interest in publication.

**B.  THE CRIME VICTIMS' RIGHTS ACT PROTECTS VICTIMS' RIGHTS TO PRIVACY AND DIGNITY AND IS GOOD CAUSE TO GRANT THE UNITED STATES' MOTION FOR A PROTECTIVE ORDER**

The victims in this case have a statutory right to privacy and dignity that militate in support of granting the United States' Motion. The CVRA guarantees a victim of a crime certain rights and protections. *See* 18 U.S.C. §3771(a) (listing the eight protections and rights afforded to victims). The CVRA provides, in relevant part, that: "In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the rights described in [the CVRA]." One of the most stalwart rights afforded to each and every victim of a crime, and the right at issue here, is the "right to be treated with fairness and with respect for the victim's dignity and *privacy*." 18 U.S.C. § 3771(a)(8) (emphasis added). Recognizing the importance of these rights and the need to enforce them, the CVRA, unlike prior victims' rights statutes, allows both the government and the victims to enforce the CVRA. *See* 18 U.S.C. §3771(a)(d)(1), *Kenna v. U.S. Dist. Ct. for C.D. Cal.,* 435 F.3d 1011, 1013 (9th Cir. 2006). Indeed, Congress was clear in their intention in the enactment of the CVRA: "it is not the intent of this bill that its significance be whittled down or marginalized by the courts or the executive branch. The legislation is meant to correct, not continue, the legacy of poor treatment of crime victims in the criminal

proceedings." *See Senate Debate* at S4269 (statement of Sen. Feinstein); *see also United States v. Dearing*, 2021 WL 672987, at *3 (E.D. Cal. Feb. 22, 2021) (quoting Senate Debate at S4269); *United States v. Turner*, 367 F. Supp. 2d 319, 335 (E.D.N.Y. 2005) (same). Moreover, courts are tasked with ensuring that victims are afforded this right, and the government is obligated to make its best efforts to do the same. *See* 18 U.S.C. §§ 3771(b)(1) ("the court shall ensure that the crime victim is afforded the rights described in subsection (a)") and 3771(c)(1) (the government "shall make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection (a)").

Courts routinely recognize the trauma, stigma, and emotional harm that victims of sexual exploitation suffer through the judicial process and the concomitant need to limit that harm where possible.[8] *See, e.g.*, *Dillard v. City of Springdale, Arkansas*, 930 F.3d 935 (8th Cir. 2019) (victims of sexual abuse had right to privacy from public disclosure of this abuse); *Quinn v. Haynes*, 234 F.3d 837, 850 (4th Cir. 2000), *relying on Michigan v. Lucas*, 500 U.S. 145, 149-51 (1991) (state has a valid interest in protecting victims of sexual abuse from needless harassment, humiliation and unnecessary invasions of privacy); *United*

---

[8] Such harm is well documented. *See* Suzanne M. Leone, *Protecting Rape Victims' Identities: Balance Between the Right to Privacy and the First Amendment*, 27 New Eng. L. Rev. 883, 909-10 (1993) *quoting* Laurence H. Tribe, *American Constitutional Law* § 12-14, at 650 (1st ed. 1978)) (a victim's right to control personal information "is breached most seriously when intimate facts about one's personal identity are made public against one's will "); Joel M. Schumm, *No Names Please: The Virtual Victimization of Children, Crime Victims, the Mentally Ill, and Others in Appellate Court Opinions*, 42 Ga. L. Rev. 471, 475-76 (2008) (discussing increased harm to victims for disclosure of personal information in public court records because of easy and pervasive internet access to such information).

*States v. Westinghouse Electric Corp.*, 638 F.2d 570, 577 (3d Cir. 1989) *citing* Charles Fried, *Privacy*, 77 Yale L.J., 475, 483 (1968) (information about one's body, state of health, and medical records disclosing personal details is constitutionally protected from inappropriate disclosure).

Here, several victims took the stand, were subject to extensive cross examination, and had to relive some of their most traumatic moments in the public eye. *See* SEALED Attachment B (three affidavits of victims who testified at trial). Not only did the victims testify about being advertised on Backpage.com, but they also faced the *very* images of themselves that were used in the advertisement of their bodies for commercial sex – the ones sought here by Mr. Morgan as part of his general request for all admitted and non-admitted exhibits. These images were displayed to the public in a courtroom while the victims answered questions. This alone is traumatizing. *Id.* It is without question that the victims will suffer compounded and repeated harm by the continued dissemination of these traumatic images. *Id.* What is more, as the Court is well aware, these images often depict the victims in various states of undress and posed in sexually suggestive positions. The repeated publication of these images via Mr. Morgan's website, or elsewhere, for public purchase and consumption undeniably violates the victims' right to privacy and dignity. *Id.* As such, this Court should determine that there is good cause to protect the victims' right to dignity and privacy as provided for in the CVRA and issue a protective order regarding the Exhibits identified in Attachment A.

