**UNITED STATES DISTRICT COURT**


**FOR THE DISTRICT OF ARIZONA**


_____


| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. 2:18-cr-00422-DJH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | November 9, 2023 |
| Michael Lacey, et al. | ) | 10:00 a.m. |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |


**BEFORE:   THE HONORABLE DIANE J. HUMETEWA, JUDGE**


**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**TRIAL - DAY 31 - A.M. SESSION**

**IN-COURT HEARING**


Official Court Reporter:
Hilda Elizabeth Lopez, RMR, FCRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 30
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
 1                        A P P E A R A N C E S

 2

 3    For the Government:
          UNITED STATES ATTORNEY'S OFFICE
          By:  Mr. Kevin M. Rapp, Esq.
 4             Mr. Peter S. Kozinets, Esq.
               Mr. Andrew C. Stone, Esq.
 5             Ms. Margaret Wu Perlmeter, Esq.
               Mr. Daniel Boyle, Esq. - Appears by Zoom
 6             Mr. Joseph Bozdech, Esq.
          40 North Central Avenue, Suite 1200
 7        Phoenix, Arizona 85004
          kevin.rapp@usdoj.gov
 8        peter.kozinets@usdoj.gov
          andrew.stone@usdoj.gov
 9        margaret.perlmeter@usdoj.gov

10    For the Government:
          UNITED STATES DEPARTMENT OF JUSTICE
11        By:  Mr. Austin Berry, Esq.
          1301 New York Avenue, NW, 11th Floor
12        Washington, DC 20005
          austin.berry2@usdoj.gov
13
      For the Defendant Michael Lacey:
14        LIPSITZ GREEN SCIME CAMBRIA, L.L.P.
          By:  Mr. Paul J. Cambria, Jr., Esq.
15        42 Delaware Avenue, Suite 120
          Buffalo, NY 14202
16        pcambria@lglaw.com

17    For the Defendant Scott Spear:
          FEDER LAW OFFICE, P.A.
18        By:  Mr. Bruce S. Feder, Esq.
          2930 East Camelback Road, Suite 160
19        Phoenix, AZ 85016
          bf@federlawpa.com
20        - and -
          KESSLER LAW OFFICE
21        By:  Mr. Eric Walter Kessler, Esq.
          6720 N. Scottsdale Road, Suite 210
22        Scottsdale, AZ 85253
          eric.kesslerlaw@gmail.com

23

24

25
```

UNITED STATES DISTRICT COURT

```
1    For the Defendant John Brunst:
         BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
2        LINCENBERG & RHOW, P.C.
         By:  Mr. Gopi K. Panchapakesan, Esq. - Appears by Zoo
3              Mr. Gary S. Lincenberg, Esq.
         1875 Century Park E, Suite 2300
4        Los Angeles, CA 90067
         gpanchapakesan@birdmarella.com
5        glincenberg@birdmarella.com

6    For the Defendant Joye Vaught:
         JOY BERTRAND, ESQ., L.L.C.
7        By:  Ms. Joy M. Bertrand, Esq.
         P.O. Box 2734
8        Scottsdale, AZ 85252
         joy@joybertrandlaw.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>**P R O C E E D I N G S**</u>

1

2

3          (Proceedings commence at 10:00 a.m.)

4          THE COURT:  Please be seated.  All right.  It appears

5   we have some clients, but not all.  Is there any waiver of          10:00:29

6   client presence?

7          MS. BERTRAND:  Your Honor, I waive my client's

8   presence.  If the Court needs her, she's in our workroom.

9          THE COURT:  All right.  Who else?  Mr. Eisenberg is

10  not present.  Neither is his client.  I'm assuming that's          10:00:50

11  because the allegations aren't impacting him.

12          I see Mr. Feder.  The screen is blocking you, so I

13  know that you're here.

14          I'm going to try to make you do all of the talking so

15  I can preserve my voice.                                           10:01:14

16          First, let me ask, why do we have Notice of Appearance

17  today, a change?

18          MR. BOZDECH:  Your Honor, AUSA Joseph Bozdech for the

19  United States.  I entered an appearance in the eventuality that

20  Mr. Boyle would not be able to appear.  I am the forfeiture        10:01:31

21  attorney here in the Phoenix office.

22          MR. FEDER:  I'm sorry.  I can't hear the gentleman.

23          MR. BOZDECH:  I am the forfeiture AUSA here in the

24  Phoenix office.  I entered an appearance just in case Mr. Boyle

25  was unable to appear this morning, in an abundance of caution,     10:01:48

1    but I see we have Mr. Boyle by Zoom.

2            THE COURT:  And who is the lead trial counsel on the

3    matter?

4            MR. BOYLE:  That would be me, Your Honor, Mr. Boyle.

5    My apologies.  I'm on the east coast for a family matter.     10:02:05

6    Mr. Bozdech volunteered and entered an appearance in case there

7    was a forfeiture matter I was not able to appear for.  My

8    apologies, Your Honor.  I will be back in court on Tuesday.

9            THE COURT:  I want to first turn to the briefing that

10   I received last evening from Mr. Panchapakesan, as well as the   10:02:34

11   government, related to the issue of third-party interests.  And

12   I did have a chance to look at the Ninth Circuit case that you

13   cited in your briefing, the *Thompson* case, and I don't find it

14   to be helpful or instructive on the procedural posture of how

15   the forfeiture proceeding should go because it doesn't tell me   10:03:15

16   that the jury was made to make the distribution determination

17   of the assets.  It simply refers to the District Court having

18   made the finding.

19           And so I'm not persuaded by the District Court

20   decisions that you previously provided me in the Eastern         10:03:43

21   District of Louisiana, that was the *Mefford* case, because my

22   reading of the statute is that the determination for the jury

23   is a nexus determination.  The rule clearly states that the

24   jury is to determine the nexus between the specific property

25   and the offense of conviction.                                  10:04:22

1          In reading the statute in its totality, all parts

2     together, the eventual distribution or parsing out of

3     third-party interests or commingling of assets is in the

4     ancillary proceeding, and that would be the Court's

5     determination.  So that's the way that I intend to proceed.  So     10:04:51

6     the jury will only make the nexus determination as to any

7     counts that they come back on in terms of the forfeiture

8     allegation, and then we will set that aside and have the

9     ancillary proceeding to determine whether or not there are

10    other interests, including percentage interests of assets that     10:05:20

11    may be commingled by any of the defendants, and that's how we

12    will proceed.

