GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
JOSEPH BOZDECH (CA Bar No. 303453, joseph.bozdech@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

NICOLE M. ARGENTIERI
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

AUSTIN M. BERRY (Texas Bar No. 24062615, austin.berry2@usdoj.gov)
U.S. Department of Justice
Child Exploitation and Obscenity Section
1301 New York Avenue, NW, 11th Floor
Washington, D.C. 20005
Telephone (202) 412-4136
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>    v.<br><br>Michael Lacey, et al.,<br><br>            Defendants. | CR-18-422-PHX-DJH<br><br>**UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANT MICHAEL LACEY, SCOTT SPEAR, AND JOHN BRUNST'S SENTENCING MEMORANDA**<br>**(Docs. 2133, 2136, 2138)**<br><br>**Sentencing Hearing:**<br>**August 27-28, 2024, 9:30 a.m.** |

**In "a chase for gold derived from prostitution,"[1] Defendants sold their media business in 2012 and "ke[pt] Backpage—the money pot—for themselves."[2]**

The United States respectfully submits this Consolidated Response to Defendants' Sentencing Memoranda. The United States relies on and incorporates its August 19, 2024 Sentencing Memorandum (Doc. 2129), and offers a few additional points below.

I.   Defendants' "Good Faith" and Other Legal Arguments Miss the Mark.

Defendants Lacey, Brunst, and Spear argue that they shouldn't be punished for their felonies because they acted in "good faith." Doc. 2133 at 14-17 (Lacey); Doc. 2136 at 10-18 (Brunst); Doc. 2138 at 1-2, 5-6 (Spear). The United States has briefed these issues time and again, and incorporates its prior arguments here. *See, e.g.*, Doc. 2107 at 21-24 and Doc. 1890 at 2-14. It adds these points:

Brunst claims that the Court precluded him from testifying or otherwise introducing evidence that he relied on "contemporaneous court decisions and guidance from counsel and the company's operational executives" about the legality of Backpage's operations. Doc. 2136 at 13. But the Court did not "preclude" reliance on attorney advice. Rather, the Court ruled that Defendants could pursue a defense of good faith reliance on legal advice if they satisfied Ninth Circuit law, which requires showing that they made a complete disclosure of all pertinent facts to their attorneys. Doc. 1643 at 12-13; Trial Tr., Doc. 1927 at 5:4-15. Defendants didn't make these showings. Doc. 2063 at 68. They still haven't.

A good example is the attorney memo that Brunst and Spear highlight, Trial Ex. 5507 (not admitted), which advised in 2010 that holding Village Voice criminally liable "because some prostitutes use its service" would "implicate serious First Amendment concerns." Doc. 2136 at 13, quoting Trial Ex. 5507 at 23; Doc. 2138 at 5-6. This legal advice falsely assumed that Backpage was a general purpose classified advertising service, not a business singularly focused on making money from prostitution solicitations. This

---

[1] Trial Ex. 3000, John E. Dougherty, Facebook post, Apr. 12, 2018.

[2] Jana Bommersbach, *thedeadgirlinthevacantlot*, p. 233 (2018).

false assumption runs through all the legal advice, case law, and other "assurances" on which Defendants claim to have relied. But Defendants knew that this premise was false: They deliberately built Backpage into a highly-profitable prostitution advertising website, as extensive trial evidence showed. Doc. 2107 at 2-20.[3]

Brunst argues that his role didn't involve directly seeking legal advice, so he can evade criminal responsibility so long as some other Backpage executive told him that lawyers had told them that Backpage's operations were lawful. Doc. 2136 at 1-5, 10-14. Lacey makes a similar claim. Doc. 2133 at 15, 18. This multiple hearsay issue was briefed in Doc. 1890 at 9-11. To be clear, the United States, by this filing, does not seek to limit any Defendant's right to allocute at sentencing. But any Defendant's statements about good faith should be taken with more than a grain of salt if Defendants remain unwilling to show what they told their lawyers.

