GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
JOSEPH BOZDECH (CA Bar No. 303453, joseph.bozdech@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

NICOLE M. ARGENTIERI
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

AUSTIN M. BERRY (Texas Bar No. 24062615, austin.berry2@usdoj.gov)
U.S. Department of Justice
Child Exploitation and Obscenity Section
1301 New York Avenue, N.W., 11th Floor
Washington, D.C. 20005
Telephone (202) 412-4136
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>3. Scott Spear,<br><br>4. John Jed Brunst,<br><br>    Defendants. | CR-18-00422-PHX-DJH<br><br>**UNITED STATES' SUPPLEMENTAL MOTION RE: RESTITUTION REQUESTS** |

## SUMMARY OF ARGUMENT

Following the January 3 and January 6 restitution hearing, the Court ordered simultaneous briefing on the application of the restitution statute as it pertains to victims not included in the indictment by January 21, 2025. (Doc. 2298.) The Court also kept the record open for 21 days (until January 27, 2025) for the 12 restitution requests made by the United States. *Id.* In this supplement, the United States will address (1) the application of

the restitution statute for victims not included in the indictment; (2) why restitution should be ordered in this case for future medical expenses and lost wages; and (3) why the victims are also entitled to reimbursement of funds that have been expended for costs of prosecution.

First, Victim 8[1] is the only victim of the 12 restitution requests that was not referenced in the superseding indictment. Victim 8 presented evidence at the restitution hearing showing that she was victimized by Backpage in 2016, within the time frame of the Travel Act conspiracy. (RT 1/3/25 at 78-94; RT 1/6/25 at 148-156.) As set forth below, both the Victim Witness Protection Act (VWPA) and prevailing Ninth Circuit caselaw has found that a victim, that is not referenced in the indictment, is still able to receive restitution if a defendant is convicted of a scheme or conspiracy.

Additionally, Victims[2] 11 & 12 are also eligible to receive restitution. Although the jury found Spear and Brunst not guilty on Count 24, Victim 8 was posted on Backpage in 2014 until August 2015 when she was murdered. Because Spear and Brunst were convicted of the Travel Act conspiracy, Victims 11 & 12 may receive restitution even though the jury found the defendants not guilty as to her specific Travel Act count.

Next, other courts have upheld restitution claims for future lost wages and medical expenses based on the same type of expert witness testimony that was presented to this Court on January 3rd and 6th. The experts testified to their methodology and calculations for both future medical expenses and lost wages. As detailed below, various Circuits, including the Ninth Circuit, have routinely affirmed such restitution requests. Accordingly, restitution should similarly be ordered here. Last, the victims are also entitled to

---

[1] The victims are identified as described in the Exhibit A of the United States' Memorandum Re: Restitution and the Remission Process and Status of the January 3rd Hearing. (Doc. 2274, Exhibit A.)

[2] Victims 11 & 12 are the parents/next of kin to the deceased in Count 24, paragraph 175 of the Superseding Indictment.

reimbursement of funds that constitute advanced costs for participation in the prosecution including, among other things, expert and legal fees.

## LAW AND ARGUMENT

**I.   Omission From the Indictment Does Not Preclude a Victim from Receiving Restitution from a Conspiracy.**

Victim is defined in the VWPA to include all those harmed "in the *course of [a] scheme, conspiracy, or pattern of criminal activity*" in any offense that has as an element a scheme, conspiracy, or pattern of criminal activity. Pub. L. No. 101-647, 104 Stat. 4789, 4863, Section 2509 (Nov. 29, 1990), codified at 18 U.S.C. § 3663(a)(2) (emphasis added); *United States v. Brock-Davis*, 504 F.3d 991, 999 (9th Cir. 2007) ("When the crime of conviction includes a scheme, conspiracy, or pattern of criminal activity as an element of the offense, . . . the restitution order [may] include *acts of related conduct for which the defendant was not convicted*.").[3] Victims 8, 11, & 12 were victimized during the lifetime

