Gary S. Lincenberg *(admitted pro hac vice)*
   glincenberg@birdmarella.com
Ariel A. Neuman *(admitted pro hac vice)*
   aneuman@birdmarella.com
Gopi K. Panchapakesan *(admitted pro hac vice)*
   gpanchapakesan@birdmarella.com
Michael C. Landman *(admitted pro hac vice)*
   mlandman@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant John Brunst

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | CASE NO. 2:18-cr-00422-004-PHX-DJH |
| Plaintiff, | **DEFENDANT JOHN BRUNST'S SUPPLEMENTAL RESTITUTION MEMORANDUM PER COURT ORDER (DOC. 2298)** |
| vs. | |
| Michael Lacey, et al., | |
| Defendants. | |

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ................................................................................. 1

II. THERE IS NO BASIS FOR RESTITUTION AS TO D.R. ...................................... 1

    A. Her murder occurred outside of the Travel Act conspiracy. ......................... 2

    B. The money laundering conspiracy is not related to D.R.'s murder ................ 3

    C. There is no basis for the recovery of future lost income and other uncertain amounts. ................................................................................ 4

III. THE CASES CITED BY THE GOVERNMENT ARE READILY DISTINGUISHABLE. ................................................................................................ 6

IV. CONCLUSION .......................................................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Amy*
  714 F.3d 1165 (9th Cir. 2013) .................................................................................. 6

*In re Sealed Case*
  702 F.3d 59 (D.C. Cir. 2012) ................................................................................ 7, 8

*United States v. Anderson*
  741 F.3d 938 (9th Cir. 2013) ................................................................................... 4

*United States v. Arthur*
  750 F. App'x 540 (9th Cir. 2018), *amended on denial of reh'g* (Nov. 20,
  2018) ....................................................................................................................... 5

*United States v. Aumais*
  656 F.3d 147 (2d Cir. 2011) .................................................................................... 6

*United States v. Brock-Davis*
  504 F.3d 991 (9th Cir. 2007) ................................................................................... 2

*United States v. Cienfuegos*
  462 F.3d 1160 (9th Cir. 2006) .............................................................................. 5, 7

*United States v. Fountain*
  768 F.2d 790 (7th Cir.) ......................................................................................... 4, 5

*United States v. Laney*
  189 F.3d 954 (9th Cir. 1999) ................................................................................. 6, 7

*United States v. Lazarenko*
  624 F.3d 1247 (9th Cir. 2010) ................................................................................. 2

*United States v. Lopez*
  104 F.3d 1149 (9th Cir. 1997) ................................................................................. 3

*United States v. Manlove*
  No. CR 15-40-M-DLC, 2017 WL 4227665 (D. Mont. Aug. 22, 2017) ................... 2

*United States v. McKay*
  242 F.3d 384 (9th Cir. 2000) ................................................................................... 7

*United States v. Messina*
  806 F.3d 55 (2d Cir. 2015) .................................................................................. 7, 8

*United States v. Monzel*
   641 F.3d 528 (D.C. Cir. 2011) ....................................................................................... 9

*United States v. Protho*
   41 F.4th 812 (7th Cir. 2022) ......................................................................................... 7

*United States v. Richardson*
   No. 1:13-CR-00686, 2023 WL 35160 (N.D. Ill. Jan. 4, 2023) ...................................... 8

*United States v. Stratos*
   No. 2:11-CR-00537-TLN, 2017 WL 272213 (E.D. Cal. Jan. 20, 2017) ....................... 2

**Statutes**

18 U.S.C.
   § 1591 ............................................................................................................................ 7
   § 1593 ............................................................................................................................ 7
   § 1952 ....................................................................................................................... 1, 2
   § 2259 ............................................................................................................................ 6
   § 3579 ............................................................................................................................ 5
   § 3663 ................................................................................................................... *passim*
   § 3664 ........................................................................................................................ 6, 9

## I. PRELIMINARY STATEMENT

John Brunst submits the following supplemental brief in support of his response to the Government's restitution requests, per the Court's January 7, 2025 Court order. Doc. 2298. Brunst has previously briefed the issue of restitution, and submitted a chart that sets forth (1) each claimant, (2) their categories of claimed losses, and (3) the factual and legal reasons as to why the claims should be denied. *See* Docs. 2282, 2290.

This brief only addresses the Court's Order requesting supplemental briefing regarding "the restitution statute as it pertains to victims not included in the indictment." Doc. 2298. To the extent the Government or counsel for the claimants submits any new evidence, Brunst intends to seek leave from the Court to respond to that evidence.

