Gary S. Lincenberg *(admitted pro hac vice)*
  glincenberg@birdmarella.com
Ariel A. Neuman *(admitted pro hac vice)*
  aneuman@birdmarella.com
Gopi K. Panchapakesan *(admitted pro hac vice)*
  gpanchapakesan@birdmarella.com
Michael C. Landman *(admitted pro hac vice)*
  mlandman@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant John Brunst

Bruce S. Feder, 004832
  bf@federlawpa.com
FEDER LAW OFFICE, P.A.
3104 E. Camelback Road #916
Phoenix, AZ 85016
Tel: (602) 257-0135 / Fax: (602) 954-8737

Attorney for Defendant Scott Spear

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | CASE NO. 2:18-cr-00422-004-PHX-DJH |
| Plaintiff, | **[REDACTED]** |
| vs. | **DEFENDANTS JOHN BRUNST'S AND SCOTT SPEAR'S RESPONSE TO THE GOVERNMENT'S NOTICE OF SUPPLEMENTAL INFORMATION (DOC. 2322)** |
| Michael Lacey, et al., | |
| Defendants. | |

4024588.1

# **TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT .......................................................................... 1

II.      EXHIBIT A – A.B. ........................................................................................... 3

III.      EXHIBITS B (N.F.) & E (D.O.) ..................................................................... 3

         A.     Medical Treatment Costs................................................................ 4

         B.     Lost Wages ..................................................................................... 5

         C.     Costs Associated with Participation in the Investigation and Prosecution ..................................................................................... 6

IV.      EXHIBITS C (M.L.) AND D (B.L.) ............................................................... 7

         A.     M.L. and B.L. Lost Wages ........................................................... 9

         B.     Treatment Costs ............................................................................. 9

            1.     M.L. .................................................................................. 10

            2.     B.L. .................................................................................. 10

V.      EXHIBIT F – D.R. ......................................................................................... 11

VI.      EXHIBIT G - E.S. .......................................................................................... 13

VII.      CONCLUSION ............................................................................................... 17

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Balan v. Vestcor Fund XXII, Ltd.*
5
    No. 3:19-CV-351-MMH-JBT, 2021 WL 2138876
    (M.D. Fla. May 26, 2021) ............................................................. 5
6

7

*Lagos v. United States*
    584 U.S. 577, 138 S. Ct. 1684, 201 L. Ed. 2d 1 (2018) ................................ 6
8

9

*United States v. Anderson*
    741 F.3d 938 (9th Cir. 2013) ................................................ 11, 14, 16
10

11

*United States v. Barany*
    884 F.2d 1255 (9th Cir. 1989) ............................................... 6
12

13

*United States v. Dayea*
    73 F.3d 229 (9th Cir. 1995) ............................................... 2, 14

14

*United States v. Diamond*
15
    969 F.2d 961 (10th Cir. 1992) .............................................. 6

16

*United States v. Kuo*
    620 F. 3d 1158 (9th Cir. 2010) ............................................. 7
17

18

*United States v. Lazarenko*
    624 F.3d 1247 (9th Cir. 2010) ............................................. 3, 9

19

*United States v. Loreng*
20
    956 F. Supp. 2d 213 (D.D.C. 2013) .......................................... 14

21

*United States v. Margiotta*
    475 F. Supp. 3d 1152 (D. Mont. 2020) ....................................... 6, 7
22

23

*United States v. Norman Goldstein, M.D., Inc.*
    No. CR. 07-00151 JMS, 2008 WL 659676
24
    (D. Haw. Mar. 11, 2008) ................................................... 7

25

*United States v. Rendon-Reyes*
    (No. 20-446) (2d Cir. 2023), 2023 U.S. App. LEXIS 11446 ....................... 7
26

27

*United States v. Sanga*
    967 F.2d 1332 (9th Cir. 1992) ............................................. 7

28

ii

*United States v. Swor*
    728 F.3d 971 (9th Cir. 2013) ......................................................................... 14

*United States v. Waknine*
    543 F.3d 546 (9th Cir. 2008) ...................................................................... 3, 6

**Statutes**

18 U.S.C. § 3663 .......................................................................................... *passim*

DEFENDANTS' RESPONSE TO THE GOVERNMENT'S NOTICE OF SUPPLEMENTAL INFORMATION

## I.    **PRELIMINARY STATEMENT**

Defendants John Brunst and Scott Spear submit the following response to the Government's Notice of Supplemental Information Supporting Restitution Requests ("Notice of Supplemental Information").  Doc. 2322.  On January 3 and January 6, 2025, after extensive briefing by both parties on the applicability of restitution, the Court conducted a two-day evidentiary hearing.  During the hearing, the Court indicated its preliminary view that the Government had not satisfied its burden.  Doc. 2315 (1/3/2025 Tr. at 62:20-24).  The Court gave the parties two weeks to submit supplemental briefing on two discrete legal issues.  Doc. 2316 (1/6/2025 Tr. at 169:18-170:2).  And the Court gave the Government 21 days to supplement what the Court indicated was a deficient record in support of restitution.  *Id.* (1/6/2025 Tr. at 169:12-17).