**C.    THE CHILD VICTIM'S AND CHILD WITNESSES' RIGHTS ACT PROVIDES GOOD CAUSE TO GRANT THE UNITED STATES' MOTION TO ISSUE A PROTECTIVE ORDER**

The Child Victims' and Child Witnesses' Rights Act (the "Act") is another independent basis upon which good cause can be shown for issuing the Proposed Protective Order and is applicable to a subset of the Exhibits. Regarding the safeguarding of children involved in criminal proceedings, the Act provides for confidentiality of information concerning children. The Act defines a "child" as "a person who is under the age of 18, who is or is alleged to be ... a victim of a crime of physical abuse, sexual abuse, or exploitation ... or a witness to a crime committed against another person." 18 U.S.C. § 3509(a)(2). The Act defines "sexual abuse" to include the "sexual exploitation of children." 18 U.S.C. § 3509(a)(8). The Act defines the term "exploitation" to mean "child pornography or child prostitution[.]" 18 U.S.C. § 3509(a)(3).

Under the Act, information "that concerns a child" may only be disclosed to "persons who, by reason of their participation in the proceeding, have reason to know such information." 18 U.S.C. § 3509(d)(1)(A)(ii). Employees of the Government, employees of the Court, the defendants, defense counsel, and the jury must "keep all documents that disclose the name or any other information concerning a child in a secure place to which no person who does not have reason to know their contents has access[.]" 18 U.S.C. § 3509(d)(1)(A)(i). "This protection applies even when victims are no longer underage." *United States v. Lewis*, 2017 WL 750456, at *5 (S.D. Ga. 2017) (citing *Lebowitz v. United States*, 2015 WL 630394, at *14 n.13 (N.D. Ga. 2015); *Luttrell v. McDonald's Corp.*, 2004

WL 2750244, at *6 (S.D. Ind. 2004) ("[T]he protection of [a minor's] privacy will mean little if the cloak protecting that privacy disappears simply upon reaching the age of majority.")); *see also United States v. Gardner*, 2016 WL 5404207, at *5 (E.D. Mich. 2016) (collecting cases and allowing then-18-year-old trafficking victim to testify without full name, relying on spirit of § 3509(d) as well as § 3771).

Protecting the confidentiality of the child is so paramount that any information that "disclose[s] the name of or any other information concerning a child shall be filed under seal without necessity of obtaining a court order." 18 U.S.C. § 3509(d)(2). The Act also contemplates that "the court may issue an order protecting a child from public disclosure of the name of or any other information concerning the child in the course of the proceedings, if the court determines that there is a significant possibility that such disclosure would be detrimental to the child." 18 U.S.C. § 3509(d)(3). The Court may also issue a protective order that provides for any other measure that may be necessary to protect the privacy of the child. 18 U.S.C. § 3509(d)(3)(B). As the Supreme Court has recognized, the continued possession of private materials "is of sufficient importance to merit constitutional protection." *Church of Scientology of California v. United States*, 506 U.S. 9, 13 (1992). And the victims will suffer continuous harm if this information remains widely and publicly available. *Church of Scientology*, 506 U.S. at 13; s*ee also*, *Gavin*, 595 F.2d at 788 (favoring redaction of minor sex abuse victim's name in already publicly published court opinion). Here again, the Act's vital purpose – protecting any identifying information regarding minor victims' identity from general, public consumption provides

overwhelming good cause to issue the Protective Order.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant the United States' Motion and issue the Proposed Protective Order.

Respectfully submitted this 8th day of November, 2023.

    GARY M. RESTAINO
    United States Attorney
    District of Arizona

    NICOLE M. ARGENTIERI
    Acting Assistant Attorney General
    Criminal Division, U.S. Department of Justice

    *s/Austin M. Berry*
    AUSTIN M. BERRY
    Trial Attorney

    KEVIN M. RAPP
    MARGARET PERLMETER
    PETER KOZINETS
    ANDREW STONE
    DANIEL BOYLE
    Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/Austin M. Berry*
AUSTIN M. BERRY
Trial Attorney