13         There really is, we hunted high and low, really no

14    particularized guidance in the circuit, but again, my plain

15    reading of the statute is my guidepost, and so that's how we     10:05:50

16    will proceed.

17         Now --

18         MR. PANCHAPAKESAN:  Your Honor, may I ask a clarifying

19    question on the process?  So I understand the Court's ruling to

20    be that, for example, if there's a bank account worth a million     10:06:11

21    dollars in it and the government proves a nexus to like a

22    Travel Act conviction, for example, that the Court in the

23    ancillary proceeding would hear evidence as to the extent to

24    which there's a connection.

25         So for example, for example, the defendants would be     10:06:37

1    permitted in that proceeding to make the argument that, well,

2    let's say hypothetically $10,000 of the account are proceeds

3    traceable to a crime of conviction, as I understand it, the

4    Court's view is that that determination that would be made at

5    that stage as opposed to the jury making it?                    10:06:58

6          THE COURT:  Yes.

7          MR. PANCHAPAKESAN:  Okay.  And just to make a record

8    on this, I know we filed briefing on this, and I understand the

9    Court's ruling, our position, Your Honor, is that this comes

10   down to what the word "nexus" means.  And you know, that's not   10:07:18

11   defined in the statute, but there is, of course, case law, for

12   example, the *Tyson Foods* case we cite, which I think makes for

13   a common sense finding that if a jury is deciding nexus, that

14   we necessarily have to decide before finding a nexus that there

15   is some -- some quantum of connection, and so that's why we      10:07:48

16   think the jury ought to decide that issue.

17         There's a case, for example, we didn't cite this, it's

18   the District of Nevada case.  It's a Ninth Circuit case, 2023

19   Westlaw, 426, 0922, U.S. vs. Hurdace, H-U-R-D-A-C-E.  It's a

20   money judgement case and, of course, the money judgment, that's  10:08:12

21   something that will go to the Court, but it's a case where

22   Court notes that the government seeks criminal forfeiture of a

23   certain amount.  And then the Court says, well, because the

24   government is only showing nexus on a lesser amount, that the

25   money judgement is for that lesser amount.                       10:08:31

1        And so my concern is here that where we're going with

2   the jury instead of a money judgment that would go to a judge,

3   I mean, it's logical that the jury would make that

4   determination of, has the government proved the full extent of

5   the nexus essentially that they are seeking to forfeit?          10:08:49

6        And then last note, Your Honor, is just appears that

7   the government in the first instance did not object to our

8   proposal.  In the verdict form, for example, in some instances

9   in the jury instructions we included language like, "and if so,

10  to what extent should be forfeited," and the government had no   10:09:08

11  objection to that language.  And so we assessed the bank

12  accounts where there is, I think, sort of a cleaner argument

13  about what proceeds are traceable, at a minimum the bank

14  accounts we think the jury is capable of making that

15  determination.                                                   10:09:28

16        So that's our position, Your Honor.

17        THE COURT:  Well, my recollection is I thought

18  Mr. Boyle did make an oral objection to it, the verdict form.

19  But in any event, you've made the record.  And so I'll look at

20  that case, but I at this point am not persuaded that that is --  10:09:45

21  well, I'm persuaded that my procedure meets the contours of the

22  entire statute, and so that's how we will proceed.

23        Let me go through the proposed instructions, and I

24  think I sent you back, I may have sent you back the sort of

25  track change version, but I'm going to look at and use as my     10:10:17

1    guidepost the government's 1935 filing because I, that's where

2    I made my notes, and you'll hopefully be able to follow along.

3         The first instruction is, of course, I removed

4    reference to the superseding indictment and Bill of

5    Particulars.  There were none of those here.  I removed the          10:10:55

6    last paragraph, "A copy of the forfeiture allegation," so on

7    and so forth, "will be given to you."  And of course, in the

8    first paragraph we will have to potentially modify if there are

9    different verdicts that come out with regard to any of the

10   forfeiture allegations, the count references, in other words.       10:11:41

11   So we'll reserve that.

12        Is there any issue with regard to that?

13        MR. BOYLE:  No, Your Honor.

14        MR. PANCHAPAKESAN:  No, Your Honor, and obviously we

15   propose the redlines, which I know the Court will get to, but        10:11:59

16   we have no issues with respect to that.

17        THE COURT:  We are keeping what is the government's

18   Proposed Instruction 2.

19        Any objection, Mr. Boyle?

20        MR. BOYLE:  No, Your Honor.                                     10:12:39

21        MR. PANCHAPAKESAN:  Your Honor, on 2, I think in our

22   redline we add a redline that says, "separate consideration to

23   defendant," and I don't think there was an objection to that

24   from the government.

25        THE COURT:  I actually think the reason I did not             10:12:57

1    adopt that is because it's referenced elsewhere.

2         MR. PANCHAPAKESAN:  Okay.  The only thing I would add,

3    Your Honor, on Instruction 1, is we included a reference to the

4    scope of Count 1, I believe that's a quote from the prior jury

5    instructions, and that's our request in that respect, and I          10:13:19

6    think that's my redline.

7         THE COURT:  The only concern I had about that is it

8    references the scope of Count 1 but it doesn't for the other

9    counts.  So my sense is if you're going to do that with one

10   count, it should also -- there should also be similar phrasing     10:13:40

11   for the other counts, and so that's why I took it out.

12        MR. PANCHAPAKESAN:  And this may depend obviously to

13   what extent there are convictions.  My understanding from

14   Mr. Boyle is that their forfeiture will proceed as to the -- as

15   to Count 1 so far as Travel Act is concerned.  In other words,    10:14:04

16   if they are not getting a conspiracy conviction but were to get

17   on conviction on Counts 2 through 51, I think that might change

18   their approach.  Mr. Boyle can speak to that.

19        For example, if the Court looks at sort of the

20   preamble of the first instruction, the only Travel Act count is    10:14:22

21   Count 1, and then 52, of course, is the money laundering

22   conspiracy, and then there are substantive money laundering

23   counts that I think apply to Mr. Lacey in property, so I think

24   that's how they parsed it out.

25        THE COURT:  Well, again, here --                              10:14:42

1          MR. BOYLE:  That's correct, Your Honor, and that's

2     reflected in the verdict form as well.  It's largely the

3     conspiracies and then select subset of the substantive

4     transactional money laundering counts.  So if there were not

5     convictions on the conspiracies, I think there would be          10:14:57

6     substantial modifications.

7          THE COURT:  And I will leave you to do that.  But

8     again, in these instructions it tells them to refer back to the

9     prior instructions, so they'll have those instructions as well.