And even if any Defendant didn't know what the lawyers were told, they knew that Backpage wasn't a general purpose advertising website. Doc. 2107 at 2-20. For example, Brunst knew—he co-authored the 2011 PowerPoint that characterized Backpage's non-adult sections as creating "plausible deniability" regarding the site's dominant source of paid advertising. Doc. 2107 at 8. Lacey knew—he defended the site's services for "the world's oldest profession"; pushed back against NGOs' "mission creep" when they criticized the site's prostitution advertising; and profited more than anyone else from Backpage's criminal enterprise, particularly after he exited journalism in 2012. Doc. 2107 at 9-11. For his part, Spear directly supervised Ferrer's daily operation of Backpage, and answered to Larkin and Lacey. Doc. 2107 at 11-12; Doc. 2137 at 24-25. Defendants can't

---

[3] Defendants' reliance on statements from Don Moon, a Village Voice Media board member, is flawed for the same reasons. *See, e.g.*, Doc. 2138 at 5, citing Trial Ex. 171. The cited exhibit was never discussed at trial with any witness; in all events, it fails to disclose Backpage's prostitution marketing strategies or acknowledge that Backpage's revenues were overwhelmingly based on prostitution ads. Moreover, Defendants never make clear who Moon represented. And in a meeting with the Washington Attorney General's Office, Moon all but admitted that he knew the website's "escort" ads were for prostitution. Trial Tr., Doc. 1809 at 86:1-87:13. Moon's apparent knowledge that Backpage published prostitution ads undermines any legal advice in his memo, because such ads aren't constitutionally protected. *See, e.g.*, Doc. 2063 at 25-28.

claim reliance on advice, assurances, or court decisions that were expressly based on facts about Backpage's operations that they knew to be false. *See, e.g.*, *Dart* Sanctions Order, Doc. 516-1 at 2-9; Doc. 446-1 at 14-35; Doc. 2129 at 19.

Defendants' various legal challenges to this case have been litigated over the course of several motions to dismiss, prior trips to the Ninth Circuit (including at the grand jury stage and after Defendants' September 2021 trial), and other motion practice. *See, e.g.*, Doc. 1890 at 12-13. Suffice to say, the United States has successfully used the Travel Act to prosecute similar prostitution-advertising websites before, and several orders have upheld the Travel Act charges here. *See id.*; Doc. 2063 at 25-28. *See also* Doc. 649, Resp. at 21-26 (distinguishing cases Defendants continue to cite, including *McKenna*, *Dart*, and the California prosecutions of Lacey, Larkin, and Ferrer).

Defendants' additional legal arguments don't change this calculus. Lacey's citations to civil cases discussing different statutes and different claims are beside the point. *See, e.g.*, Doc. 2133 at 16 n.3. This case doesn't involve any recent statutory amendments to the Communications Decency Act to make it easier for civil litigants or state prosecutors to pursue claims previously barred by the CDA's immunity provision. *See, e.g.*, Doc. 840 (recognizing that CDA immunity never applied to the federal criminal charges here).

Brunst's discussion of a February 20, 2018 House Judiciary Report (Doc. 2136 at 15-16) is inapt for the reasons discussed in Doc. 1890 at 11-12. Moreover, the portion that Brunst cites doesn't discuss the Travel Act, but a different statute. His assertion that his acquittals on individual Travel Act counts conflicted with his conspiracy conviction on Count 1 should be rejected. Doc. 2136 at 21. A defendant may be convicted of a conspiracy without being convicted of (and even if incapable of committing) an underlying offense. *Ocasio v. United States*, 578 U.S. 282, 289 (2016). And Brunst's claim that a June 2021 Government Accountability Office Report gave him "comfort *at the time* [i.e., years before the report was published] regarding the legality of the business" doesn't support his sentencing request. Doc. 2136 at 15. Subpoena compliance isn't a mark of anything besides compliance with a court-order to produce information. The government presented evidence

that Backpage's subpoena responses were part of its efforts to deflect criticism while it raked in millions of dollars of prostitution advertising profits; the jury apparently agreed. *See* Doc 2063 at 24.

Spear's references to an earlier investigation in the Western District of Washington should be disregarded. Doc. 2138 at 4, 11; Doc. 2138-3. As this Court has repeatedly found, that investigation was wholly separate, and occurred long before Backpage's compelled disclosure of hundreds of thousands of internal documents to the U.S. Senate and the Arizona federal grand jury. *See* Doc. 449 at 2-4; Doc. 1444 at 11-12.

Simply put, the Court should reject Defendants' "good faith" arguments—and reject Defendants' efforts to relitigate prior orders in the guise of making sentencing arguments.