---

[3] While *Brock-Davis* was decided under the MVRA provisions codified at 18 U.S.C. 3663A, rather than the VWPA, courts evaluate the scope of appropriate restitution under both provisions under the exact same rubric, and courts have expressly declined to entertain arguments proposing to treat the two restitution provisions differently. *See, e.g.*, *United States v. Kennedy*, 643 F.3d 1251, 1262 (9th Cir. 2011) ("The VWPA and the MVRA are identical in all important respects, and courts interpreting the MVRA may look to and rely on cases interpreting the VWPA as precedent." (internal citations omitted)); *United States v. Serawop*, 505 F.3d 1112, 1118 (10th Cir. 2007) (aside from the mandatory nature of the MVRA and the fact that the MVRA does not allow the court to consider a defendant's economic circumstances, "[t]he provisions of the VWPA and the MVRA are nearly identical in authorizing an award of restitution"); *United States v. Williams*, 353 F. Supp. 3d 14, 22–23 (D.D.C. 2019) (holding that in "the case of an offense resulting in bodily injury to a victim, the VWPA and the MVRA contain identical language authorizing courts to order restitution to reimburse the victim for income lost by such victim as a result of such offense" and that there is no "basis for construing the identical language of these two statutes differently with respect to future lost income" (internal citations omitted)); *United States v. Margiotta*, 475 F. Supp. 3d 1152, 1157 (D. Mont. 2020) ("subsections (b)(2) and (b)(4) under both [MVRA and VWPA] (the provisions at issue here) use identical language, and courts interpret and apply those provisions under the same rubric").

of the conspiracies and should be considered victims for restitution purposes. Under the VWPA, Victims 8, 11, & 12's claims for restitution should be considered.

## II. Restitution Should Be Ordered for Victims 8, 11 & 12 Because They Were Victimized During the Life of the Charged Conspiracy.

### A. The Jury Found Victims 8, 11 & 12 Were Victimized During the Conspiracy.

The jury found Spear and Brunst guilty of a 14-year Travel Act conspiracy. The jury also found Spear not guilty on Counts 18-52, individual Travel Act counts and Brunst not guilty on Counts 2-52, all the individual, substantive Travel Act counts. To the extent the Court believes the jury concluded the conspiracy ended when Backpage was sold to Carl Ferrer in April 2018, the jury made no such specific finding. In *Dunn v. United States*, 284 U.S. 390 (1932), the Supreme Court recognized the general principle that "[c]onsistency in the verdict is not necessary." *Id.* at 393; *see also United States v. Dota*, 33 F.3d 1179, 1187 (9th Cir. 1994) ("Jury verdicts are insulated from review for inconsistency."); *United States v. Hart*, 963 F.2d 1278, 1281-82 (9th Cir. 1992) (holding that the Supreme Court's decisions in in *Dunn* and *United States v. Powell*, 469 U.S. 57 (1984) do not permit exceptions to the rule against considering inconsistency in jury decisions). While the acquittals of some or all the Travel Act counts and the guilty verdict on the Travel Act conspiracy may appear to be logically inconsistent, that is not for the Court or the parties to speculate. In *Dunn,* the Supreme Court affirmed, based partly on its reluctance to unpeel juries' thought processes: "[t]hat the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." 284 U.S. at 394.

So too here. The Court should not attempt to speculate about the meaning of the jury's verdicts by arbitrarily finding that the jury meant the conspiracy ended upon the sale of Backpage to Ferrer by virtue of the jury finding Spear not guilty on counts 18-52. (Doc. 2063 at 41.) It is just as reasonable that the jury found both defendants liable for the 14-year conspiracy but that the substantive Travel Act counts that were the subject of counts 18-52 were not reasonably foreseeable to Spear and Brunst since they were no longer

operationally in control of Backpage on a day-to-day basis. The jury, nevertheless, found that they were still engaged in a Travel Act conspiracy until the website was shuttered in April 2018 because they were still receiving substantial revenue from prostitution activity.

Additionally, a conspiracy charge can be proved even if the Defendants were acquitted of, as was the case here, of some or all the underlying substantive crime. *Salinas v. United States*, 522 U.S. 52, 64-65 (1997) (affirming conviction for RICO conspiracy where the jury acquitted on a substantive RICO count); *see also United States v. Fiander*, 547 F.3d 1036 (9th Cir. 2008) ("Under *Salinas,* Fiander did not need to commit the substantive offense of contraband cigarette trafficking in order to be guilty of the RICO conspiracy. Instead, it is sufficient that he 'knew about and agreed to facilitate the scheme.'")

Here, by finding Spear and Brunst guilty of the Travel Act and Money Laundering conspiracies, the evidence showed, and the jury found, the defendants were aware of and agreed to facilitate the promotion of the prostitution business enterprises. Thus, while the jury did not find the defendants guilty of a count specifically attributable to Victims 8, 11, & 12, all three are nevertheless able to receive restitution because they (or their daughters) were trafficked on Backpage during both the Travel Act and money laundering conspiracies for which the defendants were convicted.

### B. Backpage was the proximate cause of Victim 8's murder by her "john."

All parties agree that 18 U.S.C. §3663 is the restitution statute applicable to the current proceeding. As detailed below, because the defendants' criminal conduct both directly and proximately harmed Victim 8, she (through her estate) is entitled to recovery under the statute.