Brunst's understanding is that D.R. (Claimant No. 8, through next of kin) is the only claimant who either (a) is not the subject of an advertisement charged in the indictment's fifty substantive Travel Act counts or (b) is not otherwise referenced as a "victim" in the indictment.

Further, although identified in the indictment, there is no trial testimony (nor was there any testimony at the restitution hearing) regarding Claimant No. 7 (C.M, through next of kin), No. 9 (J.R.), and No. 10 (E.S., through next of kin), or any experts or physicians who submitted letters on their behalf. There is not a sufficient factual record to support their claims by a preponderance of the evidence, and those claims also fail for the detailed reasons set forth in Brunst's prior briefing.

## II. THERE IS NO BASIS FOR RESTITUTION AS TO D.R.

The Government did not include any allegations in the indictment as to D.R., and thus, the jury did not reach any conclusions as to the relationship between Brunst's counts of conviction and D.R.'s subsequent murder. Further, the Government did not present any testimony sufficient to establish that D.R.'s murder was proximately caused by a particular advertisement on Backpage.com, let alone that Brunst proximately caused that ad to be placed. Nor could the Government make such a showing, as the Court concluded that Brunst was not part of any Travel Act conspiracy at the time of D.R.'s trafficking and

murder. For these and other reasons, D.R.'s representative's claims fail:

### A. Her murder occurred outside of the Travel Act conspiracy.

It was established through the testimony of FBI agent Carrie Landau that the murder took place on December 24, 2016, over a year-and-a-half after the Court held the Travel Act conspiracy ended. *See* Doc. 2315 (1/3/2025 Tr. at 92:1-4); Doc. 2063 at 13 (noting April 2015 sale), 41 ("The evidence accords with the Jury's likely conclusion that the sale of Backpage to Mr. Ferrer was a break in the conspiracy's agreement to violate the Travel Act."). The Government has not presented any evidence that D.R. was posted on Backpage during the course of the conspiracy.[1] While the Court may order restitution arising out of uncharged conduct when the defendant was convicted of a conspiracy, *see United States v. Brock-Davis*, 504 F.3d 991, 999 (9th Cir. 2007), any order of restitution must be tethered to "***the defendant's*** criminal conduct in the course of the [conspiracy.]" 18 U.S.C. § 3663(a) (emphasis added). Here, the Court has already held that Brunst was not part of a Travel Act conspiracy at the time of D.R.'s murder, as there was "an insufficiency of evidence showing any acts by Mr. Ferrer, or any other co-conspirator, taken *after* the sale of Backpage was a reasonably foreseeably consequence of the unlawful agreement." Doc. 2063 at 41.

The Court cannot order restitution for harm completely untethered to Brunst's criminal conduct—harm that occurred outside of the conspiracy conviction. *United States v. Stratos*, No. 2:11-CR-00537-TLN, 2017 WL 272213, at *11 (E.D. Cal. Jan. 20, 2017) (refusing to order restitution for losses suffered "prior to" the charged fraud scheme); *United States v. Manlove*, No. CR 15-40-M-DLC, 2017 WL 4227665, at *6 (D. Mont.

---

[1] C.W., the subject of claimants 11 and 12, is in a similar position. There is no dispute that her murder occurred after the end of the conspiracy and the Government cannot establish that her being posted on Backpage during the alleged conspiracy was the proximate cause of her death. Moreover, there's no dispute C.W. was an adult during the period of the conspiracy and was in violation of state law when she engaged in prostitution. As a participant in the wrongful conduct she is not entitled to restitution. *United States v. Lazarenko*, 624 F.3d 1247, 1252 (9th Cir. 2010).

Aug. 22, 2017), *report and recommendation adopted*, No. CR 15-40-M-DLC-01, 2017 WL 4227658 (D. Mont. Sept. 22, 2017) (refusing to order restitution when Government did not present any evidence that the harm was caused by the defendant's conduct during the course of the conspiracy for which he was convicted).  The Government has not cited any authority authorizing the Court to order restitution for harm occurring plainly outside the scope of the conspiracy.