On January 27, 2025, the Government filed its Notice of Supplemental Information, which attached seven exhibits—all filed under seal—containing over 25,000 pages of additional material, including three new expert reports, one new letter from a former treating physician, and multiple letters with additional legal arguments from counsel for certain claimants (including arguments the Government has already conceded fail, like seeking restitution for children of alleged victims).  As an initial matter, the legal arguments of claimant's counsel and the untimely expert reports and letter from a former treating physician should be stricken.  As the Court's January 7 Order made clear, January 27 was a date by which the claimants could submit additional documentation of their claims (like invoices for medical care)—not an invitation to take a third bite of the apple to further claimants' legal arguments or belatedly submit expert reports and physician letters that will not be tested through the adversarial process.[1]

Substantively, the additional submissions do not move the needle from a deficient record to a record warranting restitution.  The additional expert reports, letters, and other

---

[1]    If the Court is inclined to consider this new evidence, the defendants request the opportunity to cross-examine the experts and former treating physicians.

documentation fail to address the Court's concern about documenting actual expenses incurred (or future expenses likely to be incurred) *and* establishing that such expenses were the direct and proximate result of Defendants' conduct.  Moreover, the Government's "hands off" approach to these restitution claims for these alleged victims is telling.  The government neither adopts the arguments made by claimants' counsel nor vouches for the validity of the claims.  Instead, it dumps over 25,000 pages of documentation related to the claims–including claims that the Court and the Government have already acknowledged are not compensable–on the Court and effectively asks the Court to review serve as a claims administrator.  Doc. 2291 ("The United States acknowledges that *Dayea* limits lost income compensation under the VWPA to victims that personally suffer bodily injury"); Doc. 2315 (1/3/2025 Tr. at 9:15-21) (Court acknowledging Government's concession that certain types of restitution sought were not compensable).  For example, counsel for the estate of E.S. submits a claim for $13+ million for future therapy expenses for E.S.' daughter even though E.S.' daughter was *not* a victim of bodily harm (and the Government agrees).  Counsel for the estate of E.S. also adds a claim for future lost wages even though E.S. is deceased from a medical condition unrelated to the offense conduct.

With respect to new requests for expert fees and litigation expenses incurred by claimants' counsel, there is no legal basis for the recovery of these costs.  *See* 18 U.S.C. § 3663(b)(4) (*reimbursement* limited to "*necessary* . . . expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense") (emphasis added).  The Government has failed to establish that any claimants incurred out-of-pocket expenses that may entitle them to reimbursement and the additional submissions fail to explain why certain costs were *necessary* to the investigation or prosecution of this case.

For the reasons stated below and in prior briefing, the Court should decline restitution as a matter of discretion under the VWPA.  For the convenience of the Court, Defendants submission is organized by Exhibit submitted by the Government.

## II.    <u>EXHIBIT A – A.B.</u>

A.B. supplements the record with a letter from a therapist who treated her from 2016 to 2019 and an index of billing codes used at Kaiser Permanente.  While the supplemental information appears to support A.B.'s contention that she incurred $2,340 in therapy-related expenses between 2016 and 2019, it does nothing to address the larger impediments to restitution.  For example, the additional submission does not address whether and the extent to which the trauma for which she received treatment was caused by Defendants' offense conduct.  Defendants have not been given the opportunity to cross-examine A.B. or her treating provider to understand whether and the extent to which her medical condition requiring treatment was caused by the publication of ads on Backpage.com.  The Court is without sufficient basis to award restitution on A.B.'s bare claim that the full extent of her trauma was caused by the publication of ads on Backpage.com.  *United States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008).

From what little evidence there is in the record, A.B.'s prior statements about being introduced to johns via other websites indicates that, to the extent she suffered trauma from her work as a prostitute, it was not exclusively caused by Backpage.com.  *See* Doc. 2290-1, Ex. A at 4-5.  In other words, Defendants' conduct was not a "but for" cause (let alone a proximate cause) of any harm she suffered.  Additionally, A.B.'s statements about her posting ads "on her own" indicates that she engaged in prostitution.  *Id.*  The Government and claimants' counsel have sought to turn this into a trafficking case at every turn, but that is not how this case was charged, as the Court repeatedly reminded the jury.  As a participant in illegal prostitution, A.B. is not entitled to restitution.  *United States v. Lazarenko*, 624 F.3d 1247, 1252 (9th Cir. 2010).

## III.    <u>EXHIBITS B (N.F.) & E (D.O.)</u>

Counsel for N.F. and D.O. supplements the record with a letter regarding claimed expenses for medical treatment costs and summary bills for expenses that counsel, acting *pro bono*, incurred in connection with the firm's efforts to obtain restitution for the claimants.  Claimants' submissions, including unverified factual statements from counsel,

1    do not revive their otherwise deficient restitution claims.

2          **A.**      **<u>Medical Treatment Costs</u>**

3         As the Court noted in Day 1 of the Court's evidentiary hearing on restitution, with

4    respect to N.F. and D.O., "I just have no, or minimal costs that I can say are attendant to

5    this kind of psychological counseling expense.  And that's the struggle that I'm having

6    here, and it's the government's burden to produce that."  Doc. 2315 (1/3/2025 Tr. at 62:20-

7    24).  Following the two-day evidentiary hearing, the Court allowed the claimants an

8    additional 21 days to submit documentation.  In response, counsel for the claimants

9    provides no such documentation.  Instead, counsel confirmed that N.F. and D.O. have not

10   received any medical care by a treating professional that would assist the Court in

11   determining (1) whether they actually suffer from a medical condition, (2) whether and to

12   what extent that medical condition was caused by a pre-existing psychological or physical

13   trauma, and (3) whether and to what extent that medical condition could be tied to the

14   particular trauma associated with the publication of ads on Backpage.com.