10    So I don't want to encumber them with redundant instructions.    10:15:13

11    And so to the extent you think a preamble is necessary for a

12    description of Count 1, make it very brief, or for the other

13    substantive forfeiture counts.

14         MR. PANCHAPAKESAN:  And as I understand Your Honor's

15    ruling, there will be no issue with us referring back to the     10:15:36

16    prior instructions then in dealing with the phase of the trial,

17    you know, in summation, for example, that there will be no

18    issue of referring back to --

19         THE COURT:  Right.  That's correct.

20         MR. PANCHAPAKESAN:  -- what was instructed on.           10:15:58

21         THE COURT:  All right.  Now, with regard to the scope

22    here, consistent with my ruling, and then throughout I'm going

23    to remove references related to "and if so how much of that

24    property should be forfeited," and so --

25         MR. BOYLE:  No objection, Your Honor.                     10:16:28

1          THE COURT:  Yes.  I'm going to adopt the Scope of

2     Jury's Determination as proposed by the government.

3          MR. PANCHAPAKESAN:  Your Honor, and I would just note

4     objection on that, which I think I made already.

5          THE COURT:  Yes.  The Standard of Proof Instruction          10:16:49

6     Proposed 4, yours were the same, so I'm adopting that.

7          MR. PANCHAPAKESAN:  Again, for the record, I would

8     note my objection again to the question.

9          THE COURT:  Yes.  Your reference to the amount of

10    property is removed, but otherwise the Standard of Proof is the          10:17:13

11    same as the government's.

12          The Preponderance of the Evidence I'm going to keep as

13    separate, and that is the government's proposed at

14    Document 1935, page 9.

15          MR. PANCHAPAKESAN:  On this, Your Honor, the only          10:17:44

16    reason we included a new instruction is I think the Ninth

17    Circuit instruction is more generic preponderance instruction.

18    We pulled this out in certain instruction, which is specific to

19    forfeiture, sort of a follow-up on forfeiture trials.  We

20    thought it was a little more accurate in our respect.          10:17:59

21          THE COURT:  The Instruction 6 is the same, so I'll

22    adopt that.  Reliance on Evidence Presented During Guilt Phase.

23          With regard to the proposed, government's Proposed

24    Instruction No. 7, again, removing references to the

25    superseding indictment, and so I'm going to adopt the          10:18:44

1   defendants' at page 13.

2          MR. BOYLE:  No objection, Your Honor.

3          THE COURT:  Instruction No. 8, Multiple Bases, I'm

4   keeping that instruction.  As I review it, it is the same as

5   defendants' Proposed No. 10.                                    10:19:30

6          MR. PANCHAPAKESAN:  I think that's right, Your Honor,

7   then in our redline there were two instructions we proposed

8   before that.  One was Separate Consideration and one was

9   Multiple Defendants, and I think the government had objection

10  to those.                                                       10:19:53

11         MR. BOYLE:  I think counsel is correct.  We didn't

12  object, although I think the Court has already noted that the

13  defendants' issue is resolved in other instructions, but

14  neither of those instructions were objectionable by themselves.

15         THE COURT:  All right.  The proposed, government's       10:20:09

16  Proposed Instruction No. 9 at page 13, I feel like this is the

17  preamble that should perhaps go into that first instruction.

18         MR. BOYLE:  We have no objection moving it, Your

19  Honor.  We simply feel it's helpful to have an instruction that

20  gives them a basic instruction of what is forfeitable, but it   10:20:53

21  could be an instruction here or in the preamble, Your Honor.

22  Both would be perfectly acceptable.

23         MR. PANCHAPAKESAN:  Our view on this, Your Honor, some

24  of these, some language I take issue with what is "shall

25  forfeit."  I don't know that that's exactly right.  I think it  10:21:09

1    should say something like "may be required to forfeit."  Like

2    the "shall" implies that, you know, a nexus, however, might be

3    requires forfeiture of the entire asset.  And then this also, I

4    think, lacks the traceability language that's contained in the

5    relevant forfeiture statute.                                    10:21:32

6         THE COURT:  Well, I'll get to that.  So you would

7    prefer that it read, "may forfeit," or just "forfeit"?

8         MR. PANCHAPAKESAN:  "May be required to forfeit to the

9    government."

10        THE COURT:  Is there objection, Mr. Boyle?                 10:21:51

11        MR. BOYLE:  Your Honor, forfeiture is mandatory,

12   however, the nexus determination is the jury's question.  So I

13   believe counsel's proposal of "may be required to forfeit" is

14   probably more accurate.

15        THE COURT:  We will adopt that language.                   10:22:11

16        And then as to defendants' No. 10, the Proceeds

17   Defined.  So I removed all after the first sentence.  And it

18   seems to be fairly cumbersome, and I think the rest of the

19   instructions cover that, and I don't know why those two

20   paragraphs are necessary.                                       10:23:44

21        Mr. Boyle.

22        MR. BOYLE:  Your Honor, with respect to the last

23   paragraph, we do think it is necessary because the question of

24   an Eighth Amendment issue, whether something is the value of

25   property is greater than the -- than the excessive fines,      10:24:01

UNITED STATES DISTRICT COURT

1   that's explicitly a question for the Court.  So we are trying

2   to make clear to the jury with this instruction.  The question

3   for that is nexus.  It's not a question of comparing the value

4   of a property to, say, what nexus they see.  That's the sole

5   reason to avoid asking the jury to make a determination that is          10:24:20

6   squarely within the Court's jurisdiction.

7           THE COURT:  Okay.  Let me see if I understood what you

8   said.  So you suggest keeping the last paragraph?

9           MR. BOYLE:  Yes, Your Honor, the paragraph regarding

10  the present value.  Because comparing the value to the amount,          10:24:39

11  I suggest goes towards an Eighth Amendment question for the

12  Court.

13          THE COURT:  All right.  We will keep the last

14  paragraph and remove the paragraph that begins, "Proceeds

15  remain proceeds."                                                       10:24:57

16          Mr. Panchapakesan.

17          MR. PANCHAPAKESAN:  Just so I understand, how does the

18  instruction read now?

19          THE COURT:  So it will read, "Property subject to

20  forfeiture as proceeds of a Travel Act conspiracy means                 10:25:10

21  property of any kind obtained directly or indirectly, as the

22  result of the commission of the offense giving rise to

23  forfeiture, and any property traceable thereto, and is not

24  limited to the net gain or profit realized from the offense.