II.     Lacey's *Mens Rea* Argument Is Contradicted by the Evidence and the Verdict.

Lacey makes many assertions about how he worked with lawyers on the Count 100 transaction and didn't intend to conceal. *E.g.*, Doc. 2133 at 13-14. But Lacey made these arguments at trial—his lawyer John Becker even testified—and the jury rejected them. *See* Trial Tr., Doc. 1928 at 65:8-92:1, 98:1-21; Trial Tr., Doc. 1933 at 62:18-67:22. On cross-examination, Becker admitted that Lacey withheld information from him that, if known at the time, "would have changed my view on things. And so unless the transaction was clean, I don't want to participate in it." Trial Tr., Doc. 1928 at 127:2-128:6. *See id*. at 128:9-11. And the jury heard from Lin Howard, Lacey's banker, who testified that in her 25-year career she'd never heard anything like Lacey's request to move funds offshore or overseas "to protect them from government seizure." Trial Tr., Doc. 11:1-15, 13:18-25. The jury's verdict undermines Lacey's attempt to minimize his *mens rea* here.

III.    Defendants' Other Points Don't Support their Sentencing Recommendations.

Other Investors. Brunst asserts, without supporting citations, that "into 2014" VVMH or its successor, Medalist, had investors like Alta Communications (with a 14% stake in Backpage) and Goldman Sachs (with a 38% stake). Doc. 2136 at 3-4. Not so. These companies sold their stock in Backpage much earlier—in response to scathing criticism about their part ownership. *See, e.g.*, Trial Ex. 2042 (May 9, 2012 email from Brunst to

Goldman Sachs managing director Scott Lebovitz[4] re "CP stock purchase agreement and revised operating agreement"; stating "[a]s you all know, the backpage pressure has reached red hot"); Trial Ex. 1043 (not admitted) (Nicholas Kristof, "Financiers and Sex Trafficking," *The New York Times*, Mar. 31, 2012 ("Goldman Sachs was mortified when I began inquiring last week about its stake in America's leading Web site for prostitution ads. It began working frantically to unload its shares, and on Friday afternoon it called to say that it had just signed an agreement to sell its stake to management.").

Chookaszian Declaration. Brunst relies a declaration from an adjunct business school professor, Dennis Chookaszian, who opines generically on the duties of chief financial officers. *See* Doc. 2136-3. The declaration indicates no familiarity with any of the testimony or exhibits underlying Brunst's 17 felony convictions. Yet the trial evidence showed that Brunst, as CFO, knew Backpage faced "red hot" pressure from its prostitution advertising, Trial Ex. 2042; knew Backpage maintained non-adult sections for "plausible deniability," Trial Ex. 120 at 15, 17; approved funding for several prostitution marketing strategies, Doc. 2107 at 2-14; and orchestrated a sophisticated scheme of using shell companies and overseas entities to keep Backpage's payments flowing and launder the proceeds, Doc. 2107 at 12-17. These are not the activities of a typical corporate CFO.[5]

Sentencing Statistics. Brunst attaches statistics about the mean and median sentences for crimes like "racketeering" and "money laundering." Doc. 2136-2. But these charts don't capture the unique nature of this case, which involves Defendants' ownership, management, and control of a criminal enterprise that marketed prostitution on a massive

---

[4] *See* Tom Leonard, "Goldman sex! 'God's bank' offloads shares in firm linked to prostitution after deciding it was 'uncomfortable with direction of the company," *Daily Mail* (Apr. 1, 2012), available at https://www.dailymail.co.uk/news/article-2123738/Backpage-com-Goldman-Sachs-sells-16-cent-stake-website-linked-sex-trafficking.html (last visited Aug. 21, 2024).

[5] CFOs have been prosecuted in a variety of other cases. In one well-known example, Andrew S. Fastow, the former CFO of Enron Corp., pleaded guilty and was sentenced to six years in prison for his role in the conspiracy that led to Enron's collapse. https://www.justice.gov/archive/opa/pr/2006/September/06_crm_647.html (last visited Aug. 22, 2024).

scale for more than a decade.

<u>Custody Classification and Placement.</u> Lacey (Doc. 2133 at 17, 20) and Spear (Doc. 2138 at 10) assert that if sentenced to Bureau of Prisons (BOP) custody they will be classified as "sex offenders" and be placed at risk. The United States has no objection to the Court making a recommendation to BOP that Defendants should not receive a sex offender classification. The United States takes no position on in-custody placement matters (*e.g.*, prison, camp) within the BOP's discretion and applicable Court instructions.

Conclusion

For these reasons and those in United States' Sentencing Memorandum, and based on the entire record, the United States respectfully asks the Court to deny any defense motion for a downward departure and sentence Defendants as recommended in Doc. 2129.

Respectfully submitted this 22nd day of August, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

NICOLE M. ARGENTIERI
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

*s/ Peter S. Kozinets*
KEVIN M. RAPP
MARGARET PERLMETER
PETER KOZINETS
JOSEPH BOZDECH
Assistant U.S. Attorneys

AUSTIN M. BERRY
Trial Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Brian Wolfe*