This Court has broad discretion here in determining whether and how much restitution should be ordered, and restitution may be awarded to victims of the offense in

the Court's discretion pursuant to the provisions of 18 U.S.C. §3663(a).[4] The term "victim" is broadly defined in the statute to mean:

> a person directly and proximately harmed because of the commission of an offense for which restitution may be ordered including, *in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern*. In the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights under this section, but in no event shall the defendant be named as such representative or guardian.

18 U.S.C. §3663(a)(2) (emphasis added).

As explained above, Victim 8 was both directly and proximately harmed because of the commission of this offense. As the evidence at trial made clear, both defendants understood most profits made by Backpage came directly from its escort advertisement postings which were known by the defendants to be postings for illicit sexual encounters. Moreover, the record demonstrated that the defendants were tracking cases, like Victim 8's, in which young women and men were hurt or killed on commercial sex encounters set up using the Backpage.com platform. *See* Doc. 920

As this Court noted even after the sale of Backpage, these defendants remained active participants in the scheme:

> Mr. Ferrer testified that the sale of Backpage was intended to distance the Defendants from Backpage's business of selling illegal ads for prostitution. **But Mr. Ferrer also testified that even after the sale, both Messrs. Brunst and Spear stayed involved in the business of Backpage.** For example, after Visa, Mastercard, and American Express dropped Backpage in the middle of 2015, Mr. Brunst assisted Backpage in trying to obtain credit card processing. (Trial Tr., Doc. 1786 at 81:7–16). Mr. Ferrer testified that Mr.

---

[4] One factor in the Court's analysis is to look at "the financial resources of the defendant." 18 U.S.C. §3663(a)(1)(B)(i)(II). Both defendants not only have significant assets in large part based on their earnings from Backpage, but they both are anticipating substantial assets being returned by the government from the California settlement.

> Brunst 'was involved in the financial problems the company was having and wanted to understand the revenue that was coming in and what our options were for banking and when we might, you know, get the reserves coming from these other credit card processors[.]' (*Id.* at 81:2–-82:3). Either Mr. Ferrer or Backpage's CFO had contact with Mr. Brunst '[a] minimum of a few times a week' from July 2015 going forward. (Trial Tr., Doc. 1786 at 82:4–8). Mr. Brunst also helped find alternative methods for receiving money from posters on Backpage, including receiving payment by cryptocurrency. (Trial Ex. 897; Trial Tr., Doc. 1814 at 78:19–79:19; 93:24–94:20). **Evidence showed that in January 2015, revenue from cryptocurrency amounted to $35,540.68, but by May 2016, it had reached a high of $3,564,376.24. (Trial Ex. 1545).**

Doc. 2063 at 13-14 (emphasis added).

To allow Spear and Brunst to assist Backpage during the time Victim 8 was trafficked, to help Backpage allow for cryptocurrency payments which Victim 8's trafficker took advantage of to promote Victim 8's being trafficked,[5] and to allow Spear and Brunst to share in the profits from Victim 8's trafficking that resulted in her death but then to claim she is not a victim of the offense eligible for restitution is simply unjust.

### C. Victims 11 & 12's daughter was posted on Backpage *before* Spear and Brunst engaged in a sham sale to Ferrer and she was murdered during the conspiracy.

Defendant Brunst's argument that Victims 11 & 12's daughter was murdered *after* the sale of Backpage, and they therefore are not entitled to restitution, is similarly unavailing. Victims 11 & 12's daughter was the victim of Count 24. Docs. 2119 ¶¶ 146-147; 2120 ¶¶ 146-147. The decedent's August 15, 2015, posting was admitted into evidence during the testimony of her sister, Arshana Willis-Sanders. (Doc. 1897 at 1000-01; Trial Ex. 221.) To the extent this Court believes the record reflected that Victims 11 & 12's daughter was only posted in August 2015 (after the April 2015 sale of Backpage to Ferrer) the testimony of Sander-Willis satisfies, by a preponderance of evidence standard,

---

[5] Victim 8's trafficker paid for her postings using Bitcoin. RT 1/3/25 at 82:24-83:8.

that Victims 11 & 12's daughter was posted routinely on Backpage from 2014 (pre-sale to Ferrer) until her murder by a customer in August 2015. Sander-Willis testified that she observed her sister post on the website in 2014:

> Q. When did you first -- approximately when did you first become aware of Backpage?
>
> A. Year 2014.
>
> Q. Okay. And what was the -- the -- how did you become aware of it?
>
> A. My sister was using -- she was posting on Backpage.

Doc. 1897 at 90:19-24.