### B. The money laundering conspiracy is not related to D.R.'s murder.

At the restitution hearing, counsel for D.R.'s family claimed—without proof—that Brunst's post-sale conduct regarding Backpage's payment processing somehow proximately caused D.R.'s murder.  The Government has never advanced this argument in any of its briefing, presumably because a money laundering offense logically cannot cause a "bodily injury" to someone that would warrant recovery of the losses sought here.  18 U.S.C. § 3663(b)(2)-(3).  In any event, this speculative assertion is unsupported by any evidence (like the ads at issue, how the ads were paid for, or whether D.R.'s murder was tied to a particular ad).  There is no dispute that the particular money laundering offenses at issue as to which Brunst was convicted all concerned loan payments from Ferrer to the sellers/former owners of Backpage in connection with the April 2015 of the company.  *See* Doc. 2063 at 14-15 ("[Ferrer] said the transfers in these Counts occurred between the three-month period of May 18, 2016, and August 16, 2016, and totaled close to $17 million.  Cereus Properties 'collected the interest and debt payments from the $600 million loan' from the sale of Backpage.").  In other words, the alleged money laundering involved money flowing *out* of the business rather than *into* it, undermining any suggestion by D.R.'s counsel that there is a causal link between Brunst's offense and the continued operation of Backpage by a new owner.  There simply is no causal link between a loan repayment to *former owners* of Backpage and D.R.'s murder.  *See United States v. Lopez*, 104 F.3d 1149, 1150 (9th Cir. 1997) (observing that money laundering is generally a "[v]ictimless crime").

**C.     There is no basis for the recovery of future lost income and other uncertain amounts.**

D.R.'s representative also seeks purported future lost income, which generally is not awarded in a restitution context. *See United States v. Fountain*, 768 F.2d 790, 801–02 (7th Cir.), *opinion supplemented on denial of reh'g,* 777 F.2d 345 (7th Cir. 1985) ("Compensation for the loss of future earnings is quintessentially civil . . . . The reason for treating past and future earnings differently is practical: the calculation of lost future earnings involves the difficult problem of translating an uncertain future stream of earnings into a present value . . . . It is not a problem meet for solution in a summary proceeding ancillary to sentencing for a criminal offense."). The Government simply has not met its burden to establish that any of the amounts sought here are "quantifiable to any degree of certainty." *United States v. Anderson*, 741 F.3d 938, 954 (9th Cir. 2013) ("Ultimately, however, it is the government's burden to establish that the victim suffered an actual loss in a quantifiable amount. Where the alleged loss is not quantifiable to any degree of certainty, the government's burden has not been satisfied, and no restitution should be ordered.").

At the hearing, D.R.'s expert was unable to produce any evidence of D.R.'s academic achievement that would support his conclusion that she would have obtained an Associate Degree, which roughly corresponds to the approximately $2.3 million in restitution that her estate seeks. Doc. 2316 (1/6/2025 Tr. at 161:22-24).[2] Nor did the expert consider the effect that D.R.'s preexisting medical condition would have had on her ability to earn income in the future (*id.* at 165:18-21), or the effect that D.R.'s decision to run away from her home would have had on her academic level of achievement. *Id.* at 163:18-164:4. Most importantly, D.R.'s expert failed to consider "personal consumption," *i.e.*, D.R.'s living expenses, which he agreed could have exceeded her future income. *Id.*

---

[2]  Brunst was not afforded the opportunity to examine these records himself. Doc. 2316 (1/6/2025 Tr. at 157:17-158:9).

at 165:22-166:3, 167:2-5. Accordingly, there is no basis to award D.R.'s representative any lost income, as the Government failed to establish that her lost income would have exceeded her expenses. *United States v. Arthur*, 750 F. App'x 540, 543 (9th Cir. 2018), *amended on denial of reh'g* (Nov. 20, 2018) (remanding to district court to consider effect of personal consumption).

The Government cites *United States v. Cienfuegos*, 462 F.3d 1160, 1163 (9th Cir. 2006) for the proposition that the "court can also order restitution for a deceased victim's future lost wages payable to the victim's estate." Doc. 2274 at 4-5. But *Cienfuegos* was a homicide case under the MVRA (which does not apply here for the reasons noted in prior briefing and at the hearing), only highlighting that holding Brunst responsible for someone's murder would eviscerate the restitution's proximate causation requirement. *Cienfuegos*, 462 F.3d at 1165 ("Only by making restitution for future lost income can the **perpetrator of a homicide** fully pay the debt owed to the victim and to society.") (emphasis added).[3]

Notwithstanding the fact that Brunst is not responsible for D.R's funeral costs, neither the Government nor counsel[4] for D.R.'s representative has indicated why the Government now seeks over $2 million in restitution for D.R.'s estate when it only sought $14,329.29 in restitution (for funeral costs) from D.R.'s trafficker (an amount for which he and another defendant were held jointly and severally responsible). Doc. 2280, Exh. C. at

---

[3]  Importantly, *Cienfuegos* was decided under the Mandatory Victims Restitution Act, which does not apply here. It is only on that basis that the Ninth Circuit distinguished the Seventh Circuit's holding in *Fountain* (which concerned the Victim Witness Protection Act, which does apply here). *See Cienfuegos*, 462 F.3d at 1168 (9th Cir. 2006) ("*Fountain* . . . construed a different statute, the VWPA. That statute set forth a provision, 18 U.S.C. § 3579(d), recodified as 18 U.S.C. § 3663(a)(1)(B)(ii), which specifically authorized the court to decline to order restitution if 'the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution ... outweighs the need to provide restitution.'").