15        Roughly 10 years after the Court determined the conspiracy ended, and 7 years after

16   the website was shuttered, counsel claims–without proof–that N.F. and D.O. "have not

17   been able to receive consistent comprehensive medical care of the nature that Dr. Cooper

18   found is necessary due to challenges that they have experienced as a result of being

19   trafficked on Backpage.com."  Doc. 2324-1, Ex. B at 2.[2]  But that is not a statement that

20   would survive a motion to dismiss if alleged in a complaint, let alone the preponderance of

21   the evidence standard the Government is required to meet here.  Counsel's argument also

22   ignores Dr. Cooper's testimony that claimants had access to Medicaid and thereby had the

23   means to seek treatment.  Doc. 2315 (1/3/2025 Tr. at 43:19-25).  The absence of records of

24   a treating professional leaves the Court without any basis to conclude that the claimants

25   have the afflictions that Dr. Cooper speculates, that any of the posited afflictions were

26   directly and proximately caused by the publication of ads on Backpage.com, or that the

27

28     [2]   Unless otherwise noted, citations are to the PDF page number of the relevant exhibit.

1   treatments Dr. Cooper hypothesizes are medically necessary.  Moreover, there is no

2   evidence the claimants actually would seek the care Dr. Cooper proposes—and the

3   absence of any medical treatment history strongly suggests they would not.

4       **B.**     **Lost Wages**

5       N.F. and D.O. submit no additional documentation regarding their claims for lost

6   wages.  As discussed in prior briefing, the Government has failed to meet its burden of

7   establishing claimants' right to lost wages, Doc. 2290-1, Ex. A at 13-15, 24-27, which is

8   premised on the unsubstantiated assumption that the publication of ads on Backpage.com

9   reduced their earning capacity by 80% for the rest of their lives.  Doc. 2316 (1/6/2025 Tr.

10  at 124:22-125:2).  The Court has not heard from N.F. and D.O. regarding what efforts, if

11  any, they have made to be employed and does not know what, if any, impediments to

12  employment exist unrelated to the publication of ads on Backpage.com many years ago.

13  And claimants' expert did not consider the extent to which their individual circumstances,

14  wholly unrelated to ads on Backpage.com, were the source of their inability to work and/or

15  reduced earnings capacity.  For example, claimants' expert did not consider the extent to

16  which D.O.'s ███REDACTED███ impaired her ability to earn income.  *Id.* at 120:23-

17  121:6).  And claimants' expert did not consider the extent to which claimants made

18  a personal choice not to work after becoming parents at a young age.  *Id.* at 130:8-131:1)

19  (providing anecdotal, non-expert evidence of teen mothers who work, while

20  acknowledging that is a choice and he is not aware of the extent to which claimants made

21  that choice).  Instead, claimants' expert just tallied up general statistics regarding average

22  earning capacities for individuals sharing claimants' gender, age, and race, and discounted

23  those statistics using a study regarding sexual abuse of Canadian kindergartners.  *Id.* at

24  118:22-119:1).  Defendants have found no case that relies on that Canadian study to

25  calculate restitution or damages, and this Court should reject the invitation to be the first.[3]

26

27  ───────────────
    [3]   Federal courts have rejected this expert's pseudo-scientific opinions more than twenty
    times.  *See Balan v. Vestcor Fund XXII, Ltd.*, No. 3:19-CV-351-MMH-JBT, 2021 WL
28  2138876, at *1, n.1 (M.D. Fla. May 26, 2021).

1  This lack of individualized assessment of claimants' earning capacity, and failure to

2  evaluate the extent to which that earning capacity was diminished by the bodily harm

3  allegedly suffered as a direct and proximate result of Defendants' conduct, is plainly

4  insufficient under § 3663(b)(2).

5       **C.**     **<u>Costs Associated with Participation in the Investigation and Prosecution</u>**

6       N.F. and D.O. also seek a combined $29.222.04 in costs associated with the

7  investigation and prosecution of the offense under 18 U.S.C. § 3663(b)(4).  Doc. 2324-1,

8  Ex. B; Doc. 2324-4, Ex. E.  These costs go beyond what is authorized by the VWPA.

9  Under the VWPA, the Court may only "*reimburse* the victim for . . . *necessary* . . .

10  expenses related to participation in the [government's] investigation or prosecution of the

11  offense or attendance at proceedings related to the offense." 18 U.S.C.§ 3663(b)(4); *see*

12  *Lagos v. United States*, 584 U.S. 577, 585, 138 S. Ct. 1684, 1690, 201 L. Ed. 2d 1 (2018)

13  (holding that the statute's reference to "investigation or prosecution" relates to the

14  *government's* investigation or prosecution).