25          The question of the present value of any property that          10:25:37

constitutes proceeds, or was obtained with proceeds, is not
before you.  If the property has the required connection to an
offense, it is subject to forfeiture whether or not its value
has changed."

MR. PANCHAPAKESAN:  I think it would be, Your Honor,
you know, appears the government's support for this instruction
is like Seventh Circuit cases, Eighth Circuit cases.  The
instruction we propose is actually the Seventh Circuit Model on
what "proceeds" means.  It's not limited to the Travel Act or
any particular offense.  "Proceeds" has sort of a wide
applicability.  We think it's a simpler instruction as to what
proceeds are.  And again, the amendment question I don't see as
a significant issue.  I find it confusing.

THE COURT:  So what I understand that you propose is
just taking out "of a Travel Act conspiracy" because then it
will read, "property subject to forfeiture means property of
any kind."

MR. PANCHAPAKESAN:  Right.  I think that's right,
because there may be multiple offenses.  I mean, of course, it
depends if there's conviction, what it's on.  If we are just
talking about Travel Act conspiracy, then it may make sense to
use that language, but if there's money laundering --

THE COURT:  Well, I don't think there's a distinction
in either of the counts anyway, so I'm going to go ahead and
remove "of a Travel Act conspiracy."

10:25:56

10:26:13

10:26:35

10:27:02

10:27:20

```
 1        MR. PANCHAPAKESAN:  Your Honor, I think we had a prior

 2   instruction definition of "traceable to."  It was our 11.  I

 3   think comes before this one.

 4        THE COURT:  Yes.  I will talk to you about that in a

 5   little bit.  And I think I actually, well, I moved it in

 6   placement.  That's why I am not getting to it yet.  But what I

 7   did with regard to your Forfeiture based on Travel Act

 8   Conspiracy, the proposed, government's Proposed Instruction 11,

 9   is, and the defendants' is their Proposed Instruction 13, what

10   I did was -- it's not this one -- I thought I did that.  Let's

11   see.  I moved -- after the listing of property, it then

12   instructs the jury beginning to find any of the property

13   subject to forfeiture.  What I did was I moved that to the

14   beginning in terms of the elements, the two elements that were

15   outlined by the defendants, and then I inserted the listing of

16   the property beginning with:  As to Mr. Lacey.  And so I think

17   it just reads better, gives them the instruction, tells them

18   the property to consider.

19        Is there an objection to that?

20        MR. BOYLE:  No objection, Your Honor.

21        THE COURT:  And I will note that the defendants'

22   redlines "seized from or restrained in," and there is no

23   objection to that?  Mr. Boyle.

24        MR. BOYLE:  My apologies, Your Honor, I didn't quite

25   understand.  Is the Court's question, do we object to the
```

1    removal of the "seized from or restrained in" language?  We

2    won't object to that no objection, Your Honor.

3              THE COURT:  So we have adopted those strikeouts as

4    well.

5              So your preamble, again, government's 12, Property        10:30:48

6    Subject to Forfeiture for Money Laundering Convictions, I mean,

7    I think you can do it one of two ways.  You can have the

8    conspiracy on the Travel Act description proceed this

9    substantive property listing, and I think that probably would

10   be the better way, and then this money laundering paragraph       10:31:19

11   could proceed the substantive listing of the properties.

12             Does that make sense?

13             MR. BOYLE:  Yes, Your Honor, I think that does make

14   sense and works, Your Honor.

15             THE COURT:  And there was a scope, The Scope of         10:31:55

16   18 U.S.C. 982(a)(1) proposed by the government, was there

17   something similar to that by the defense, Mr. Panchapakesan?

18             MR. PANCHAPAKESAN:  No, Your Honor.  We objected to

19   this instruction in its entirety, and there were some

20   objections that we filed and included in the redline as well.     10:32:18

21   I mean, the short version of it is we think the "facilitation"

22   language is problematic because the statute does not use the

23   term "facilitate."  It uses the term "involved in," and I'm not

24   familiar with the Ninth Circuit case that really defines

25   "involvement" in that manner.                                     10:32:41

1          We cited a case, the *Bital* case, B-I-T-A-L, 76 F.

2     Supp. 2d 1063, which I think is a C.D. Cal case, it calls into

3     question the facilitation theory the government is pursuing.

4     My understanding of "involved in" would be an account that is

5     involved in the money laundering offense that has been charged.      10:33:02

6     And as to my client, for example, investment accounts he holds

7     or bank account he holds, those are not accounts that the

8     government included in the money laundering offenses as being

9     involved in the offense.

10          There's also some language about fees or commissions         10:33:20

11    paid to a money launderer.  That's kind of confusing.  I don't

12    know what that refers to.  I don't think there's been evidence

13    of that, and so our view is this is just unnecessary and

14    confusing.

15          MR. BOYLE:  From the government, Your Honor, the              10:33:36

16    statutory language says "property involved in such an offense

17    is forfeitable," and we believe the jury needs that term

18    "involved in" defined for them.  This is our proposed

19    definition of "involved in," and the defendants haven't

20    proposed a competing definition.  So I don't know how we can       10:33:51

21    give the jury no instruction as to what it means that property

22    is involved in a money laundering offense.  It may have -- they

23    could have proposed edits to this or a competing instruction,

24    but they did not, so the jury is going to be, I submit, quite

25    confused as to what "involved in" means.                           10:34:09

UNITED STATES DISTRICT COURT

20

            MR. PANCHAPAKESAN:  Your Honor, the first then is
"Money laundering property that was the subject to the
financial transaction that constituted the money laundering
violation," I don't think we have an objection to that.  I
think that's essentially what "involved in" means.  That's the          10:34:25
first line of their instruction.

            MR. BOYLE:  And Your Honor, I think we strongly
disagree with that.  But again, there has to be a definition
for the jury as to what "involved in" means.  Courts have held
that "involved in" is broader than "proceeds."  So we submitted        10:34:42
briefing on this I think as well, but there is only one
instruction for the Court right now.

            THE COURT:  Is there evidence of "fees or commissions
paid," or are you going to present that?

            MR. BOYLE:  I don't believe so, Your Honor.  This is         10:34:57
just a definition drawn from -- I believe this comes from
Mr. Cassella's treatise on the topic.  If the Court is
concerned about that specific language "fees or commissions," I
wouldn't object to removing that language, Your Honor.

            THE COURT:  I don't think it's necessary to keep that        10:35:41
last paragraph in because there is going to be a separate
"traceable" definition, and this sort of characterized what
"traceable" means in a different way.