> Q. How often was she posting her ads in the escort section on Backpage between 2014 and 2015?
>
> A. When I learned in 2014, she would post every day. Towards August 2015, it probably, like, once or twice a week.

*Id.* at 97:22-25.

Similarly, Victim 8 was posted in December 2016 and was murdered by her "john" on December 24, 2016. As previously argued, her status as an underage trafficking victim and her tragic murder was reasonably foreseeable to both Spear and Brunst considering the constant notices both received of violent crime and child sex trafficking proliferating on the website for the preceding 12 years. *See* Doc. 2291. Accordingly, Victim 8 is eligible to receive restitution.

**III. The Allowable Categories and Standard for Restitution Under 18 U.S.C. § 3663 are the Same as Those Prescribed by 18 U.S.C. § 3663A.**

The applicable restitution statute in this case, the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3663, authorizes restitution to victims for (1) costs of necessary medical services; (2) lost income; and (3) expenses related to participation in the investigation or prosecution of the offense. It provides, in relevant part, that in the case of

an offense resulting in bodily injury to a victim—like this one—the court may make a restitution order requiring the defendant to:

> "(A) **pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care,** including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;
>
> (B) pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and
>
> (C) **reimburse the victim for income lost by such victim as a result of such offense**."

18 U.S.C. §3663(b)(2) (emphasis added). Further, "in any case," the court may order the defendant to "reimburse the victim for lost income and necessary child care, transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. §3663(b)(4). As noted above, the at language in the VWPA is <u>identical</u> to the language in the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A. *See* 18 U.S.C. § 3663A(b)(2)– (4). *See supra*, n. 3.

### A. This Court Can Award Restitution under the VWPA for Costs of Future Life Care Based on Exactly the Kind of Evidence Presented to the Court.

Restitution for the cost of future life care is authorized under the restitution statutes, including the VWPA. *See, e.g.*, *United States v. Protho*, 41 F.4th 812, 832 (7th Cir. 2022) (holding that a "district court's restitution order may require the defendant to pay any victim harmed by the defendant's offense the cost of necessary medical and related professional services for psychiatric and psychological care"). In *Protho*, the defendant was charged with kidnapping pursuant to 18 U.S.C. § 1201 and proceeded to trial, where he was ultimately found guilty. *Id.* at 820. At sentencing, the court heard testimony from a licensed clinical neuropsychologist retained by the government, who testified that the child

kidnapping victim would need substantial therapy going forward. *Id.* at 832. The expert submitted a "conservative estimate" that the victim would need 24 months of outpatient treatment. *Id.* After hearing about the effects of the trauma on the victim, the district court ultimately "projected that [the victim] would need therapy for eight more years"—six more than projected by the expert—and ordered restitution on that basis and under 18 U.S.C. §2259. *Id.* The Seventh Circuit affirmed, citing the VWPA, MVRA, and *United States v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001). *Id.*

Indeed, courts regularly award restitution to cover future medical costs, whether under the VWPA, the MVRA, or one of the other restitution statutes. *See, e.g.*, *Protho*, 41 F.4th at 832; *In re Sealed Case*, 702 F.3d 59, 66 (D.C. Cir. 2012) (upholding restitution under 18 U.S.C. § 1593 for the victims' future life care, which was supported by an expert report from a non-treating psychologist); *United States v. Laney*, 189 F.3d 954, 966–67 (9th Cir. 1999) (affirming restitution awarded to victims under 18 U.S.C. § 2259 to cover future psychological treatment and counseling). This approach aligns with the mandate of 18 U.S.C. § 3664, which applies to VWPA, MVRA, and other mandatory restitution statues and "directs victims who 'discover' further losses to petition the court for an amended restitution order." *Laney*, 189 F.3d at 967 (citing 18 U.S.C. § 3664). In *United States v. Laney*, the Ninth Circuit reasoned that "if Congress intended crime victims who required long-term psychological or physical therapy to receive restitution only after they actually paid their therapists, it created a strangely unwieldy procedure in section 3664, which would require a victim to petition the court for an amended restitution order every 60 days for as long as the therapy lasted." *Id.* Therefore, the Ninth Circuit held that the district court did not err in allowing restitution for future medical costs. *Id.*