[4]  Counsel for D.R.'s representative prosecuted Joseph Hazley and submitted the sentencing memorandum seeking $14,329.29 in restitution for funeral costs.

14, Exh. D at 7.  A federal court has already concluded that $14,329.29 represents the "full amount of [D.R.'s] losses."  18 U.S.C. § 3664(f)(1)(A).  And there is no basis for this Court to reach a contrary conclusion for a defendant multiple steps further removed from the alleged harm.  Nor can the Court order Brunst to be jointly and severally liable for the $14,329.29 in funeral costs, as Brunst was not a co-defendant in that case.  *In re Amy*, 714 F.3d 1165, 1167 (9th Cir. 2013) (recognizing the lack of statutory authority to impose joint and several liability across distinct criminal cases).  Finally, there is no evidence in the record establishing that the previously-ordered restitution has yet to be paid.  Accordingly, to order $14,329.29 to be paid by Brunst could cause double recovery, and there is no identified mechanism to prevent such double recovery.  *United States v. Aumais*, 656 F.3d 147, 155–56 (2d Cir. 2011).

## III. THE CASES CITED BY THE GOVERNMENT ARE READILY DISTINGUISHABLE.

Despite the Court's narrow order regarding supplemental briefing, the Government spends pages briefing issues that it should have covered in its prior briefing regarding the compensability of future lost income and counseling expenses.  In any event, the Government plays fast-and-loose with its authority, and simply ignores the obvious details of these cases that render them inapplicable here (indeed, the cases generally do not even rely on the restitution statute the Government agrees applies here).  The cases are readily distinguishable for the following reasons:

- *Laney* applied 18 U.S.C. § 2259, which *mandates* restitution in child pornography cases, and allows for medical costs "that are reasonably projected to be incurred in the future."  *Id*. at (c)(2); *see United States v. Laney*, 189 F.3d 954, 966 (9th Cir. 1999) ("Section 2259 is phrased in ***generous terms***, in order to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse") (emphasis added).  While the VWPA – which the Government agrees is applicable here – is a discretionary statute that only allows (in the case of an offense that

causes bodily injury) for restitution "equal to the cost of necessary medical and related professional services." 18 U.S.C. § 3663 (b)(2)(A). Even in *Laney*, it was the victim's treating psychiatrist—not a non-treating physician like Dr. Cooper—estimated $60,000 in future counseling costs. *Laney*, 189 F.3d at 966.

- *McKay*, an unpublished decision that the Ninth Circuit expressly stated "may not be cited to or by the courts of this circuit" (as it was published in 2000) concerned a guilty plea as to incest. *United States v. McKay*, 242 F.3d 384 n.1 (9th Cir. 2000) It is unclear from the decision which restitution statute was even applied in that case (where the court ultimately awarded $7,280 in future counseling costs). *Id.* *1. Further, there the "court conditioned payment on the victim actually seeking treatment," whereas here, the Government effectively seeks a blank check in the millions of dollars for counseling and medical treatment that may never be incurred. *Id.*

- *Protho* involved a kidnapping where the victim "had already received more than 24 months of treatment," unlike the claimants here. *United States v. Protho*, 41 F.4th 812, 832-33 (7th Cir. 2022) (ultimately awarding $87,770 for ten total years of treatment, not the millions of dollars in lifetime medical costs that certain claimants seek).

- *In re Sealed Case,* 702 F.3d 59 (D.C. Cir. 2012) involved guilty pleas to child sex trafficking charges where (1) as part of the plea agreement, the defendants agreed to pay restitution and (2) 18 U.S.C. § 1593 (mandatory restitution in sex trafficking cases), not the VWPA, governed. *Id.* at 64-66 ("Because the appellant pleaded guilty to 18 U.S.C. § 1591, the district court was required to impose restitution under 18 U.S.C. § 1593.").

- As discussed above, *Cienfuegos* was a homicide case under the MVRA that has no application here.