15       As an initial matter, the Government has failed to identify any amounts to be

16  *reimbursed*.  The claimants' submissions fail to indicate whether N.F. or D.O. have

17  personally incurred any of the $29,222.04 expenses claimed.  The inclusion of their own

18  travel expenses under the category "Costs Incurred by Attorney Representing Victims"

19  indicates that the claimants did not bear these costs.  Accordingly, they are not entitled to

20  reimbursement.  Unlike Section 3663(b)(2)(A) and (B), which refer to the "cost" of

21  various forms of treatment, Section 3663(b)(4) confines itself to *reimbursement*.  If N.F.

22  and D.O. did not incur these expenses, they are not entitled to reimbursement.

23       Second, the Government has failed to establish that such costs were "necessary" to

24  its investigation and prosecution of the offense.  *United States v. Waknine*, 543 F.3d 546,

25  559 (9th Cir. 2008); *United States v. Barany*, 884 F.2d 1255 (9th Cir. 1989).  Expenses

26  "generated in recovering a victim's losses…generally are too far removed from the

27  underlying criminal conduct to form the basis of a restitution order." *United States v.*

28  *Diamond*, 969 F.2d 961, 968 (10th Cir. 1992); *see also United States v. Margiotta*, 475 F.

1  Supp. 3d 1152, 1159–60 (D. Mont. 2020); *United States v. Norman Goldstein, M.D., Inc.*,

2  No. CR. 07-00151 JMS, 2008 WL 659676, at *3 (D. Haw. Mar. 11, 2008).

3      In *Margiotta*, the Court explained that litigation costs incurred for the sole purpose

4  of obtaining recovery for victims are not considered "necessary" to the government's

5  investigation and prosecution of the offense.  *Margiotta*, 475 F. Supp. 3d at 1159–60.  The

6  Court distinguished Ninth Circuit cases ordering restitution for litigation expenses related

7  to *mitigating* further damages, *rectifying* the defendant's conduct, or complying with the

8  Government's investigation demands.  *Id.* at 1160.

9      Here, the Government has failed to establish (and has not even tried to establish

10  through its own submission) that the costs incurred were necessary for its investigation and

11  prosecution of the offense.  The Government has cited no authority that would require

12  Defendants to foot the bill for costs that a claimant's attorney incurred for the sole purpose

13  of furthering that claimant's efforts to obtain restitution.

14  **IV.    <u>EXHIBITS C (M.L.) AND D (B.L.)</u>**

15      Counsel for M.L. and B.L. supplements the record with legal analysis for why

16  counsel believes claimants are entitled to restitution.  This letter should be stricken from

17  the record as is goes beyond the limited purposes for which the Court left the record open.[4]

18      Additionally, counsel for M.L. and B.L. supplement the record with an untimely

19  expert report submission by Edith Wong and, for B.L., a letter from osteopathic doctor

20  _____

21  [4]   As just an example, counsel cites three cases purportedly for the proposition that
§ 3663(b)(2) does not require the count of conviction to be an offense that necessarily

22  results or is likely to result in bodily injury.  *See* Doc. 2324-2, Ex. C at 7.  As counsel's
synopsis of these cases shows, each involved an offense in which bodily injury was a

23  necessary result of the conduct.  In *United States v. Kuo*, the defendants were convicted of
involuntary servitude.  *Id.*  In *United States v. Rendon-Reyes*, the defendant was convicted

24  of RICO conspiracy with a predicate act of sex trafficking.  *Id.*  In *United States v. Sanga*,
the defendant was convicted of conspiracy to smuggle an individual into the United States

25  for the purposes of engaging that individual in forced labor.  *Id.*  Here, the defendants were
convicted of conspiracy to facilitate prostitution in states where it was illegal to do so.

26  Bodily injury is not a necessary result of prostitution.  And despite claimants' efforts to
turn this case into a sex trafficking case, that is not the crime that the Government charged

27  or proved at trial.

28

1   Robert James Moran.  Wong's expert report essentially tallies up the amounts claimed by

2   M.L. and B.L. and relies on an expert report by Kate Keisel and a letter from Dr. Moran

3   that were not subject to testing through the adversarial process because Keisel failed to

4   make herself available at any point during the two-day restitution hearing and Dr. Moran

5   had not yet been noticed.  Counsel does not provide any explanation for why Keisel,

6   Wong, or Dr. Moran failed to make themselves available for cross-examination on

7   January 3 and 6, 2025.  The reports and letters should be stricken.  To the extent that the

8   Court is inclined to consider them, the Court should give Defendants the same opportunity

9   to cross-examine these individuals as the Court gave for the other experts.  In any event,

10  the flaws in these reports are discussed below.