            MR. BOYLE:  Understood, Your Honor.  We did not
originally include a "traceable to" definition.  We included it          10:36:06

1    in instructions like this.  So if the Court is inclined to

2    include a separate "tracing" definition, I think the Court

3    could reasonably remove this paragraph.  That's just not how we

4    laid out our instructions.  So long as the jury is instructed

5    on "tracing," we wouldn't object to that.                    10:36:22

6         THE COURT:  And what about the last paragraph?  It

7    seems redundant to another instruction.

8         MR. BOYLE:  I think that's correct, Your Honor.  It is

9    reflected in other instructions.

10        THE COURT:  All right.  So I will remove No. 3.  I      10:36:39

11   will remove "the property that's traceable," and all after

12   that.

13        MR. BOYLE:  No objection, Your Honor.

14        MR. PANCHAPAKESAN:  I think I noted my objection with

15   the "facilitation" language.                                 10:37:05

16        THE COURT:  The last instruction, the Forfeiture based

17   on Money Laundering Offenses, 982(a)(1), I'm going to do the

18   same thing that I did with the previous Travel Act forfeiture

19   instructions; that is, I'm going to move the paragraph at

20   Defendants' Proposed in Document 1940, page 27, at line 7, "In  10:38:02

21   order for you to find," and put that at the top followed by the

22   listing of the property and assets.  So it will match the

23   previous one.

24        Is there an objection?

25        MR. BOYLE:  If I may ask a question, Your Honor,       10:38:26

1    'cause I am trying to follow along, I believe the defendants'

2    modified instructions specifically refer to a nexus.  Is the

3    Court intending to include the specific "nexus" term?  To be

4    clear, we don't object to moving the instruction.  The nature

5    of my objection is simply because, as we noted in briefing, the          10:39:01

6    defendants drew their Model instructions from the Seventh

7    Circuit all instructions; however, they left out the Seventh

8    Circuit Model Instruction defining a nexus.  So if we are going

9    to use the term "nexus" for the jury, we should include that

10   definition, because otherwise I think the jury is left without          10:39:18

11   instruction as to what a nexus is.

12          The government's instruction simply called it a

13   connection with, which I think is somewhat self-evident, but I

14   would object to giving them the term "nexus" without defining

15   it, Your Honor.          10:39:33

16          MR. PANCHAPAKESAN:  Your Honor, I don't think we have

17   an objection to using the term "connection."

18          THE COURT:  I'm not following where you're at.

19          MR. BOYLE:  My apologies, Your Honor.  I'm trying to

20   follow along.          10:39:49

21          THE COURT:  In terms of, sorry, counsel.  Let me -- so

22   I'm looking at your Proposed Instruction No. 14, beginning at

23   page 23, and I'm looking at page 26 and you say, "The

24   government contends that the property described above was

25   involved in, or traceable to, the money laundering violations          10:40:21

1    for which one or more defendants were found guilty, and it is

2    therefore subject to forfeiture."

3         Then you are go on to say, "If you conclude that the

4    government has proved by a preponderance of the evidence that

5    the property listed above was involved in such offense, or          10:40:38

6    traceable to the violations, you must find that the property is

7    forfeitable."

8         I don't know in the Defendants' Proposed 1940 what

9    you're referring to in terms of their "nexus" reference.  I

10   don't see it, unless I'm not reading from the same thing you        10:41:01

11   are.

12        MR. BOYLE:  My apologies, Your Honor, it's possible I

13   got the wrong spot on the redline.  Then I withdraw that

14   objection, Your Honor.

15        THE COURT:  And so let me just be clear, you don't             10:41:14

16   object to the insertion of the language, "If you find from your

17   consideration," or, I'm sorry, it would start at line 7 of the

18   Defendants' Proposed Document 1940 at page 27, "In order for

19   you to find that the property is subject to forfeiture."  I'll

20   say, "the following property," and then all after that, then        10:42:02

21   list the property.

22        Mr. Boyle.

23        MR. BOYLE:  No objection, Your Honor.  I just looked

24   at the language.

25        THE COURT:  And the Special Verdict Form I'll keep.            10:42:24

```
 1    The "traceable" definition, I know I saw it in here, and I
 2    intend to include it.  I just -- I might have just moved it in
 3    the redline, but I do intend to include the "traceable"
 4    definition.  I just can't find it off the bat, and it's a
 5    fairly short definition.                                          10:42:59
 6           MR. BOYLE:  No objection, Your Honor.  We are fine
 7    with that instruction.
 8           THE COURT:  Oh, okay.  So it would just state, "The
 9    term 'traceable to' means that the acquisition of the property
10    is attributable to the offenses charged in," and we would have   10:43:26
11    to delineate the counts, as opposed to sources other than these
12    offenses.
13           MR. BOYLE:  Yes, Your Honor.  My only suggestion, I
14    believe this should probably go after the "proceeds"
15    definition, and it should refer only to Count 1 because          10:43:50
16    "traceable to," that language is used in the "proceeds"
17    definition.  With respect to the money laundering counts, they
18    use the "involved in" language, which is different.  So I
19    wouldn't want to confuse the jury as to which is "proceeds"
20    versus "involved in," but the language in the instruction is     10:44:07
21    not objectionable.
22           THE COURT:  Do you agree with that, Mr. Panchapakesan?
23           MR. PANCHAPAKESAN:  I think it should apply to both.
24    For example, 18 U.S.C. 982(a)(1), which is the forfeiture
25    statute tied to money laundering, says, "The Court, in imposing  10:44:21
```

sentence on a person convicted of an offense in violation of

section 1956, 1957 or 1960 of this title, shall order that the

person forfeit to the United States any property, real or

personal, involved in such offense, or any property traceable

to such property."

And so there is traceability language in the

applicable money laundering forfeiture statute, so I think it

applies to both.

MR. BOYLE:  That's a fair point, Your Honor.  I agree

with counsel.  That makes sense.

THE COURT:  So why don't I do this:  I'll include in

that in the money laundering instruction, "The real or personal

property was involved in or traceable to."

All right.  That's all I have on the instructions.

Was there anything I missed?