Courts routinely award restitution for future medical costs where the expert calculating the cost of future treatment is not the treating doctor, as is often the case. *See, e.g.*, *In re Sealed Case*, 702 F.3d at 62 (awarding restitution for future medical costs based upon information provided by a non-treating psychologist who reviewed the health records of the victims and did not even speak with all of the victims he concluded would need

future treatment); *United States v. Johnston*, 707 F. Supp. 2d 616, 619–21 (E.D.N.C. 2010) (awarding restitution for future medical costs based on an expert report from Dr. Cooper, who reviewed investigative reports and interviewed the victims). Evidence of past treatment is also not mandatory if the court finds that the victim is reasonably certain to need treatment in the future. *See, e.g.*, *United States v. McKay*, 242 F.3d 384 (9th Cir. 2000) ("A district court may order restitution for the future counseling of a sexual abuse victim even though the costs of counseling have not yet been incurred. . .. Although the victim in *Laney*, was already in therapy, we find nothing to suggest this must always be the case, so long as the district court estimates 'the amounts that victims will spend on future counseling with reasonable certainty.'") (quoting *Laney*, 189 F.3d at 966–67 & n.14); *United States v. Rothenberg*, 923 F.3d 1309, 1320–21 (11th Cir. 2019) (affirming award of restitution to victim "Casseaopeia" based on an expert's psychological report describing her clinical interview with the victim); *United States v. Osman*, No. 6:13-CR-280-ORL-28, 2015 WL 4456970, at *5 (M.D. Fla. July 20, 2015), *aff'd*, 853 F.3d 1184 (11th Cir. 2017) ("[C]ourts have rejected arguments that the victim must already be in therapy.").

Courts ordering restitution for future medical costs have done so not only in cases where the defendant pled guilty, but also in cases where the defendant has proceeded to trial. *See, e.g.*, *Protho*, 41 F.4th at 820, 832 (affirming award of restitution for the victim's future psychiatric and psychological care after the defendant was convicted at trial); *United States v. McDaniel*, 631 F.3d 1204, 1207–09 (11th Cir. 2011) (affirming award of restitution for victim's future therapy after the defendant was convicted at trial); *Danser*, 270 F.3d at 452–53, 455–56 (affirming award of restitution for the victim's future therapy after the defendant was convicted at trial). Courts have also ordered restitution for future medical costs where the defendant pled guilty but maintained the right to challenge the amount or the bases for the award of restitution. *See, e.g.*, *Rothenberg*, 923 F.3d at 1315 (affirming district court's award of restitution for victims' future medical costs over the defendant's objections, which were documented in "lengthy memoranda" addressing what award should be made for each victim); *United States v. Sotelo*, No. 21-CR-60016, 2022

WL 344588 at *5–6 (S.D. Fla. Feb. 4, 2022) (awarding restitution based on victim's future medical costs after defendant pled guilty, even though the defendant objected that restitution was not warranted for victim "Violet" because she was not currently undergoing psychological treatment).

A restitution award for future medical care does not require a finding that the victims would seek the contemplated care with absolute certainty. Determining the appropriate amount of restitution for a victim's medical needs is not an exact science. Courts have recognized that "[d]etermining the duration of future psychological treatment, as a prediction, necessarily prevents any conclusion based on mathematical certainty." *Protho*, 41 F.4th at 833; *see also In re Sealed Case*, 702 F.3d at 67 ("determining the dollar amount of a victim's losses attributable to the defendant will often be difficult and such a determination will inevitably involve some degree of approximation, which is not fatal"). Even if courts were able to determine the amount of restitution that a victim is entitled to with mathematical certainty, there is no natural mechanism that allows a court to dictate how restitution will be used after it is awarded. Nevertheless, restitution is still appropriate to compensate the victims for the harm they suffered because of the defendant's conduct under the applicable restitution statute. The D.C. Circuit addressed this exact issue in *In re Sealed Case*, finding, "the appellant contends that the court erred by failing to find that the victims were in fact interested in seeking Missar's recommended treatment. Not so. **We compensate a victim with restitution**, that is, money—**whether she chooses to use that money in a particular way is up to her**." 702 F.3d at 67 (emphasis added).

In fact, numerous courts have ordered restitution for future life care costs based on the exact types of evidence offered by the government on behalf of the victims in this case.[6]

---

[6] Defendants Brunst and Spear's argument that the victims' need for future counseling here is "nothing more than a possibility" is baseless and implausible. The Court has heard testimony and statements from the victims and/or their representatives, reviewed extensive evidence, and received detailed reports from specialized medical experts, all of which establish with reasonably certainty that the victims do in fact need future counseling