- *Messina* too concerns the MVRA and justifies the award of future lost

income based on the statute "mandat[ing] restitution . . . when a defendant stands convicted of 'a crime of violence . . . .'" *United States v. Messina*, 806 F.3d 55, 68 (2d Cir. 2015). The Government concedes the MVRA does not apply here, and there is no claim that Brunst engaged in a crime of violence. And even in *Messina*, the court "calculated lost future income by reference to [the victim's] **modest recent taxable earnings**," as opposed to the speculative opinions of the experts here. *Id.* at 69 (emphasis added).

The Government attempts to equate the VWPA with these other mandatory restitution statutes. But the text and policy goals of these statutes are different, as the Government's own cases make plain. Indeed, in *In re Sealed Case*, for example, the Government quotes the court's conclusion that "whether [the victim] chooses to use the money in a particular way is up to her." *Id*. at 66. But the Government *omits* the reference cited, an Eight Circuit case noting that the "purpose of restitution **under the MVRA**" is to make "victims of a crime whole" by "fully compensating them for their losses." *Id*.

The Government cites *Johnston* for the proposition that Dr. Cooper's work is reliable. But what appears to be an essentially identical report recently submitted by Dr. Cooper in the Northern District of Illinois that listed numerous health conditions and estimated lifetime costs of care was harshly criticized by that court. *See United States v. Richardson*, No. 1:13-CR-00686, 2023 WL 35160, at *9 (N.D. Ill. Jan. 4, 2023) (finding "significant flaws in the report that fatally undermine its reliability," including "annual cost projections [that] misstate or misconstrue the findings of the studies from which they are taken"). As is the case here, Dr. Cooper does not determine that Brunst's conduct "caused any of" claimants' conditions, nor does she make any "effort to estimate" the purported increase in costs tied to pre-existing conditions attributable to Brunst's conduct.

### IV.    CONCLUSION

As Brunst argued at the restitution hearing, the Court should deny all of the Government's restitution requests because the Government failed to establish that Brunst's conduct was the but-for and proximate cause of the claimants' alleged harms. Even if the

Government could establish but for and proximate causation for some of the claims, restitution is discretionary under 18 U.S.C. § 3663(a), and the circumstances of this case weigh in favor of denying restitution. Here, Backpage, its former owners (Lacey, Larkin's estate, Spear, and Brunst), and Ferrer agreed to forfeit $215 million. As the Government noted in its press release, "[t]he forfeited assets . . . will be available for a remission process to compensate victims of the crime . . . . The nine-figure dollar amount forfeited in this case will allow for victims to recover[.]" Doc. 2280, Ex. E at 1. This settlement was the result of careful and diligent global negotiations intended to roughly apportion responsibility amongst the Defendants for any restitution award or remission amounts. This is a unique case in which the alleged victims are seeking losses tied to purported harm caused by a website, and the website and its former owners have forfeited a nine-figure sum to address any valid restitution or remission claims.

To the extent that the Court is inclined to order restitution, it should exercise its discretion to order that restitution be paid out of the $215 million in forfeited funds. Satisfying any restitution order through the forfeited funds would align with the policy goals of the restitution statute, which require the Court to consider the amount of a given loss caused by each defendant. *See* 18 U.S.C. § 3664(h) ("[T]he court may make each defendant liable for payment for the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss"); *see also United States v. Monzel*, 641 F.3d 528, 538 (D.C. Cir. 2011) ("[T]he government has not shown that [defendant] caused the *entirety* of [victim's] losses," remanding for the district court to "consider anew the amount of [victim's] losses attributable to [defendant's] offense . . . .") (emphasis in original). By ordering that restitution be paid out of the forfeited funds, the Court can take comfort from the fact that the $215 million reflects parties' agreement of the proportionate share of responsibility of the company and each defendant.

Brunst—who was a roughly 5 percent owner of the company—forfeited over $7 million (and released his 5 percent claim to any Backpage assets as one of the sellers),

and will receive roughly $2.5 million from the settlement. He has not yet received any monies from the settlement. Undersigned counsel remains owed in connection with its trial work in this case, and it is currently handling Brunst's appeal without a retainer. As the Government knows through the parties' settlement negotiations, the $2.5 million being released was intended to ensure that (1) Brunst can retain counsel of choice on appeal and (2) his wife (who is in her 50s) is secure financially while Brunst serves out his prison term. That is all the more reason for the Court to look to the $215 million to satisfy any restitution order. Given the significant amount that has collectively been forfeited by Backpage and its owners, there is no good faith basis upon which the Government could object to a portion of the $215 million being used to satisfy any restitution order.

DATED: January 21, 2025    Respectfully submitted,

Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
Michael C. Landman
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By:    */s/ Gary S. Lincenberg*
    Gary S. Lincenberg
    Attorneys for Defendant John Brunst