11          As discussed in prior briefing, the Government has failed to establish that M.L. and

12  B.L. suffered bodily injury as a direct and proximate result of Defendants' conduct.

13  Doc. 2290-1, Ex. A at 16, 19.  Without proof of bodily injury, claimants are not entitled to

14  lost wages, or past or future treatment costs.  Moreover, despite the impression created by

15  the supplemental expert report and letter from counsel, M.L. and B.L. were adult sex

16  workers who voluntarily engaged in prostitution by posting ads themselves on

17  Backpage.com.  Ex. 1 (2015 Colorado State Patrol Report of Interview documenting

18  B.L.'s statement that she began working as a prostitute in 2008 and did not get involved

19  with the individual who allegedly trafficked her until 2015); Doc. 1920 (10/11/2023 PM

20  Trial Tr. at 21:5-9, 24:2-3) (B.L. admitting that she was over 18 at the time she posted her

21  own ads on Backpage.com for multiple years before meeting the pimp who allegedly

22  trafficked her); Docs. 1092 and 1092 (10/19/23 PM Trial Tr. at 117:20-24; 118:1-3;

23  10/20/23 AM Trial Tr. at 11:1-8) (M.L. testifying that she was in her late 20s when she

24  engaged in prostitution, that she wrote her own ads, and that she referred to the men with

25  whom she engaged in prostitution as "my clients" and "my customers."); Ex. 2 (2023 FBI

26  Report of Interview documenting M.L.'s statements that she posted her own ads and

27  engaged in self-prostitution); Ex. 3 (2018 FBI Report of Interview documenting M.L.'s

28  statements that she generally did not use Backpage.com during the period of time working

as a prostitute in Las Vegas).  It is not "cynical" for Defendants to point out these facts (Doc. 2324-2, Ex. C at 9).  The trial testimony of M.L. and B.L. suggests that they willingly engaged in illegal prostitution by posting their own ads on Backpage.com for an extended period of time, and thus are not entitled to restitution.  *United States v. Lazarenko*, 624 F.3d 1247, 1252 (9th Cir. 2010).  Additional deficiencies in their restitution claims are included below.

### A.    M.L. and B.L. Lost Wages

Wong appropriately recognizes that M.L. has no claim for lost wages as she has "demonstrated the ability to re-enter the workforce and maintain stable income[.]" Doc. 2324-2, Ex. C at 24.  With respect to B.L, Wong notes that she also has been able to re-enter the workforce.  *Id.* at 25 ("she sometimes works over 50 hours a week to support her family").  Nonetheless, Wong proceeds to recommend that the Court order over $1.2 million in lost wages, the vast majority of which is lost *future* wages.  *Id.*  Wong's explanation is that B.L. had reported she "has experienced periods when she was unable to work due to continuing trauma from her trafficking."  *Id.*  But B.L.'s uncorroborated statement that she was unable to work for certain periods of time *in the past* is wholly insufficient to meet the Government's burden to establish that her past unemployment was due to trauma from prostitution, that such trauma will reduce her lifetime earning capacity by over $1 million, or that any loss of earnings was directly and proximately caused by the publication of ads on Backpage.com.  Similarly, Wong's calculation of lost past earnings of $159,229 is based on similar uncorroborated statements by B.L. regarding periods of unemployment that B.L. claims were the result of past trauma.  And Defendants have not had the opportunity to examine Wong or B.L. on the bases for such claims.

### B.    Treatment Costs

M.L. and B.L. have failed to provide sufficient documentation reflecting the cost of past and future expected medical treatment.  While Wong's expert report references past medical costs incurred by M.L. and B.L., the documentation is not attached to the report or otherwise included in the Government's restitution submission.  This alone warrants denial

1 of the claimed amounts. For the reasons that follow, Wong's expert report fails to

2 establish that past and future treatment costs are both necessary and the direct and

3 proximate result of Defendants' conduct.

### 1.    M.L.

5      For M.L., Wong identifies "supporting documents" that reflect $2,051 in out-of-

6 pocket expenses that M.L. incurred between 2008 and 2013. Doc. 2324-2, Ex. C at 26-27.

7 Those documents purportedly include a combination of counseling sessions, primary care

8 visits, gynecological treatments, and dental treatments. *Id.* Wong included *all* of these

9 amounts in her restitution calculation of M.L.'s past medical costs without regard to

10 whether they were incurred as a direct and proximate result of Defendants' conduct, let

11 alone M.L.'s relationship with Backpage.com. *Id.* Without viewing the actual

12 documentation and without having the opportunity to examine the treating provider, the

13 Court is without basis to conclude that such treatment costs were a direct and proximate

14 result of Defendants' conduct. Instead, M.L. essentially asks the Court to order

15 Defendants to foot the bill for her entire past medical costs, regardless of whether and to

16 what extent those costs relate to Defendants' conduct.

17      With regard to Keisel's future treatment plan, the additional submission does

18 nothing to establish that M.L. actually needs the hypothesized treatment regimen, which is

19 more than five appointments *per week* (with no relation to her care from 2008 to 2024).

20 Doc. 2324-2, Ex. C at 29-31. As a college graduate who is employed full-time, it is far

21 from clear (1) whether such treatment is necessary and (2) whether M.L. has the time or

22 interest in pursuing such a treatment regimen. Defendants' inability to examine Keisel or

23 M.L. regarding these issues leaves the Court with a deficient record in this regard.

### 2.    B.L.

25      Wong also tallied up B.L.'s out-of-pocket medical expenses without regard to

26 whether such expenses bore *any* relationship to the time during which ads were published

27 on Backpage.com. Doc. 2324-2, Ex. C at 34. This is especially concerning as B.L.'s

28 treating physician has previously identified a number of medical conditions—such as a

1  REDACTED

2  ████████████████████████████████—that cannot plausibly be

3  tied to ads on Backpage.com.  Doc. 2275-6, Ex. E at 8.  The supplemental submission does

4  nothing to address the concern that the past and future treatment costs concern pre-existing

5  conditions unrelated to Defendants' offense conduct.