MR. PANCHAPAKESAN:  Your Honor, we proposed a First

Amendment instruction at the end, and the basis for that

instruction is it appears that the government's theory here on

forfeiture is that every adult ad on Backpage was in fact an

act for prostitution, and it's, therefore, all the proceeds are

tied to an offense, and we argue there is a First Amendment

presumption in that respect, and that the government has a

burden on overcome it, and that -- so we are trying to do so is

to discern the ads as opposed to the millions with respect to

which they are seeking forfeiture, and so we think that there's

```
1    value in having that instruction here in the context of
2    forfeiture.
3              THE COURT:  Mr. Boyle.
4              MR. BOYLE:  Your Honor, we my apologies, Your Honor,
5    we object to that instruction.  I think that was Document 1943    10:46:28
6    at page 9, but our summary is the jury has already been
7    instructed on the First Amendment, and there's no need for any
8    further instructions here.  We also cited some case law that
9    their instruction, the case law underlying their instruction
10   was not applicable, and I -- we have a fairly lengthy response.   10:46:50
11   I refer the Court to that.  Again, that's 1943 at 9, 10, 11,
12   but we don't believe this instruction is necessary.
13             To the extent the jury has already found the
14   defendants guilty of the relevant charges, the First Amendment
15   would not apply here.                                             10:47:11
16             THE COURT:  And that's the way that I view it; that
17   they are looking at the particular counts, and they already
18   have a jury instruction on the First Amendment.  And if there
19   is a conviction on any of those Travel Act counts, then they
20   have found that the First Amendment does not apply.  And so to   10:47:27
21   insert a First Amendment instruction as to the totality of the
22   forfeiture, I think it would just confuse things, so I'm not
23   going to give it.
24             All right.  Anything other that I missed with regard
25   to those jury instructions?                                      10:47:47
```

UNITED STATES DISTRICT COURT

```
 1              MR. PANCHAPAKESAN:  On my end, no, Your Honor.
 2              THE COURT:  Mr. Boyle.
 3              MR. BOYLE:  Nothing from the government.  No, Your
 4     Honor.  Thank you.
 5              THE COURT:  All right.  We will endeavor to perfect     10:47:56
 6     those instructions and send the modified final draft to you.
 7     We'll leave the spaces open where the respective potential
 8     counts would be returned and that way we can insert those
 9     immediately, and I think that's all I have with regard to it.
10              Oh, I did get the names of the two individuals you      10:48:24
11     intend to call, Mr. Panchapakesan.  And I'm sorry if this is a
12     repeat question, those individuals were not on your original
13     witness list; correct?
14              MR. PANCHAPAKESAN:  They were not, Your Honor, no.
15              THE COURT:  Well, I'll have to then question the jury    10:48:45
16     at least as to those proposed witnesses in order to just get a
17     record whether or not anybody is familiar with them.  Are they
18     local?
19              MR. PANCHAPAKESAN:  They are both local, yes, Your
20     Honor.                                                           10:49:00
21              THE COURT:  All right.
22              MR. STONE:  And --
23              MR. LINCENBERG:  I had another point.
24              MR. BOYLE:  Your Honor --
25              THE COURT:  Wait.  Mr. Boyle, go ahead.                 10:49:11
```

UNITED STATES DISTRICT COURT

1          MR. BOYLE:  Your Honor, those, as you noted, were not

2     disclosed.  One of those witnesses has been in court for

3     virtually the entire trial, that will be Mr. Quigley.  So we've

4     notified the defense that we may be raising an objection under

5     Rule 615 to having a witness testify whose watched the entire          10:49:28

6     case.  We've notified them of that objection, and I think will

7     raise it if we do proceed to a forfeiture phase, Your Honor.

8          THE COURT:  Is Mr. Quigley present?

9          MR. LINCENBERG:  No.  He has COVID.

10         THE COURT:  All right.  All right.  Yes, well, raise          10:49:45

11    the objection sooner rather than later so I don't have to delay

12    proceedings.

13         MR. BOYLE:  Will do so immediately, Your Honor.

14         THE COURT:  All right.  Mr. Stone.

15         MR. STONE:  No, just that I think we're raising it.  I          10:50:02

16    don't know if we need to do anything else.  This is a witness

17    who has been here for the whole trial.  The defense invoked

18    Rule 615, the rule of exclusion.  It doesn't seem right that he

19    now should be testifying in trial.

20         MR. LINCENBERG:  Well, if we call him, he is going to          10:50:18

21    be in the nature of a summary witness somewhat like government

22    agents, but the Court can address it at the time.  We may not

23    need to call him, so we can deal with it.

24         THE COURT:  Well, since the rule was invoked, I would

25    agree that it's improper to call somebody whose been sitting          10:50:32

through the duration of the trial.  And in particular, I notice

a number of people have been not only just attending the trial,

but also the arguments and rulings on the law, and so on and so

forth, and so I think it's entirely improper, and so that's my

preliminary ruling unless you give me some compelling reason.          10:50:54

But so as far as I can see, Mr. Quigley should not appear.

        MR. LINCENBERG:  I don't think we'll argue it right

now, Your Honor.  If we feel the need to, then we'll argue it

later.  We had a different issue we wanted to raise.

        THE COURT:  And what is that?                                   10:51:14

        MR. LINCENBERG:  Your Honor, we received last night

Jencks material from involving witness Quoc Thai.  We had a

copy printed out.  Perhaps I can provide it to the clerk and

maybe we can mark it for the record next in order so the Court

has a copy while I discuss it.                                          10:51:35

        Do you have an exhibit number we can --

        THE COURT:  Do we have an alphabet particular exhibit

like A?

        COURTROOM DEPUTY:  Oh, the next number?

        THE COURT:  We can just temporarily assign it --              10:53:25

        MR. LINCENBERG:  We can even --

        THE COURT:  -- Exhibit A.

        MR. LINCENBERG:  So Your Honor, with regard to Exhibit

A, Exhibit A first consists of an e-mail from Mr. Stone

providing this to us yesterday at 5:30 p.m.  The e-mail behind        10:53:42

1   it is an e-mail from Quoc Thai discussing -- forwarding a copy

2   of this, and then there's a 91-page report which he and

3   apparently a Mr. Verzosa prepared, which is an asset tracing

4   document.  This is clearly Jencks material that related to

5   Mr. Thai's testimony that was never provided, in violation of        10:54:16

6   Jencks, in violation of the Court's order at Docket 730 about

7   dates for disclosures and so forth.