For example, courts have consistently ordered restitution to cover future medical costs based on expert reports that provide reasonable estimates for the future medical care costs the victims are reasonably likely to incur, like those provided in this case, including materially similar reports by Dr. Cooper. *See, e.g.*, *Rothenberg*, 923 F.3d at 1315 (11th Cir. 2019) (affirming the district court's restitution award for victim "Sierra" supported by Dr. Cooper's report, which was based on an evaluation of the victim and estimated the total cost of her "future medical care"); *United States v. Snead*, No. 21-4333, 2022 WL 17975015, at *5 (4th Cir. Dec. 28, 2022) (finding that the district court did not abuse its discretion in ordering restitution for future medical and mental health expenses for a minor sex trafficking victim based on Dr. Cooper's "estimates as to the cost of future treatments for her medical conditions that were attributable to her sex trafficking"); *Johnston,* 707 F. Supp. 2d at 619–21 (finding that Dr. Cooper's report "reasonably estimat[ed] the effects of the abuse on the two victims … and reasonably estimat[ed] future costs in this case," when Dr. Cooper commented on the impact of the sexual exploitation on the children, "estimated the future costs" each victim would incur and "provided a line-item breakdown of her estimates"). Given the facts of this case, the need for the victims' future therapy and medical expenses is a virtual certainty, as attested to by the victims' testimony, statements, restitution submissions, and expert reports.

---

services. *See, e.g.*, RT 1/3/25 at 95:15–20 (Court stating: "I do think I have enough information on the record as filed before the Court that victims and as I witnessed in the testimony that was given have had traumas associated from being posted. I can then make the logical leap that, yes, certainly counseling therapies would be necessary and would be helpful."). Defendants' reliance on *United States v. Follet*, 269 F.3d 996 (9th Cir. 2001) is therefore misplaced. *Follet* is also inapplicable because it addressed an order of restitution for costs the victim would never incur, as the treatment facility provided free psychological counseling. *Id.* at 999–1000. Moreover, in *Follet*, the Ninth Circuit remanded the case to permit the district court to award restitution to the victim of sexual abuse of a minor under 18 U.S.C. § 2248 for the costs of future psychological therapy, to the extent there were any to be incurred. *Id.* at 1002. Contrary to Defendants' argument, even *Follet* would therefore support an award of restitution for future medical needs in this case.

### B. Restitution for Future Lost Income Is Widely Recognized as an Allowable Category of Restitution Under the VWPA.

Lost wages are a routine, cognizable category of harm compensable under the VWPA, based on the plain language of the statute. Pursuant to the VWPA, when a victim suffered bodily injury from an offense, the court may order restitution to "reimburse the victim for income lost by such victim as a result of such offense." 18 U.S.C. §§ 3663(b)(2)(C); *see also* 18 U.S.C. § 3663A(b)(2)(C) (containing identical language under the MVRA).

Courts regularly award restitution of future lost income based on recognized economic methodology. For example, in *United States v. Cienfuegos*, 462 F.3d 1160 (9th Cir. 2006), the Ninth Circuit held that "the MVRA requires lost income to be paid to victims who suffer bodily injury" and that "[w]hile calculation of future lost income must be based upon certain economic assumptions, the concepts and analysis involved are well-developed in federal law, and thus the district court is not without persuasive analogy for guidance." *Id.* at 1164, 1169. The Ninth Circuit held that the district court erred when it "denied restitution for future lost income" based on "the complexities associated with determining future lost income" and remanded the case to the district court for a renewed restitution award. *Id.* at 1161–62. Numerous other Circuits and district courts across the country have followed *Cienfuegos*. *See United States v. Messina*, 806 F.3d 55, 67–68 (2d Cir. 2015) (holding that the district court was authorized under the MVRA to order defendants to pay restitution for future lost income of the victim); *United States v. Serawop*, 505 F.3d 1112, 1120–21 (10th Cir. 2007) (concluding that future losses may be included in a restitution order under the MVRA and that the district court acted within its discretion in ordering defendant to pay restitution for the victim's future lost income); *United States v. Schenck*, No. 20-19, 2023 WL 3019959 at *9 (E.D. La. Apr. 20, 2023) (awarding restitution for lost income under the MVRA, noting that as the term "income lost" is not defined, courts should look to the phrase's "ordinary, contemporary, common meaning,"

which is "[w]ages, salary, or other income that a person could have earned if he or she had not lost a job, suffered a disabling injury, or died").

Defendants have suggested that restitution awards for lost income or earning capabilities are limited to cases where a victim is deceased, but that is not so. *See, e.g.*, *Messina*, 806 F.3d 67–68 (the MVRA "authorizes restitution to all victims of qualifying offenses resulting in bodily injury, both those who survive those injuries and those who die therefrom"); *United States v. Nazzal*, No. 2:11-CR-20759, 2014 WL 3708693, at *2 (E.D. Mich. July 28, 2014), *aff'd*, 607 F. App'x 451 (6th Cir. 2015), and *aff'd,* 644 F. App'x 655 (6th Cir. 2016) (ordering restitution for lost future wages based where the defendant's "abuse adversely affected [the victim's] educational opportunities and job advancement, resulting in lower earning capacity throughout his lifetime").[7] Indeed, nothing in the plain text of the statute indicates that lost income should be reserved for cases involving deceased victims. Instead, the provision allows restitution "in the case of an offense resulting in bodily injury to a victim." If Congress intended lost income to be awarded only to deceased victims, they could and would have said so here, instead of referencing only "bodily injury" as the precondition.