6          Wong relies on a letter from D.O. Robert James Moran, a provider at a health clinic

7  who provided B.L. with REDACTED

8  █████████████████████████████████████████

9  █████████████████████████████████████████

10 ████████████████████████████ While the letter

11 provides rough estimates regarding "future treatment needs," the letter provides no

12 estimate of the costs of those treatments and provides no indication regarding which

13 treatment, if any, B.L. is likely to follow.

14         Ultimately, we are at the same place we were at the hearing—insufficient

15 documentation from individuals who have not made themselves available for

16 cross-examination.  *See United States v. Anderson*, 741 F.3d 938, 954 (9th Cir. 2013)

17 (restitution statutes require "some precision when calculating restitution. Speculation and

18 rough justice are not permitted").  Restitution should be denied on this basis as well.

19 **V.    EXHIBIT F – D.R.**

20         Counsel for the estate of D.R. supplements the record with additional legal

21 argument and a request for litigation costs.  The Court should not consider additional legal

22 argument, as the purpose of leaving the evidentiary record open was not to give claimants'

23 counsel another bite at the apple to argue what they could have argued at the conclusion of

24 the evidentiary hearing or, through the Government, in its January 21, 2025, supplemental

25 filing.  Regardless, Defendants' supplemental filing addresses D.R.'s restitution requests in

26 full.  *See* Doc. 2320.  As Defendants' supplemental filings noted, D.R. was trafficked and

27 murdered a year-and-a-half *after* the conspiracy ended and thus Defendants cannot be

28 ordered to pay restitution for any resulting losses.  *Id.* at 2:2-3:6.

1    Counsel for D.R.'s estate also supplements the record with a request for $9,857.29

2  in "Costs Associated with participation with Court," $5,000 in "Expert fee – Carrie Landau

3  (Landau & Associates), and $9,550 in "Expert fee – David Gibson (Vocational Economic,

4  Inc.). As discussed above, the expert fees (or, in former FBI agent Landau's case,

5  percipient witness fees) are not compensable under § 3663(b)(4) as they were not

6  *necessary* to the Government's investigation and prosecution of the case.

7    Furthermore, the $9,857.20 in "Costs Associated with participation with Court" is

8  not sufficiently detailed for the Court to conclude that such costs were "necessary."

9  Counsel submits a PDF of an Excel spreadsheet detailing various costs, paid and unpaid,

10  that purportedly total to $17,241. Doc. 2324-5, Ex. F at 34-35. The relationship between

11  the $17,241 "total" figure and the $9,857.20 figure is not readily apparent, especially

12  because the spreadsheet lists $14,550 in expert witness fees incurred on July 30, 2024, and

13  January 6 and 27, 2025. Additionally, the descriptions for the costs sought do not provide

14  the Court with sufficient information to understand what they relate to, let alone whether

15  they are necessary costs. For example, it appears that counsel would like Defendants to

16  pay for counsel taking D.R.'s mother out to drinks at the Marriott lobby bar multiple times

17  on September 2, 2021. Doc. 2324-5, Ex. F at 34, 56 (reflecting receipt dated September 2,

18  2021). Counsel does not explain what was happening on September 2 and how the

19  purchase of a Kona Longboard, Blue Moon, and an Appletini were necessary expenses in

20  the investigation and prosecution of the Defendants. Similarly, counsel does not explain

21  how charges related to mojitos and margaritas on August 27, 2024, or charges for the

22  Arkansas Democrat Gazette and CVS by Swyft on August 28, 2024, were necessary to the

23  investigation and prosecution of the Defendants. *Id.* at 70.

24    Finally, despite the lack of sufficient descriptions, many of the expenses, for

25  example, the $3,614.74 in costs on December 31, 2024, for "Travel out of town," were

26  incurred in connection with counsel's attempt to bolster the estate's restitution claim. As

27  discussed above, such expenses are not "necessary" to the investigation and prosecution of

28  the offense. And there is no proof the estate of D.R. has actually incurred these costs, and

1  restitution cannot be ordered based on mere *credit card charges*; as the statute indicates,

2  restitution may only be ordered based on *actual* and *necessary* "costs."  18 U.S.C.

3  § 3663(b)(4).

4  **VI.    <u>EXHIBIT G - E.S.</u>**

5       Counsel for the estate of E.S. supplements the record with requests for lost wages,

6  psychiatric medical costs, other medical costs, and future psychiatric medical costs of E.S.'

7  daughter, all of which lack sufficient evidentiary support and bear no relationship to prior

8  restitution requests made by E.S. and her estate.  *Compare* Doc. 2275-8, Ex. G, *with*

9  Doc. 2324-6, Ex. G.  The chart below illustrates the dramatic growth of her restitution

10  requests:

| Loss Category | 9/27/2018 | 12/20/2024 | 1/27/2025 |
|---|---|---|---|
| Lost Wages (E.S.) | $88,000 | $374,400 | $1,782,230 |
| Psychiatric (E.S.) | $15,000 | $93,600 | $509,992 |
| Other Medical (E.S) | $4,500 | $1,044,500 | $323,514.88 |
| Future Psychiatric (M.K.) | N/A | $491,000 | $13,593,719 |
| Total | $119,500 | $5,000,000[5] | $16,209,455.88 |

18       Counsel for E.S. seemingly interpreted the Court leaving the factual record open as

19  an invitation to more than triple the amount of restitution sought on her behalf just a month

20  earlier (and over 135 times the amount E.S. sought in 2018).  These additional requests

21  should be stricken as non-responsive to the Court's order, and the Court should reject the

22  cavalier approach counsel for E.S.' estate has taken here.