8          And just to give the Court a brief overview of the

9   document, the document discusses several issues with respect to

10  creation of foreign entities with respect to purposes for the       10:54:46

11  foreign entities.  There are statements by Mr. Ferrer to

12  Mr. Thai that are in there.  This is a document that we would

13  have used in cross-examination both of Mr. Thai as well as of

14  Mr. Ferrer.

15         Just a couple of quick examples; for example, right          10:55:08

16  from the beginning Mr. Thai discusses this company, Posting

17  Solutions, and Mr. Ferrer's discussion of Posting Solutions

18  being a company that was created in, I think it was 2017.  And

19  just as an example, if the Court recalls, a large part of the

20  government's argument was to talk about Mr. Brunst having this       10:55:35

21  big role in creating various entities, and being the officer,

22  the president of various entities and the like, part of our

23  response was talking about how his role -- that there were CFOs

24  at Backpage involved.  Mr. Gage, for example, in the post-2015

25  period, and I think the Court recalls some of the arguments we       10:56:01

1  gave in that regard.

2          The document from paragraph one talks about how

3  Posting Solutions, Michael Gage was the president, was involved

4  in the creation, was the sole signatory on the account.  It's a

5  document we would have used probably with both witnesses to          10:56:20

6  explore that.  There's other detail on Posting Solutions that's

7  discussed in both -- I went back and looked at the transcript

8  of Mr. Ferrer's testimony as well as this document, I won't go

9  through all the detail with the Court right now, but it's

10 relevant.                                                            10:56:36

11         There is other issues, for example, there is

12 discussion about the credit card issues and the company

13 shutting them out because of bad press, and Mr. Ferrer's view

14 about this.  This background testimony document would have been

15 relevant in our cross-examinations of these witnesses right on      10:56:58

16 point, and frankly also contradictory to some of the

17 statements --

18         THE COURT:  Well, let me ask you, in your review of

19 that with regard to his view on the credit card issue, what was

20 it that he said that you thought is substantially different         10:57:15

21 than what he testified to?

22         MR. LINCENBERG:  Well, some of it is not substantially

23 different from what he testified to.  You know, you have to --

24 it has to be parsed out.  But for example, Mr. Ferrer, it

25 contradicts some of the testimony he gave on cross.  It would       10:57:36

1    have allowed me to better establish that.

2          Also, when the Court precluded me from --

3          THE COURT:  Like what?  I just want an example.

4          MR. LINCENBERG:  Okay.  Let me give you an example I

5    was going to use.  It happens to be popping into my mind.  When    10:57:48

6    I was attempting to impeach Mr. Ferrer on document GLCF37, and

7    that document, if the Court may recall, was when the government

8    objected to as privileged, and we said this is material that

9    under the joint defense agreement was permissible for us to

10   use.  The Court made -- the Court precluded me from getting    10:58:11

11   into that document.  One of the bases is the Court said not

12   impeachment.  Some of what is in this document is directly

13   contradictory to what Mr. Ferrer said in that.

14         There is testimony that this document has discussions

15   in it about Mr. Ferrer being the UBO, the ultimate beneficial    10:58:31

16   owner, of foreign entities, like Ad Tech BV, in connection with

17   Bank Frick, you know.  The government tried to convey the

18   flavor that this was all a creation of the owners and so forth.

19   Certainly, you know, part of my cross-examination of Ferrer was

20   talking about how there were other reasons, reasons for these    10:58:55

21   foreign entities such as that were beneficial to him, such as

22   tax benefits, and the fact that you needed foreign entities in

23   order to get foreign bank accounts and the like.

24         It all relates to this:  You know, we can do some

25   follow-up briefing on this if the Court is inclined to receive    10:59:17

1   it.  We got this last night in the middle of when we were going

2   through other things, but it certainly -- you know, Jencks is

3   not -- the issue of whether there's a Jencks violation seems to

4   me it's crystal clear with regard to Quoc Thai.

5          The issue as to whether this is also material that          10:59:37

6   should have been turned over because it was relevant

7   impeachment material, Ferrer, and potentially prior statements

8   required to be produced by Ferrer, might require further

9   evidentiary hearing.  If the government comes back and says:

10  Well, you know, it's not technically required under 3500          10:59:55

11  because there is no reference to him adopting them.  It's clear

12  from this document that Mr. Ferrer was working closely with

13  government agents in putting together tracing analyses, working

14  with them on their money laundering forfeiture analyses.

15         And very, very little that I can recall, barely          11:00:16

16  anything from the interviews we received from Mr. Ferrer, got

17  into any of this stuff, and yet it's clear that there is

18  lengthy documents of statements from Mr. Ferrer that are

19  relevant there.

20         So I can go on with other examples in here.  I think          11:00:36

21  that obviously we're presenting to the Court a 91-page document

22  that the Court obviously hasn't had a chance to look at yet

23  that is a clear Jencks violation, and we believe there's other

24  discovery violations and some of which to flesh out.  We might

25  need an evidentiary hearing.          11:01:02

1          So as a remedy for this, Your Honor, first and

2     foremost we ask for a dismissal of the case.  This is an

3     important discovery violation, and we believe that remedy is

4     appropriate.  If and only if the Court doesn't give that

5     remedy, it should at a minimum completely strike the testimony          11:01:19

6     of Quoc Thai and any testimony that Ferrer gave relating to

7     wire transfers and money flow and the like.

8          And obviously the result of striking Quoc Thai's

9     testimony would clearly mean a dismissal of all of the money

10    laundering and forfeiture counts.  There was zero evidence of          11:01:44

11    money flow or particular wire transfers other than the summary

12    documents that were introduced through Mr. Thai.

13         So that's what we would present to the Court and ask

14    for that relief.

15         MR. STONE:  Your Honor, we disclosed this because          11:02:03

16    Quoc Thai is a potential witness and this was an e-mail that he

17    sent October 18th after he testified at trial.

18         With respect to the attachment, this was primarily

19    authored by Special Agent Lyndon Versoza.  It is -- there's --

20    Mr. Thai contributed to it.  That's stated in the e-mail, but          11:02:34

21    the primary author was Special Agent Versoza.  It's listed as a

22    draft.  It is analyzing primarily the bank docs, all of which

23    have been disclosed, and most of these 91 pages just trace bank

24    transactions that are from the underlying bank records that the

25    defendants have had for years.          11:02:57

1          It really looks -- they basically are draft summary

2    exhibits.  It's in similar format to the summary exhibits that

3    were used by Mr. Thai and that were produced that relate to

4    money laundering counts which, again, have been produced for

5    years.                                                              11:03:19

6          These transactions relate more to forfeiture, relate

7    more to the seizure of the assets, and that's why, because it

8    was shared by Mr. Thai, it would fall under Jencks because it

9    might relate to his testimony related to forfeiture and all of

10   the tracing that relates to the seizure of these assets, but    11:03:37

11   because it was -- with respect to Mr. Ferrer, there's nothing

12   that would make this a statement adopted by Mr. Ferrer, so

13   that's not the case whatsoever.