### IV. The Court Should Decline to Credit Defendants for Prior Restitution Unless Defendants Show that Restitution was Actually Paid.

In Brunst's Response to the Government's Restitution Memorandum and his Supplemental Restitution Memorandum, defendants noted that Victim 8 had previously

---

[7] Defendants Brunst and Spear urge the Court to follow *United States v. Fountain*, 768 F.2d 790 (7th Cir. 1985), which was decided before *Cienfuegos*, *Messina*, *Schenck*, and *Nazzal*, and was distinguished or not followed by each those courts. *See, e.g.*, *Cienfuegos*, 462 F.3d at 1167–68 (rejecting defendant's argument based on *Fountain* and expressly declining to follow it); *Messina*, 806 F.3d 55 (considering the availability of restitution for future lost income without citing to or relying on *Fountain*). And for good reason. As the Ninth Circuit held in *Cienfuegos*, "[t]he plain language of the MVRA contemplates an award of restitution to the victim's estate for future lost income and certainly does not expressly exclude such an award." 462 F.3d at 1164. The language in the MVRA is <u>identical</u> to the language in the VWPA, so the Ninth Circuit's reasoning applies with the same force here. *See supra* Section I. *Cienfuegos* is binding on this Court.

been awarded restitution in the amount of $14,439.29. Doc. 2282 at 14; Doc. 2290 at 33. At the restitution hearing, defense counsel implied that the existence of those restitution orders should weigh against an award to Victim 8 at this time. RT 1/6/2025 at 193:4-14. The Court should decline this invitation.

In *United States v. Bright*, the Ninth Circuit rejected arguments that the amount of restitution should have been reduced by the amount of funds seized and forfeited by the government. 353 F.3d 1114 (9th Cir. 2004). In doing so, the Ninth Circuit reviewed statutory history of both the MVRA and VWPA, and noted that, as part of the enactment of the MVRA in 1996, Congress removed language from 18 U.S.C. § 3663 that prohibited "courts from ordering restitution for a loss for which the victim has received or is entitled to receive compensation. *Id.* at 1121. The 1996 MVRA also added language to 18 U.S.C. § 3664 to require the court to "order restitution of the full amount of a victim's loss . . . *without regard to other sources of compensation for the victims*." *Id.* (emphasis in original). Other courts have followed this rationale in refusing to adjust a loss calculation for recovery from others. *United States v. Doe*, 374 F.3d 851, 856 (9th Cir. 2004); *United States v. Laney*, No. 12-CR-00862-YGR-3, 2020 WL 2733991, at *2-3 (N.D. Cal. May 26, 2020); *United States v. Coffman*, No. 2:08-CR-0093-KJM, 2017 WL 4883280, at *6 (E.D. Cal. Oct. 30, 2017). Instead of reducing the amount of restitution awarded, courts may give a credit on restitution owed if a defendant can show that compensation has been paid to the victim. *United States v. Farahi*, 580 F. App'x 554 (9th Cir. 2014); *United States v. Martinez*, 610 F.3d 1216, 1232 (10th Cir. 2010); *United States v. Karam*, 201 F.3d 320, 327 (4th Cir. 2000); *United States v. Sheinbaum*, 136 F.3d 443, 449 (5th Cir. 1998).

Defendants have supplied the Court with a copy of the judgment in *United States v. Charles McFee*, Case No. 1:17-CR-00403(2) (N.D. Ill.), in which Charles McFee was ordered to pay $14,439.29 jointly and severally with Joseph Hazley as restitution to Victim 8. Doc. 2280, Ex. D. Defendants have not, however, offered any proof that a single cent of that restitution has been actually paid. As the burden of proof lies on the defendant seeking

a credit for restitution previously paid, and that burden has not been met, the Court should award Victim 8 the full requested amount of funeral expenses.

### V. The Court has Broad Discretion to Fashion a Restitution Award that Compensates the Victims for the Losses Caused by the Defendants' Crimes.

In the final analysis, once the Court has determined that the VWPA is applicable to an identifiable victim, the Court has broad discretion to determine the appropriate parameters and amount of an award. This point was emphasized by the Supreme Court in *Paroline v. United States*, 572 U.S. 434 (2014). Though *Paroline* addressed the availability of restitution under 18 U.S.C. § 2259 for possession of child pornography, the Supreme Court's articulation of district court judges' role under the generally applicable provisions of § 3664 is equally applicable to this case. The *Paroline* Court emphasized that "[i]t is well recognized that district courts by necessity 'exercise . . . discretion in fashioning a restitution order.'" *Id.* at 459 (quoting 18 U.S.C. § 3664(a) (alteration in original). It went to state that "[t]here are a variety of factors district courts might consider in determining a proper amount of restitution, and it is neither necessary nor appropriate to prescribe a precise algorithm for determining the proper restitution amount at this point in the law's development. Doing so would unduly constrain the decision makers closest to the facts of any given case." *Id.* at 459–60.

In this case, in assessing the proper amount of restitution for Defendants Brunst and Spears, the Court might consider the following factors, among others:
- the central role played by Backpage.com and the co-conspirators as "brokers" for the online transactions that harmed the victims;
- the distribution by Backpage.com of photographic images of the victims for marketing purposes;
- the promotion of the photographic images of the victims through the Erotic Review and other websites;
- the fact that many of the victims were children;
- the extensive notice that Defendants had that children and young women were commonly trafficked on site;

- the unique features of online trafficking and compounding effect on the frequency of rapes and the violence that often occurs; and
- the fact that lost income and mental health losses flow naturally from the nature of the crime especially when a child is involved.

## VI. Recovery of Costs of Prosecution under the VWPA

The VWPA, in particular 18 USC Section 3663(b)(4), provides that the restitution order may require that the defendant "reimburse the victim for lost income and necessary childcare, transportation, and *other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.*" (emphasis added) This language is the same as the language in the MVRA, 18 USC Section 3663A(b)(4), so courts have interpreted both provisions "under the same rubric." *United States v. Margiotta*, 475 F. Supp. 3d 1152, 1157 (D. Mont. 2020) (interpreting the VWPA provision based on *Lagos v. United States*, 138 S. Ct. 1684 (2018), which allowed the recovery of costs associated with government investigations and criminal proceedings under the MVRA). Various courts have affirmed that such costs include attorney's fees, expert fees, and transportation costs incurred in connection with criminal proceedings are appropriate for restitution. *United States v. Eyraud*, 809 F.3d 462 (9th Cir. 2015) (holding that attorney's fees could be included in a restitution order under the MVRA's Section 3663A(b)(4) if they were reasonably necessary to aid in the investigation or prosecution of the defendant); *United States v. Babichenko*, No. 1:18-CR-00258-BLW, 2023 WL 5613545, at *11 (D. Idaho Aug. 30, 2023) (holding that attorneys' fees in connection with the government investigation fall within "other expenses" under Section 3663A(b)(4)'s scope of allowable restitution, and allowing victim companies to submit materials, such as billing records and time sheets, to support their requests for attorneys' fees: "As a threshold matter, attorneys' fees remain recoverable as an 'other expense' after *Lagos* – so long as the time is reasonable and was spent either participating in or attending a *government* investigation or proceeding. *See United States v. Afriyie*, 27 F.4th 161, 163 (2d Cir. 2022) (concluding that pre-***Lagos*** Second Circuit authority holding that attorneys' fees can sometimes be "other expenses" referred to in 18 U.S.C. § 3663A(b)(4) remains good law

after ***Lagos***).""); *United States v. Billimek*, No. 22 CR. 675 (PGG), 2024 WL 3455286, at *5 (S.D.N.Y. June 19, 2024) (awarding $121,947.50 in expert fees alongside attorneys' fees as restitution under the MVRA where the victim retained the expert to "determin[e] the amount of monetary loss" and "the corresponding amount of restitution owed").

### VII. Conclusion

For the forgoing reasons, this Court should award restitution to Victims 8, 11 and 12 because they were victimized during the life of the conspiracy of which a jury convicted both Spear and Brunst. All claimants are entitled to the requested restitution (some will file supplemental request on or before January 27, 2025) for future medial expenses and lost wages and the costs related to participation in the investigation and prosecution.

Respectfully submitted this 21st day of January, 2025.

GARY M. RESTAINO  
United States Attorney  
District of Arizona  

*s/ Kevin M. Rapp*  
KEVIN M. RAPP  
MARGARET PERLMETER  
JOSEPH BOZDECH  
Assistant U.S. Attorneys  

NICOLE M. ARGENTIERI  
Acting Assistant Attorney General  
Criminal Division, U.S. Department of Justice  

AUSTIN M. BERRY  
U.S. Department of Justice  
Child Exploitation and Obscenity Section

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of January, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants who have entered their appearance as counsel of record.

*s/D. Parke*
U.S. Attorney's Office