23       Regardless of whether the Court considers the December 20, 2024, or January 27,

24  2025, restitution requests, the requested amounts are improper for a host of reasons.  *First*,

25  with regard to the request for $13+ million in Future Psychiatric Medical Costs of E.S.'

26  daughter (M.K.), the Court has already indicated, and the Government has agreed, that

---

[5]  Counsel for the estate did not explain in its December 20, 2024, restitution request how
it arrived at the $5 million figure, as the four subcategories total to less than $2 million.

such costs are not compensable under the restitution statutes.  Doc. 2291 ("The United States acknowledges that *Dayea* limits lost income compensation under the VWPA to victims that personally suffer bodily injury"); Doc. 2315 (1/3/2025 Tr. at 9:15-21) (Court acknowledging Government's concession that certain types of restitution sought were not compensable); *United States v. Dayea*, 73 F.3d 229, 232 (9th Cir. 1995) ("Because Ms. Zesiger did not suffer bodily injury from Dayea's involuntary manslaughter of her husband, we must reverse the court's restitution order.").  Counsel's inclusion of these costs—which represent more than 80% of the amount requested—underscores the estate's disregard for what is compensable under the VWPA.  Nor is it clear why the Government is submitting this new request for $13+ million in restitution it previously agreed was not recoverable.  The purpose of this exercise is to provide guidance to the Court regarding the evidentiary basis for the requested restitution, not simply forward to the Court any and all requests made by counsel for claimants, even those the Government has agreed are unsupported by the law.

 *Second*, the remaining costs are not compensable because the Government has failed to meet its burden of proving that the alleged losses were the direct and proximate result of Defendants' offense conduct.  *See United States v. Swor*, 728 F.3d 971, 974 (9th Cir. 2013); *Anderson*, 741 F.3d at 954 (restitution statutes require "some precision when calculating restitution. Speculation and rough justice are not permitted."); *United States v. Loreng*, 956 F. Supp. 2d 213, 223 (D.D.C. 2013) ("Where the government has failed to prove that a defendant caused any specific amount of losses with 'reasonable certainty,' the government has not met its burden, and the restitution award must be denied.").  This is especially true in the case of E.S. who previously admitted that she suffered numerous traumas prior to ever posting on Backpage.com.  Doc. 2290-1, Ex. A at 38-39 (recounting E.S. statement to the FBI that **REDACTED**

██████████████████████████████████████████████████████████████ all before she allegedly posted ads on Backpage).  Throughout the voluminous medical records, there are numerous references to the various traumas, unrelated to Backpage.com,

1    that E.S. experienced as a child—**REDACTED**

2    **REDACTED**

3    **REDACTED**. *See*, *e.g.*, Doc. 2324-6, Ex. G

4    at 2012, 5969, 7952-53, 7955, 7957, 8378, 23625, 24573.  And there are no references (as

5    far as Defendants can ascertain) to any trauma experienced as a sex worker or victim of

6    sex trafficking.  Counsel for E.S.' estate does not attempt to identify the extent to which

7    the claims for lost wages and psychiatric and medical costs were attributable to the

8    publication of ads on Backpage.com, as opposed to the multitude of other traumas that E.S.

9    suffered both predating and postdating the purported publication of any ads on

10   Backpage.com.

11        Claimant's counsel argues that E.S.' **REDACTED** was caused by

12   Defendants' conduct, but E.S.' medical records establish that her **REDACTED**

13   **REDACTED** Doc. 2324-6, Ex.

14   Ex. G at 556 **REDACTED**

15   **REDACTED**

16   **REDACTED**

17   **REDACTED**

18   **REDACTED**

19   **REDACTED** Nothing in the 24,000+ pages of medical records suggests that E.S.'

20   condition was caused by anything other than **REDACTED**

21   **REDACTED**.  Counsel cites Dr. Cooper's report for the proposition that emotional traumas made

22   E.S. more likely to develop **REDACTED**, but Cooper never evaluated or treated

23   E.S.—and the medical records of E.S.' treating physicians say nothing to support counsel's

24   claim.  Moreover, the medical records of E.S.' treating physicians repeatedly identify the

25   traumas/stressors in E.S.' life, none of which relate to prostitution or trafficking.  Not only

26   did counsel fail to exclude medical and psychiatric costs associated with E.S.' unrelated

27   **REDACTED**, but the costs associated with that unrelated condition account for the *entirety*

28

1   of the $323,514.88 in Other Medical Costs requested.  Doc. 2324-6, Ex. G at 8.[6]

2        *Third*, the restitution requests lack sufficient documentation for the Court to

3   conclude that such costs were in fact incurred by E.S.  In her 2018 restitution request, E.S.

4   attached seven (7) receipts for counseling sessions at $75 per session, amounting to a total

5   of $525.  Doc. 2275-8, Ex. G at 12-17.  The estate's supplemental restitution request

6   attaches the "report" of a certified life care planner, Roxanne Benoit.  Doc. 2324-6, Ex. G.

7   The report should be stricken as an untimely expert report untested by the adversarial

8   process and as non-responsive to the Court's request for additional documentation.

9   Moreover, the report provides no value to the Court as it simply estimates the costs that

10  might be incurred by a hypothetical victim of human trafficking, but says *nothing* about

11  the treatment E.S. *actually received* or what costs E.S. *actually incurred*, as is required

12  under 18 U.S.C. § 3663(b)(2).  *Anderson*, 741 F.3d at 954.

13       With respect to the request for $1,782,230 in lost wages, counsel submits an expert

14  report by an economist, Harvey Rosen, Ph.D., which should be stricken for the same

15  reason.  Even if not stricken, it should be disregarded because it is (1) based on pure

16  speculation that E.S. "probably would have finished her bachelor's degree in 2014 but-for

17  being sex trafficked[;]" (2) seeks lost wages based on average census data rather than

18  based on the actual circumstances of the case, including E.S.' prior employment history;

19  and (3) includes *future* lost wages despite E.S. being deceased from causes completely

20  unrelated to Backpage.  Doc. 2324-6, Ex. G at 9-10.  As discussed above, there is no

21  evidentiary support that the publication of ads on Backpage.com—as opposed to other

22  trauma caused by **REDACTED** or prostitution related to the publication of ads

23  on Craigslist.com—was the but-for *and proximate* cause of her inability to work during the

24

25  [6]   Though none of the amount sought is compensable as it is unrelated to the offense
    conduct, it is also worth noting that the claimed amount ($323,514.88) far exceeds her
26  *actual costs*.  *See* Doc. 2324-6, Ex. G at 24660 (noting that E.S. paid $0, and E.S.'
    insurance paid $74,029.37 of the $323,514.88 claimed by counsel; the remaining
27  $249,485.51 were "adjusted," *i.e.*, not charged to E.S. or her insurance company).  Any
    restitution ordered must be based on *actual costs*, not unadjusted billings.
28

1 relevant period. And there is no legal basis for awarding lost future wages.

2 **VII.   CONCLUSION**

3      The Court should deny all of the Government's restitution requests because the

4 Government failed to establish that Defendants' conduct was the but-for and proximate

5 cause of the claimants' alleged harms. The additional documents submitted by claimants'

6 counsel fail to move the needle in this regard.

7      Even if the Government could establish but-for and proximate causation for some of

8 the claims, the Court should exercise its discretion under the VWPA to decline to order

9 restitution. *See* 18 U.S.C. § 3663(a). As the Government noted in its press release

10 publicizing Defendants' (and related parties') agreement to forfeit $215 million, "[t]he

11 forfeited assets . . . will be available for a remission process to compensate victims of the

12 crime . . . The nine-figure dollar amount forfeited in this case will allow for victims to

13 recover[.]" Doc. 2280 at 83 (Ex. E); *see also id.* at 88 (Ex. F) (*U.S. v. Backpage* press

14 release noting that the "government will recommend the forfeited funds be made available

15 to victims through the remission process"). The Government and the parties have carefully

16 negotiated a plan to ensure that anyone found to have been a victim of the harm caused by

17 Backpage.com would be entitled to petition for remission. To the extent that they can

18 support that claim to the Government's satisfaction, they will be entitled to receive

19 a portion of the forfeited proceeds. The Court should exercise its discretion and defer to

20 the Government's stated plan to "compensate victims of the crime," rather than sifting

21 through over 25,000 pages of new documents and new expert reports without any guidance

22 from the Government. That task is better suited for a remission claims administrator–

23 whom, as Defendants understand, the Government has already selected–who could sift

24 through this documentation, follow up as appropriate, and determine the actual pecuniary

25 loss suffered by virtue of Defendants' offense conduct, if any.

26

27

28

1     *Pursuant to the District's Electronic Case Filing Administrative Policies and*

2  *Procedures Manual (January 2025) § II(C)(3), Gary S. Lincenberg hereby attests that all*

3  *other signatories listed, and on whose behalf this filing is submitted, concur in the filing's*

4  *content and have authorized its filing.*

5

6     DATED:  February 11, 2025          Respectfully submitted,

7                                        Gary S. Lincenberg
8                                        Ariel A. Neuman
                                         Gopi K. Panchapakesan
9                                        Michael C. Landman
                                         Bird, Marella, Rhow,
10                                       Lincenberg, Drooks & Nessim, LLP

11

12                                       By:      */s/ Gary S. Lincenberg*
                                                _____
13                                               Gary S. Lincenberg
                                                 Attorneys for Defendant John Brunst
14

15    DATED:  February 11, 2025          Feder Law Office, P.A.

16                                       By:      */s/ Bruce S. Feder*
                                                _____
17                                               Bruce S. Feder
                                                 Attorney for Defendant Scott Spear
18

19

20

21

22

23

24

25

26

27

28

# EXHIBITS 1-3

Submitted Under Seal