14         In addition, much of the information that's here has

15   been included in seizure warrants and other warrants that have    11:04:04

16   been produced.  So this is information that has been produced

17   previously within this case and within the litigation which

18   would include the civil forfeiture in CDC A.

19         So there's nothing new here.  It's information related

20   to underlying bank records that defendants have had.  It          11:04:26

21   primarily just traces those transactions.  It was authored

22   primarily by a nonwitness, and it relates primarily to the

23   forfeiture aspect, which is why, because Mr. Thai sent the

24   e-mail because it relates to his potential testimony which

25   could come in the next week or so.  That's why it was produced,    11:04:48

1    Your Honor.

2              THE COURT:  Very brief reply, please.

3              MR. LINCENBERG:  Your Honor, first, counsel is looking

4    to downplay Mr. Thai's role in this.  I mean, Mr. Thai's e-mail

5    says -- talks about this being a document that Lyndon, I                    11:05:09

6    believe Lyndon is this guy, Versoza, Lyndon and I put together

7    years ago.  The idea whether somebody was the main author or

8    not, this is Mr. Stone's representation, the two of them put it

9    together.  It's Quoc Thai's document.  He's their tracing guy.

10   This is a document from him.                                                11:05:30

11             You know, the fact that they have a draft stamp on it

12   doesn't make it any less a statement.  They can keep a draft on

13   whatever they want.  This is a document that was -- this is the

14   updated version of 11-4-2021.  If there's a later version, we

15   should get that as well.  This is a document.  This is prior               11:05:51

16   statement from Mr. Thai.

17             And the last thing I would say is that this clearly

18   does contain Ferrer's statement.  I will give the Court one

19   more example.  This is at page 47 of the report where Ferrer is

20   talking about credit cards, cutting out because of the bad                 11:06:11

21   press and so forth.  He says that the entities, and he's

22   referring to entities that were created I think at the time of

23   the sale in 2015, said the entities existed for the sole

24   purpose of funneling to Backpage accounts otherwise prohibited

25   credit card payments for Backpage ads.  I think he's also                  11:06:36

referring to Posting Solutions and Website Technologies, so not
just entities that were created then.

These are statements that Ferrer is making that were
the subject of a lot of cross-examination and testimony, and
this is their main witness.  You have direct Jencks on
Quoc Thai.  I believe it's Jencks with regard to Ferrer, and
clearly it's impeachment material.  It's a discovery violation
and it's a very important one.  And so we submit to the Court
that it's important for the Court to make such a finding.  And
then if the Court needs further evidentiary hearing, we can do
that, but there should be a remedy with some teeth here.

THE COURT:  Well, I am going to ask for further
briefing because it's a 91-page document, and the briefing is
going to do two things:  Number one, the government is going to
point out what is it that was previously disclosed that is
referenced in here?  As you say, if it was in warrants or other
documents that have been previously disclosed, then I want to
know that.  That's related to the Jencks allegation.

Number two, if as you say there are statements that
contradict or could have been used as impeachment material, I
want you to point that out.  I want you to bring to me whatever
the witness testimony was, whether it be Quoc Thai or
Mr. Ferrer, and I want you to then go through this 91-page
document and tell me how it is that it is impeachment and how
it would have made any potential outcome any different, and

1    then I'll take a look at it and determine whether or not I need

2    an evidentiary hearing.

3            I think in terms of producing, I'm reminded that both

4    sides have late produced material throughout the course of the

5    proceedings.  I have witnesses that appeared that weren't even        11:08:53

6    on our witness list from the defense.  I mean, it really is one

7    of the most frustrating aspects of this entire case.  No one

8    seems to adhere to deadlines, the rule as it's stated in the

9    federal rules, or my orders.  So this really doesn't come as a

10   surprise, although it should be.  Counsel of your caliber            11:09:24

11   should not be handing me documents late.  There should be no

12   surprises.  That's what disclosure is all about.

13           So your briefing will provide all of that, and --

14           MR. LINCENBERG:  Your Honor, can I ask that the third

15   point be discovered in the briefing, which is that counsel          11:09:45

16   produce all e-mails between Quoc Thai and Ferrer or his counsel

17   and government counsel, as well as notes or e-mails summarizing

18   statements made to him by Ferrer?

19           THE COURT:  On what basis?

20           MR. LINCENBERG:  On the basis that it's relevant to         11:10:07

21   this Jencks material that was withheld.

22           THE COURT:  Well, we don't know that.  I don't know

23   it.

24           MR. LINCENBERG:  Well, that's --

25           THE COURT:  Unless you parse through it and looked at        11:10:19

```
1    the record.

2            MR. LINCENBERG:  That's why I asked that it be

3    produced in discovery.  We know from the document that Ferrer

4    is talking to these agents about these issues --

5            THE COURT:  I am not going to do that.  I am not going    11:10:30

6    to do that at this juncture.  If in your briefing I see some

7    reason for that to happen -- and I am not going to ask them to

8    duplicate what they've already produced to you.  What I'm

9    asking for them to do is list out where it was it was produced,

10   what was relevant to whatever is in here, what they produced    11:10:47

11   that you already have notice of, and but I'm not going to do

12   that.

13           So what I would ask is no more than 20 pages each, and

14   you'll get that to me -- I would hope to have it by Monday,

15   Monday at noon, and I will look at it and see what happens    11:11:13

16   next.  And that's all I'll take right now.  All right.  We are

17   adjourned.

18           I will note for the record that since Mr. Eisenberg is

19   the only counsel not present, that I will essentially make a

20   note that he's joining in on everything that we've discussed.    11:11:44

21   Unless there is an objection that he wishes to raise separate,

22   I will give him the ability to do that.

23           (Recess was taken at 11:11 a.m.)

24

25
```

1

2

3                              **C E R T I F I C A T E**

4

5          I, HILDA E. LOPEZ, do hereby certify that I am duly

6    appointed and qualified to act as Official Court Reporter for

7    the United States District Court for the District of Arizona.

8          I FURTHER CERTIFY that the foregoing pages constitute

9    a full, true, and accurate transcript of all of that portion of

10   the proceedings contained herein, had in the above-entitled

11   cause on the date specified therein, and that said transcript

12   was prepared under my direction and control.

13         DATED at Phoenix, Arizona, this 10th day of November,

14   2023.

15

16

17                              s/Hilda E. Lopez_____

18                              HILDA E. LOPEZ, RMR, FCRR

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT